# EXHIBIT 7



Dear Sirs,

Please find attached 3 hard copies of the Agreement between our companies.

Please send us back 2 fully signed hard copies to the following address:

CD Projekt Sp. z o.o.
c/o GOG – Guillaume Rambourg
Jagiellonska 74 , Bud. E
03-301 Warsaw
Poland

Thank you in advance
*Anna Melon*

## GOG.COM DIGITAL DISTRIBUTION AGREEMENT

THIS SOFTWARE DISTRIBUTION AGREEMENT ("Agreement") is made as of the 1st day of April 2011 (the "Effective Date"), by and between GOG Limited ("GOG"), a company registered in Cyprus at 2 Chr Sozos Street, Eiffel Tower, 3rd Floor, Office 301, 1096 Nicosia, and Fred Ford and Paul Reiche III ("Developer") at 730 Eucalyptus Avenue, Novato, CA 94947.

### RECITALS

WHEREAS, Developer is the owner of and holds the proprietary rights to certain Products (as defined below) consisting of personal computer software program(s) and instructional documentation listed in **Exhibit A** attached hereto and incorporated herein; and

WHEREAS, Developer desires to distribute its Products electronically through an electronic download Internet service; and

WHEREAS, GOG is in the business of digital distribution of PC software and games via the Website (as defined below); and

WHEREAS, Developer desires to promote and distribute its Products through the Website, upon the terms and conditions set forth below.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants and benefits set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties, and with the intent to be legally bound hereby, the parties agree as follows:

1. DEFINITIONS.

    1.1. "Ancillary Products" shall mean digital materials produced by GOG derived from the Products, including guidebooks, posters, blogs, podcasts, journals and postcards, to be distributed via the Website at no additional cost to end user customers of the applicable Product.

    1.2. "Gross Receipts" shall mean the gross amount of funds, in U.S. Dollars, actually received by GOG in connection with the sale and distribution of Developer's Products via the Website.

    1.3. "Net Proceeds" shall mean Gross Receipts minus: (a) any and all sales taxes remitted by GOG to a proper taxing authority for a Product sales transaction, (b) any and all credit card refunds or charge backs issued to an end user or purchaser for the proper return of a Product, and (c) affiliate fees paid on a per-sale basis to GOG's affiliates (in no event higher than ten percent (10%) of GOG's Gross Receipts).

    1.4. "Product" shall mean, in the singular, any one (1), or in the plural, any two (2) or more, of the Software titles and their related Developer Documentation.

    1.5. "Developer Documentation" shall mean user manuals and/or other user related electronic and/or written materials that relate to the operation of the Software contained within the Products.

    1.6. "Software" shall mean, in the singular, any one (1), or in the plural, any two (2) or more, of those certain personal computer retail software products, in object code format only, and their upgrades and replacements (i.e., later versions), plus add-on and enhancement content, developed or owned by Developer and specifically identified on **Exhibit A** attached hereto and incorporated herein.

    1.7. "Term" shall mean the term set forth in **Exhibit A** attached hereto and incorporated herein.

1

1.8. "Territory" shall mean the specific geographical territory or territories, collectively, specified on **Exhibit A** attached hereto and incorporated herein.

1.9. "Website" shall mean the Internet website maintained by GOG with a homepage address of http://www.GOG.com.

2. LICENSE.

   2.1. GRANT OF LICENSE BY DEVELOPER. Subject to the express terms and conditions of this Agreement, Developer grants to GOG a non-exclusive right and license for the designated Territory, under all copyrights, patents, patent applications, trade secrets and other necessary intellectual property rights, during the Term of this Agreement:

      2.2.1 To use, execute, perform, display, reproduce or have reproduced on its behalf (in object code format only), the Products;

      2.2.2 To duplicate or cause to be duplicated (in object code format only) the Products (on CD- or DVD-ROM) for backup and archival purposes for the benefit of GOG;

      2.2.3 To create Ancillary Products, subject to Developer's prior, written approval, not to be unreasonably withheld;

      2.2.4 To distribute or have distributed on its behalf and sub-license the Products and any Ancillary Products directly to end user customers, under the terms of Developer's standard end-user license agreement, via electronic or digital download through the Website;

      2.2.5 To use all pictorial, graphic and audio visual works including icons, screens and characters created as a result of execution of the Products and any Ancillary Products.

3. DISTRIBUTION RIGHTS AND OBLIGATIONS.

   3.1. DEVELOPER'S UPGRADES AND REPLACEMENTS. GOG shall be entitled to receive, and Developer shall provide to GOG, the latest and most current version, including upgrades and replacements, of all Products as they are developed from time to time, no later than seven (7) days from the general public release date for said items. Further, all enhancements and add-on content for the Products that are offered for sale to the public shall be furnished to GOG no later than seven (7) days from the general public release date for said items.

   3.2. PRODUCT DISTRIBUTION. GOG, in its reasonable discretion, will enable certain Products to be purchased and downloaded from the Website during the Term in the applicable Territories.

4. ROYALTIES.

   4.1. ROYALTIES. As consideration for the grant of rights licensed to GOG herein, Developer shall earn the royalty specified in **Exhibit A** derived from GOG's Net Proceeds ("Royalties").

   4.2. REVENUE SHARING FEE PAYMENTS. GOG will pay Royalties to Developer on a quarterly basis, within thirty (30) days after the end of each calendar quarter, relating to Product sales occurring in the quarter ending immediately prior to the payment due date. The payment of Royalties to Developer will be accompanied by a report from GOG detailing the sales of Products during the quarter, resulting funds collected by GOG, and the computation of the Net Proceeds and related Royalties.

   4.3. AUDIT RIGHTS. Developer may, but not more frequently than one (1) time during a twelve (12) month period, conduct an audit of GOG's records solely with respect to the Products in order to verify the Royalties earned and paid during the previous four (4) quarters only. Such audits and audit rights shall also be subject to the following: (a) audits may only be conducted by an

independent and nationally recognized accounting firm, at the expense of Developer, without disruption to GOG's daily business operations; (b) the auditing firm must sign a confidentiality agreement reasonably acceptable to GOG; (c) audits shall be limited to the four (4) most recent quarters and shall not be conducted on any prior quarters; and (d) audits must be completed within thirty (30) days from written notice to GOG that an audit is demanded. In the event that the results of the independent audit indicate any shortage or overpayment of revenue sharing fees, the shortage or overpayment, as the case may be, shall be paid by the responsible party within ten (10) days from receipt of the final and complete audit report. In the event that Developer conducts an audit of GOG's records as provided above, Developer must deliver or cause to be delivered to GOG an original, sealed (by the auditor), complete, unedited, signed and dated copy of the audit report within seven (7) days after Developer's receipt of same from the auditor.

5. REPRESENTATIONS AND WARRANTIES.

   5.1. REPRESENTATIONS AND WARRANTIES OF DEVELOPER. On an ongoing basis, Developer represents and warrants to GOG that: (a) Developer's Products will operate in accordance with their written or published specifications and descriptions; (b) Developer has all the necessary rights, title and interests in the Products to grant GOG the rights and licenses contained in this Agreement (except the rights for the Products names and related trademarks that will be obtained by GOG from the respectful rights holder); (c) Developer's Products shall not infringe any copyright, patent, trade secret or any other intellectual property rights, moral rights or similar rights of any third party; (d) Developer and the Products comply with all applicable governmental laws, statutes, ordinances, administrative orders, rules and regulations; (e) there are no pending or threatened lawsuits, adversary proceedings or governmental actions that involve the Products or that do or may prohibit the performance of Developer's obligations under this Agreement or otherwise adversely affect Developer's ability to perform hereunder, and there are no final judgments or orders (judicial or governmental) against Developer or any Product or that otherwise would be violated by Developer's execution of this Agreement, granting of the rights or licenses hereunder or performance of Developer's obligations hereunder; and (f) Developer shall provide prior written notice to GOG of any facts which would make the foregoing representations untrue during the Term of this Agreement.

   5.2. REPRESENTATIONS AND WARRANTIES OF GOG. On an ongoing basis, GOG represents and warrants to Developer that: (a) GOG shall not assert any ownership interest or ownership rights in the Products and hereby acknowledges and agrees that all right, title and interest in and to the Products shall belong to Developer, and that GOG's sole license and distribution rights thereto shall be only those rights granted by Developer pursuant to this Agreement; (b) GOG shall not hold itself out to the public or any third party as the owner of the Products; and (c) GOG shall at all times abide by and follow those trademark, service mark, trade name and logo usage guidelines established in writing from time to time by Developer for the use of Developer's proprietary trademarks, service marks, trade names and logos pursuant to the license and rights granted above in this Agreement.

   5.3. GOG makes no representation or warranty regarding the amount of revenue which shall be derived from the exploitation of the Products, nor does GOG make any representation, warranty, or agreement that there will be any Royalties or other sums payable to Developer, or that the Products or Ancillary Products will be favorably received by retailers or the public. GOG shall not incur any liability hereunder based upon any claim that GOG has failed to realize revenues or that GOG has failed to effectuate sales which should have been realized. THE WEBSITE AND ANCILLARY PRODUCTS ARE PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, OR ARISING OUT OF ANY COURSE OF PERFORMANCE, CUSTOM, INDUSTRY STANDARD, OR USAGE IN TRADE, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE ENTIRE RISK AS TO THE RESULTS AND PERFORMANCE OF THE WEBSITE AND ANCILLARY PRODUCTS IS ASSUMED BY DEVELOPER. THE WARRANTIES AND REMEDIES SET FORTH ABOVE ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES OR REMEDIES. NO VERBAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY GOG OR ITS AGENTS, REPRESENTATIVES OR EMPLOYEES SHALL CREATE A WARRANTY OR IN ANY

WAY INCREASE THE SCOPE OF THIS WARRANTY, AND DEVELOPER SHALL NOT RELY ON ANY SUCH INFORMATION OR ADVICE.  THE FOREGOING DISCLAIMERS OF WARRANTY CONSTITUTES AN ESSENTIAL PART OF THIS AGREEMENT.

6. INDEMNIFICATIONS.

   6.1 INDEMNIFICATION BY DEVELOPER.  Developer shall fully indemnify, hold harmless and defend GOG and its subsidiaries and affiliates and all of the foregoing entities' officers, directors, employees, agents, customers and licensees, and their successors and assigns, from and against any and all claims, actions, suits, legal proceedings, demands, liabilities, damages, losses, judgments, settlements reasonably approved by Developer, costs and expenses, including, without limitation, attorney's fees, arising out of or in connection with any alleged or actual (a) breach by Developer and/or any Product of any representations, warranties or obligations contained in this Agreement; or (b) damage to any property, personal injury, death or any other damages or losses sustained by whomever suffered, resulting, or claimed to result, in whole or in part from any alleged or actual defect in any Product whether latent or patent, including any alleged or actual improper construction or design or the failure of a Product to comply with its written specifications or any applicable warranty set forth in this Agreement.

   6.2 INDEMNIFICATION BY GOG.  GOG shall fully indemnify, hold harmless and defend Developer and its subsidiaries and affiliates and all of the foregoing entities' officers, directors, employees, agents, customers and licensees, and their successors and assigns, from and against any and all claims, actions, suits, legal proceedings, demands, liabilities, damages, losses, judgments, settlements reasonably approved by GOG, costs and expenses, including, without limitation, attorney's fees, arising out of or in connection with any alleged or actual breach by GOG of any other representations, warranties or obligations contained in this Agreement.

7. CONFIDENTIALITY.  Each party acknowledges and agrees that certain information which it may receive from the other party from time to time will be Confidential Information to the disclosing party.  For purposes hereof, the term "Confidential Information" shall mean: (i) any research, development, source code and other information concerning or related to the Products, GOG or the Website that are not readily known to the public and that are intended by the disclosing party to be confidential and marked as such; (ii) any information concerning the terms and conditions of this Agreement, except for disclosures made to third parties with the prior written consent of the other party, which shall not be unreasonably withheld; (iii) nonpublic information concerning the business or finances of the disclosing party; and (iv) any other non-public information which if disclosed to a third party could adversely affect a competitive advantage of the party whose information was disclosed.  Each party shall keep and maintain the confidentiality of the other party's Confidential Information, and shall not directly or indirectly disclose any such Confidential Information to any third party without the prior written consent of the other party.

8. DEFAULT AND REMEDIES.

   8.1. EVENT OF DEFAULT.  A party to this Agreement shall be deemed in default of this Agreement in the event that it has committed a material breach of any provision of this Agreement, and said breach remains uncured following not less than fourteen (14) days after prior written notice of default and opportunity to cure; provided that any such default notice shall specify in detail the event(s) of default in order to be deemed proper notice.  In the event of a default by a party to this Agreement, the non-defaulting party may terminate this Agreement and pursue any and all other rights and remedies available at law and/or in equity by reason of any such default, except as expressly limited below or elsewhere in this Agreement.

   8.2. LIMITATION OF DAMAGES.  NEITHER PARTY SHALL BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, PUNITIVE, SPECIAL, EXEMPLARY OR INDIRECT DAMAGES, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  Notwithstanding anything to the contrary, GOG's maximum liability under this Agreement and the total amount of damages payable cumulatively to Developer shall not exceed the aggregate amount of the revenue sharing fees paid to Developer by GOG in the most recent twelve (12)-month period immediately preceding the event constituting a breach or giving rise to a default.

4

8.3. CLAIMS LIMITATION. All claims and causes of action by the parties under or related to this Agreement or otherwise related to the subject matter of this Agreement, including, without limitation, claims for breach of contract and claims in tort, must be commenced by the filing of formal legal proceedings with a court of competent jurisdiction within one (1) year from the date upon which the claim(s) or cause(s) of action accrued. The failure of a party to timely commence any such legal proceedings to pursue such claim(s) or cause(s) of action shall result in, and shall be deemed, the automatic waiver, release and forfeiture of all such claims and causes of action.

9. TERMINATION.

   9.1. TERMINATION. This Agreement may be terminated by either party upon prior written notice to the other party following the occurrence of an event of default by the other party as set forth in Section 8.1 above.

   9.2 EFFECT OF TERMINATION.

      9.2.1. In the event of termination or expiration of this Agreement, GOG's obligations under Section 3 shall cease immediately. Except as set forth in Sections 9.2.2. and 9.2.3., GOG's rights to possess, use, distribute and license the Products shall cease as of the date of such termination.

      9.2.2. Notwithstanding anything to the contrary contained herein, GOG shall be entitled to sell the Products and Ancillary Products for a period of three (3) months after the date of termination or expiration (the "Sell-Off Period"); provided, however, that GOG is accountable for the Royalties payable to Developer. All licenses for the Products and Ancillary Products entered into during the Term and the Sell-Off Period shall continue in effect after termination or expiration of the Agreement.

      9.2.3. Upon termination of this Agreement, Developer hereby grants to GOG a non-exclusive, worldwide, perpetual, irrevocable, fully-paid-up license to use, reproduce, transmit and distribute (directly or indirectly) the Product(s) and any error corrections in object code form via electronic delivery solely to end user customers who purchased the Product(s) from the Website during the Term.

      9.2.4. Any provision of this Agreement which by its terms is applicable to actions or periods occurring after termination of the Agreement will remain in full force and effect, including without limitation, Sections 5, 6, 7, 8, 9 and 10.

10. MISCELLANEOUS.

   10.1 NO WAIVER. No covenant or condition of this Agreement shall be deemed waived unless such waiver is set forth in a written instrument signed by the party to be charged. Further, no waiver of any covenant or condition of this Agreement shall be construed as a waiver of a subsequent breach of this Agreement or of any covenant or condition on a later occasion. No course of conduct or delay in enforcing rights shall waive that right, either contemporaneously or as to similar future events.

   10.2 NOTICES. Notices are deemed to be received by the addressee of the notice on the earlier of the date the notice is actually delivered to the addressee and: (a) ten (10) days after the notice is sent by first class airmail, postage prepaid, return receipt requested; (b) the next business day after the notice is sent by confirmed fax transmission, or (c) on the date of guaranteed delivery if the notice is sent by recognized international express courier.

   Notices shall be addressed as follows:

   For notices to Developer:

   | Name of Recipient: | Fred Ford and Paul Reiche III |
   |---|---|

5

| Address: | 730 Eucalyptus Avenue, Novato, CA 94947 |
|---|---|
| Facsimile No: | 415-370-3121 |

For notices to GOG:

| Name of Recipient: | Guillaume Rambourg<br>**grambourg@gog.com** |
|---|---|
| Address: | CD Projekt<br>c/o Guillaume Rambourg<br>ul. Jagiellońska 74<br>03-301 Warsaw, POLAND |
| Facsimile No: | + 48 (22) 5196901 |

10.3   ASSIGNMENTS.  Neither party shall assign this Agreement or any obligations hereunder without the prior written consent of the other party, which shall not be unreasonably withheld.  This Agreement shall be binding upon and shall inure to the benefit of Developer and GOG, their successors and permitted assigns.

10.4   ENTIRE AGREEMENT.  This Agreement sets forth the entire and integrated agreement of the parties with respect to the subject matter hereof.  All prior agreements, statements, promises, negotiations and representations between or by the parties or their agents, regardless whether written or oral, are expressly merged in this document and, if not contained in this Agreement, are of no force or effect.  This Agreement cannot be modified, changed, altered, or discharged, except by an agreement in writing signed by both parties.

10.5   GOVERNING LAW. This Agreement shall be governed by, and construed in accordance with, as to all matters, including, without limitation, validity, construction and effect, the laws of the State of California and, as applicable, the laws of the United States of America, notwithstanding any conflicts of laws principles of any other jurisdiction. Further, to the maximum extent permitted under the law, the exclusive and sole jurisdiction and venue for any lawsuit, action, claim or counter-claim related to this Agreement shall be in the state or federal courts of located in Los Angeles County, California.

10.6   SEVERABILITY.  If any term or provision of this Agreement is deemed unenforceable or illegal as to any event or person, it shall be deemed severed from this Agreement, and the balance of this Agreement shall be enforced to the greatest extent possible.

10.7   COUNTERPARTS.  This Agreement may be executed and delivered in one (1) or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one (1) and the same instrument. Further, this Agreement may be executed and delivered by the parties via electronic transmission, including fax and e-mail.

WITNESS WHEREOF, the parties hereto have signed this Agreement as of date first set forth above.

**DEVELOPER:**

By: _Fred Ford_
Name:  Fred Ford

By: _Paul Reiche III_
Name:  Paul Reiche III

**GOG:**

By: _[signature]_
On behalf of GOG Limited
Name: Guillaume Rambourg

Title: Managing Director

6

_GK_

**EXHIBIT A**

| Product Title | Language | SRP | Territory | Royalty Rate of Net Proceeds | Initial Term |
|---|---|---|---|---|---|
| *Star Control Collection (Star Control + Star Control II)* | EFIGS | $5.99 | Worldwide | *25%* | 3 years |
| *Star Control III* | EFIGS | $5.99 | Worldwide | *25%* | 3 years |

Titles GOG manages to re-master for Windows 7, XP and Vista compatibility will be sent to the Developer that will be authorized to sell those re-mastered versions in other channels three months after release on GOG.com. For the avoidance of doubt nothing in this Agreement shall prevent Developer from selling any other version of the Products at any time.

GOG is entitled to organize time limited promotions with up to 25% discount off SRP for the Products. Any higher discount will require Developer's written approval.

1. **Term**

The term shall commence on the Effective Date and shall continue in effect, unless terminated earlier in accordance with Section 9 of this Agreement, for the period as specified above in the table for each Product (the "Initial Term"). The Initial Term shall automatically renew for successive one (1) year periods unless either party provides notice of its desire to terminate at least thirty (30) days prior to the expiration date of the then-current term (each, a "Renewal Term"). The Initial Term and each Renewal Term are collectively referred to herein as the "Term."

Initials of Developer: _[initials]_  Initials of GOG: _[initials]_

Date: 1/2/12  Date: 1st April 2011