STEPHEN C. STEINBERG (SBN 230656)
  *ssteinberg@bzbm.com*
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile:  (415) 956-1152

MARK S. PALMER (SBN 203256)
  *mark@palmerlex.com*
4 Meadow Drive
Mill Valley, CA 94941
Telephone: (415) 336.7002
Facsimile:  (415) 634-1671

Attorneys for Defendants and Counter-Claimants
PAUL REICHE III and ROBERT FREDERICK FORD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| STARDOCK SYSTEMS, INC.,<br><br>       Plaintiff,<br><br>     v.<br><br>PAUL REICHE III and ROBERT FREDERICK FORD,<br><br>       Defendants.<br><hr>PAUL REICHE III and ROBERT FREDERICK FORD,<br><br>       Counter-Claimants,<br><br>     v.<br><br>STARDOCK SYSTEMS, INC.,<br><br>       Counter-Defendant. | Case No. 4:17-CV-07025-SBA<br><br>**MOTION TO QUASH SUBPOENA TO SINGER ASSOCIATES, INC.**<br><br>Hearing Date:<br>Hearing Time:<br>Judge:  Hon. Saundra B. Armstrong<br><br>Complaint Filed:  Dec. 8, 2017<br>Trial Date:  June 24, 2019 |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  ISSUES TO BE DECIDED...................................................................................... 2

III. STATEMENT OF RELEVANT FACTS................................................................. 2

IV.  LEGAL STANDARD ............................................................................................. 5

    A.   Motion to Quash a Subpoena ...................................................................... 5

    B.   Attorney-Client Privilege ............................................................................ 5

    C.   Attorney Work-Product Doctrine ................................................................ 6

    D.   Undue Burden .............................................................................................. 6

V.   ARGUMENT .......................................................................................................... 6

    A.   All of the Remaining Documents Responsive to the Subpoena Are Subject to the Attorney-Client Privilege. ................................................... 6

    B.   Some of the Documents Sought by the Subpoena Also Constitute Attorney Work-Product. ............................................................................. 9

    C.   The Documents Sought by the Subpoena Are Irrelevant to the Parties' Infringement Claims.................................................................................. 10

VI.  CONCLUSION ..................................................................................................... 12

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
5
*Behunin v. Superior Court*,
   9 Cal. App. 5th 833 (Ct. App. 2017) .................................................................8

6
7
*Chevron Corp. v. Donziger*,
   No. 12–MC–80237, 2013 WL 4536808 (N.D.Cal. Aug. 22, 2013)..........................................10

8
*Compaq Computer Corp. v. Packard Bell Elecs., Inc.*,
   163 F.R.D. 329 (N.D. Cal. 1995) ..........................................................6, 10

9
10
*Geller v. Von Hagens*,
   No. C11-80269 LHK HRL, 2012 WL 1413461 (N.D. Cal. Apr. 23, 2012) ............................10

11
12
*In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness ("In re Grand Jury Subpoenas")*,
   265 F. Supp. 2d 321 (S.D.N.Y. 2003) ................................................7, 8, 9

13
14
*Hickman v. Taylor*,
   329 U.S. 495 (1947) ..................................................................9

15
16
*In re Subpoena to Produce Documents of Clapp, Moroney, Bellagamba, Vucinich, Beeman & Scheley*,
   No. 14-MC-80191-RS (JSC), 2014 WL 3784112 (N.D. Cal. July 31, 2014) ..........................10

17
18
*United States v. Graf*,
   610 F.3d 1148 (9th Cir. 2010) ..........................................................6

19
*United States v. Nobles*,
   422 U.S. 225 (1975) ..................................................................9

20
21
*United States v. Smith*,
   502 F.3d 680 (7th Cir. 2007) ..........................................................9

22
23
*Wilcox v. Arpaio*,
   753 F.3d 872 (9th Cir. 2014) ..........................................................5

**Statutes**

24
California Civil Code

25
26
   § 47 ..................................................................1, 2, 3

27
   § 47(c-d) ..................................................................11

28

**Other Authorities**

Federal Rule of Civil Procedure:

26(b) ..................................................................................................................10

26(b)(1-2) ...........................................................................................................6

26(b)(3) ..........................................................................................................6, 10

26(b)(3)(A) .........................................................................................................9

45 ......................................................................................................................10

45(c)(3) .............................................................................................................10

45(d)(3) ...............................................................................................................5

Federal Rule of Evidence 501 ...............................................................................5

Defendants and Counter-Claimants Paul Reiche III ("Reiche") and Robert Frederick Ford ("Ford") (collectively, "Reiche and Ford") hereby move to quash the Subpoena to Singer Associates, Inc. ("Singer") served by Plaintiff and Cross-Defendant Stardock Systems, Inc. ("Stardock").

Reiche and Ford seek an order from the Court quashing the Subpoena on the grounds that it seeks documents that are not relevant, and that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine, as well as California Civil Code § 47 and First Amendment free speech rights.

## I.    INTRODUCTION

Singer was retained by Reiche and Ford's counsel to provide communications and public relations counseling services related to this case, which has received substantial public attention in the computer gaming community as a result of an onslaught of publicity by Stardock dating back to October 2017.  Aside from a handful of communications with reporters writing articles and a press release about the case, and several posts linking to such articles and press release (which are being produced), all of the other documents responsive to the subpoena are privileged communications between and among Reiche and Ford, their counsel, and Singer.  Some of these also contain work-product materials, *e.g.*, drafts of pleadings and other documents.  Thus, such documents are not discoverable.

Such documents are also not subject to discovery because they are not relevant to any party's claim or defense.  Stardock alleges that Reiche and Ford infringed its trademark and copyrights by selling the classic Star Control games, and by using the words "Star Control" in announcing their development of a new game in October 2017.  Reiche and Ford allege that Stardock infringed their copyrights and trademark by selling the classic Star Control games and using material from those games in connection with Stardock's new Star Control: Origins game. Communications between Reiche and Ford, their counsel, and Singer have no bearing on these infringement claims.  Stardock's counsel argues that such documents are relevant because of alleged "misrepresentations and falsehoods" in the public communications about this case by Singer, Reiche, and Ford.  But Stardock has not pled a claim for defamation, even in its recent

1   amended complaint, and in any case, such a claim based on communications about an ongoing

2   lawsuit would clearly be barred by the privileges set forth in Cal. Civ. Code § 47.

3        Rather than seeking discoverable information, Stardock's Subpoena is an attempt to invade

4   the attorney-client privilege and chill Reiche and Ford's free speech and efforts to defend

5   themselves in this case.  For the foregoing reasons and those set forth below, Reiche and Ford, and

6   Singer respectfully request that the Court quash the Subpoena.

7   **II.  ISSUES TO BE DECIDED**

8        A.  Are the documents sought by the Subpoena to Singer protected from disclosure by

9   the attorney-client privilege?

10        B.  Are the documents sought by the Subpoena to Singer protected from disclosure by

11   the attorney work-product doctrine?

12        C.  Are the documents sought by the Subpoena to Singer relevant and discoverable?

13   **III.  STATEMENT OF RELEVANT FACTS**

14        This case involves a dispute between Reiche and Ford, on the one hand, and Stardock, on

15   the other, concerning the intellectual property rights to the Star Control computer games that

16   Reiche and Ford created and developed 25-30 years ago.

17        Reiche and Ford created and developed Star Control I and Star Control II between 1988

18   and 1992.  Reiche and Ford's Counterclaim (Dkt. 17) ¶¶ 2, 12, 20-22.  The games grew to be

19   regarded as some of the all-time classic and best computer games in history.  *Id.* ¶¶ 2, 24.  Reiche

20   initially licensed the games to be published by a company called Accolade, Inc. ("Accolade"), and

21   later licensed Accolade to use the copyrighted materials from those games in a sequel called Star

22   Control 3 published in 1996.  *Id.* ¶¶ 2-3, 13-19, 27.  Accolade later became Atari, Inc. ("Atari").

23   *Id.* ¶¶ 36, 40.

24        The license agreement expired no later than 2001.  *Id.* ¶ 37.  Reiche and Ford then released

25   an open-source version of Star Control II called The Ur-Quan Masters in 2002, which

26   reinvigorated interest in the game and introduced it to a new generation of gamers.  *Id.* ¶ 42.  Since

27   that time, Reiche and Ford have planned to develop a sequel to The Ur-Quan Masters once they

28

1  were ready to take a step back from their positions as directors of the video game studio they

2  founded—Toys for Bob.  *Id.* ¶¶ 64, 72, 77, 80, 82, 87.

3       In 2013, Atari filed for bankruptcy and Stardock purportedly acquired the rights to the

4  trademark registration for the name "Star Control" and copyrights to the original material created

5  by Accolade for Star Control 3.  *Id.* ¶¶ 53-57.  Stardock then requested Reiche and Ford's

6  assistance in developing a new Star Control game, and a license to use their material from Star

7  Control I and II.  *Id.* ¶¶ 58-80.  Reiche and Ford repeatedly declined both requests as they had

8  their own plans.  *Id.*

9       Undeterred, Stardock then embarked on a series of unlawful actions in an effort to steal

10  these rights from Reiche and Ford and prevent them from developing their own sequel.  Stardock

11  started selling the classic Star Control games on its own website and another website called Steam.

12  *Id.* ¶¶ 88-89, 92.  Stardock also incorporated creative elements from Star Control I and II into its

13  new Star Control: Origins game, despite having repeatedly promised not to do so and admitted

14  that Reiche and Ford owned the rights to such materials.  *Id.* ¶¶ 69, 71, 73, 94-99.  Stardock filed

15  this lawsuit in December 2017, claiming that it owns copyrights to all of the Star Control games,

16  and that Reiche and Ford did not create Star Control and Star Control II, both of which are false.

17  *See* Complaint (Dkt. 1) ¶¶ 18-20, 49-51.  More recently, Stardock applied to register trademarks

18  on the name "The Ur-Quan Masters" and all of the character names from Star Control I and II in a

19  further effort to prevent Reiche and Ford from using their own intellectual property.

20       Since this dispute came to a head in October 2017 and continuing through today, Stardock

21  has engaged in a public relations war against Reiche and Ford, consisting of hundreds of public

22  posts on online forums, social media platforms, and elsewhere, mostly by Stardock's owner and

23  CEO, Brad Wardell.  *See* Decl. of Stephen C. Steinberg in Supp. of Mot. to Quash Subpoena

24  ("Steinberg Decl.") ¶¶ 2-9, 11, Exs. 1-8.  These posts contain numerous misrepresentations and are

25  intended to sway public opinion in favor of Stardock and its new Star Control: Origins game,

26  while casting a shadow over Reiche and Ford and their planned development of their own new

27  game based on their own creative materials.  Wardell has also provided interviews to computer

28  gaming publications in which he made other false statements.  *Id.* ¶ 10, Ex. 9.

1    For example, Wardell claimed that Stardock has a perpetual, exclusive license to all of the

2  classic Star Control games, and that Reiche and Ford were getting paid for Stardock's sales of

3  such games, both of which were false.  *Id.* Ex. 2, pp. 2-3; Ex. 3, p. 6; Ex. 7, pp. 6, 14.  He

4  repeatedly called Reiche and Ford's new game Ghosts of the Precursors a "sequel to Star

5  Control 2," "a true sequel to The Ur-Quan Masters," "a spiritual successor to the Ur-Quan story,"

6  and "a canon follow-up to Star Control II," among other things, then accused Reiche and Ford of

7  trademark infringement for using the same language.  *Id.* Ex. 1, p. 2; Ex. 4, p. 2; Ex. 6, p. 2; Ex. 8,

8  p. 195.  He falsely stated that Stardock would not use the aliens from the classic Star Control

9  games because the intellectual property rights belong to Reiche and Ford, when he recently

10  admitted that most or all of them will appear in Star Control: Origins.  *Id.* Ex. 2, pp. 2, 55, 189,

11  196; Ex. 6, p. 6.  Wardell also made a series of false statements about the settlement negotiations

12  between the parties, *e.g.*, that Stardock did not object to nor do anything to stop Reiche and Ford

13  from developing Ghosts of the Precursors, when in private, Stardock repeatedly demanded that

14  Reiche and Ford never develop that game or anything similar, and sign over all of their Star

15  Control intellectual property rights.  *See id.* Ex. 2, p. 2.  Stardock's strategy appears designed to

16  poison the well of public opinion to such an extent as to force Reiche and Ford to abandon their

17  intellectual property rights and plans to develop a new game, and to capitulate to Stardock's

18  unreasonable settlement demands.

19    In response to Stardock's extensive efforts to generate negative press about Reiche and

20  Ford alongside this lawsuit, in mid-February 2018, Reiche and Ford's counsel retained Singer to

21  provide communications and public relations counseling services related to this case.  Steinberg

22  Decl. ¶ 12.  Singer provided input on legal strategy including Reiche and Ford's Answer and

23  Counterclaim, and initial public communications regarding the case to try to counteract Stardock's

24  numerous false and negative statements.  *Id.*  Singer had a handful of communications with

25  reporters from publications (including the one that interviewed Wardell at the outset of this

26  dispute) and a press release concerning the case, and made several posts linking to such articles

27  and press release in late February and early March 2018 (which are being produced), in

28

1  conjunction with Reiche and Ford's filing of their Answer and Counterclaim. *Id.* That is the full

2  extent of Singer's services related to this case and Singer is no longer providing such services. *Id.*

3          On or about April 3, 2018, Stardock served Singer with the Subpoena asking for, among

4  other things, all documents relating to communications between Singer and Reiche, Ford, and

5  their counsel. *Id.* ¶ 13, Ex. 10.  Counsel met and conferred on or about April 18, 2018, and while

6  Reiche and Ford, and Singer still object to the entire subpoena on the grounds set forth herein, in

7  an effort to compromise (and because opposing counsel otherwise refused to grant a two-week

8  extension of time to file the present motion), Singer agreed to produce all posts, comments, or

9  statements made by Singer in any internet or public forum, or other communications not subject to

10 the attorney-client privilege and/or work-product doctrine, *e.g.*, with reporters, related to the

11 parties or the case. *Id.* ¶ 15.  Accompanying this motion is a log for the documents being withheld

12 based on the attorney-client privilege and/or attorney work-product doctrine. *Id.* ¶ 16, Ex. 11.

13 **IV.     LEGAL STANDARD**

14          **A.      Motion to Quash a Subpoena**

15          "On timely motion, the court for the district where compliance is required must quash or

16 modify a subpoena that: … (iii) requires disclosure of privileged or other protected matter, if no

17 exception or waiver applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3).

18          **B.      Attorney-Client Privilege**

19          "The common law — as interpreted by United States courts in the light of reason and

20 experience — governs a claim of privilege … But in a civil case, state law governs privilege

21 regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.

22 Where federal and state law claims are joined in the same action, as in the present case, claims of

23 privilege are determined under federal law.  *See Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir.

24 2014).  Under federal law, the attorney-client privilege protects confidential communications

25 between a client and an attorney from disclosure:

26                  (1) (w)here legal advice of any kind is sought (2) from a
                    professional legal adviser in his capacity as such, (3) the
27                  communications relating to that purpose, (4) made in confidence
                    (5) by the client, (6) are at his instance permanently protected

28

(7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).

### C.   Attorney Work-Product Doctrine

Federal Rule of Civil Procedure 26(b)(3) provides that:

(A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

### D.   Undue Burden

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case … On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: … (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(1-2). If documents sought by a subpoena are not relevant "then any burden whatsoever imposed upon [the third-party] would be by definition 'undue'." *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995).

## V.   ARGUMENT

### A.   All of the Remaining Documents Responsive to the Subpoena Are Subject to the Attorney-Client Privilege.

The remaining documents responsive to the Subpoena consist of communications between and among Reiche and Ford, their counsel, and Singer, a public relations consultant retained by Reiche and Ford's counsel.  Such communications relate to legal advice sought by Reiche and

1  Ford concerning their response to this lawsuit in light of Stardock's public relations strategy and

2  should be covered by the attorney-client privilege.

3        This is similar to the case in *In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to*

4  *(A) Grand Jury Witness Firm & (B) Grand Jury Witness ("In re Grand Jury Subpoenas")*,

5  265 F. Supp. 2d 321 (S.D.N.Y. 2003).  That case involved a high profile matter that had received

6  press coverage which led counsel for the target of a subpoena and potential future indictment

7  ("Target") to hire a public relations firm to try to restore balance and accuracy to the press

8  coverage.  *Id.* at 323.  The public relations firm communicated with both the Target alone and her

9  counsel, including discussion of defense strategies and the underlying facts, and the public

10  relations firm then spoke with the media and relayed certain factual information at counsel's

11  request.  *Id.* at 324.  The government sought to compel production of documents related to the

12  firm's services.  *Id.* at 323.

13        The court held as follows:

14      This Court is persuaded that the ability of lawyers to perform some
of their most fundamental client functions—such as (a) advising the
15  client of the legal risks of speaking publicly and of the likely legal
impact of possible alternative expressions, (b) seeking to avoid or
16  narrow charges brought against the client, and (c) zealously seeking
acquittal or vindication—would be undermined seriously if lawyers
17  were not able to engage in frank discussions of facts and strategies
with the lawyers' public relations consultants. For example, lawyers
18  may need skilled advice as to whether and how possible statements
to the press—ranging from "no comment" to detailed factual
19  presentations—likely would be reported in order to advise a client as
to whether the making of particular statements would be in the
20  client's legal interest. And there simply is no practical way for such
discussions to occur with the public relations consultants if the
21  lawyers were not able to inform the consultants of at least some
non-public facts, as well as the lawyers' defense strategies and
22  tactics, free of the fear that the consultants could be forced to
disclose those discussions. In consequence, this Court holds that
23  (1) confidential communications (2) between lawyers and public
relations consultants (3) hired by the lawyers to assist them in
24  dealing with the media in cases such as this (4) that are made for the
purpose of giving or receiving advice (5) directed at handling the
25  client's legal problems are protected by the attorney-client privilege.

26  *Id.* at 330-31.  The court also held that the privilege would cover communications between the

27  Target and the public relations consultants, whether inside or outside the presence of counsel,

28  provided the communications were directed at giving or obtaining legal advice.  *Id.* at 331.  The

court ultimately held that as most of the documents withheld from production were communications among the Target, her lawyers, and the public relations firm for the purpose of giving or receiving legal advice, the objections to producing such documents based on the attorney-client privilege were sustained.  *Id.* at 332.

Similarly, the present case has aroused substantial interest and press coverage in the computer gaming industry as a result of Stardock's active public relations efforts against Reiche and Ford since October 2017.  Reiche and Ford's counsel retained Singer, a public relations firm, to help present a more accurate and balanced picture of the dispute to the public.  The documents being withheld by Singer consist of communications between Reiche and Ford, their counsel, and Singer related to giving and receiving legal advice about the appropriate response to the lawsuit and providing public statements about it.

During the meet and confer process, Stardock's counsel cited *Behunin v. Superior Court*, 9 Cal. App. 5th 833 (Ct. App. 2017) in support of their position that the communications in question are not privileged.  But that case is easily distinguished.  First, it was issued by a California court applying state law and the court in that case expressly distinguished *In re Grand Jury Subpoenas* on the grounds that "the federal common law on attorney-client privilege … is broader than … California law and does not require a finding the communication was reasonably necessary for the attorney to provide legal advice."  *Behunin*, 9 Cal. App. 5th at 851.[1]  Second, *Behunin* did not involve using a public relations firm to help defend against a case that had already been highly publicized by the opposing party.  Rather, in that case, the plaintiff retained a public relations firm to create a website linking the defendants to former Indonesian dictator Suharto to try to induce a settlement, which then led to libel actions against the plaintiff.  *Id.* at 837, 851-52.

---

[1] The court also noted that even under California law:

> There may be situations in which an attorney's use of a public relations consultant to develop a litigation strategy or a plan for maneuvering a lawsuit into an optimal position for settlement would make communications between the attorney, the client, and the consultant reasonably necessary for the accomplishment of the purpose for which the attorney was consulted. But this is not that case.

*Id.* at 849-50.

8

MOTION TO QUASH SUBPOENA TO SINGER ASSOCIATES

In contrast, in the present case, Reiche and Ford's counsel retained Singer to provide communications and public relations advice in response to the onslaught of public posts and attention created by Stardock beginning even before this case was filed.

Thus, the Court should adopt the reasoning in *In re Grand Jury Subpoenas* and hold that such documents are properly subject to the attorney-client privilege.

### B.   Some of the Documents Sought by the Subpoena Also Constitute Attorney Work-Product.

Some of the documents responsive to the Subpoena consist of communications between and among Reiche and Ford, their counsel, and Singer that contain attorney work-product. These include drafts of and potential exhibits to the Answer and Counterclaim, and drafts of a press release regarding the case.

In *Hickman v. Taylor*, the Supreme Court explained that attorney work-product "is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways," and held that such materials are generally not discoverable. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). The protection applies to "documents prepared by an attorney or the attorney's agent to analyze and prepare the client's case." *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). "[T]he [work-product] doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

The documents responsive to the Subpoena include communications regarding drafts of and potential exhibits to the Answer and Counterclaim prepared by Reiche and Ford's counsel, lists of potential interested press outlets compiled at counsel's request, and drafts of a press release regarding the case to which counsel contributed. All of these materials are clear examples of materials prepared for litigation by Reiche and Ford's attorneys and consultant, and Stardock has not made the required showing of necessity under Fed. R. Civ. P. 26(b)(3)(A). Moreover, many of these materials also contain "mental impressions, conclusions, opinions, or legal theories" of Reiche and Ford's attorneys. Steinberg Decl. ¶ 16. Therefore, the Court should hold that such

9

MOTION TO QUASH SUBPOENA TO SINGER ASSOCIATES

1   documents constitute attorney work-product and are protected from disclosure under Fed. R. Civ.

2   P. 26(b)(3).

3       **C.**    **The Documents Sought by the Subpoena Are Irrelevant to the Parties'**
        **Infringement Claims.**

4

5       Even if the remaining documents responsive to the subpoena were not privileged nor

6   work-product, none of the documents sought by the subpoena are relevant to the parties' claims

7   and defenses in this case.  A subpoena under Fed. R. Civ. P. 45 is subject to the overall

8   requirement under Fed. R. Civ. P. 26(b) that a party may only obtain discovery regarding "any

9   nonprivileged matter that is relevant to any party's claim or defense."  *In re Subpoena to Produce*

10  *Documents of Clapp , Moroney, Bellagamba, Vucinich, Beeman & Scheley*, No. 14-MC-80191-RS

11  (JSC), 2014 WL 3784112, at *2 (N.D. Cal. July 31, 2014); *see Geller v. Von Hagens*,

12  No. C11-80269 LHK HRL, 2012 WL 1413461, at *2 (N.D. Cal. Apr. 23, 2012).  "On a motion to

13  quash a subpoena, the moving party has the burden of persuasion under Rule 45(c)(3), but the

14  party issuing the subpoena must demonstrate that the discovery sought is relevant."  *Chevron*

15  *Corp. v. Donziger*, No. 12–MC–80237, 2013 WL 4536808, at *4 (N.D.Cal. Aug. 22,

16  2013) (internal citation omitted).  Moreover, as noted above, if documents sought by a subpoena

17  are not relevant "then any burden whatsoever imposed upon [the third-party] would be by

18  definition 'undue'."  *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329,

19  335-36 (N.D. Cal. 1995).

20      Stardock alleges that Reiche and Ford infringed its trademark rights and copyrights

21  through their announcement of Ghosts of the Precursors in October 2017 and by selling the classic

22  Star Control games on the GOG.com website.  *See* First Amended Complaint (Dkt. 27) ¶¶ 46-60,

23  74, 81-83, 90, 101, 106.  Reiche and Ford allege that Stardock infringed their copyrights and

24  trademark rights by selling the classic Star Control games and using material from those games in

25  connection with Stardock's new Star Control: Origins game.  *See* Counterclaim (Dkt. 17)

26  ¶¶ 88-99.  Non-public communications between Reiche and Ford, their counsel, and Singer

27  concerning this case have no bearing on these infringement claims.

28

1   During the meet and confer process, Stardock's counsel's response was that such

2   documents are relevant because of alleged "misrepresentations and falsehoods" in the public

3   communications by Singer, Reiche, and Ford, though he failed to identify any examples of such

4   statements.  Even if he could do so, this is not a defamation case.  Indeed, Stardock recently

5   amended its complaint to add more factual allegations and did not plead a claim for defamation.

6   *See* First Amended Complaint (Dkt. 27).

7   In any case, such a claim based on communications about an ongoing lawsuit to press

8   publications and other interested parties would be barred by the privileges set forth in Cal. Civ.

9   Code § 47(c-d), which states that:

10   A privileged publication or broadcast is one made: …

11   (c) In a communication, without malice, to a person interested
     therein, (1) by one who is also interested, or … (3) who is requested

12   by the person interested to give the information. …

13   (d) (1) By a fair and true report in, or a communication to, a public
     journal, of (A) a judicial … proceeding …

14

15   In addition, many of the requests in the subpoena are not limited to documents related to

16   this case.  For example, Request No. 11 asks for "All Documents relating to Communication

17   between You and Stephen Steinberg, or anyone at the law firm of Bartko Zankel Bunzel & Miller

18   … ."  This would encompass communications wholly irrelevant to this case.  Request No. 13 asks

19   for "All Documents relating to aliases, handles, user names and identifiers used by You to post,

20   comment, remark or make a statement" in any internet or public forum about the parties or the

21   case.  In seeking "[a]ll Documents relating to" such user names and identifiers, this ostensibly

22   calls for Singer to produce every single post ever made from such user names and identifiers,

23   whether related to this case or not.  Such requests seek documents that are not even remotely

24   relevant and they would impose undue burden on Singer.

25   Thus, the Court should also quash the Subpoena on the grounds that it seeks discovery that

26   is not relevant and discoverable, and should protect Singer from the undue burden of being subject

27   to irrelevant discovery.

28

## VI.    CONCLUSION

For the foregoing reasons, Reiche and Ford, and Singer respectfully request that the Court quash the Subpoena to Singer.


DATED:  April 27, 2018                        BARTKO ZANKEL BUNZEL & MILLER
                                              A Professional Law Corporation


                                              By:      /s/ Stephen C. Steinberg
                                                  _____
                                                  Stephen C. Steinberg
                                                  Attorneys for Defendants and Counter-Claimants
                                                  PAUL REICHE III and ROBERT FREDERICK
                                                  FORD