# EXHIBIT 2

ADDENDUM NO. 1 TO
LICENSE AGREEMENT BETWEEN
ACCOLADE, INC. AND PAUL REICHE III

This Addendum No. 1 (the "Addendum") to the License Agreement (the "Agreement") entered into October 7, 1988 by and between Accolade, Inc., a California corporation having a place of business at 550 S. Winchester Boulevard, San Jose, California 95128 ("Publisher") and Paul Reiche III, an individual having a place of business at 1602 Grant Avenue, #207, Novato, California, 94947 ("Developer") modifies and amends the Agreement in certain respects, and is effective as of November 19, 1993.

RECITALS

A.   Developer and Publisher entered into the Agreement to develop three (3) computer software programs for Publisher.

B.   Developer wishes to develop a new version of "Star Control II" for use on 3DO systems (the "3DO Version") to be published by Crystal Dynamics, Inc. ("Crystal").

C.   Publisher wishes to permit Developer to so develop the 3DO Version in exchange for Developer's payment to Publisher of certain royalties.

D.   Developer and Publisher wish to modify the Agreement accordingly.

NOW, THEREFORE, in consideration of the mutual covenants contained in this Addendum No. 1, the parties agree as follows:

1.   Definitions. Capitalized terms used in this Addendum will have the same definitions set forth in the Agreement.

2.   License Grant.

   2.1   Development of 3DO Version. Publisher hereby grants Developer the right and license to use and modify "Star Control II" to create the 3DO Version, and to sublicense such right and license to Crystal.

   2.2   Marketing of 3DO Version. To the extent that Publisher obtained such rights pursuant to the Agreement, Publisher hereby grants and assigns to Developer the sole and exclusive license to modify, duplicate, produce, package, promote, market, display, distribute, license and sublicense the 3DO Version, including the right to sublicense such license to Crystal.

2.3     Right to License Crystal. Notwithstanding anything to the contrary in the Agreement, Publisher hereby grants Developer the right to license Crystal to manufacture, sell and otherwise exploit the 3DO Version.

2.4     Publisher's Trademarks; Approval Rights. Publisher hereby grants Developer the right and license to sell the 3DO Version under the name "Star Control" or "Star Control II" and to use Publisher's trademarks in "Star Control" and "Star Control II" in connection with the sale and marketing of the 3DO Version, and Developer may sublicense such right and license to Crystal. Developer (or its sublicensee) shall include on the back side of the packaging and in the documentation for the 3DO Version attribution to Publisher as the owner of the "Star Control" trademark. In order to protect Publisher's rights in such trademarks, Developer (or its sublicensee) shall obtain Publisher's approval of any such use of the trademarks, which approval shall not be unreasonably withheld by Publisher and shall be deemed to have been given if Publisher does not object to a proposed use of the trademarks within five (5) business days of the date upon which Publisher receives a written request for such approval, specifying such use, from Developer.

3.     Product Development Term Expired. Publisher acknowledges and agrees that the Product Development Term defined in Section 2.1 ("Product Development Term") of the Agreement previously expired, that neither the 3DO Version nor Developer's product known as "The Horde" is subject to Section 3.2 ("Exclusive Development") or Section 3.4 ("Exceptions to Publisher's Exclusive Rights") of the Agreement, and that Publisher waives all rights to the 3DO Version and The Horde.

4.     Status of 3DO Version. Publisher acknowledges that the 3DO Version shall be neither a Sequel for purposes of Section 3.3 ("Sequels") of the Agreement nor a Derivative Work for any purpose of the Agreement. The parties acknowledge and agree that neither Developer nor Crystal is granted any rights to create sequels, derivative works or derivative products of the 3DO Version hereunder or otherwise.

5.     Development of Competing Product. Notwithstanding anything to the contrary in Sections 4.5(c) ("Further Obligations of Developer") or 5.2 ("Derivative Works") of the Agreement, Publisher agrees that, for a period of six (6) months from the date of Crystal's first release of the 3DO Version in commercial quantities, Publisher will not release in commercial quantities a version of Star Control II for any 3DO format which directly competes with the 3DO Version, and it shall not require Developer to assist in the development of such a product; provided that such release by Crystal of the 3DO Version occurs within one year from the effective date of this Addendum.

6. <u>Compensation</u>.

6.1  Upon the signing of this Addendum, Developer shall pay Publisher a sum of $15,000 as a non-refundable advance against future royalties payable by Developer to Publisher on the 3DO Version pursuant to Section 6.2 below.

6.2  Developer shall pay Publisher per unit royalties for the sales of the 3DO Version in the amount equal to 13.33% of the per unit royalties that Developer actually receives from Crystal for sales of the 3DO Version (i.e. two (2) "points" out of the total number of points paid to Developer by Crystal, where one "point" equals 1%). Such royalties shall be (i) payable directly to Publisher when, and only when, the advance set forth in Section 7.1 above is fully recovered by Developer and (ii) remitted to Publisher within five (5) business days of Developer's actual receipt from Crystal of per unit royalties with respect to the 3DO Version.  Developer shall provide Publisher with a copy of Crystal's account statement showing the number of units of the 3DO Version sold, the "net receipts" (as defined in the Development and License Agreement between Developer and Crystal dated February 11, 1993 (the "Development Agreement") received by Crystal with respect to such units, any returns of such units and the royalties payable to Developer by Crystal, promptly after Developer receives such statement from Crystal. Developer represents and warrants that (a) the only compensation or other payment to which he is entitled from Crystal in connection with the 3DO Version is an advance of $150,000 and a per unit royalty on sales of the 3DO Version equal to 15% of Crystal's "net receipts" (as defined above) and (b) except with respect to recoupment of advances paid to Developer by Crystal pursuant to the Development Agreement and certain rights of Crystal in the event of breach or default by Developer under the Development Agreement, Crystal is not entitled to take any other deductions or set-offs in connection with the calculation of, or from the amount of, such per unit royalties.

6.3  Publisher acknowledges that the advance and royalties described in Sections 6.1 and 6.2 above, respectively, shall not be included in the calculation of any minimum annual royalties required by the Agreement.

7. <u>Copyright</u>.  Notwithstanding anything to the contrary in Section 11.2 ("Cooperation by Developer") of the Agreement, Publisher agrees that it shall not execute or prosecute any application for patent, trademark or copyright registration for the 3DO Version, and that, at Developer's request, it shall cooperate and take further acts, at Developer's expense, as may be reasonable and necessary, to perfect Developer's rights in the 3DO Version.

8. <u>Ownership of Proprietary Information</u>.  Publisher acknowledges that, notwithstanding anything to the contrary in Section 11.4 ("Ownership") of the Agreement, but without limiting any rights Publisher obtained under the Agreement or otherwise in such copyrights and other proprietary rights, Developer is the sole and exclusive owner of all copyrights and other proprietary rights in the 3DO Version.

9. <u>Effect, Signatures.</u> Notwithstanding anything to the contrary in Section 12.8 ("Integration") of the Agreement, this Addendum is binding upon the parties and is incorporated into the Agreement. All terms and conditions of the Agreement (including without limitation Section 9 ("Certain Warranties and Agreements of Developer")) not in conflict with those terms and conditions contained in this Addendum (i) will remain in full force and effect, and (ii) will, solely for the purpose of applying the indemnity provisions contained in the Agreement to the 3DO Version, be applicable to the 3DO Version as if it were a Work. This Addendum may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument. Notwithstanding any implication to the contrary herein, the rights and licenses granted hereunder by Publisher are premised upon, and are not more extensive than, the rights and licenses granted to Publisher in the Agreement. Publisher makes no representation or warranty, express or implied, with respect to whether the exercise or utilization of any of such rights or licenses will infringe the intellectual property or other rights of any third party; provided, however, Publisher represents and warrants that it has not sold, licensed, sublicensed or otherwise transferred or encumbered any of such rights or licenses to any third party in any manner, which would interfere with the Developer's exclusive exercise or utilization of such rights or licenses hereunder with respect to the 3DO Version.

IN WITNESS WHEREOF, the parties have executed this Addendum as of the date set forth below.

PUBLISHER:

ACCOLADE, INC.

_____
Authorized Signature

Title: _____

Date: _____

DEVELOPER:

_____
PAUL REICHE III

Date: _____