# EXHIBIT 7

ADDENDUM NO. 3 TO LICENSE AGREEMENT
BETWEEN ACCOLADE, INC. AND PAUL REICHE III

This Addendum No. 3 ("Addendum") to the License Agreement ("Agreement") entered into October 7, 1988, between Accolade, Inc., a California corporation, with its principal place of business at 5300 Stevens Creek Blvd., San Jose, CA 95129, formerly located at 550 S. Winchester Boulevard, San Jose, California 95128, ("Publisher") and Paul Reiche III, an individual, residing at 1602 Grant Ave., #207, Novato, CA 94947 ("Reiche"), modifies and amends the Agreement in certain respects, and is effective as of _April 1_, 1998 ("Effective Date").

## RECITALS

WHEREAS, Publisher and Reiche entered into the Agreement to develop three computer software programs for Publisher, including Star Control, among others;

WHEREAS, Publisher and Reiche entered into Addendum No. 1 to the Agreement on November 24, 1993, in which Publisher granted to Reiche rights to develop a new version of "Star Control II" for use on 3DO systems;

WHEREAS, Publisher and Reiche entered into Addendum No. 2 to the Agreement on May 8, 1995, in which Reiche granted to Publisher rights to develop "Star Control III" using certain characters, names, likenesses, characteristics and other intellectual property rights pertaining to "Star Control I" and "Star Control II";

WHEREAS, Publisher wishes to develop and publish new versions and sequels to Star Control I, Star Control II and Star Control III (collectively the "Classic Star Control Software"); and

WHEREAS, Reiche agrees to allow Publisher to so develop such new versions and sequels using certain characters, names, likenesses, characteristics, plot line, setting, source code, and any proprietary rights that Reiche has in and to the Classic Star Control Software in exchange for Publisher paying Reiche certain royalties.

NOW, THEREFORE, in consideration of the mutual convenants and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Publisher and Reiche agree to modify the Agreement as follows:

## AGREEMENT

1.   <u>Definitions</u>. Unless otherwise provided in this Addendum, capitalized terms used herein will have the same definitions set forth in the Agreement.

1.1 "Product Net Receipts" means the gross receipts actually received by Publisher from all sales or licenses of the new versions and sequels to the Classic Star Control Software developed hereunder and any Star Control Derivatives Works (as defined below), less the following amounts:

(a) taxes on sale or license of the new versions and sequels to the Classic Star Control Software developed hereunder and any Star Control Derivative Works, such as sales, use, excise, value-added and other taxes (other than taxes on net income or franchise taxes);

(b) amounts reimbursed by customers, such as for insurance, shipping and similar charges;

(c) amounts for replacements, back-ups or revised versions to correct bugs in the released version, including any receipts from copies of the new versions and sequels to the Classic Star Control Software developed hereunder and any Star Control Derivative Works, which are distributed to existing customers as back-up, replacement, corrected versions, whether provided under a back-up, warranty, upgrade or maintenance policy or otherwise;

(d) amounts for returns, such as credits, refunds or allowances with respect to the new versions and sequels to the Classic Star Control Software developed hereunder and any Star Control Derivative Works, and a reasonable reserve against future returns;

(e) currency exchange fees consistent with normal banking practices incurred by Publisher with respect to receipts by Publisher other than in United States dollars;

(f) promotional amounts, such as credits, cash discounts, freight discounts, rebates or promotional allowances and the like to customers, and any receipts from copies supplied for promotional purposes to the press, trade, sales representatives or potential customers;

(g) commissions and similar fees paid to sales representatives and other third parties;

(h) marketing development costs for insurance, point of sale, and other promotions; and

(i) third party royalties such as Sega, Sony, Electronic Arts, personality licenses and fees, and sports leagues.

Product Net Receipts shall include domestic, international, and OEM revenues derived from licensing the new versions and sequels to the Classic Star Control Software and any Star Control Derivative Works.

1.2 "Non-Product Net Receipts" means the gross receipts actually received by Publisher from all sales or licenses of any Star Control Derivative Products (as defined below), less the following amounts:

(a) taxes on sale or license of Star Control Derivative Products, such as sales, use, excise, value-added and other taxes (other than taxes on net income or franchise taxes);

(b) amounts reimbursed by customers, such as for insurance, shipping and similar charges;

(c) amounts for replacements, back-ups or revised versions to correct bugs or defects in the released version, including any receipts from copies of the Star Control Derivative Products, which are distributed to existing customers as back-up, replacement, corrected versions, whether provided under a back-up, warranty, upgrade or maintenance policy or otherwise;

(d) amounts for returns, such as credits, refunds or allowances with respect to the Star Control Derivative Products, and a reasonable reserve against future returns;

(e) currency exchange fees consistent with normal banking practices incurred by Publisher with respect to receipts by Publisher other than in United States dollars;

(f) promotional amounts, such as credits, cash discounts, freight discounts, rebates or promotional allowances and the like to customers, and any receipts from copies supplied for promotional purposes to the press, trade, sales representatives or potential customers;

(g) commissions and similar fees paid to sales representatives and other third parties; and

(h) marketing development costs for insurance, point of sale, and other promotions; and

(i) third party royalties such as Sega, Sony, Electronic Arts, personality licenses and fees, and sports leagues.

1.3 "Star Control Derivative Works" means any and all translations, ports or adaptations of the new versions and sequels to the Classic Star Control Software which will operate on video and dedicated electronic game systems, arcade coin-operated video systems, optical media, computers or operating systems.

1.4 "Star Control Derivative Products" means any other product other than a computer program, electronic game, or other interactive product that is based on or derived from the new versions and sequels to the Classic Star Control Software or any audio-visual effects

produced thereby, or any characters or themes therein. "Star Control Derivative Products" shall include, for example, boardgames, t-shirts, comic books, merchandise, books, movies, films, videotapes, videodisks, and television shows.

1.5 "Reiche Intellectual Property" means the copyright and other intellectual property rights (excluding trademarks) owned by Reiche, as set forth in the Agreement and Addenda Nos. 1 and 2 to the Agreement, in and to (a) Star Control I for PC, Amiga and Sega, (b) Star Control II for PC and 3DO, (c) any accompanying documentation, and (d) the Star Control II cluebook. The Reiche Intellectual Property shall include proprietary rights in and to any source code, names (of starships and alien races), characters, plot lines, setting, terminology unique to the Star Control products, and music in and to (a) - (d) above.

1.6 "Break Even Level" occurs when Contribution (as defined below) becomes a positive value. For the purposes of calculating the Break Even Level, the following terms are defined as described below:

1.6.1 "Contribution" means "Gross Margin" less "Direct Costs".

1.6.2 "Gross Margin" means "Gross Revenues" minus "Sales Provision" minus "Cost of Goods" minus "Third Party Royalties".

1.6.3 "Direct Costs" means "Direct Product Development Costs" plus "Advances" plus "Direct Marketing Costs".

1.6.4 "Gross Revenues" means the amount of dollars collected for a specific product.

1.6.5 "Sales Provision" means a percentage of the revenues for a product that is reserved as a hedge against sales returns and price markdowns. At release, the Sales Provision is twenty (20%) of gross revenues. After two (2) years, the Sales Provision will be adjusted from the estimated percentage to be equal to the actual return/markdown percentage, and the Gross Margin will be adjusted to reflect this change.

1.6.6 "Cost of Goods" means the hard cost of the materials and services required to manufacture a product.

1.6.7 "Third Party Royalties" means the royalty amounts paid to third party organizations, individuals and licensors. Such Third Party Royalties include items like Major League Baseball, music, and character licenses.

1.6.8 "Direct Product Development Costs" means all of the dollars expended on the development of a product plus fifty (50%) allocated overhead. Direct costs include, but are not limited to, milestone payments, direct internal labor, travel, supplies, equipment, rating board fees, external developer royalties in excess of milestone payments. The overhead allocation of fifty (50%) represents a estimate of general business costs that are allocated to each employee for such expenses as building lease, power, and insurance.

1.6.9 "Direct Marketing Costs" means the marketing costs for a specific product, including packaging and product material production, consumer and trade advertisement design and placement, collateral material expenses, video, promotions, MDF/co-op spending, research and publicity.

2. License Grant. Subject to the terms and conditions contained herein, Reiche hereby grants to Publisher the sole and exclusive license (with right to sublicense) in the Territory to use, modify, duplicate, all characters, names, likenesses, characteristics, plot line, setting, source code, any proprietary rights that Reiche has in and to the Classic Star Control Software, and any Derivative Works and Derivative Products thereto, for the purposes of developing, producing, publishing, promoting, marketing, displaying and distributing in any manner, including electronic distribution, license and sublicense, new versions and sequels to the Classic Star Control Software for use on any platform, Star Control Derivative Works and Star Control Derivative Products. The preceding sentence is in no way intended to imply that Reiche owns has all rights, titles and interests in and to the Classic Star Control Software. Instead, the parties acknowledge and agree that Publisher owns certain rights, titles and interests in and to the Classic Star Control Software as set forth in the Agreement and Addenda Nos. 1 and 2 to the Agreement.

3. Ownership. Subject to Reiche's underlying rights as set forth in the Agreement and Addenda Nos. 1 and 2 to the Agreement, Publisher shall own all rights, titles and interests, including but not limited to the copyrights and all other proprietary rights, in and to the new versions and sequels to the Classic Star Control Software and any Star Control Derivative Works and Star Control Derivative Products.

4. Term and Option to Review.

4.1 Term. The term of this Addendum shall be for three (3) years commencing on the Effective Date hereof. After expiration or termination of this Addendum, Publisher shall have the right to continue, in perpetuity, using, duplicating, producing, packaging, promoting, marketing, displaying and distributing any products developed hereunder and any Star Control Derivative Works and Star Control Derivative Products; provided, however, that such products, Derivative Works and/or Derivative Products were developed during the term of this Addendum. Subject to the rights and obligations provided in the previous sentence, upon expiration or termination of this Addendum, all rights granted and obligations imposed hereunder shall terminate and rights to the Reiche Intellectual Property granted hereunder shall revert to Reiche.

4.2 Option to Review. If during the three (3) year term of this Addendum, Publisher publishes a new product using, in whole or in part, any of the characters, names, likenesses, characteristics, plot line, setting, source code, any proprietary rights that Reiche has in and to the Classic Star Control Software, and any Derivative Works and Derivative Products thereto, Publisher shall have the option to renew the license granted herein for an additional three (3) year period under the same terms and conditions.

19182/00100/711208.4

4.3 <u>Product Development Term Expired</u>. Reiche and Publisher acknowledge that the Product Development Term defined in Section 2.1 of the Agreement previously expired, and that the new versions and sequels to the Classic Star Control Software being developed by Publisher pursuant to this Addendum are not subject to Section 3.2 or Section 3.4 of the Agreement.

5. <u>Compensation</u>.

5.1 <u>Advance</u>. Upon signing this Addendum, Publisher shall pay Reiche a sum of ten thousand dollars ($10,000.00) as a non-refundable advance against future royalties payable by Publisher to Reiche pursuant to Section 5.2 herein. In addition, Publisher will pay Reiche additional, non-refundable advances against future royalties payable under Section 5.2 herein in the amount of five thousand dollars ($5,000.00) twelve (12) and twenty-four (24) months after the signing of this Addendum.

5.2 <u>Royalties</u>.

5.2.1 <u>Product Royalty</u>. For each product created hereunder, Publisher will pay a base royalty rate of one percent (1%) of Product Net Receipts until Product Net Receipts reach the Break Even Level, then Publisher will pay a royalty rate of three percent (3%) of any Product Net Receipts in excess of the Break Even Level.

5.2.2 <u>Non-Product Royalty</u>. Publisher will pay a base royalty of five percent (5%) on all Non-Product Net Receipts.

6. <u>Development</u>. Reiche will have the option, once per quarter, to review the progress of all Publisher's games under development hereunder, which use any of the characters, names, likenesses, characteristics, plot line, setting, source code, any proprietary rights that Reiche has in and to the Classic Star Control Software, and any Derivative Works and Derivative Products thereto. Reiche may review the code and design documents created for such games; provided, however, that Reiche agrees to keep such information confidential. Any written feedback concerning such games provided by Reiche shall be submitted to the development team and to the president of Publisher for evaluation. Publisher shall have sole discretion to decide whether to incorporate such feedback into Publisher's products. Such feedback and all intellectual property rights associated therewith, once disclosed to Publisher, shall become the sole and exclusive property of Publisher.

7. <u>Publisher's Trademarks</u>. If Publisher does not publish any new versions and sequels to the Classic Star Control Software during the term of this Addendum, Publisher agrees to negotiate in good faith with Reiche a license to any trademarks adopted and used by Publisher in the marketing of the Classic Star Control Software, and Derivative Works and Derivative Products thereto, which trademarks are the sole property of Publisher.

8. <u>Effect, Signatures</u>. All terms and conditions of the Agreement not in conflict with those terms and conditions contained in this Addendum will remain in full force and effect, and will be applicable to any new versions and sequels to the Classic Star Control Software as if such new versions and sequels were one of the original programs designated as "Work" under the Agreement. Notwithstanding anything to the contrary in Section 12.8 of the Agreement, this Addendum is the complete and exclusive statement of the agreement between the parties regarding the subject matter hereof, is binding upon the parties and is incorporated into the Agreement.

IN WITNESS WHEREOF, the parties have executed this Addendum as of the date set forth below.

PUBLISHER:

Accolade, Inc.

Title: _CEO_

Date: _3/19/98_

REICHE:

Paul Reiche III

Title: _____

Date: _3/21/98_