# EXHIBIT 17

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ATARI, INC., *et al.*, | ) Case No. 13-10176 (JMP) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

**ORDER APPROVING (A) BID PROCEDURES IN CONNECTION WITH THE
SALE(S) OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) PROCEDURES
RELATED TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SUCH
SALE(S), (C) THE FORM AND MANNER OF NOTICE THEREOF,
(D) SCHEDULING THE HEARING TO CONSIDER APPROVAL
OF THE SALE(S), (E) GRANTING CERTAIN RELATED RELIEF
AND (F) PROCEDURES TO SELL THE REMAINING *DE MINIMIS*
ASSETS WITHOUT FURTHER COURT APPROVAL**

Upon the motion, dated May 21, 2013 (the "***Motion***"),[2] of Atari, Inc. and certain of its

affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), pursuant to

Bankruptcy Code section 105, 363 and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9014,

seeking entry of:  (i) an order (the "***Bid Procedures Order***") (a) approving procedures (the "***Bid***

***Procedures***"), substantially in the form attached hereto as **Exhibit A**, for submitting bids for

specific categories of assets as identified in **Schedule 3** to the Bid Procedures, which categories

of assets together comprise substantially all of the Debtors' assets, (b) approving procedures for

the assumption and assignment of certain executory contracts and unexpired leases (the

"***Designated Contracts***") in connection with one or more sales (collectively, the "***Sales(s)***") of

such assets, (c) scheduling a deadline to submit bids for the various categories of the Debtors'

assets and a hearing to consider approval of the Sales(s) (the "***Sale Hearing***"), (d)  approving the

form and manner of notice of (1) the date, time and place of the hearing to consider the entry of

---

[1] The Debtors are: Atari, Inc.; Atari Interactive, Inc.; Humongous, Inc.; and California U.S. Holdings, Inc.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion or the Bid Procedures, as applicable.

the Bid Procedures Order (the "***Bid Procedures Hearing***"), (2) the deadline to submit bids for

the various categories of assets, (3) the assumption and assignment of certain Designated

Contracts in connection with such Sale(s), (4) the date, time and place of the Sale Hearing,

(e) granting certain related relief (collectively, (1)-(4), the "***Bid Procedures Relief***"), and (f)

approving procedures ("***De Minimis Asset Sale Procedures***") for the sale of the *De Minimis*

Assets identified in **Exhibit 2** attached to the Motion; and (ii) an order (the "***Sale Order***")

approving the sale of substantially all of the Debtors' assets; and consideration of the Motion and

the relief requested therein being a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334; and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided; and it appearing that no other or further notice

need be provided; and upon the Court's consideration of the Motion, the declaration of Adam W.

Verost in support thereof, the record of the Bid Procedures Hearing, including any objections

filed prior to, or raised at, that hearing; and upon all of the proceedings had before the Court; and

any objections to the Motion having been withdrawn, resolved, or overruled on the merits; and it

appearing that there exists just cause for the relief granted herein and such relief is in the best

interests of the Debtors, their estates and creditors and all other parties in interest:

**IT IS HEREBY ORDERED THAT:**[3]

1.     The Motion is granted to the extent provided herein.

**Bid Procedures**

2.     The Bid Procedures, substantially in the form attached to this Order as **Exhibit A**

and incorporated herein by reference as if fully set forth in this Order, are hereby approved.  The

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the
extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent
any of the following conclusions of law constitute findings of fact, they are adopted as such.

Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures. The failure to specifically include or reference a particular provision of the Bid Procedures in this Order shall not diminish or impair the effectiveness of such provision.

### Bid Deadline, Auction(s) and Sale Hearing

3.     As further described in the Bid Procedures, a Potential Bidder who desires to make a bid on one or more of the categories of Assets must deliver a bid for each such category that satisfies all of the bid requirements to:  Perella Weinberg Partners LP, 767 Fifth Avenue, New York, New York 10153 (Attn.: Joshua Scherer and Adam Verost) and Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn.: Ira S. Dizengoff, Esq. and Kristine G. Manoukian, Esq.) and Robert S. Strauss Building, 1333 New Hampshire Avenue, N.W. Washington D.C. 20036 (Attn.: Scott L. Alberino, Esq.), **so as to be actually received on or before July 10, 2013 at 5:00 p.m. (prevailing Eastern Time)** (the "*Bid Deadline*").  The Debtors, in consultation with the Consulting Parties, are authorized to extend the Bid Deadline once or successively, but are not obligated to do so.

4.     The Auction for each category of Assets shall be conducted at the offices of Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 and commence **at 10:00 a.m. (prevailing Eastern Time) on July 16, July 17, July 18 and July 19, 2013**, respectively (each, an "*Auction Date*" and, collectively, the "*Auction Dates*").  The designated Auction Date for each category of Assets is set forth on **Schedule 3** to the Bid Procedures. The Debtors are authorized, with the consent of the DIP Lender, consistent with its rights under section 6.01(g) of the Credit Agreement, and in consultation with the Consulting Parties, to adjourn or cancel any of the Auction Dates, or change the Auction Date for one or

more categories of Assets to another Auction Date, at any time by delivering notice of such adjournment, cancellation or modification to the applicable Qualified Bidder(s).

5.      The Sale Hearing shall be held on **July 24, 2013 at 10:00 a.m. (prevailing Eastern Time)**, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408, before the Honorable James M. Peck, United States Bankruptcy Judge, at which time the Court shall consider the approval of the Sale(s) as set forth in the Motion, approve the Successful Bidder(s), and confirm the results of the Auction(s), if any.  Objections to the relief sought in the Sale Order[4] shall be in writing, filed and served so as to be actually received by the Court and the following parties (the "*Objection Notice Parties*") no later than **July 17, 2013 at 4:00 p.m. (prevailing Eastern Time)** (the "*Objection Deadline*"), *provided*, *however*, that objections as to the Auction(s) or selection(s) of the Successful Bid(s) or Back-Up Bid(s) shall be in writing, filed and served so as to be actually received by the Objection Notice Parties by **July 24, 2013 at 9:00 a.m. (prevailing Eastern Time)**.

     a.     Counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn.:  Ira S. Dizengoff, Esq. and Kristine G. Manoukian, Esq.) and Robert S. Strauss Building, 1333 New Hampshire Avenue, N.W., Washington D.C. 20036 (Attn.:  Scott L. Alberino, Esq.);

     b.     Counsel to the Committee, Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036 (Attn.: Cathy Hershcopf, Esq. and Jeffrey Cohen, Esq.);

     c.     Counsel to Alden, Bracewell & Giuliani, 1251 Avenue of the Americas, 49th Floor, New York, New York 10020 (Attn.: Robert G. Burns, Esq. and Andrew J. Schoulder, Esq.);

     d.     The U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn.: Richard C. Morrissey, Esq.);

     e.     Counsel to Atari, S.A., Allen & Overy LLP, 1221 Avenue of the Americas,

---

[4] Objections to the assumption and assignment of Designated Contracts are addressed below.

New York, New York 10020 (Attn.: Ken Coleman, Esq.);

f.     The IRS;

g.     The United States Department of Justice; and

h.     Any persons who have filed a request for notice in these chapter 11 cases (collectively, the "***Objection Notice Parties***").

6.     The failure to file and serve an objection to the Sale(s) by the applicable Objection Deadline shall be a bar to the assertion thereof at the Sale Hearing or thereafter.

7.     The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court with an entry of a notice of such adjournment on the Court's docket.

### Authorization

8.     The Debtors are authorized to take such actions as contemplated by the Motion prior to the Auction(s) and the Sale Hearing, including, without limitation, actions to notify creditors, customers, regulators or other interested parties regarding the Sale(s) and to obtain any necessary consents or approvals regarding the Sale(s) or any other actions necessary to effectuate the Sale(s).

### Notice Procedures for the Sale(s) of the Assets at the Auction(s)

9.     The notices described in subsections (a), (b), and (c) below are approved, and service or publication thereof (as applicable) as set forth below constitutes proper, timely, adequate and sufficient notice of the Bid Procedures, the Assumption and Assignment Procedures, the Sale(s), the assumption and assignment of Designated Contracts or other similarly designated contracts to the Successful Bidder(s), the Sale(s), the Successful Bid(s), and the Sale Hearing, and no other or further notice shall be required:

(a)    **Notice of Sale(s), Auction(s), and Sale Hearing**

10.    Within three (3) business days after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors (or their representatives) shall:

> a.    Serve the Sale(s) Notice, substantially in the form as **Exhibit B** hereto, and the Bid Procedures Order by email, mail, facsimile, or overnight delivery service, upon:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to Alden; (d) Counsel to Atari, S.A.; (e) the IRS; (f) all known parties that have previously expressed a *bona fide* interest in purchasing the Assets since the Petition Date (to be served by email); (g) the Attorneys General in the states where the Assets are located; (h) all parties having filed requests for notices in these chapter 11 cases; (i) all relevant local taxing authorities; and (j) any entity known or reasonably believed to have asserted a security interest in or lien against any of the Assets (collectively, the "*Sale(s) Notice Parties*");

> b.    Publish the Sale(s) Notice, as modified for publication purposes, on one occasion in the national edition of *USA Today* and the *Financial Times* or in the global edition of the *Wall Street Journal*; and

> c.    Cause the Sale(s) Notice to be published on the following website: www.bmcgroup.com/atari (the "*Website*").

(b)    **Notice of Potential Assumption and Assignment of Designated Contracts**

11.    Within two (2) business days after receiving the schedule from each Qualified Bidder of those executory contracts and unexpired leases that such bidder wishes to assume (the "*Designated Contracts*"), and no later than one (1) business day before the Sale Hearing (subject to adjustment as provided below), the Debtors shall file with the Court and serve on each counterparty to an executory contract or unexpired lease set forth on such schedule a notice of assumption, assignment, and cure (the "*Assumption and Assignment Notice*"), substantially in the form attached as **Exhibit C** hereto.  The Assumption and Assignment Notice shall include, among other things:  (i) the title of each Designated Contract, (ii) the name of the non-Debtor party to such Designated Contract, (iii) the amount, if any, necessary to be paid to cure any

existing default under such Designated Contract in accordance with Bankruptcy Code sections 365(b) and (f)(2) (the "*Cure Amount*"), and (iv) the deadline by which any non-Debtor party to such Designated Contract must object to the assumption and assignment of such Designated Contract. A list of the Designated Contracts and Cure Amounts shall be posted on the Website within two (2) calendar days after the Bid Deadline and updated as modified by each bidder.

12. Each Qualified Bidder is authorized to supplement its designation of contracts for assumption and assignment up until one (1) business day prior to the Sale Hearing, and to remove a contract from the list of Designated Contracts at any time prior to the conclusion of the Auction(s). If a Qualified Bidder supplements its designation of contracts for assignment as specified in the preceding sentence, the Debtors shall provide the Assumption and Assignment Notice to the counterparties of the new Designated Contracts no later than one (1) business day after the new contract was added to the Designated Contracts list.

13. Any counterparty to a Designated Contract shall file and serve any objections to (i) the proposed assumption and assignment set forth in the Assumption and Assignment Notice and (ii) if applicable, the proposed Cure Amount, no later than two (2) business days before the Sale Hearing on the parties identified in the Assumption and Assignment Notice. Any counterparty to a Designated Contract that files an objection to the proposed assumption and assignment must state with specificity the legal and factual basis on which the objection is premised. Additionally, any objection to the Cure Amount must state with specificity what other Cure Amount is required and provide appropriate documentation in support thereof.

14. If an executory contract or unexpired lease is added to the schedule of Designated Contracts or the Cure Amount associated with any such executory contract or unexpired lease is modified, a copy of the Assumption and Assignment Notice shall be served on the applicable

counterparty by overnight courier service within one (1) business day of such addition or modification, as applicable (and in no event within less than one (1) business day before the Sale Hearing), and any counterparty to such a Designated Contract may file an objection to the aforesaid addition or modification at any time prior to the Sale Hearing or by appearing and objecting at the Sale Hearing.

15.     At the Sale Hearing, only those contracts (and the corresponding Cure Amounts) listed on the Assumption and Assignment Notice that have been selected to be assumed by the Successful Bidder(s) at the relevant Auction (the "**Selected Contracts**") shall be subject to approval by the Court, and the Debtors shall reserve their rights with respect to all other contracts.  Unless a timely objection is received by the non-Debtor counterparty to the proposed assumption and assignment of a Selected Contract and/or the Cure Amount related thereto, the non-Debtor counterparty to a Selected Contract shall be (i) deemed to have consented to the proposed assumption and assignment and the applicable Cure Amount, notwithstanding anything to the contrary in any Selected Contract or any other document and (ii) forever barred from objecting to the proposed assumption and assignment and the respective Cure Amount, and from asserting any other claims related to such Selected Contract against the Debtors, their estates or the relevant Successful Bidder.

16.     Nothing in paragraphs 11 through 15 of this Order shall interfere with the applicability of the Anti-Assignment Act, 41 U.S.C. § 15 (the "**Act**") or otherwise affect the rights of the United States under the Act.

(c)     <b>Notice of Successful Bid(s) and Back-Up Bid(s)</b>

17.     As soon as immediately practicable after the determination of the Successful Bid(s) and the Back-Up Bid(s), but no later than one (1) business day after conclusion of the relevant Auction, the Debtors will provide electronic notice of the results of the relevant Auction

by filing a notice on the Court's docket and on the Website identifying the Successful Bid(s) and

the Back-Up Bid(s).

### *De Minimis* **Asset Sales**

18.     The Debtors are authorized and empowered to sell the *De Minimis* Assets

pursuant to the following procedures:

(a)     Subject to paragraph (d), in connection with a sale(s) of *De Minimis* Assets for a purchase price of $25,000 or less per asset, the Debtors shall provide at least three (3) business days' prior notice, and five (5) business days' prior notice where the proposed sale(s) is to an "insider" as such term is defined in Bankruptcy Code section 101(31), (collectively, the "*De Minimis Notice Periods*") of the proposed sale(s), by e-mail, to (i) counsel to the DIP Lender, (ii) counsel to the Committee and (iii) counsel to Atari, S.A. (collectively, the "*De Minimis* **Sale Notice Parties**"). Such notice (the "*De Minimis* **Sale Notice**") shall disclose the name of any buyer(s) interested in purchasing the relevant *De Minimis* Asset(s); any known affiliation the buyer(s) have with the Debtors; a description of the *De Minimis* Asset(s) being sold; the proposed purchase price(s), and, if applicable, why the proposed sale price(s) is the best price(s) available. If none of the *De Minimis* Sale Notice Parties object to the proposed sale(s) prior to the expiration of the applicable *De Minimis* Notice Periods, the Debtors shall have the authority to sell the *De Minimis* Asset(s) in the manner disclosed without further order of the Court; *provided, however,* that before the expiration of the applicable *De Minimis* Notice Periods, any *De Minimis* Sale Notice Party may request an extension of the time to review the proposed sale(s). If a *De Minimis* Sale Notice Party timely objects to the proposed sale(s), the Debtors shall not proceed with the proposed transaction until the Debtors and such *De Minimis* Sale Notice Party reach agreement on the proposed sale; *provided, however,* that at any time the Debtors may seek Court approval of the proposed transaction upon notice and a hearing pursuant to Bankruptcy Code section 363.

(b)     Subject to paragraph (d) below, in connection with a sale(s) of *De Minimis* Assets for a purchase price of $25,000 to $100,000 per asset, the Debtors shall serve by email, facsimile or overnight mail, the *De Minimis* Sale Notice on all Sale(s) Notice Parties. Any Sale(s) Notice Party who objects to the proposed sale(s) must serve such objection in writing on the Consulting Parties within seven (7) days from date of *De Minimis* Sale Notice. If no timely objections are received by the Consulting Parties, the Debtors shall have the authority to sell the *De Minimis* Asset(s) in the manner disclosed herein without further order of the Court. If a Sale(s) Notice Party timely objects to the proposed sale(s), the Debtors shall not proceed with the proposed transaction until the Debtors and such Sale(s) Notice Party reach agreement on the proposed sale; *provided, however,* that at any time the Debtors may seek Court approval of

the proposed transaction upon notice and a hearing pursuant to Bankruptcy Code section 363.

(c)    For any sale(s) of *De Minimis* Assets at a purchase price of $100,000 or more, the Debtors shall seek Court approval of the proposed transaction upon notice and a hearing pursuant to Bankruptcy Code section 363. However, the Debtors may seek to shorten the applicable notice period if such reduction is determined, in the Debtors' business judgment, to be necessary and appropriate under the facts and circumstances of these cases.

(d)    If the Debtors believe that a party has a lien on one or more of the *De Minimis* Assets to be sold, the Debtors shall serve such party, by email, facsimile or overnight mail, with the *De Minimis* Sale Notice. If such creditor does not object with seven (7) days after service of such notice (and no objection is made by any *De Minimis* Sale Notice Party), the Debtors shall have the authority to dispose of such *De Minimis* Asset(s) in the manner disclosed without further order of the Court.

19.    Nothing in the foregoing procedures shall prevent the Debtors, in their sole discretion, from seeking Court approval at any time of any proposed *De Minimis* Asset sale transaction(s) upon notice and a hearing.

20.    The sale of any *De Minimis* Assets under the *De Minimis* Asset Sale Procedures, shall be free and clear of all liens, claims and encumbrances, with any liens, claims and encumbrances to attach to the net proceeds of such sales; *provided*, *however*, that any such liens, claims and encumbrances, shall be subject to the rights and defenses of the Debtors' estates with respect thereto, pending further order of this Court.

21.    The that purchasers of *De Minimis* Assets pursuant to this Order shall be entitled to the protections afforded by Bankruptcy Code section 363(m) in the event of a reversal or modification on appeal of this Order.

22.    The Debtors are authorized to take all actions and execute all documents necessary or appropriate to effectuate the disposition of any *De Minimis* Asset pursuant to the terms of this Order.

## Selection of a Stalking Horse Bidder(s)

23.     Based upon Qualified Bids received, the Debtors are authorized but not obligated, in consultation with the Consulting Parties, to designate one or more Qualified Bidders as a "**Stalking Horse Bidder(s)**".  In connection therewith, the Debtors may seek approval from the Court at an expedited hearing to be held on two (2) business days' notice to the Sale(s) Notice Parties to provide such Stalking Horse Bidder(s) with certain bid protections in the form of a "break-up fee" or expense reimbursement.

## Appointment of Privacy Ombudsman

24.     The purchased Assets may include private information of certain customers of the Debtors, including e-mail addresses and birthdates.  The Debtors have a privacy policy which is under review, and accordingly, the U.S. Trustee is directed to appoint one (1) disinterested person to serve as the consumer privacy ombudsman in connection with the Sale(s) no later than seven (7) days before the Sale Hearing; *provided*, *however*, that if at the conclusion of the Auction(s), neither the Successful Bid(s) nor the Back-Up Bid(s), if any, includes personally identifiable information as part of the Assets to be purchased, then any consumer privacy ombudsman appointed under this provision shall be discharged forthwith upon the filing with the Court, with a copy to the US Trustee, of a declaration or affidavit from the Debtors that no personally identifiable information is included in the purchased Assets; *provided, further,* that if the consumer privacy ombudsman is discharged, he or she may seek compensation for any services performed until the date of such discharge.

## Enforceability

25.     Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

26.     This Court shall retain jurisdiction to hear and determine all matters arising from

the interpretation, implementation and enforcement of this Order.  To the extent any provisions

of this Order shall be inconsistent with the Motion, the terms of this Order shall control.


Dated: New York, New York
     June 14, 2013



/s/ James M. Peck
_____
Honorable James M. Peck
United States Bankruptcy Judge

# BID PROCEDURES

## Introduction

Set forth below are the bid procedures (the "***Bid Procedures***") to be employed with respect to the proposed sale or sales pursuant to Bankruptcy Code section 363 (the "***Sale(s)***") of specific categories of the Debtors'[1] assets, which categories are identified in **Schedule 3** attached hereto and together comprise substantially all of the Debtors' assets (collectively, the "***Assets***"). The Bid Procedures provide interested parties with the opportunity to qualify and participate in the Auction(s) (as defined below) and submit competing bids for the various categories of Assets.

On June 11, 2013, the United States Bankruptcy Court for the Southern District of New York (the "***Court***") entered an order approving, among others things, the following Bid Procedures. Additionally, on July 24, 2013, as further described below, the Court will conduct a hearing ("***Sale Hearing***") at which the Debtors will seek entry of an order (the "***Sale Order***") authorizing and approving the Sale(s) to one or more Successful Bidders (as defined below).

## Key Dates for Potential Bidders

These Bid Procedures, among other things, provide interested parties with the opportunity to qualify and participate in Auction(s) (if any) and submit competing bids for one or more categories of Assets. The Debtors shall, in the manner set forth herein, assist Potential Bidders (as defined below) in conducting their respective due diligence investigations and shall accept bids submitted by such Potential Bidders in accordance with the procedures set forth herein until **5:00 p.m. (prevailing Eastern Time) on July 10, 2013**.

The key dates (subject to modification in a manner set forth herein) for the Bidding Process (as defined below) are as follows:

| | |
|---|---|
| 5:00 P.M. (prevailing Eastern Time) on July 10, 2013 | Bid Deadline |
| 10:00 A.M. (prevailing Eastern Time) on July 16, July 17, July 18 and July 19, 2013, respectively | Auction Dates (if necessary) |
| 10:00 A.M. (prevailing Eastern Time) on July 24, 2013 | Sale Hearing |

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Motion for Entry of (I) An Order Approving (A) Bid Procedures in Connection with the Sale(s) of Substantially All of the Debtors' Assets, (B) Procedures Related to the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Such Sale(s), (C) the Form and Manner of Notice Thereof, (D) Scheduling the Hearing to Consider Approval of the Sale(s), (E) Granting Related Relief, and (F) Procedures to Sell the Remaining De Minimis Assets Without Further Court Approval; and (II) an Order Approving the Sale of Substantially All of the Assets.*

## Purchase Agreement

Attached hereto as **Schedule 1** is a form purchase agreement (together with any ancillary agreements, the "***Purchase Agreement***"). Pursuant to the Purchase Agreement, or a Successful Bidder's modified purchase agreement agreed to by the Debtors, and to the maximum extent permitted by Bankruptcy Code section 363, each Successful Bidder shall acquire the relevant category (or categories) of Assets that is the subject of its bid and purchase agreement free and clear of any and all Interests (as defined below). A Successful Bidder will be required to enter into a Purchase Agreement prior to the conclusion of the applicable Auction.

## Bid Procedures

Any person or entity who wishes to participate in the Bidding Process must meet the participation requirements to become a Potential Bidder as specified below, and must thereafter timely submit a Qualified Bid (as defined below) to become a Qualified Bidder (as defined below). Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person or entity that is not a Potential Bidder (or its legal counsel and financial advisors). The Debtors and their representatives shall use good faith efforts to provide all Potential Bidders with substantially similar access and information.

The Debtors and their representatives, in consultation with the DIP Lender, the Committee, Atari, S.A. and their respective advisors (collectively, the "***Consulting Parties***"), shall (i) receive and evaluate all offers made hereunder, (ii) determine whether any person or entity has met the participation requirements to become a Potential Bidder and has timely submitted a Qualified Bid so as to become a Qualified Bidder and (iii) negotiate in good faith with respect to any Qualified Bids.

In the event that the DIP Lender announces its intent to submit a credit bid (as discussed below) for a specific category or categories of Assets at the applicable Auction(s) pursuant to Bankruptcy Code section 363(k) (the "***Credit Bid Assets***"), upon such announcement the Debtors shall not be required to consult with the DIP Lender (and its advisors) as a Consulting Party with respect to the Credit Bid Assets if the Debtors determine, in the exercise of their reasonable business judgment and in consultation with the Committee, that such consultation with the DIP Lender would be likely to have a chilling effect on potential bidding or otherwise be contrary to the goal of maximizing value for the Debtors' estates from the Sale(s) process (the "***Credit Bid Consultation Limitation***"); *provided*, *however*, that the Credit Bid Consultation Limitation shall (i) only apply with respect to the DIP Lender's consultation rights with respect to the Credit Bid Assets and no other Assets and (ii) shall terminate upon the DIP Lenders' withdrawal of its credit bid for the Credit Bid Assets."

The Debtors and their representatives shall coordinate the efforts of Potential Bidders in conducting any required due diligence investigations (collectively, all of the aforementioned actions, the "***Bidding Process***").

## Participation Requirements

Any person or entity that wishes to conduct due diligence with respect to the Assets must first deliver to the Debtors an executed confidentiality agreement in form and substance satisfactory to the Debtors (a form of which is attached hereto as **Schedule 2**) (it being understood that any person or entity who previously signed a confidentiality agreement with the Debtors in connection with the Sale(s) shall not be required to execute a new confidentiality agreement).  The executed confidentiality agreement must be signed and transmitted by the person or entity wishing to become a Potential Bidder so as to be received by each of the following parties prior to any dissemination of confidential information: (i) the Debtors' investment banker, Perella Weinberg Partners LP ("***PWP***"), 767 Fifth Avenue, New York, New York 10153 (Attn.: Joshua Scherer and Adam Verost) and (ii) the Debtors' counsel, Akin Gump Strauss Hauer & Feld LLP ("***Akin Gump***"), One Bryant Park, New York, New York 10036 (Attn.:  Ira S. Dizengoff, Esq. and Kristine G. Manoukian, Esq.) and Robert S. Strauss Building, 1333 New Hampshire Avenue, N.W. Washington D.C. 20036 (Attn.:  Scott L. Alberino, Esq.).

A "***Potential Bidder***" is a person or entity that the Debtors determine is reasonably likely to:  (a) submit a *bona fide* offer for one or more categories of Assets and (b) be able to consummate the Sale(s) if selected as a Successful Bidder for the relevant category (or categories) of Assets.

## Due Diligence

The Debtors may afford each Potential Bidder the time and opportunity to conduct reasonable due diligence; *provided*, *however*, that neither the Debtors nor any of their representatives shall be obligated to furnish any due diligence information (i) at any time, to any person or entity other than a Potential Bidder or (ii) after the Bid Deadline, to any Potential Bidder.

The Debtors may, in the exercise of their business judgment, extend a Qualified Bidder's time to conduct due diligence after the Bid Deadline until the Auction; *provided*, *however*, that the Successful Bidder(s) and the Back-Up Bidder(s) (as defined below) shall be permitted to continue to conduct due diligence until closing(s) of the Sale(s) (subject to the terms of the applicable Purchase Agreement(s)); *provided*, *further*, that no Qualified Bid shall be subject to any condition related to due diligence after the Bid Deadline.

## Bid Deadline

A Potential Bidder who desires to make a bid on one or more of the categories of Assets, must deliver a bid for each such category that satisfies all of the bid requirements set forth below so as to **actually be received** by PWP, Akin Gump and each of the Consulting Parties by no later than **July 10, 2013 at 5:00 p.m. (prevailing Eastern Time)** (the "***Bid Deadline***").  Each bid shall be served by courier, facsimile, e-mail or as otherwise specified by the Debtors.  The Debtors, in consultation with the Consulting Parties, may extend the Bid Deadline once or successively, but are not obligated to do so.  Any Potential Bidder who fails to submit a bid in advance of the Bid Deadline consistent with the foregoing requirements shall not be permitted to participate in the Bidding Process and will not be a Qualified Bidder.

3

## Bid Requirements

To participate in the Bidding Process, a bidder must be a Potential Bidder and must deliver a written offer to PWP and Akin Gump, which includes, at a minimum, the following items (the "***Required Bid Materials***") prior to the Bid Deadline:

1. An executed letter of intent that, among other things, identifies (a) the specific category or categories of Assets from those listed on **Schedule 3** that the Potential Bidder intends to purchase and (b) the purchase price for each such category of Assets, which purchase price shall be payable in cash and equal to or greater than the "***Minimum Bid Price***" set forth on **Schedule 3** for the relevant category of Assets.

2. A written acknowledgment that the bid (a) is not subject to any due diligence or financing contingency, (b) is not conditioned on the payment in any circumstances of a break-up fee, expense reimbursement or similar type of payment to the bidder, (c) is irrevocable until the conclusion of the relevant Auction (unless it is selected as the Successful Bid or Back-Up Bid for the particular category of Assets, in which case it shall remain binding as set forth below), (d) will not require any indemnity or similar obligation by the Debtors and (e) is not subject to any approvals, consents or conditions except as specified therein.

3. A written acknowledgement by the bidder that it agrees to all of the terms for sale set forth in these Bid Procedures and that the offer constitutes a good faith *bona fide* offer to purchase the specific category (or categories) of Assets identified in its bid.

4. Delivery by certified check or wire transfer of a good faith deposit in immediately available funds (the "***Deposit***") equal to 10% of the Minimum Bid Price for each category of Assets that the bidder is interested in purchasing. The Deposit shall be held in escrow and will be refunded on the terms set forth below.

5. Evidence or a statement indicating that the bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission and consummation of its bid and acceptance of the terms of sale in these Bid Procedures, or a representation that no such authorization or approval is required and that any and all consents required in connection with the submission and consummation of the bid have been obtained and that no other consents are required.

6. Full disclosure of the identity of each entity that will be bidding for or purchasing the relevant category (or categories) of Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed bid.

7. A statement that the bidder consents to the jurisdiction of the Court.

4

8.     Evidence of sufficient cash on hand or written evidence of a binding, unconditional (except for customary closing conditions) commitment for financing or other evidence of the ability to consummate the Sale satisfactory to the Debtors with appropriate contact (and any other necessary) information for such financing sources.

9.     An affirmation that the cure amounts under any assigned executory contracts and any applicable transfer taxes or similar charges will be the bidder's responsibility; and provision of adequate assurance of future performance with respect to such executory contracts and/or unexpired leases.

10.    Such other information as may be reasonably requested in writing by the Debtors at least two (2) calendar days prior to the Bid Deadline.

A bid received from a Potential Bidder that includes all of the Required Bid Materials and is actually received by the Bid Deadline is a "***Qualified Bid***" if the Debtors, in consultation with the Consulting Parties, determine that such bid evidences a *bona fide* interest in, and ability to purchase, the specific category (or categories) Assets identified in such bid. A Potential Bidder that submits a Qualified Bid or any other Potential Bidders selected by the Debtors (each a "***Qualified Bidder***") shall be entitled to participate in the Auction(s). The Debtors reserve the right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bid and to indicate any terms which may need to be modified in order to make their bid a "Qualified Bid" or otherwise evaluate their bid.

The Qualified Bid for each category of Assets selected by the Debtors, in consultation with the Consulting Parties, as the highest or otherwise best bid (each, the "***Opening Bid***") for such category following the Bid Deadline and prior to the start of the relevant Auction shall be provided to all other Qualified Bidders no less than one (1) business day prior to the commencement of the relevant Auction.

Notwithstanding anything contained herein to the contrary, Alden Global Value Recovery Master Fund, L.P., or permitted assignee, as lender (the "***DIP Lender***") under that certain Senior Secured, Super-Priority Debtor in Possession Credit Agreement (the "***Credit Agreement***"), dated as of March 23, 2013, shall have all rights available under Bankruptcy Code section 363(k) to submit a credit bid (a "***Credit Bid***") on the Collateral (as such term is defined in the Credit Agreement) securing the loans advanced under the Credit Agreement. The DIP Lender shall be considered to be a Qualified Bidder for all purposes pursuant to the Bid Procedures, notwithstanding the requirements that a bidder must satisfy to be a Qualified Bidder. The DIP Lender is not required to take any further action to participate in the Auction(s); *provided, however*; that if the DIP Lender intends to submit a Credit Bid at the Auction(s), it must provide written notice to the Debtors of its intent to submit a Credit Bid prior to the commencement of the Auction(s), at which point such Credit Bid shall be deemed a Qualified Bid.

### The Auction(s)

To the extent the Debtors receive more than one Qualified Bid for a particular category of Assets identified in **Schedule 3** on or before the Bid Deadline or as otherwise decided by the Debtors, the Debtors will conduct an auction (the "*Auction(s)*") on each such category of Assets to take place at the offices of Akin Gump, One Bryant Park, New York, New York 10036, commencing at **10:00 a.m. (prevailing Eastern Time)** on July 16, 17, 18 and 19, 2013, respectively (each, an "*Auction Date*" and, collectively, the "*Auction Dates*"). The designated Auction Date for each category of Assets is set forth on **Schedule 3**. The Debtors reserve the right, with the consent of the DIP Lender, consistent with its rights under section 6.01(g) of the Credit Agreement, and in consultation with the Consulting Parties, to adjourn or cancel any of the Auction Dates, or change the Auction Date for one or more categories of Assets to another Auction Date, at any time by delivering notice of such adjournment, cancellation or modification to the applicable Qualified Bidder(s).

The Auction(s) shall be governed by the following procedures, which procedures shall be subject to modification by the Debtors, in consultation with the Consulting Parties, as the Debtors deem necessary, to better promote the goals of the Auction(s) and to comply with their fiduciary obligations:

(a)  Each Qualified Bidder shall appear in person at the Auction(s) through a duly authorized representative, unless the Debtors have agreed to a different form of appearance by a particular Qualified Bidder.

(b)  Only the representatives of (i) the Debtors, (ii) persons or entities making Qualified Bids, (iii) the DIP Lender, (iv) the Committee and (v) Atari, S.A. shall be permitted to be present at the Auction(s). For the avoidance of doubt, although these parties shall be permitted to be present at the Auction(s), only Qualified Bidders may bid at the Auction(s).

(c)  The material terms of each Qualified Bid selected from time to time by the Debtors, in consultation with the Consulting Parties, as being the highest or otherwise best offer for a particular category of Assets at any such time (each such Qualified Bid selected at any time, the "*Leading Bid*" at such time) shall be fully disclosed to all other Qualified Bidders for the relevant category of Assets. For the avoidance of doubt, each Leading Bid and each bid identified as being the highest or otherwise best offer for a particular category of Assets at any time shall have no conditions other than those disclosed.

(d)  The Auction(s) shall commence with the Debtors confirming the particulars of the Opening Bid for each category of Assets and asking for higher or otherwise better offers for each such category.

(e)  The Auction(s) shall continue with subsequent rounds of bidding and, after each round, the Debtors, after consultation with the Consulting Parties, shall announce the Leading Bid for each category of Assets. A Qualified Bidder that does not submit a Qualified Bid in any round of bidding with value greater than the

Leading Bid as of the commencement of such round shall not be able to submit further bids in any subsequent round.

(f)     The Debtors shall provide for a court reporter to be present at, and prepare a transcript of, the Auction(s). The Debtors may determine to make all or any part of the transcript subject to confidentiality requirements and seal.

(g)     Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale(s).

(h)     All Qualified Bidders shall have the right to submit additional bids and make modifications to their respective Purchase Agreements at the Auction(s) to improve such bids.

(j)     The Auction(s) may include individual negotiations with Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.

(k)     The Debtors reserve the right, in consultation with the Consulting Parties, to (i) determine in their reasonable discretion which Qualified Bid is the highest or otherwise best bid for a particular category of Assets and (ii) reject at any time, without liability, any bid that the Debtors, in their business judgment, deem to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the Bid Procedures Order, or (3) contrary to the best interests of the Debtors and their estates.

(l)     The Auction(s) shall continue until there is only one bid that the Debtors, in consultation with the Consulting Parties, determine, subject to Court approval, constitutes the highest or otherwise best offer for a particular category of Assets from among the Qualified Bids submitted for such category of Assets at the relevant Auction (the "***Successful Bid***"). In determining the Successful Bid for a particular category of Assets, the Debtors, in the exercise of their business judgment and in consultation with the Consulting Parties, shall consider all relevant factors including, without limitation: (i) the amount of the purchase price, (ii) the form of consideration being offered, (iii) the ability of the Qualified Bidder to complete the transaction constituting the Successful Bid (including without limitation, the ability to obtain any required regulatory approvals or consents or the lack thereof), (iv) the proposed timing thereof, (v) the contracts being assumed by the Qualified Bidder and the rights of the Qualified Bidder and the Debtors with respect to the termination thereof, (vi) the number, type and nature of the changes to the Purchase Agreement requested by the Qualified Bidder, and (vii) the net benefit to the Debtors' estates. The Qualified Bidder for the particular category of Assets submitting such Successful Bid (the "***Successful Bidder***") shall have the rights and responsibilities of the purchaser, as set forth in the Purchase Agreement, or modified definitive purchase agreement, as applicable, and in the terms and conditions of the Successful Bid provided at the relevant Auction.

(m)     At the conclusion of the Auction(s), a Successful Bidder(s) shall have negotiated and executed a Purchase Agreement(s) with the Debtors.

(n)     The next highest or otherwise best bid for each category of Assets will be the "***Back-Up Bid***" and the maker of each such bid will be the "***Back-Up Bidder***." Prior to the Sale Hearing, but in no event later than two (2) days after conclusion of the applicable Auction, the Successful Bidder, the Back-Up Bidder and the Debtors for the particular category of Assets shall complete and execute a Purchase Agreement and any other applicable agreements, contracts, instruments, or other documents evidencing and containing the terms and conditions upon which each such Successful Bid and Back-Up Bid was made (subject, in the case of the Debtors, to the qualifications set forth in "***Acceptance and Termination of Qualified Bids***" below).

THE SUCCESSFUL BID(S) SUBMITTED AT THE AUCTION(S) SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER(S) AND THE BACK-UP BIDDERS(S) FROM THE TIME THE BID IS SUBMITTED UNTIL THIRTY (30) DAYS AFTER ENTRY OF THE SALE ORDER. EACH QUALIFIED BID THAT IS NOT THE SUCCESSFUL OR THE BACK-UP BID FOR THE PARTICULAR CATEGORY OF ASSETS AS APPROVED BY THE COURT AT THE SALE HEARING SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE RESPECTIVE AUCTION.

### Acceptance and Termination of Qualified Bids

The Debtors intend to sell all or substantially all of their Assets, separated into categories, to the Successful Bidder(s) upon the approval of the Successful Bid(s) and the Back-Up Bid(s) by the Court after the Sale Hearing. The Debtors' presentation of a particular Successful Bid and Back-Up Bid to the Court for approval does not constitute the Debtors' acceptance of such bid. The Debtors will be deemed to have accepted such a bid only when the bid has been approved by the Court at the Sale Hearing.

### Debtors' Option to Select a Stalking Horse Bidder(s)

Based upon Qualified Bids received, the Debtors may, in consultation with the Consulting Parties, but shall not be obligated to, at any time designate one or more Qualified Bidders as a "***Stalking Horse Bidder(s)***". Notice of selection of such Stalking Horse Bidder(s) shall be immediately given to all Qualified Bidders and filed with the Court.

### 1.     Bid Protections

The Debtors may, in their business judgment and in consultation with the Consulting Parties, provide a selected Stalking Horse Bidder(s) (if any) with certain bid protections in the form of a "break-up fee" or expense reimbursement (the "***Bid Protections***"), which Bid Protections shall be subject to court approval at an expedited hearing to be held on two (2) business-days' notice to the Sale(s) Notice Parties.

2. **Overbids Prior to Auction(s)**

In the event that the Debtors selects one or more Stalking Horse Bidders, then the bid of each Potential Bidder, in order to constitute a Qualified Bid, shall (i) in addition to meeting the other criteria set forth in these Bid Procedures, be in an amount that is sufficient to pay the Break-Up Fee for the particular category of Assets and (ii) result in additional consideration to the Debtors' estates in excess of the purchase price offered by such Stalking Horse Bidder(s) for the particular category of Assets of no less than 1.0% of such purchase price (the "***Overbid Amount(s)***").

### Sale Hearing

The Sale Hearing shall be conducted by the Court on **July 24, 2013 at 10:00 a.m. (prevailing Eastern Time)** and may be adjourned or rescheduled, in consultation with the Consulting Parties, in open court without further notice. At the Sale Hearing, the Debtors will seek Court approval of a Successful Bid and a Back-Up Bid for each predetermined category of Assets. Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale(s) and there will be no further bidding at the Sale Hearing.

In the event that the Successful Bidder for a particular category of Assets cannot or refuses to consummate the relevant Sale because of a breach or failure on the part of such Successful Bidder, the Back-Up Bidder for that category of Assets will be deemed the new Successful Bidder and the Debtors shall be authorized, but not required, to close with such Back-Up Bidder on the terms of the Back-Up Bid without further order of the Court.

### Terms of the Sale(s)

Except as and to the extent provided in the applicable Purchase Agreement(s), and subject to Court approval, the sale of each category of Assets shall be on an "AS IS, WHERE IS" basis and without representations or warranties of any kind, nature or description by the Debtors or their agents, and by submitting a bid, each bidder is deemed to acknowledge and agrees to the foregoing. Subject to Court approval and the terms of the applicable Purchase Agreement(s), all of the Debtors' right, title and interest in and to the Assets shall be sold free and clear of all liens, claims, interests, encumbrances, rights, remedies, restrictions, liabilities and contractual commitments of any kind or nature whatsoever, whether arising before or after the petition date of the Debtors' chapter 11 cases, whether at law or in equity (collectively "***Interests***"), to the fullest extent available under Bankruptcy Code section 363 with such Interests, if any, attaching to the net proceeds of the sale of the Assets in the same order, dignity and priority as existed at the commencement of the bankruptcy cases and subject to the conditions set forth in the respective Purchase Agreements. Notwithstanding the foregoing, the Debtors, subject to any prior order of the Court, reserve the right to contest the validity, nature, extent or priority of and/or seek to set aside or avoid any and all Interests under applicable law.

### Return of Deposits

Each Deposit submitted pursuant to the Bid Procedures will be held in escrow by the escrow agent (the "***Escrow Agent***") and will not become property of the Debtors' estates absent further order of the Court. Within three (3) business days after the conclusion of the last

Auction, the Escrow Agent shall return the Deposits made by any Qualified Bidder who is not a Successful Bidder or a Back-Up Bidder, and the Escrow Agent shall return any of the Back-Up Bidder's Deposits within three (3) business days following the termination of such Back-Up Bid in accordance with the provisions set forth herein.

If the Successful Bidder(s) or the Back-Up Bidder(s), as applicable, fail to consummate the approved Sale(s) because of a breach or failure to perform on the part of the Successful Bidder(s) or the Back-Up Bidder(s), as applicable, the Debtors shall be entitled to retain the Deposit(s) of each such Successful Bidder(s) or Back-Up Bidder(s), as applicable, in addition to other remedies available to the Debtors under applicable law. The Debtors shall credit the Deposit(s) of each Successful Bidder(s) or Back-Up Bidder(s), as applicable, towards the purchase price at the time of funding consistent with the terms of the applicable Purchase Agreement.

### Reservation of Rights

The Debtors reserve the right to, in consultation with the Consulting Parties, (i) modify, supplement, amend or waive the Bid Procedures, including, without limitation, modifying the requirements for a Qualified Bid at or prior to the Auction(s), if such modification will better promote the goals of the Auction(s), (ii) impose, at or prior to the Auction(s), additional customary terms and conditions on the Sale(s), (iii) adjourn or cancel the Auction(s) at the Auction(s) and/or (iv) adjourn the Sale Hearing in an open court without further notice, in each case, in such a manner that is not materially inconsistent with any prior order of the Court and the Debtors deem such modifications to be consistent with the performance of their fiduciary obligations.

Notwithstanding the foregoing, or anything else in these Bid Procedures, the Debtors, in consultation with the Consulting Parties, reserve the right to (i) waive compliance with any one or more of the Qualified Bid requirements specified herein, and deem noncompliant bids to be Qualified Bids and (ii) extend or otherwise amend the applicable dates and deadlines set forth in these Bid Procedures. The Auction(s) procedures, the Bid Procedures and all bids are subject to such other terms and conditions as are announced by the Debtors during the course of the Auction(s).

### Independent Evaluation

Except as otherwise expressly provided in the Bid Procedures or any Purchase Agreement, by submitting a bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Debtors, the Assets and the Sale(s) prior to making its bid, (ii) has relied solely upon its own independent review, investigation, and inspection of any documents and the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Assets, or the completeness of any information provided in connection with the Debtors, the Assets and the Sale(s).

## **Jurisdiction**

The Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale(s), the Bid Procedures, any Purchase Agreement, and any other matter that in any way relates to the foregoing. All entities that submit a bid for the purchase of any category of the Assets shall be deemed to have (i) consented to the core jurisdiction of, and venue in, the Court and (ii) waived any right to a jury trial in connection with any disputes relating to the Sale(s), the Bid Procedures, any Purchase Agreement and any other matter that in any way relates to the foregoing.

# # # # #

## Schedule 1

# PURCHASE AGREEMENT

dated as of

[_____], 2013

by and among

ATARI, INC.
ATARI INTERACTIVE, INC.
HUMONGOUS, INC.
CALIFORNIA U.S. HOLDINGS, INC.

as the Sellers

and

**[NAME OF BUYER]**

as Buyer

# PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT dated as of [____], 2013 (the "**Agreement**") by and among Atari, Inc., a Delaware corporation, Atari Interactive, Inc., a Delaware corporation, Humongous, Inc., a Delaware corporation, and California U.S. Holdings, Inc., a California corporation, (each a Seller and collectively, the "**Sellers**") and [name of Buyer], a [     ] (the "**Buyer**").

## W I T N E S S E T H :

**WHEREAS**, the Sellers own the Purchased Assets (as defined below);

**WHEREAS**, the Sellers have sought relief under Chapter 11 of Title 11, §§ 101-1330 of the United States Code (as amended, the "**Bankruptcy Code**") by filing cases (the "**Chapter 11 Cases**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on January 21, 2013 (the "**Petition Date**"); and

**WHEREAS**, Buyer desires to purchase the Purchased Assets and to assume the Assumed Liabilities (as defined below), upon the terms and subject to the conditions set forth herein.

**NOW, THEREFORE**, in consideration of the foregoing and the respective representations, warranties, covenants and agreements set forth herein, the parties hereto agree as follows:

ARTICLE 1

DEFINITIONS

SECTION 1.01    *Definitions*.

(a)    The following terms, as used herein, have the following meanings:

"**Affiliate**" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with such other Person; provided, however, that with respect to the Sellers, "Affiliate" shall mean only the other Sellers.

"**Assumption Agreement**" means an assignment and assumption agreement drafted by Sellers and reasonably acceptable to Buyer.

"**Business Day**" means a day other than Saturday, Sunday or other day on which commercial banks in New York, New York are authorized or required by law to close.

"**Causes of Action**" means any legal, governmental or regulatory actions, suits, proceedings, investigations, arbitrations or actions.

"**Claim**" means a claim as defined in Section 101 of the Bankruptcy Code.

"**Closing Date**" means the date of the Closing.

"**Confidentiality Agreement**" means that certain non-disclosure agreement by and between Sellers and [Buyer] dated [ ], 2013.

"**Cure Costs**" means the liabilities and obligations of the Sellers that must be paid or otherwise satisfied to cure all of the Sellers' defaults under the Assumed Contracts at the time of the assumption thereof and assignment to Buyer as provided herein.

"**Intellectual Property**" mean the intellectual property identified on Schedule 1.01(a).

"**Lien**" means, with respect to any property or asset, any mortgage, lien, pledge, charge, security interest or encumbrance in respect of such property or asset.

"**Material Adverse Effect**" means (i) any material adverse effect on the Purchased Assets, taken as a whole, or (ii) any material adverse effect on the ability of the Sellers to consummate the transactions contemplated by this Agreement *provided that* the following shall not constitute a Material Adverse Effect and shall not be taken into account in determining whether or not there has been or would reasonably be expected to be a Material Adverse Effect: (A) changes in general economic conditions or securities or financial markets in general that do not disproportionately impact the Sellers, taken as a whole: (B) general changes in the industry in which the Sellers operate and not specifically relating to, or having a disproportionate effect on, the Sellers taken as a whole (relative to the effect on other persons operating in such industry); (C) any changes in law applicable to the Sellers or any of their respective properties or assets or interpretations thereof by any governmental authority which do not have a disproportionate effect on the Sellers, taken as a whole; (D) any outbreak or escalation of hostilities or war (whether declared or not declared) or any act of terrorism which do not have a disproportionate effect on the Sellers, taken as a whole; (E) any changes to the extent resulting from the announcement or the existence of, or compliance with, this Agreement and the transactions contemplated hereby (including without limitation any lawsuit related thereto or the impact on relationships with suppliers, customers, employees or others); (F) any accounting regulations or principles or changes in accounting practices or policies that the Sellers are required to adopt; (G) matters occurring in, or arising from the Chapter 11 Cases of the Sellers, including any events, occurrences, or other actions taken as a result thereof, and (H) any changes resulting from actions of the Sellers expressly agreed to or requested in writing by the Buyer.

"**Permitted Liens**" means (i) Liens permitted by the Approval Order, (ii) Liens created pursuant to any Assumed Contracts; and (iii) Liens set forth on Schedule 1.01(b).

"**Person**" means an individual, corporation, partnership, limited liability company, association, trust or other entity or organization, including a government or political subdivision, or an agency or instrumentality thereof.

(b)     Each of the following terms is defined in the Section set forth opposite such term:

| **Term** | **Section** |
|---|---|
| Agreement | Preamble |
| Approval Order | Section 6.03 |

| Term | Section |
|------|---------|
| Assumed Contracts | Section 2.01 |
| Assumed Liabilities | Section 2.03 |
| Assumption Agreement | Section 2.08 |
| Bankruptcy Code | Recitals |
| Bankruptcy Court | Recitals |
| Bankruptcy Period | Section 10.05 |
| Buyer | Preamble |
| Chapter 11 Cases | Recitals |
| Closing | Section 2.08 |
| Code | Section 7.01 |
| End Date | Section 9.01(d) |
| Excluded Assets | Section 2.02 |
| Excluded Contracts | Section 2.02 |
| Excluded Liabilities | Section 2.04 |
| Good Faith Deposit | Section 2.07 |
| Income Tax | Section 7.01 |
| Purchased Assets | Section 2.01 |
| Purchase Price | Section 2.06 |
| Sellers | Preamble |
| Tax | Section 7.01 |
| Taxing Authority | Section 7.01 |
| Tax Return | Section 7.01 |
| Transfer Consent | Section 2.05 |
| Transfer Taxes | Section 7.02 |

SECTION 1.02   *Other Definitions and Interpretative Matters*.   Unless otherwise indicated to the contrary in this Agreement by the context or use thereof:

(a)   When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is a day other than a Business Day, the period in question shall end on the next succeeding Business Day.  Any reference in this Agreement to days (but not Business Days) means to calendar days.

(b)   Any reference in this Agreement to $ means U.S. dollars.

(c)   Unless the context otherwise requires, all capitalized terms used in the Exhibits and Schedules shall have the respective meanings assigned in this Agreement.  All Exhibits and Schedules attached or annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.

(d)   Any reference in this Agreement to gender includes all genders, and words importing the singular number also include the plural and vice versa.

3

(e)     The provision of a table of contents, the division of this Agreement into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in the construction or interpretation of this Agreement. All references in this Agreement to any "**Section**" or "**Article**" are to the corresponding Section or Article of this Agreement unless otherwise specified.

(f)     Words such as "**herein**," "**hereof**" and "**hereunder**" refer to this Agreement as a whole and not merely to a subdivision in which such words appear, unless the context otherwise requires.

(g)     The word "**including**" or any variation thereof means "including, without limitation," and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

(h)     References to laws, rules and regulations shall include such laws, rules and regulations as they may from time to time be amended, modified or supplemented.

(i)     Reference to a given agreement or instrument shall be a reference to that agreement or instrument as modified, amended, supplemented or restated through the date as of which such reference is made

(j)     References to any Person shall include its permitted successors and assigns and, in the case of any Governmental Authority, any Person succeeding to its functions and capacities.

ARTICLE 2

PURCHASE AND SALE

SECTION 2.01    *Purchase and Sale*.  Except as otherwise provided below, upon the terms and subject to the conditions of this Agreement, Buyer agrees to purchase from the Sellers and each Seller agrees to sell, convey, transfer, assign and deliver, or cause to be sold, conveyed, transferred, assigned and delivered, to Buyer at the Closing, free and clear of all Liens and Claims, other than Assumed Liabilities and Permitted Liens, all of such Seller's right, title and interest in, to and under the following (the "**Purchased Assets**"):

(a)     the Intellectual Property;

(b)     those contracts listed or described on Schedule 2.01(b) (the "**Assumed Contracts**"); and

(c)     all Causes of Action for past or present infringement or misappropriation of Intellectual Property as of the Closing, including Sellers' rights of indemnity, warranty rights, rights of contribution, rights to refunds, rights of reimbursement and other rights of recovery, but excluding insurance proceeds (regardless of whether such rights are currently exercisable).

SECTION 2.02    *Excluded Assets*.  Notwithstanding any provision to the contrary set forth in this Agreement, Buyer expressly understands and agrees that any assets and properties of

4

the Sellers not set forth in Section 2.01 (the "**Excluded Assets**") shall be excluded from the Purchased Assets.

SECTION 2.03    *Assumed Liabilities*.  Upon the terms and subject to the conditions of this Agreement, Buyer agrees, effective at the time of the Closing, to assume the following liabilities and obligations of the Sellers (the "**Assumed Liabilities**"):

(a)    all liabilities and obligations of each Seller relating to all Assumed Contracts (including all Cure Costs relating to Assumed Contracts), regardless of when arisen; and

(b)    all liabilities and obligations arising from the Purchased Assets (including their ownership and sale).

SECTION 2.04    *Excluded Liabilities*.    Notwithstanding any provision in this Agreement or any other writing to the contrary, Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of any Seller of whatever nature, whether presently in existence or arising hereafter.  All such other liabilities and obligations shall be retained by and remain obligations and liabilities of the Sellers (all such liabilities and obligations not being assumed being herein referred to as the "**Excluded Liabilities**").

SECTION 2.05    *Assignment of Contracts and Rights*.  Sellers shall transfer and assign all Assumed Contracts to Buyer, and Buyer shall assume all Assumed Contracts from Sellers, as of the Closing Date pursuant to the Approval Order.  In connection with such assignment and assumption, Buyer shall cure all monetary defaults under such Assumed Contracts to the extent required by Section 365(b) of the Bankruptcy Code.  Except as to Assumed Contracts assigned pursuant to Section 365 of the Bankruptcy Code, anything in this Agreement to the contrary notwithstanding, this Agreement shall not constitute an agreement to assign any Purchased Asset or any right thereunder if an attempted assignment, without the consent of a third party or Governmental Authority (each, a "**Transfer Consent**"), would constitute a breach or in any way adversely affect the rights of Buyer or the Sellers thereunder.  If such Transfer Consent is not obtained or such assignment is not attainable pursuant to Section 365, to the extent permitted and subject to any approval of the Bankruptcy Court that may be required, the Sellers and Buyer will cooperate in a mutually agreeable arrangement (at Buyer's sole cost and expense) under which Buyer would obtain the benefits and assume the obligations thereunder in accordance with this Agreement.

SECTION 2.06    *Purchase Price.*

(a)    On the terms and subject to the conditions contained herein, the purchase price (the "**Purchase Price**") for the Purchased Assets shall consist of:

(i)    cash in the amount of $[        ];

(ii)    the payment of all Cure Costs; and

(iii)    the assumption of the Assumed Liabilities.

(b)      At the Closing, Buyer shall pay to the Sellers the Purchase Price less the Good Faith Deposit, by wire transfer of immediately available funds to an account or accounts designated by the Sellers at least three (3) Business Days prior to the Closing Date.

(c)      Not later than 30 days prior to the filing of their respective Forms 8594 relating to this transaction, and subject to Section 7.03 each party shall deliver to the other party a copy of its Form 8594.

SECTION 2.07      *Good Faith Deposit*.

(a)      Simultaneously with the execution of this Agreement, Buyer shall deposit with the Sellers cash in the amount of $[  ] (the "**Good Faith Deposit**") to be applied as provided in Section 2.07(b).

(b)      The Good Faith Deposit (and any interest accrued thereon) shall be retained by the Sellers in the following circumstances: (i) at the Closing as a credit against the Purchase Price and (ii) if this Agreement is terminated pursuant to Section 9.01(b).  Except as described in the previous sentence, the Good Faith Deposit (and any interest accrued thereon) shall be returned to Buyer after termination of this Agreement subject to any setoff for any claim of breach or payment due for breach by Buyer of this Agreement.

SECTION 2.08      *Closing*.  The closing (the "**Closing**") of the purchase and sale of the Purchased Assets and the assumption of the Assumed Liabilities hereunder shall take place at the offices of Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, on the Business Day that is 15 days after the entry of the Approval Order unless such Approval Order is subject to a present stay or at such other time or place as Buyer and the Sellers may agree.  At the Closing:

(a)      Buyer shall deliver to the Sellers:

(i)      the Purchase Price less the Good Faith Deposit as described in Section 2.06(b); and

(ii)      the Assumption Agreement duly executed by Buyer.

(b)      Sellers shall deliver to Buyer:

(i)      the Assumption Agreement duly executed by each applicable Seller; and

(ii)      a certificate of non-foreign status executed by each Seller (or, if applicable, a direct or indirect owner of a Seller) that is not a disregarded entity for U.S. federal income tax purposes, prepared in accordance with Treasury Regulation Section 1.1445-2(b).

# ARTICLE 3

## REPRESENTATIONS AND WARRANTIES OF SELLERS

Each Seller represents and warrants to Buyer:

SECTION 3.01     *Organization and Qualification*.  Each Seller has been duly organized and is validly existing and in good standing under the laws of its respective jurisdiction of incorporation, with the requisite power and authority to own its properties and conduct its business as currently conducted.  Each Seller, as applicable, has been duly qualified as a foreign corporation or organization for the transaction of business and is in good standing under the laws of each other jurisdiction in which it owns or leases properties or conducts any business so as to require such qualification, except to the extent that the failure to be so qualified or be in good standing has not had and would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

SECTION 3.02     *Corporate Authorization*.  The execution, delivery and performance by the Sellers of this Agreement and the consummation of the transactions contemplated hereby are within the Sellers' corporate powers and have been duly authorized by all necessary corporate action on the part of each Seller.

SECTION 3.03     *Execution and Delivery; Enforceability*.  This Agreement has been duly and validly executed and delivered by the Sellers, and, subject to the Bankruptcy Court's entry of the Approval Order will constitute the valid and binding obligation of the Sellers, enforceable against the Sellers in accordance with its terms.

SECTION 3.04     *Exclusivity of Representations and Warranties*.  The representations and warranties made by the Sellers in this Agreement are in lieu of and are exclusive of all other representations and warranties, including, without limitation, any implied warranties.  The Sellers hereby disclaim any such other or implied representations or warranties, notwithstanding the delivery or disclosure to the Sellers or their officers, directors, employees, agents or representatives of any documentation or other information (including any financial projections or other supplemental data not included in this Agreement).

# ARTICLE 4

## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to each Seller that:

SECTION 4.01     *Corporate Existence and Power*.   Buyer is a corporation duly incorporated, validly existing and in good standing under the laws of [jurisdiction] and has all corporate powers and all material governmental licenses, authorizations, permits, consents and approvals required to carry on its business as now conducted.

SECTION 4.02     *Corporate Authorization*.  The execution, delivery and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby are

7

within the corporate powers of Buyer and have been duly authorized by all necessary corporate action on the part Buyer.

SECTION 4.03    *Execution and Delivery; Enforceability*.    This Agreement has been duly and validly executed and delivered by Buyer, and constitutes the valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms.

SECTION 4.04    *Sufficiency of Funds*.    Buyer has, and will continue to have at all times prior to and at the Closing, sufficient cash or other sources of immediately available funds to enable it to make payment of the Purchase Price.

SECTION 4.05    *Inspections; No Other Representations*.    Buyer is an informed and sophisticated purchaser, and has engaged expert advisors, experienced in the evaluation and purchase of property and assets such as the Purchased Assets as contemplated hereunder. Buyer has undertaken such investigation and has been provided with and has evaluated such documents and information as it has deemed necessary to enable it to make an informed and intelligent decision with respect to the execution, delivery and performance of this Agreement. Buyer acknowledges that the Sellers have given Buyer complete and open access to the key employees, documents and facilities of the Sellers with respect to the Purchased Assets. Buyer agrees, warrants and represents that (a) Buyer is purchasing the Purchased Assets on an "**AS IS**" and "**WITH ALL FAULTS**" basis based solely on Buyer's own investigation of the Purchased Assets and (b) except as set forth in this Agreement, neither Sellers nor any director, officer, manager, employee, agent, consultant, or representative of Sellers have made any warranties, representations or guarantees, express, implied or statutory, written or oral, respecting the Purchased Assets, any part of the Purchased Assets, the financial performance of the Purchased Assets, or the physical condition of the Purchased Assets. Buyer further acknowledges that the consideration for the Purchased Assets specified in this Agreement has been agreed upon by Sellers and Buyer after good-faith arms'-length negotiation in light of Buyer's agreement to purchase the Purchased Assets "**AS IS**" and "**WITH ALL FAULTS**." Buyer agrees, warrants and represents that, except as set forth in this Agreement, Buyer has relied, and shall rely, solely upon its own investigation of all such matters, and that Buyer assumes all risks with respect thereto. **Except as set forth in this Agreement, Sellers hereby disclaim all liability and responsibility for any representation, warranty, projection, forecast, statement, or information made, communicated, or furnished (orally or in writing) to Buyer or its Affiliates or representatives (including any opinion, information, projection, or advice that may have been or may be provided to Buyer by any director, officer, manager, employee, agent, consultant, or representative of Sellers). Sellers make no representations or warranties to Buyer regarding the probable success, profitability or value of any of the Purchased Assets.**

ARTICLE 5

COVENANTS OF BUYER

SECTION 5.01    *Confidentiality*.    Buyer agrees that prior to the Closing Date and after any termination of this Agreement; the Confidentiality Agreement shall remain in full force and effect. After the Closing has occurred, the Confidentiality Agreement shall be terminated to the

8

extent relating to the Purchased Assets and Assumed Liabilities and the employees of the Sellers, and shall, with respect to any of the Excluded Assets and Excluded Liabilities, remain in full force and effect.

ARTICLE 6

COVENANTS OF BUYER AND SELLERS

Buyer and the Sellers agree that:

SECTION 6.01    *Reasonable Best Efforts; Further Assurances*.  Subject to the terms and conditions of this Agreement, Buyer and the Sellers will use their reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable under applicable laws and regulations to consummate the transactions contemplated by this Agreement.

SECTION 6.02    *Public Announcements*.  Absent the prior written consent of the other party, such consent to not be unreasonably withheld, delayed or conditioned, neither the Sellers nor Buyer shall make any press release, public announcement, securities filing or public statement concerning this Agreement or the transactions contemplated hereby, except as and to the extent that any such party shall be required to make any such disclosure by applicable law, and then only after giving the other party hereto adequate time to review, under the circumstances, such disclosure and consider in good faith the comments of the other party hereto and consultation as to such comments with such party as to the content of such disclosure.  For the avoidance of doubt, nothing herein shall be construed to prohibit any disclosure or announcement which the Sellers make in connection with the Chapter 11 Cases.

SECTION 6.03    *Bankruptcy Court Approval*.  Promptly upon the execution of this Agreement, the Sellers shall seek entry of an order (the "**Approval Order**") which, among other things, (i) approves this Agreement, (ii) authorizes the sale of the Purchased Assets to Buyer pursuant to Section 363 of the Bankruptcy Code, (iii) authorizes the assumption and assignment to Buyer of the Assumed Contracts pursuant to Section 365 of the Bankruptcy Code and (iv) authorizes the other transactions contemplated by this Agreement, which Approval Motion and Approval Order shall not be inconsistent with the terms of this Agreement; *provided that* Sellers shall consult with Buyer with respect to any changes proposed by Buyer thereto.

ARTICLE 7

TAX MATTERS

SECTION 7.01    *Tax Definitions*.  The following terms, as used herein, have the following meanings:

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Income Tax**" means any federal, state, local or non-U.S. tax based on or measured by reference to net income, including any interest, penalties, or additions thereto, whether disputed or not.

9

"**Tax or Taxes**" means (i) any tax, governmental fee, levy, duty, tariff, impost, custom, license, payroll, employment, excise, severance, premium, windfall profits, environmental (including taxes under Code § 59A), sales, franchise, profits, pension, social security (or similar), unemployment, capital stock, or other like assessment, charge or premium of any kind whatsoever (including, but not limited to, withholding on amounts paid to or by any Person), together with any interest, penalty, addition to tax or additional amount imposed by any governmental authority (a "**Taxing Authority**") responsible for the imposition of any such tax (federal, state, local or non-U.S.), or (ii) liability for the payment of any amounts of the type described in (i) as a result of being party to any agreement or any express or implied obligation to indemnify any other Person, or as transferee, successor, guarantor or surety.

"**Tax Return**" means any return, declaration, report, claim for return, or information return or statement relating to Taxes; including any schedule or attachment thereto, and including any amendment thereof.

SECTION 7.02    *Tax Cooperation; Allocation of Taxes*.

(a)    Buyer and the Sellers agree to furnish or cause to be furnished to each other, upon request, as promptly as practicable, such information and assistance relating to the Purchased Assets (including, without limitation, access to books and records) as is reasonably necessary for the preparation and filing of all Tax Returns, the making of any election relating to Taxes, the preparation for any audit by any Taxing Authority, and the prosecution or defense of any claim, suit or proceeding relating to any Tax.  Buyer shall retain all books and records with respect to Taxes pertaining to the Purchased Assets for a period of at least six years following the Closing Date.  At the end of such period, Buyer shall provide the Seller with at least ten days prior written notice before destroying any such books and records, during which period the Seller can elect to take possession, at its own expense, of such books and records.  The Sellers and Buyer shall cooperate with each other in the conduct of any audit or other proceeding relating to Taxes involving the Purchased Assets

(b)    To the extent not exempt under Section 1146(a) of the Bankruptcy Code in connection with the Chapter 11 Cases, all excise, sales, use, value added, registration stamp, recording, documentary, conveyance, franchise, property, transfer and similar Taxes, levies, charges and fees, whether federal, state, local or non-U.S., including any interest and penalties (collectively, "**Transfer Taxes**") incurred in connection with the transactions contemplated by this Agreement shall be borne by Buyer when due, and Buyer will, at its own expense, file all necessary Tax Returns and other documentation with respect to all such Transfer Taxes.  Buyer and the Sellers shall cooperate in providing each other with any appropriate resale exemption certifications and other similar documentation.  If any Seller, as agent for any Taxing Authority, is required to collect such Transfer Taxes, Buyer shall pay the aggregate amount of such Transfer Taxes to the Sellers on demand and in such case Sellers shall remit such amount to the appropriate Taxing Authorities in accordance with applicable legislation.  Buyer and the Sellers shall cooperate in providing each other with any appropriate resale exemption certifications and other similar documentation, relating to Transfer Taxes.  Buyer shall indemnify and hold the Sellers harmless from and against any Transfer Taxes, penalty, interest or other amounts which may be payable by or assessed against the Sellers as a result of any incorrect statement or breach of the obligations of the Buyer and/or in connection with the Seller's failure to collect and remit

any Transfer Taxes on the sale and conveyance of the Purchased Assets to the Buyer, together with all loss, costs and expenses.

(c)     Transfer Taxes shall be timely paid, and all applicable filings, reports and returns shall be filed, as provided by applicable law.

SECTION 7.03  *Purchase Price Allocation*.  Sellers shall prepare an allocation of the Purchase Price (and all other capitalized costs) among the Purchased Assets in accordance with Code §1060 and the Treasury regulations thereunder (and any similar provision of state, local, or non-U.S. law, as appropriate), which allocation shall be binding upon Buyer.  Sellers shall deliver such allocation to Buyer within 60 days after the Closing Date. Sellers and Buyer and their Affiliates shall report, act, and file Tax Returns (including, but not limited to Internal Revenue Service Form 8594) in all respects and for all purposes consistent with such allocation prepared by Sellers.  Buyer shall timely and properly prepare, execute, file, and deliver all such documents, forms, and other information as Sellers may reasonably request in preparing such allocation.  Neither Sellers nor Buyer shall take any position (whether in audits, Tax Returns, or otherwise) that is inconsistent with such allocation unless required to do so by applicable law.

ARTICLE 8

SURVIVAL

SECTION 8.01  *Survival*.  The (a) representations and warranties of the Sellers and (b) covenants and agreements of the Sellers that by their terms are to be performed before Closing, contained in this Agreement or in any certificate or other writing delivered in connection herewith shall not survive the Closing.  The covenants and agreements contained herein that by their terms are to be performed after Closing shall survive the Closing indefinitely except the covenants, agreements, representations and warranties contained in Article 7 shall survive until expiration of the statute of limitations applicable to the matters covered thereby (giving effect to any waiver, mitigation or extension thereof).

ARTICLE 9

TERMINATION

SECTION 9.01  *Grounds for Termination*.  This Agreement may be terminated at any time prior to the Closing:

(a)     by mutual written agreement of the Sellers and Buyer;

(b)     by the Sellers, if Buyer shall have failed to performed any of its obligations hereunder required to be performed by it on or prior to the Closing Date, or if Buyer shall have failed to consummate the Closing as required by this Agreement;

(c)     by the Buyer, if the Sellers shall have failed to performed any of their obligations hereunder required to be performed by them on or prior to the Closing Date, or if the Sellers shall have failed to consummate the Closing as required by this Agreement; and

(d)      by either the Sellers or Buyer, if the Closing shall not have been consummated on [60 days after the execution of this Agreement], 2013 (the "**End Date**"), unless the party seeking termination is in material breach of its obligations hereunder.

The party desiring to terminate this Agreement pursuant to this Section 9.01 (other than pursuant to Section 9.01(a)) shall give notice of such termination to the other party in accordance with Section 10.01.

SECTION 9.02    *Effect of Termination*.  If this Agreement is terminated as permitted by Section 9.01, such termination shall be without liability of either party (or any stockholder, director, officer, employee, agent, consultant or representative of such party) to the other party to this Agreement except as provided in Section 2.07; *provided that* if such termination shall result from the (i) failure of Buyer to fulfill a condition to the performance of the obligations of the Sellers, (ii) failure of Buyer to perform a covenant of this Agreement, or (iii) breach of representation or warranty by Buyer, Buyer shall be fully liable for any and all Damages incurred or suffered by the Sellers as a result of such failure or breach.  The provisions of Sections 2.07, 5.01, 10.04, 10.05 and 10.06 shall survive any termination pursuant to Section 9.01.

SECTION 9.03    *Exclusive Remedies*.  Effective as of Closing, Buyer waives any rights and claims Buyer may have against the Sellers, whether in law or in equity, relating to (i) any breach of representation, warranty, covenant or agreement contained herein occurring on or prior to the Closing or (ii) the Purchased Assets or Assumed Liabilities.

MISCELLANEOUS

SECTION 10.01    *Notices*.  All notices, requests and other communications to any party hereunder shall be in writing (including facsimile or email transmission with delivery confirmation) and shall be given,

if to Buyer:

[  ]

Attention: [name]
Fax: [number]
Email: [  ]

with a copy to:

Attention: [name]
Fax: [number]
Email: [  ]


if to the Sellers, to:

Atari, Inc.
475 Park Avenue South

12th Floor
New York, NY
Attention: Kristen Keller
Fax: (212) 726-4214
Email: kristen.keller@atari.com

with a copy to:

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036-6745
Attention:  Ira Dizengoff
Fax: (212) 872-1002
Email: idizengoff@akingump.com

and

Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Attention:  Scott Alberino
Fax: (202) 887-4288
Email: salberino@akingump.com

All such notices, requests and other communications shall be deemed received on the date of receipt by the recipient thereof if received prior to 5:00 p.m. in the place of receipt and such day is a business day in the place of receipt.  Otherwise, any such notice, request or communication shall be deemed not to have been received until the next succeeding business day at the place of receipt.

SECTION 10.02  *Amendments and Waivers*.

(a)     Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and is signed, in the case of an amendment, by each party to this Agreement or, in the case of a waiver, by the party against whom the waiver is to be effective.

(b)     No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

SECTION 10.03  *Successors and Assigns*.  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and

13

assigns; *provided that* no party may assign, delegate or otherwise transfer any of its rights or obligations under this Agreement without the consent of each other party hereto.

SECTION 10.04  *Governing Law*.  This Agreement shall be governed by and construed in accordance with the law of the State of New York, without regard to the conflicts of law rules of such state.

SECTION 10.05  *Jurisdiction*.  The parties hereto agree that, during the period from the date hereof until the date on which Sellers' the Chapter 11 Case is closed or dismissed (the "**Bankruptcy Period**"), any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought exclusively in the Bankruptcy Court.  The Parties further agree that, following the Bankruptcy Period, any suit, action or proceeding with respect to this Agreement or the transactions contemplated hereby shall be brought against any of the parties exclusively in either the United States District Court for the Southern District of New York or any state court of the State of New York located in such district, and each of the parties hereby irrevocably consents to the jurisdiction of such court and the Bankruptcy Court (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in the such courts or that any such suit, action or proceeding which is brought in such courts has been brought in an inconvenient forum.  Process in any such suit, action or proceeding may be served on any party anywhere in the world, whether within or without the jurisdiction of the Bankruptcy Court, the United States District Court for the Southern District of New York or any state court of the State of New York.  Without limiting the foregoing, each party agrees that service of process on such party as provided in Section .01 shall be deemed effective service of process on such party.

SECTION 10.06  *WAIVER OF JURY TRIAL*.  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

SECTION 10.07  *Counterparts; Third Party Beneficiaries*.  This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.  This Agreement shall become effective when each party hereto shall have received a counterpart hereof signed by the other party hereto.  No provision of this Agreement is intended to confer upon any Person other than the parties hereto any rights or remedies hereunder.

SECTION 10.08  *Specific Performance*.  It is understood and agreed by Buyer that money damages would be an insufficient remedy for any breach of this Agreement by Buyer and as a consequence thereof, after the Bankruptcy Court's entry of the Approval Order, Sellers shall be entitled to specific performance and injunctive or other equitable relief as a remedy for such breach, including, without limitation, an order of the Bankruptcy Court or other court of competent jurisdiction requiring Buyer to comply promptly with any of its obligations hereunder. Sellers shall be entitled to an injunction to enforce specifically the consummation of the

104748695v3

transactions contemplated herein in a proceeding instituted in any court in the State of New York having jurisdiction over the parties and the matter.

SECTION 10.09 *Entire Agreement*. This Agreement and the Confidentiality Agreement constitute the entire agreement between the parties with respect to the subject matter of this Agreement and supersede all prior agreements and understandings, both oral and written, between the parties with respect to the subject matter of this Agreement.

SECTION 10.10 *Bulk Sales Laws*. Buyer hereby waives compliance by the Sellers and the Sellers hereby waive compliance by Buyer with the provisions of the "bulk sales", "bulk transfer" or similar laws of any jurisdiction other than any laws which would exempt any of the transactions contemplated by this Agreement from any Tax liability which would be imposed but for such compliance.

SECTION 10.11 *No Strict Construction*. Buyer, on the one hand, and Sellers, on the other hand, participated jointly in the negotiation and drafting of this Agreement, and, in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by Buyer, on the one hand, and Sellers, on the other hand, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement. Without limitation as to the foregoing, no rule of strict construction construing ambiguities against the draftsperson shall be applied against any Person with respect to this Agreement.

SECTION 10.12 *Non-Recourse*. No past, present or future director, manager, officer, employee, incorporator, member, unitholder, partner or equityholder of any Party hereto shall have any liability for any obligations or liabilities of the Parties under this Agreement or any other Transaction Document, for any claim based on, in respect of, or by reason of the transactions contemplated hereby and thereby, and each Party hereby covenants not to sue any past, present or future director, manager, officer, employee, incorporator, member, unitholder, partner or equityholder of any other Party for any such claim.

SECTION 10.13 *Severability*. The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability.

104748695v3

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

ATARI, INC.
a debtor and debtor-in-possession


By:_____
Name:
Title:


ATARI INTERACTIVE, INC.
each a debtor and debtor-in-possession


By:_____
Name:
Title:


HUMONGOUS, INC.
each a debtor and debtor-in-possession


By:_____
Name:
Title:


CALIFORNIA U.S. HOLDINGS, INC.
a debtor and debtor-in-possession


By:_____
Name:
Title:

*[Signature Page to Purchase Agreement]*

[BUYER]


By: _____
Name:
Title:

**Schedule 2**

# ATARI CONFIDENTIALITY AGREEMENT

May ___, 2013

_____
_____
_____

Dear Sirs:

In connection with your consideration of a possible transaction (the "<u>Transaction</u>") involving the purchase by you and/or one or more of your subsidiaries or controlled affiliates of some or all of the assets, and the assumption of some or all of the liabilities and obligations, of Atari, Inc., Atari Interactive, Inc., California US Holdings, Inc. and Humongous, Inc. (collectively, the "<u>Debtors</u>"), each of which is a debtor-in-possession in a case under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (collectively, the "<u>Bankruptcy Proceeding</u>") the Debtors are prepared, subject to the terms and conditions of this confidentiality agreement (this "<u>Agreement</u>"), to make available to you certain information. All such information (whether written, electronic or oral) furnished to you and your Representatives (as defined below), whether prior to, on, or following the date hereof, and whether prepared by the Debtors, their representatives or affiliates or otherwise on the Debtors' behalf, including without limitation, information regarding the Debtors' actual and proposed business(es); historical and projected financial information; agreements; budgets; services; products; intellectual property; trade secrets; technical data; programs; techniques; processes; operations; know-how; strategies; forecasts; concepts; ideas; marketing plans; existing or potential customers, employees, vendors or suppliers; relationships with third parties and other third party information; and any information derived, summarized or extracted from any of the foregoing, including without limitation, all portions of reports, analyses, compilations, studies, interpretations, records, notes or other materials prepared by you or your Representatives or otherwise on your behalf that contain, are based on, or otherwise reflect or are generated in whole or in part from such information, including that stored on any computer, word processor or other similar device, is referred to collectively as the "<u>Confidential Information</u>".

In consideration of your being furnished such Confidential Information, you agree to keep such Confidential Information confidential in accordance with the terms of this Agreement and you hereby acknowledge and agree as follows:

(1)    You and your Representatives shall use the Confidential Information solely for the purpose of evaluating any Transaction and you shall keep the Confidential Information confidential and not disclose any of the Confidential Information to any person, except that you may disclose the Confidential Information or portions thereof to those of your directors, officers, employees, affiliates, financial advisors, commercial banks, attorneys, and accountants (collectively, the "<u>Representatives</u>") (a) who need to know such information for the purpose of evaluating any Transaction, (b) who are informed by you of the confidential nature of the Confidential Information, and (c) who agree to be bound by the terms of this Agreement as if they were parties hereto. You agree to undertake reasonable precautions to safeguard and protect the confidentiality of the Confidential Information and to prevent your Representatives from prohibited or unauthorized disclosure or uses of the Confidential Information. You shall be responsible for any breach of this Agreement by your Representatives. In the event that you or any of your Representatives are requested or required by deposition, interrogatory, request for documents, subpoena, civil investigative demand, or similar legal process to disclose any of the Confidential Information or any information of the type described in section (4) of this Agreement, you shall provide the Debtors with prompt prior written notice of such requirement in order to enable the Debtors to (i) seek an appropriate protective order or other remedy or (ii) waive compliance, in whole or in part, with the terms of this Agreement; and you shall consult and cooperate with the Debtors to the fullest extent permitted by law with respect to taking steps to resist or narrow the scope of such request or legal process. If, in the absence of a protective order, you or any of your Representatives are nonetheless, in the opinion of your counsel or counsel of such Representative,

required by law to disclose Confidential Information, you shall (A) furnish only that portion of the Confidential Information that you are advised by written opinion of counsel is legally required, (B) give advance notice to the Debtors of the information to be disclosed as far in advance as is practical, and (C) exercise your best efforts to obtain reliable assurance that confidential treatment will be accorded such Confidential Information.

(2)      All Confidential Information will be and will remain solely the property of the relevant Debtors, and nothing in this Agreement shall be construed as granting to you any right, title or interest in or to any patent, trademark, license, copyright or other right of the Debtors.  If you determine not to proceed with any Transaction, you will promptly inform the Debtors of that decision and, in that case or at any time upon the request of the Debtors, in their sole discretion, you and your Representatives shall promptly either (i) destroy all copies of the written Confidential Information in your or their possession or under your or their custody or control (including that stored in any computer, word processor, or similar device) including, without limitation, any copies, summaries, analyses, compilations, reports, extracts or other reproductions, in whole or in part, of such written, electronic or other tangible material or any other materials in written, electronic or other tangible format based on, reflecting or containing Confidential Information prepared by you or your Representatives, and confirm such destruction to the Debtors in writing or (ii) return to the relevant Debtors all copies of the Confidential Information furnished to you by or on behalf of the Debtors in your possession or in the possession of your Representatives.  Notwithstanding such return or destruction, any oral Confidential Information will continue to be held confidential subject to the terms of this Agreement.

(3)      The term "Confidential Information" does not include any information that (i) at the time of disclosure is generally available to and known by the public (other than as a direct or indirect result of a disclosure by you or by any of the Representatives in violation of this Agreement) or (ii) was available to you on a non-confidential basis from a source (other than any Debtor or parent or affiliate of any Debtor or their respective representatives) that is not and was not prohibited from disclosing such information to you by a contractual, legal, or fiduciary obligation of confidentiality.

(4)      Without the prior written consent of the Debtors, or except as required by legal process or applicable law (subject to compliance with section (1) of this Agreement), you and your Representatives shall not (i) disclose to any person (a) that this Agreement exists, (b) that you are considering a Transaction, (c) that any investigations, discussions, or negotiations are taking place concerning any Transaction involving any Debtor and you, (d) that you have requested or received any Confidential Information, or (e) any of the terms, conditions, or other facts or information with respect to any Transaction or such investigations, discussions, or negotiations, including the status thereof or any opinion or view with respect to any Debtor or the Confidential Information. The term "person" as used in this Agreement shall be broadly interpreted to include the media and any corporation, partnership, group, individual, or entity.

(5)      You represent that other than as disclosed to the Debtors in writing prior to or simultaneously with the execution of this Agreement, neither you nor any of your affiliates or Representatives has entered into, directly or indirectly, any agreements or understandings with any person or entity (other than any of your Representatives) with respect to a possible Transaction or a transaction involving any assets of any Debtor.  You agree that without the prior written consent of the Debtors neither you nor your affiliates nor any of your Representatives will enter into, directly or indirectly, any discussions, negotiations, agreements or understandings with any person (other than the Debtors and their representatives or any of your Representatives), with respect to a possible Transaction or a transaction involving any assets of any Debtor or that could be an alternative to a Transaction.  You further agree that until the earlier of (a) the date that is one (1) year from the date of this Agreement or (b) the date on which the Debtors have publicly announced the closing of a bankruptcy court-approved sale transaction involving all or substantially all of the assets of the Debtors  (the "Restricted Period"), unless specifically invited in writing by the Debtors to do so, neither you nor any of your affiliates or Representatives will,

Page 3

directly or indirectly, acquire, offer to acquire, agree to acquire, or direct any person to acquire or make a proposal to acquire, directly or indirectly, by purchase or otherwise, any equity or debt of, or claims against, or direct or indirect rights to acquire any equity or debt of, of or, claims against, any Debtor or any subsidiary of any Debtor or of any successor to or person in control of any Debtor (including the parent company of the Debtors), or any assets or property of the Debtors or any subsidiary or division of any Debtor or of any such successor or controlling person.

(6)    You agree that Joshua Scherer of Perella Weinberg Partners ("PWP"), as financial advisor to the Debtors, has responsibility for arranging appropriate contacts for due diligence and that (a) all communications regarding any possible Transaction, (b) requests for additional information, facility tours, management or similar meetings, and (c) discussions or questions regarding procedures with respect to any Transaction, will be submitted or directed to PWP or the Debtors' counsel, Ira Dizengoff and Scott Alberino of Akin Gump Strauss Hauer & Feld LLP. Accordingly, you agree that you will not contact or communicate with any officer, director, alternate director, employee, or agent of any Debtor or affiliate of any of the foregoing persons, concerning the Confidential Information or a Transaction. You further agree that, during the Restricted Period, you will not, directly or indirectly, solicit for employment or hire any officer or employee of any Debtor or any of the Debtors' subsidiaries.

(7)    You acknowledge and agree that (a) the Debtors are free to conduct the process leading up to a possible Transaction as they, in their sole discretion but subject to bankruptcy court approval to the extent if any required, may determine (including, without limitation, by negotiating with any prospective buyer or other interested party and entering into a 'stalking horse', preliminary or definitive agreement without prior notice to you or any other person), (b) the Debtors reserve the right, in their sole discretion but subject to bankruptcy court approval to the extent if any required, to change the procedures relating to your consideration of any Transaction at any time without prior notice to you or any other person, to reject any and all proposals made by you or any of your Representatives with regard to any Transaction, and to terminate discussions and negotiations with you at any time and for any reason, and (c) unless and until a written definitive agreement concerning any Transaction has been executed (and then, only as provided in such agreement), neither any Debtor nor any of their officers, directors, employees, affiliates, stockholders, agents, advisors, representatives or controlling persons will have any legal obligation or any other liability to you of any kind whatsoever with respect to (i) any Transaction, whether by virtue of this Agreement, any other written or oral expression with respect to any Transaction or otherwise, (ii) the procedures employed in connection therewith, or (iii) any representations made by such persons, whether by virtue of this Agreement or any other written or oral expression with respect to any Transaction or otherwise. For purposes hereof, the term "definitive agreement" does not include an executed letter of intent or any other preliminary written agreement, nor does it include any written or oral acceptance of an offer or bid on your part.

(8)    You understand that the Debtors shall have the right, in its sole discretion, to determine what information to make available to you. You understand and acknowledge that none of any Debtor or any of their respective officers, directors, employees, affiliates, stockholders, agents, representatives or controlling persons is under any obligation to make any particular information available to you, or to supplement or update any Confidential Information previously furnished. You agree that none of any Debtor or any of their respective officers, directors, employees, affiliates, stockholders, agents, or controlling persons is making any representation or warranty, express or implied, as to the accuracy or completeness of the Confidential Information, and each of the Debtors and such other persons expressly disclaims any and all liability to you or any other person that may be based upon or relate to (a) the use of the Confidential Information by you or any of the Representatives or (b) any errors therein or omissions therefrom. You further agree that you are not entitled to rely on the accuracy and completeness of the Confidential Information and that you will be entitled to rely solely on those particular representations and warranties, if any, that are made to a purchaser in a definitive agreement relating to any Transaction when, as, and if it is executed, and subject to such limitations and restrictions as may be specified in such definitive agreement.

(9)     You hereby agree to indemnify, defend and hold harmless each Debtor, its stockholders, directors, officers, employees, agents, advisors, representatives and controlling persons (the "Indemnified Party"), from and against any damages, losses, costs, liabilities and expenses (including, without limitation, attorneys' fees and the cost of enforcing this indemnity) suffered by the Indemnified Party arising out of or resulting from any unauthorized use or disclosure of Confidential Information by you or your Representatives or otherwise as a result of a breach of this Agreement by you or your Representatives.

(10)    To the extent that any Confidential Information may include material subject to the attorney-client privilege, work product doctrine or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the parties understand and agree that they have a commonality of interest with respect to such matters and it is their desire, intention and mutual understanding that the sharing of such material is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege. All Confidential Information provided by any Debtor that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege and stamped and identified as such shall remain entitled to such protection under these privileges, this Agreement, and under the joint defense doctrine. Nothing in this Agreement obligates any party to reveal material subject to the attorney-client privilege, work product doctrine or any other applicable privilege.

(11)    You acknowledge that the Debtors would be irreparably injured by a breach of this Agreement by you or your Representatives, and that monetary remedies at law would be inadequate to protect the Debtors against any actual or threatened breach of this Agreement by you or your Representatives, and, without prejudice to any other rights and remedies otherwise available to the Debtors, you agree to the granting of equitable relief, including injunctive relief and specific performance, in the Debtors' favor without proof of actual damages, without any requirement of posting of bond.

(12)    You hereby represent and warrant to the Debtors, that (i) the undersigned is a duly authorized officer of you with the authority to enter into this Agreement, (ii) this Agreement has been duly authorized, executed and delivered by you and (iii) this Agreement constitutes a valid and binding agreement enforceable against you in accordance with its terms.

(13)    You agree that no failure or delay by any Debtor in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

(14)    You agree that if any provision of this Agreement shall, for any reason, be adjudged by any court of competent jurisdiction to be invalid or unenforceable, such judgment shall not affect, impair or invalidate the remainder of this Agreement but shall be confined in its operation to the provision of this Agreement directly involved in the controversy in which such judgment shall have been rendered. This Agreement shall be binding upon the parties and their respective successors and assigns.

(15)    Unless otherwise provided herein, your obligations under this Agreement shall terminate two (2) years from the date hereof, provided that such termination shall not relieve you from your responsibilities in respect of any breach of this Agreement prior to such termination.

(16)    This Agreement and all controversies arising from or relating to performance under this Agreement shall be governed by and construed in accordance with the laws of the State of New York. In connection with any dispute arising out of this Agreement, you agree to submit to the jurisdiction of the United States Bankruptcy Court for the Southern District of New York, not to bring any claim regarding such a dispute in any other court, and to waive unconditionally any objection to the laying of venue in such forum, including any claim of inconvenient forum. The

parties agree that a final judgment in any such dispute shall be conclusive and may be enforced in other jurisdictions by suits on the judgment or in any other manner provided by law.

(17)     This Agreement contains the entire agreement between the parties concerning the subject matter hereof, and no modification of this Agreement or waiver of the terms and conditions hereof will be binding unless approved in writing by the parties.

(18)     This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but both of which shall constitute the same agreement.

Please confirm your agreement to the foregoing by signing both copies of this Agreement and returning one to the undersigned.

Very truly yours,

ATARI, INC.
ATARI INTERACTIVE, INC.
CALIFORNIA US HOLDINGS, INC.
HUMONGOUS, INC.


By: _____
      James Wilson, CEO


CONFIRMED AND AGREED AS
OF THE DATE WRITTEN ABOVE:

(Entity/Individual Name):_____


By: _____
     Name:
     Title:

## Schedule 3

| Assets | Minimum Bid | Date of Auction |
|---|---|---|
| RollerCoaster Tycoon Franchise | $3,500,000 | July 16, 2013 |
| Test Drive Franchise | $1,500,000 | July 16, 2013 |
| Humongous Franchise, Fatty Bear's Birthday Surprise, Math Gran Prix | $500,000 | July 17, 2013 |
| Backyard Sports Franchise | $750,000 | July 17, 2013 |
| Total Annihilation Franchise | $250,000 | July 17, 2013 |
| Airborne Ranger Franchise | $100,000 | July 18, 2013 |
| Battlezone Franchise | $250,000 | July 18, 2013 |
| Master of Orion Franchise | $100,000 | July 18, 2013 |
| Moonbase Commander Franchise | $100,000 | July 18, 2013 |
| Star Control Franchise | $100,000 | July 18, 2013 |
| Atari Brand  / Atari Classics / Atari Casino | $15,000,000 | July 19, 2013 |

**Schedule 3(a)**

**DETAILED ASSET SCHEDULE FOR AUCTION(S)**

| RollerCoaster Tycoon Franchise |
|---|
| RollerCoaster Tycoon * |
| RollerCoaster Tycoon 2 * |
| RollerCoaster Tycoon 2: Combo Park Pack (Compilation Pack of RollerCoaster Tycoon 2 and RollerCoaster Tycoon 2: Wacky Worlds) * |
| RollerCoaster Tycoon 2: Time Twister (Expansion Pack #2) * |
| RollerCoaster Tycoon 2: Wacky Worlds (Expansion Pack #1) * |
| RollerCoaster Tycoon 3 * |
| RollerCoaster Tycoon 3: Gold! (Compilation Pack of RollerCoaster Tycoon 3 and RollerCoaster Tycoon 3: Soaked!) * |
| RollerCoaster Tycoon 3: Platinum! (Compilation Pack of RollerCoaster Tycoon 3, RollerCoaster Tycoon 3: Soaked! and RollerCoaster Tycoon 3: Wild!) * |
| RollerCoaster Tycoon 3: Soaked! (Expansion Pack #1) * |
| RollerCoaster Tycoon 3: Wild! (Expansion Pack #2) * |
| RollerCoaster Tycoon 3D * |
| RollerCoaster Tycoon Deluxe (Compilation Pack of RollerCoaster Tycoon, RollerCoaster Tycoon: Corkscrew Follies and RollerCoaster Tycoon: Loopy Landscapes) * |
| RollerCoaster Tycoon for the Xbox which also includes RollerCoaster Tycoon: Corkscrew Follies and RollerCoaster Tycoon: Loopy Landscapes * |
| RollerCoaster Tycoon Gold (Compilation Pack of RollerCoaster Tycoon, RollerCoaster Tycoon: Corkscrew Follies and RollerCoaster Tycoon: Loopy Landscapes) * |
| RollerCoaster Tycoon World Game * |
| RollerCoaster Tycoon: Corkscrew Follies (Add-On #1) * |
| RollerCoaster Tycoon: Loopy Landscapes (Add-On #2) * |
| Totally RollerCoaster (Compilation Pack of RollerCoaster Tycoon and RollerCoaster Tycoon: Loopy Landscapes) * |
| Sudden Turn: RollerCoaster Tycoon Pick Your Path! (book) |
| Sabotage!: RollerCoaster Tycoon Pick Your Path! #2 (book) |
| The Great Coaster Contest: RollerCoaster Tycoon Pick Your Path! #3 (book) |
| Kidnapped!: RollerCoaster Tycoon Pick Your Path! #4 (book) |
| Haunted Park: RollerCoaster Tycoon Pick Your Path! #5 (book) |
| Spaced Out!: RollerCoaster Tycoon Pick Your Path! #6 (book) |

*Denotes licensed IP titles

| Test Drive Franchise |
|---|
| Test Drive Unlimited Series |

| Humongous Franchise, Fatty Bear's Birthday Surprise, Math Gran Prix |
|---|
| Big Thinkers 1st Grade |
| Big Thinkers Kindergarten |
| Freddi Fish 2: The Case of The Haunted Schoolhouse |
| Freddi Fish 3: The Case of The Stolen Conch Shell |
| Freddi Fish 4: The Case of The Hogfish Rustlers of Briny Gulch |
| Freddi Fish 5: The Case of The Creature of Coral Cove |
| Freddi Fish ABC's Under the Sea |
| Freddi Fish and Luther's Maze Madness |
| Freddi Fish and Luther's Water Worries |
| Freddi Fish And The Case of the Missing Kelp Seeds |
| Freddi Fish's One-Stop Fun Shop |
| Pajama Sam 2: Thunder And Lightning Aren't So Frightening |
| Pajama Sam 3: You Are What You Eat From Your Head To Your Feet |
| Pajama Sam Life Is Rough When You Lose Your Stuff |
| Pajama Sam: Games To Play On Any Day |
| Pajama Sam: No Need To Hide When It's Dark Outside |
| Pajama Sam's Lost & Found |
| Pajama Sam's One-Stop Fun Shop |
| Pajama Sam's Sock Works |
| Putt-Putt and Pep: A Pop-Up Book With Punch Out Car (Book) |
| Putt-Putt and Pep's Balloon - O – Rama |
| Putt-Putt and Pep's Dog On A Stick |
| Putt-Putt Enters The Race |
| Putt-Putt Goes To The Moon |
| Putt-Putt Joins the Circus |
| Putt-Putt Joins The Parade |
| Putt-Putt Saves The Zoo |
| Putt-Putt Travels Through Time |
| Putt-Putt: Pep's Birthday Surprise |
| Putt-Putt's One-Stop Fun Shop |
| Spy Fox 2: Some Assembly Required |
| Spy Fox 3: Operation Ozone |
| Spy Fox in Cheese Chase |
| Spy Fox in Dry Cereal |
| Spy Fox in Hold The Mustard |
| Fatty Bear's Birthday Surprise |
| Math Gran Prix |

| Backyard Sports Franchise | |
|---|---|
| Backyard Baseball (PC 10/10/97) | Backyard Football (DS 10/23/07) |
| Backyard Baseball (GameCube 4/3/03) | Backyard Football '08 (PC 10/23/07) |
| Backyard Baseball (GBA 5/30/02) | Backyard Football '09 (DS 10/21/08) |
| Backyard Baseball (PS2 3/23/04) | Backyard Football '09 (PS2 10/21/08) |
| Backyard Baseball '09 (DS 3/25/08) | Backyard Football '09 (Wii 10/21/08) |
| Backyard Baseball '09 (Wii 6/10/08) | Backyard Football '09 (PC 10/29/08) |
| Backyard Baseball '09 (PS2 6/10/08) | Backyard Football '10 (PS2 10/20/09) |
| Backyard Baseball '09 (PC 3/25/08) | Backyard Football '10 (Wii 10/20/09) |
| Backyard Baseball '10 (DS 3/26/09) | Backyard Football '10 (Xbox 360 10/20/09) |
| Backyard Baseball '10 (Wii 3/27/09) | Backyard Football 2002 (PC 2001) |
| Backyard Baseball '10 (PS2 4/28/09) | Backyard Football 2004 (PC 9/4/03) |
| Backyard Baseball 2001 (PC 6/00) | Backyard Football 2006 (GBA 10/18/05) |
| Backyard Baseball 2003 (PC 6/7/02) | Backyard Football 2006 (PC 9/20/05) |
| Backyard Baseball 2005 (PC 6/22/04) | Backyard Football 2006 (PS2 10/4/05) |
| Backyard Baseball 2006 (GBA 3/16/05) | Backyard Sports: Football 2007 (GBA 9/26/06) |
| Backyard Sports: Baseball 2007 (GBA 6/12/06) | Backyard Hockey (PC 10/18/02) |
| Backyard Sports: Baseball 2007 (GameCube 4/3/07) | Backyard Hockey (GBA 10/9/03) |
| Backyard Sports: Baseball 2007 (PC 9/11/06) | Backyard Hockey 2005 (PC 9/21/04) |
| Backyard Sports: Baseball 2007 (PS2 9/5/06) | Backyard Hockey (DS 10/2/07) |
| Backyard Basketball (MAC 2001) | Backyard Skateboarding (GBA 10/4/04) |
| Backyard Basketball (PC 5/31/03) | Backyard Skateboarding (PC 10/4/05) |
| Backyard Basketball (PS2 10/21/03) | Backyard Skateboarding (PC 9/27/04) |
| Backyard Basketball (GBA 9/22/04) | Backyard Soccer (PC/MAC 1998) |
| Backyard Sports: Basketball 2007 (PC 2/10/07) | Backyard Soccer (PS 9/28/01) |
| Backyard Sports: Basketball 2007 (PS2 2/13/07) | Backyard Soccer Major League Soccer Edition (PC 2001) |
| Backyard Sports: Basketball 2007 (GBA 11/14/06) | Backyard Sports Rookie Rush (DS 10/20/10) |
| Backyard Football (PC 1999) | Backyard Sports Rookie Rush (Wii 10/20/10) |
| Backyard Football (GBA 9/25/02) | Backyard Sports Rookie Rush (Xbox 360 10/20/10) |
| Backyard Football (GameCube 10/10/02) | Backyard Sports Sandlot Sluggers (DS 5/25/10) |
| Backyard Football '08 (PS2 10/16/07) | Backyard Sports Sandlot Sluggers (Xbox 360 5/25/10) |
| Backyard Football (Wii 10/16/07) | Backyard Sports Sandlot Sluggers (Wii 5/25/10) |

| Total Annihilation Franchise |
|---|
| Total Annihilation |
| Total Annihilation: Battle Tactics |
| Total Annihilation: The Core Contingency |
| Total Annihilation: Kingdoms |
| Total Annihilation: Gold Edition |
| Total Annihilation: Commander Pack |
| Total Annihilation: Kingdoms-Iron Plague |

| Airborne Ranger Franchise |
|---|
| Airborne Ranger |

| **Battlezone Franchise** |
|---|
| Battlezone |
| Battlezone 2000 |

| Master of Orion Franchise |
|---|
| Master Of Orion |
| Master of Orion II: Battle at Antares |
| Master Of Orion 3 |

| Moonbase Commander Franchise |
| --- |
| Moonbase Commander |

| **Star Control Franchise** |
|---|
| Star Control 3 |

| Atari Brand / Atari Classics / Atari Casino ||
|---|---|
| **Atari** | **Fuji** |
| 3D Asteroids | Basketball |
| 3D Tic-Tac-Toe | Basketbrawl |
| A Game of Concentration | Bionic Breakthrough |
| Adventure | Black Belt |
| Adventure II | Black Jack |
| Agent X | Black Widow |
| Air-Sea Battle | Boogie Demo |
| Akka Arrh | Bowling |
| Alien Brigade | Boxing |
| Alpha 1 | Brain Games |
| Anti-Aircraft | Breakout |
| Aquaventure | Breakout Boost |
| Asteroids | Breakout Boost+ |
| Asteroids Deluxe | Canyon Bomber |
| Asteroids On-line - Atari GO version | Casino |
| Asteroids: Gunner | Caverns of Mars |
| Asteroids: Gunner+ | Centipede |
| Atari 80 Classic Games in One! | Centipede: Infestation |
| Atari Anniversary Advance | Centipede: Origins |
| Atari Anniversary Edition | Championship Soccer |
| Atari Anthology | Circus Atari |
| Atari Arcade Hits: Volume 1 | Cloak & Dagger |
| Atari Arcade Hits: Volume 2 | Cloud 9 |
| Atari Baseball | Codebreaker |
| Atari Basketball | Combat |
| Atari Casino | Cops 'N Robbers |
| Atari Classics: Evolved | Countermeasure |
| Atari Football | Crash 'N Score |
| Atari Greatest Hits | Crystal Castles |
| Atari Greatest Hits: Volume 1 | Dark Chambers |
| Atari Greatest Hits: Volume 2 | Demons to Diamonds |
| Atari Mini Golf | Desert Falcon |
| Atari Outlaw | Destroyer |
| Atari Revival | Doctor Pong "aka Puppy Pong" |
| Atari Soccer | Dodge 'Em |
| Atari Video Cube | Dominos |
| Avalanche | Double Dunk |
| Backgammon | Drag Race |
| Barroom Baseball | Fast Freddie |
| Basic Programming | Fatal Run |

11

| Atari Brand / Atari Classics / Atari Casino (Cont'd) | |
|---|---|
| Final Legacy | Monstercise |
| Fire Truck | Monte Carlo |
| Firefox | Moto Psycho |
| Flag Capture | MotoRodeo |
| Flyball | Night Driver |
| Food Fight (Charley Chuck's) | Ninja Golf |
| Football | Off the Wall |
| Frisky Tom | Orbit |
| Frog Pond | Othello |
| Fun With Numbers | Outlaw |
| Goal 4 | Peek-A-Boo |
| Golf | Pin Pong |
| Gotcha | Planet Smashers |
| Gran Trak 10 | Pong |
| Gran Trak 20 | Pong Doubles |
| Gravitar | Pong Tournament |
| Hangman | Pong World |
| Haunted House | Pong: The Next Level |
| HiWay | Pool Shark |
| Holey Moley | Pursuit |
| Home Run | Quadra Pong |
| Human Cannonball | Quadrun |
| Hunt & Score | Quantum |
| I, Robot | Quiz Show |
| Indy 4 | Qwak! |
| Indy 500 | Radar Lock |
| Indy 800 | Realsports Baseball |
| Jet Fighter | Realsports Basketball |
| LeMans | Realsports Boxing |
| Liberator | Realsports Football |
| Lunar Battle | Realsports Soccer |
| Lunar Lander | Realsports Tennis |
| Major Havoc | Realsports Volleyball |
| Maze Craze | Rebound |
| Meebzork | Red Baron |
| Meltdown | Retro Atari Classics |
| Micro-gammon | Return to Haunted House |
| Millipede | Roadrunner |
| Mind Maze | Runaway |
| Miniature Golf | Saboteur |
| Missile Command | Save Mary |
| Missile Command 2 | Scrapyard Dog |
| Missile Command 3D | Secret Quest |

| Atari Brand / Atari Classics / Atari Casino (Cont'd) | |
|---|---|
| Sentinel | Super Baseball |
| Shark Jaws | Super Breakout |
| Shooting Arcade | Super Bunny Breakout |
| Sky Diver | Super Football |
| Sky Raider | Superbug |
| Slot Machine | Surround |
| Slot Racers | Swordquest: Earthworld |
| Smokey Joe | Swordquest: Fireworld |
| Soccer | Swordquest: Waterworld |
| Solar War | Tank |
| Solaris | Tank II |
| Space Duel | Tank III |
| Space Race | Telepathy |
| Space War | Tempest |
| Space War 2000 | Tempest 2000 |
| Spike | Tempest: Menace of the Arcade Dwellers - Online version |
| Spitfire | Tournament Table |
| Sprint | Triple Hunt |
| Sprint 4 | Tubes |
| Sprint 8 | Typo Attack |
| Sprintmaster | Ultra Tank |
| Star Raiders | Video Checkers |
| Star Raiders II | Video Chess |
| Star Ship | Video Olympics |
| Steeplechase | Video Pinball |
| Stellar Track | Warlords |
| Stock Car | Wizard |
| Street Racer | Wolf Pack |
| Stunt Cycle | Xari Arena |
| Submarine Commander | Yar's Return |
| Subs | Yar's Revenge |
| Super Asteroids & Missile Command | Yellow Submarine |

## **EXHIBIT B**

**Sale(s) Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| ATARI, INC., et al., | ) Case No. 13-10176 (JMP) |
|  | ) |
| Debtors.[1] | ) Jointly Administered |
|  | ) |

## NOTICE OF (I) PROPOSED SALE(S) OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (II) AUCTION(S), AND (III) SALE HEARING THEREOF

**PLEASE TAKE NOTICE** that, on January 21, 2013, Atari, Inc. ("*Atari*") and certain of its affiliates, as debtors and debtors in possession in the above captioned chapter 11 cases (collectively, the "*Debtors*") filed for protection under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Southern District of New York (the "*Court*"). Pursuant to the Court's Order entered on January 24, 2013, these cases are jointly administrated under case number 13-10176 (JMP).

**PLEASE TAKE FURTHER NOTICE** that on May 21, 2013, the Debtors filed the *Debtors' Motion for Entry of (I) an Order Approving (A) Bid Procedures in Connection With the Sale(s) of Substantially All of the Debtors' Assets, (B) Procedures Related to the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Such Sale(s), (C) the Form and Manner of Notice Thereof, (D) Scheduling the Hearing to Consider Approval of the Sale(s), (E) Granting Certain Related Relief, and (F) Procedures to Sell the Remaining De Minimis Assets Without Further Court Approval; and (II) an Order Approving the Sale of Substantially All of the Assets* (the "*Sale Motion*")[2] to, among other things, (a) establish auction and bid procedures (the "*Bid Procedures*") with respect to the proposed sale or sales pursuant to Bankruptcy Code section 363 (the "*Sale(s)*") of specific categories of the Debtors' assets, which categories are identified in **Schedule 3** attached to the Bid Procedures (defined below) and together comprise substantially all of the Debtors' assets (collectively, the "*Assets*"), (b) schedule auction(s), if necessary and a sale hearing (the "*Sale Hearing*") with respect to the Sale(s), (c) approve procedures for the sale of the *De Minimis* Assets identified on **Exhibit 2** to the Sale Motion and (d) enter an order (the "*Sale Order*") after the Sale Hearing to approve the sale(s) of the Assets and the assumption and assignment of certain contracts and leases relating thereto free and clear of all liens, claims, encumbrances and other interests.

**PLEASE TAKE FURTHER NOTICE that the Debtors propose that auction(s) ("*Auction(s)*") will be conducted for each category of assets at the offices of Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 at 10:00 a.m.**

---

[1] The Debtors are: Atari, Inc.; Atari Interactive, Inc.; Humongous, Inc.; and California U.S. Holdings, Inc.

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Sale Motion.

(**prevailing Eastern Time**) on **July 16, July 17, July 18 and July 19, 2013**, respectively. Each Auction will continue until such time as the highest or otherwise best offer(s) is determined. The Debtors may adopt rules for the Auction(s) that will promote the goals of the auction process and that are not inconsistent with any of the provisions of the Bid Procedures. Only bidders who submit bids in accordance with the Bid Procedures will be allowed to attend the Auction(s). A copy of the Sale Motion, which contains the Bid Procedures, may be obtained by (a) contacting the counsel for the Debtors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036-6745 (Attn: Ira S. Dizengoff, Esq., idizengoff@akingump.com and Kristine G. Manoukian, Esq., kmanoukian@akingump.com) and Robert S. Strauss Building, 1333 New Hampshire Avenue, N.W. Washington D.C. 20036 (Attn: Scott L. Alberino, Esq., salberino@akingump.com); (b) accessing the Court's website at http://www.nysb.uscourts.gov (please note that a PACER password is needed to access documents on the Court's website); (c) viewing the docket of these cases at the Clerk of the Court, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004; or (d) accessing the public website maintained by the Debtors' claims and noticing agent, BMC Group, http://www.bmcgroup.com/atari, or upon request to the same at: (888) 909-0100.

**PLEASE TAKE FURTHER NOTICE** that, on [_____], 2013, the Court entered an order (the "***Bid Procedures Order***") approving the Bid Procedures and setting a date for the Sale Hearing. The Sale Hearing is currently scheduled to be held on **July 24, 2013 at 10:00 a.m. (prevailing Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, before the Honorable James M. Peck, United States Bankruptcy Judge, to consider the Debtors' selection of the highest or otherwise best bid(s) and the approval of the Sale(s). The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court.

**PLEASE TAKE FURTHER NOTICE THAT OBJECTIONS TO ANY RELIEF REQUESTED IN THE SALE ORDER, INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE(S) OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, MUST BE IN WRITING, FILED, AND SERVED TO AS TO ACTUALLY BE RECEIVED BY THE OBJECTION NOTICE PARTIES (defined below) BY JULY 17, 2013 AT 4:00 P.M. (PREVAILING EASTERN TIME); *PROVIDED, HOWEVER,* THAT OBJECTIONS AS TO THE AUCTION(S) OR THE SELECTION OF THE SUCCESSFUL BID(S) OR THE BACK-UP BID(S) SHALL BE IN WRITING, FILED, AND SERVED SO AS TO BE ACTUALLY RECEIVED BY THE OBJECTION NOTICE PARTIES BY JULY 24, 2013 AT 9:00 A.M. (PREVAILING EASTERN TIME).**

**PLEASE TAKE FURTHER NOTICE** that the following constitute the **"*Objection Notice Parties*"**: (i) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Ira S. Dizengoff, Esq. and Kristine G. Manoukian, Esq.) and Robert S. Strauss Building, 1333 New Hampshire Avenue, N.W. Washington D.C. 20036 (Attn: Scott L. Alberino, Esq.), counsel to the Debtors, (ii) Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036 (Attn.: Cathy Hershcopf, Esq. and Jeffrey Cohen, Esq.), counsel to the

Committee, (iii) Bracewell & Giuliani, 1251 Avenue of the Americas, 49th Floor, New York, New York 10020 (Attn.: Robert G. Burns, Esq. and Andrew J. Schoulder, Esq.), counsel to Alden, (iv) Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn.: Ken Coleman, Esq.), counsel to Atari, S.A., (v) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Richard C. Morrissey, Esq.), (vi) the Internal Revenue Service, (vii) the United States Department of Justice, and (viii) any persons who have filed a request for notice in the above-captioned chapter 11 cases.

This notice is qualified in its entirety by the Court's order approving the Bid Procedures (the "**Bid Procedures Order**") enclosed herein. All persons and entities are urged to read the Bid Procedures Order and the provisions thereof carefully. To the extent that this notice is inconsistent with the Bid Procedures Order, the terms of the Bid Procedures Order shall govern.

New York, New York  
Dated: [_____], 2013

*/s/* _____

AKIN GUMP STRAUSS HAUER & FELD LLP  
Ira S. Dizengoff  
Kristine G. Manoukian  
One Bryant Park  
New York, New York 10036  
(212) 872-1000 (Telephone)  
(212) 872-1002 (Facsimile)

Scott L. Alberino  
Robert S. Strauss Building  
1333 New Hampshire Avenue, N.W.  
Washington, DC 20036-1564  
(202) 887-4000 (Telephone)  
(202) 887-4288 (Facsimile)

*Counsel to the Debtors and Debtors in Possession*

# EXHIBIT C

## Assumption and Assignment Notice

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | )  | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ATARI, INC., et al., | ) | Case No. 13-10176 (JMP) |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

### NOTICE OF PROPOSED ASSUMPTION, ASSIGNMENT, AND CURE AMOUNTS WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED TO THE SALE(S) OF THE DEBTORS' ASSETS

**TO:** **[COUNTERPARTY]:**

**PLEASE TAKE NOTICE** that on May 21, 2013, above-captioned debtors and debtors in possession (collectively, the "***Debtors***") filed a motion (the "***Sale Motion***")[2] to, among other things, (a) establish auction and bid procedures (the "***Bid Procedures***") with respect to the proposed sale or sales pursuant to Bankruptcy Code section 363 (the "***Sale(s)***") of specific categories of the Debtors' assets, which categories are identified in **Schedule 3** attached to the Bid Procedures (defined below) and together comprise substantially all of the Debtors' assets (collectively, the "***Assets***"), (b) schedule auction(s), if necessary and a sale hearing (the "***Sale Hearing***") with respect to the Sale(s), (c) approve procedures for the sale of the *De Minimis* Assets and (d) enter an order (the "***Sale Order***") after the Sale Hearing to approve the sales of the Assets and the assumption and assignment of certain contracts and leases relating thereto free and clear of all liens, claims, encumbrances and other interests.

**PLEASE TAKE FURTHER NOTICE** that, on [_____], 2013, the Court entered an order (the "***Bid Procedures Order***") approving the Bid Procedures and setting a date for the Sale Hearing. The Sale Hearing is currently scheduled to be held on July 24, 2013 at 10:00 a.m. (prevailing Eastern Time) at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, before the Honorable James M. Peck, United States Bankruptcy Judge, to consider the Debtors' selection of the highest or otherwise best bid(s) and the approval of the Sale(s). The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Motion, the Debtors have sought authorization to assume and assign certain executory contracts and unexpired leases relating to the Assets (the "***Designated Contracts***") upon consummation of the transactions contemplated by the Sale(s). A list of the executory contracts and unexpired leases proposed to be assumed by each Qualified Bidder is attached hereto as **Exhibit 1** and is also available at the

---

[1] The Debtors are: Atari, Inc.; Atari Interactive, Inc.; Humongous, Inc.; and California U.S. Holdings, Inc.

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Sale Motion.

Website maintained by the Debtors' claims and noticing agent, BMC Group, at http://www.bmcgroup.com/atari (the "**Website**"), or upon request to the same at: (888) 909-0100. If any executory contract or unexpired lease is added to the schedule of Designated Contracts, a copy of the applicable notice will be served by the Debtors on the counterparty by overnight courier service within one (1) business day of such addition (and in no event less than one (1) business day before the Sale Hearing).

**PLEASE TAKE FURTHER NOTICE** that Bankruptcy Code section 365(b)(1) requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. The required cure amount (the "**Cure Amount**") for each Designated Contract calculated by the Qualified Bidder(s) is listed on **Exhibit 1** hereto and on the Website. Please note that if no amount is stated for a particular Designated Contract, the Qualified Bidder(s) believes that there is no Cure Amount outstanding for such contract or lease.

**YOU ARE RECEIVING THIS NOTICE BECAUSE
YOU MAY BE A PARTY TO A DESIGNATED CONTRACT
(OR REPRESENT A PARTY TO A DESIGNATED CONTRACT).**

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Bid Procedures Order, you must file and serve any objections to (i) the proposed assumption and assignment set forth in this Notice and (ii) if applicable, the proposed Cure Amount, **no later than two (2) business days before the Sale Hearing**; *provided, however*, if your executory contract or unexpired lease was subsequently added to the original schedule of Designated Contracts you may file an objection as aforesaid at any time before the Sale Hearing or by appearing and objecting at the Sale Hearing (as applicable, the "**Objection Deadline**").

To the extent that you object to (i) the proposed assumption and assignment of your respective Designated Contract as set forth in this Notice or (ii) the Cure Amount, then **you must file with the Court and serve an objection upon the following parties, so as to be actually received by no later than the applicable Objection Deadline:** (a) counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Ira S. Dizengoff, Esq. and Kristine G. Manoukian, Esq.) and Robert S. Strauss Building, 1333 New Hampshire Avenue, N.W. Washington D.C. 20036 (Attn: Scott L. Alberino, Esq.), (b) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Richard C. Morrissey, Esq.); and (c) parties in interest who have filed a notice of appearance in these cases pursuant to Bankruptcy Rule 2002. **Any objection to the proposed assumption and assignment must state with specificity the legal and factual basis on which the objection is premised. Additionally, any objection to the Cure Amount must state with specificity what other Cure Amount is required and provide appropriate documentation in support thereof.**

**PLEASE TAKE FURTHER NOTICE** that your objection, if any, will be heard and determined at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, if an objection to a Cure Amount is filed, the Successful Bidder reserves the right to delete the applicable contract or lease as a Designated

2

Contract if the Cure Amount is ultimately determined by order of the Court to be higher than the Cure Amount set forth on **Exhibit 1** hereto.

**PLEASE TAKE FURTHER NOTICE** that, if no objection to the assumption and assignment of a Designated Contract or Cure Amount is timely filed and served, (a) the non-Debtor counterparty to the proposed assumption and assignment of a Designated Contract and/or the Cure Amount related thereto set forth on *Exhibit 1* or on the Website shall be (i) deemed to have consented to the proposed assumption and assignment and the respective Cure Amount, notwithstanding anything to the contrary in any Designated Contract or any other document, and (ii) forever barred from objecting to the proposed assumption and assignment and the respective Cure Amount, and from asserting any other claims related to such Designated Contract against the Debtors, their estates or the relevant Successful Bidder.

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OF ANY DESIGNATED CONTRACT SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT AT ANY TIME BEFORE THE DEBTORS ASSUME SUCH EXECUTORY CONTRACT. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE COURT.**

New York, New York
Dated: [_____], 2013

/s/
_____
AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Kristine G. Manoukian
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

Scott L. Alberino
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
(202) 887-4000 (Telephone)
(202) 887-4288 (Facsimile)

*Counsel to the Debtors and Debtors in Possession*

104754197 v2

**Exhibit 1**

**Designated Contracts**

| Counterparty Name | Description of Contract | Cure Amount, if any |
|---|---|---|
|  |  | $_____ |