STEPHEN C. STEINBERG (SBN 230656)
 *ssteinberg@bzbm.com*
TIFFANY S. HANSEN (SBN 292850)
 *thansen@bzbm.com*
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone:  (415) 956-1900
Facsimile:   (415) 956-1152

Mark S. Palmer (SBN 203256)
 *mark@palmerlex.com*
4 Meadow Drive
Mill Valley, California 94941
Telephone:  (415) 336-7002
Facsimile:   (415) 634-1671

Attorneys for Defendants and Counter-Claimants
PAUL REICHE III and ROBERT FREDERICK FORD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| STARDOCK SYSTEMS, INC.,<br><br>             Plaintiff,<br><br>    v.<br><br>PAUL REICHE III and ROBERT FREDERICK FORD,<br><br>             Defendants.<br><br>PAUL REICHE III and ROBERT FREDERICK FORD,<br><br>             Counter-Claimants,<br><br>    v.<br><br>STARDOCK SYSTEMS, INC.,<br><br>             Counter-Defendant. | Case No. 4:17-CV-07025-SBA<br><br>**REICHE AND FORD'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF BRAD WARDELL IN SUPPORT OF STARDOCK'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED**<br><br>Judge:  Hon. Saundra B. Armstrong<br><br>Complaint Filed:  Dec. 8, 2017<br>Trial Date:  June 24, 2019 |

1  Defendants and Counter-Claimants Paul Reiche III ("Reiche") and Robert Frederick Ford
2  ("Ford") (collectively, "Reiche and Ford") hereby submit the following objections to the
3  Declaration of Brad Wardell ("Wardell Declaration") in Support of Stardock's *Ex Parte* Motion
4  for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should
5  Not Be Granted ("Stardock's PI Motion"). The Wardell Declaration is objectionable for several
6  reasons and should be disregarded or accorded little or no weight in the determination of
7  Stardock's PI Motion.

8  **I.   PORTIONS OF THE WARDELL DECLARATION SHOULD BE DISREGARDED**

9  The Wardell Declaration should be disregarded for purposes of Stardock's PI Motion,
10 because it is inadmissible under the Federal Rules of Evidence ("FRE"). The Federal Rules of
11 Evidence apply to evidence submitted to the Court on motion practice. FRE 101 (Rules of
12 Evidence apply to all proceedings in the courts of the United States); FRE 1101 (listing exceptions
13 to Rule 101). While courts have some discretion to consider inadmissible evidence when a
14 preliminary injunction is urgently needed to prevent irreparable harm before a full resolution on
15 the merits is possible, courts routinely decline to consider, or afford any weight o, such
16 inadmissible evidence in appropriate circumstances. *See* Beijing Tong Ren Tang (USA) Corp. v.
17 TRT USA Corp., 676 F.Supp.2d 857, 861 (N.D. Cal. 2009); *U.S. v. Guess*, 2004 WL 3314940, at
18 *4 (S.D. Cal. Dec. 15, 2004) ("conditional inferences, innuendo, and even strong suspicions do not
19 satisfy [the movant's] burden"); *Kitsap Physicians Service v. Washington Dental Service*, 671
20 F.Supp. 1267, 1269 (W.D. Wa. 1987) (refusing to consider affidavits "that would have been
21 inadmissible under the Federal Rules of Evidence" and denying preliminary injunction).

22 **II.  RELEVANT FEDERAL RULES OF EVIDENCE**

23 In Reiche and Ford's evidentiary objections that follow, Reiche and Ford rely on the
24 following evidentiary rules:

25 **FRE 602:** "A witness may not testify to a matter unless evidence is introduced sufficient
26 to support a finding that the witness has personal knowledge of the matter."

27 **FRE 701:** "If a witness is not testifying as an expert, testimony in the form of an opinion is
28 limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly

understanding the witness's testimony or to determining a fact in issue; (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

**FRE 801, 802:** ""Hearsay" means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Hearsay is not admissible.

**FRE 1002:**  "An original writing, recording, or photograph is required in order to prove its content unless [the] rules or a federal statute provide otherwise."

**Speculation:**  Numerous courts have held that speculative evidence is inadmissible. *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 474 (9th Cir. 1997); *Nevada Power Co. v. Monsano Co.*, 891 F.Supp. 1406, 1415 (D. Nev. 1995) ("speculative testimony about how another might have acted without personal knowledge is not admissible as evidence."); *Rhoades v. Alameida*, 2008 WL 3154735, at *2 (E.D. Cal. Aug. 4, 2008); *Alfano v. BRP Inc.*, 2010 WL 2292265, at *2 (E.D. Cal. June 4, 2010).

## III. SPECIFIC EVIDENTIARY OBJECTIONS

| | **Proffered Evidence** | **Objection** |
|---|---|---|
| 1. | **Wardell Decl., ¶ 3, Pg. 2, Lines 8-10**<br><br>"Stardock purchased all rights to the Star Control intellectual property." | FRE 602<br>FRE 1002<br>Lack of Foundation<br><br>Wardell has failed to provide the foundation establishing the purported purchase of "all rights to the Stardock intellectual property."<br><br>Moreover, the documents memorializing the purported purchase are required to prove that such a purchase took place and are the "best evidence" of such a purchase. |
| 3. | **Wardell Decl., ¶ 7, Pg. 3, Lines 1-2**<br><br>"Stardock has not incorporated any copyrightable artwork from Star Control I, | FRE 602<br>FRE 701 |

| | | |
|---|---|---|
| | Star Control II, or Star Control III into the *Origins* game itself." | Wardell lacks the personal knowledge necessary to make this statement, as he does not have the expertise necessary to provide testimony as to what constitutes "copyrightable artwork."  His opinion therefore constitutes improper lay witness testimony that encompasses technical and/or specialized exclusively within the scope of Rule 702. |
| 4. | **Wardell Decl., ¶ 15, Pg. 3, Lines 24-26**<br><br>"We expect similar numbers for Origins.  A DMCA takedown notice on Steam would reduce sales and revenue by approximately 88% turning what would have been a successful game into a failure." | <u>FRE 602</u><br><u>Lack of Foundation</u><br><u>Speculation</u><br><br>Wardell has failed to provide the foundation necessary to support his statement that Stardock expects similar numbers for Origins or that a DMCA notice would reduce sales and revenue by approximately 88%.<br><br>Wardell lacks personal knowledge and is speculating as to whether (1) Origins would be a successful game, and (2) a DMCA notice would turn Origins into a failure. |
| | **Wardell Decl., ¶ 16, Pg. 4, Lines 5-6**<br><br>"and its reputation will be harmed in the marketplace." | <u>FRE 602</u><br><u>Lack of Foundation</u><br><u>Speculation</u><br><br>Wardell lacks personal knowledge and is speculating as to whether Stardock's reputation will be harmed. |
| | **Wardell Decl., ¶ 24, Pg. 5, Lines 1-2**<br><br>"Any DMCA takedown notice will also irreparably impact Stardock's ability to partner with a game console publisher." | <u>FRE 602</u><br><u>Lack of Foundation</u><br><u>Speculation</u><br><br>Wardell lacks personal knowledge and is speculating as to whether a DMCA notice will impact its ability to partner with a console publisher. |
| | **Wardell Decl., ¶ 24, Pg. 5, Lines 3**<br><br>"A DMCA takedown of the game will prevent any console publisher from publishing the game.  Without a game | <u>FRE 602</u><br><u>Lack of Foundation</u><br><u>Speculation</u> |

| | | |
|---|---|---|
| | console publisher, *Origins* will only be available on PC which will reduce its potential audience and revenue by approximately 50 percent." | Wardell lacks personal knowledge and is speculating as to whether a DMCA notice will prevent a console publisher from publishing Origins.<br><br>Wardell has failed to provide foundation or otherwise establish personal knowledge that Stardock's potential audience and revenue will be reduced by approximately 50 percent.  This statement is speculative. |
| | **Wardell Decl., ¶ 25, Pg. 5, Lines 9-10**<br><br>"DMCA take down notices permanently harm our relationship with our customers." | <u>FRE 602</u><br><u>Lack of Foundation</u><br><u>Speculation</u><br><br>Wardell lacks personal knowledge and is speculating as to whether a DMCA notice will permanently harm Stardock's relationship with its customers. |
| | **Wardell Decl., ¶ 26, in its entirety**<br><br>"The rumored suggestion that *Origins* will not be released has *already* led to backlash from Stardock's customers who have pre-ordered the game and then requested a refund. Following are quotes from customers who requested a refund "because the game might not be released": [*customer quotes removed for brevity but subject to the objection*]." | <u>FRE 801, 802</u><br><u>Lacks Foundation</u><br><br>The purported statements from Stardock's customers are extrajudicial statements now offered for their truth and are therefore inadmissible hearsay.<br><br>Moreover, Wardell has failed to provide information sufficient to establish the foundation for these statements, or even indicate where the statements originated. For this reason, the statements are inherently unreliable. |
| | **Wardell Decl., ¶ 28, Pg. 6, Lines 12-15**<br><br>"False accusations that create doubt amongst Stardock's ecosystem of partnerships and players in the industry will have material financial and reputation impacts that will have direct financial consequences due to failure to deliver on existing contracts." | <u>FRE 602</u><br><u>Lack of Foundation</u><br><u>Speculation</u><br><br>Wardell has failed to establish foundation for his insinuation that statements made by Reiche and Ford are false.<br><br>Wardell lacks personal knowledge and is speculating as to the financial and reputation impacts that could occur if *Origins* is not released as scheduled. |

| | | |
|---|---|---|
| | **Wardell Decl., ¶ 29, Pg. 6, Lines 18-19**<br><br>"The damage from a failed launch would likely impact the sale of not only *Origins*, but all of Stardock's offerings." | FRE 602<br>Lack of Foundation<br>Speculation<br><br>Wardell lacks personal knowledge and is speculating as to the "likely impact" and damage that could be associated with a failed launch.<br><br>Wardell has failed to establish foundation sufficient to support his statement that a failed launch of *Origins* would impact the sale of "all" of Stardock's offerings. |
| | **Wardell Decl., ¶ 30, Pg. 6, Line 24 – Pg. 7, Line 3**<br><br>"Without a legal avenue for purchase, many customers will acquire the game through piracy distribution channels.  Sales would be irreparably lost because if there is no legal means to obtain the game many people will resort to getting it some other way.  We project sales of approximately $3.1 million in the first 60 days of *Origins'* release with approximately $2 million of that being in the first 14 days.  Sales lost due to piracy would be difficult to calculate, but would be significant in any case." | FRE 602<br>Lack of Foundation<br>Speculation<br><br>Wardell lacks personal knowledge and is speculating as to the expected actions of its customers in the event *Origins* is not released as scheduled.<br><br>Wardell lacks foundation and is speculating as to whether sales would be "irreparably lost."<br><br>Wardell has failed to establish foundation sufficient to support Stardock's projected sales of the *Origins* release. |
| | **Wardell Decl., ¶ 31, Pg. 7, Lines 4-5**<br><br>"The gaming press would also interpret a DMCA take down notice as a signal that the merits of the case are with Reiche and Ford." | FRE 602<br>Lack of Foundation<br>Speculation<br><br>Wardell lacks personal knowledge and is speculating as to how the gaming press would interpret a DMCA notice. |
| | **Wardell Decl., ¶ 31, Pg. 7, Lines 6-8**<br><br>"should a takedown notice preclude sale of *Origins* on Steam, it would permanently damage the value of Stardock's brand and reputation and very likely impact the sales of the *Origins* game." | FRE 602<br>Lack of Foundation<br>Speculation<br><br>Wardell lacks personal knowledge and is speculating as to the purported damage that would result from the issuance of a DMCA notice, including with regard to any |

| | |
|---|---|
| | purported reputational harm and damage to Stardock's brand. |
| **Wardell Decl., ¶ 32, Pg. 7, Lines 9-11**<br><br>"Any delay in the release of *Star Control: Origins* would require Stardock to severely cut back on its gaming staff and require it to lay off approximately 26 employees." | <u>FRE 602</u><br><u>Lack of Foundation</u><br><u>Speculation</u><br><br>Wardell has failed to establish foundation sufficient to support his statement that a delay in the release of *Origins* would require Stardock to lay off approximately 26 employees. |

DATED:  September 17, 2018

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation


By:     /s/ Stephen C. Steinberg
      Stephen C. Steinberg
      Attorneys for Defendants and Counter-Claimants
      PAUL REICHE III and ROBERT FREDERICK FORD