Robert A. Weikert (Bar No. 121146)
rweikert@nixonpeabody.com
Dawn N. Valentine (Bar No. 206486)
dvalentine@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center
San Francisco, California 94111-3600
Tel: (415) 984-8200
Fax: (415) 984-8300

David L. May (appearance *pro hac vice*)
dmay@nixonpeabody.com
Jennette E. Wiser (appearance *pro hac vice*)
jwiser@nixonpeabody.com
NIXON PEABODY LLP
799 9th Street NW
Washington, DC 20001-4501
Tel: (202) 585-8000
Fax: (202) 585-8080

Jason T. Kunze (appearance *pro hac vice*)
jkunze@nixonpeabody.com
NIXON PEABODY LLP
70 West Madison Street, 35th Floor
Chicago, IL 60602
Tel: (312) 977-4400
Fax: (312) 977-4405

*Attorneys for Stardock Systems, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| STARDOCK SYSTEMS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PAUL REICHE III and ROBERT FREDERICK FORD, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM | Case No.: 4:17-cv-07025-SBA <br><br> **DECLARATION OF DAVID L. MAY IN SUPPORT OF STARDOCK SYSTEMS, INC.'S MOTION FOR PRELIMINARY INJUNCTION** |

1    I, David L. May, declare:

2    1.    I am a partner at Nixon Peabody LLP, counsel of record for plaintiff Stardock Systems, Inc. ("Stardock").  I make this declaration in support of Stardock's Motion for Preliminary Injunction.  Unless otherwise noted, I have personal knowledge of the following matters and, if called upon to do so, would and could testify competently to the same in a court of law.

3    2.    Defendant Paul Reiche III ("Reiche") contends in his Declaration in Support of Defendants' Opposition (hereinafter "Reiche's Decl.") that the 1988 Agreement expired as long ago as 2001, allegedly due to Accolade, Inc.'s ("Accolade") and/or Atari Inc.'s ("Atari") non-payment of royalties.  *See* Reiche Decl., Dkt. 64-1, ¶ 27.  As alleged in Stardock's Second Amended Complaint, there are significant issues, though, as to whether the license purported to be granted by Reiche to Accolade pursuant to the 1988 License Agreement was ever a valid license in the first place since, in light of communications between counsel for Reiche and Defendant Robert Frederick Ford ("Ford") and the U.S. Copyright Office ("USCO") during the examination of the application for U.S. Copyright Registration No. PA 2-071-496 (the "'496 Registration") (*see* Declaration by Robert A. Weikert in Support of Stardock's Motion for Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction ("Weikert Decl."), Dkt. 56-7, Ex. A, ¶¶ 73 and 78, Ex. T), clearly suggesting that Reiche did not own the rights he purported to license to Accolade.  Thus, there are serious questions as to whether Accolade and Atari were obligated to pay royalties to Reiche in the first place, in view of Reiche's misrepresentations to Accolade in the 1988 License Agreement.

3.    Reiche also contends in his declaration that the license granted to Accolade is not assignable pursuant to Paragraph 12.1 of the 1988 License Agreement.  *See* Reiche Decl., Dkt.

- 2 -

…

64-1, ¶ 40.  Again, whether there were any licensed rights for Reiche to assign in the first place is clearly in question since his counsel's communications with the USCO confirm that Reiche did not own the rights he purported to license to Accolade.  *See* Weikert Decl., Dkt. 56-7, Ex. A, ¶¶ 73 and 78, Ex. T.

4. During the examination of the '496 Registration, the USCO also questioned counsel for Reiche and Ford regarding suggestions that Star Control II was produced on behalf of Reiche's and Ford's company, Toys for Bob, and whether or not Toys for Bob should actually be listed as the author and claimant of the registration.  *Id.*  Upon information and belief, Toys for Bob is a subsidiary of the well-known game publishing company, Activision Publishing, Inc. ("Activision").  Attached hereto as **Exhibit 1** is a screenshot from Activision's Toys for Bob's studio website that at one time displayed *Star Control I* and *Star Control II* alongside other games that, upon information and belief, were developed by Toys for Bob.

5. In the Reiche Declaration, Reiche states that "To the best of his recollection", the third party creators "agreed to assign" any copyrights to Reiche and Ford and he references having now received "signed written agreements" confirming these alleged previous agreements to assign.  Reiche Decl., ¶ 14.  Reiche and Ford have produced during discovery these purported copyright assignments from various individuals.  It is unclear from these assignments, though, what, if any, creative expression was actually authored by these various individuals and is being alleged to have been transferred to Reiche and Ford.

6. Stardock has subpoenaed documents from those authors with whom Reiche and Ford claim to have purported assignment agreements.  Based on the productions in response to the subpoenas, it still remains unclear what copyrightable material (if any) was actually created

- 3 -
DECLARATION OF DAVID L. MAY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
Case No. 17-cv-07025-SBA

4815-6517-2851.10

by most, if not all, of the authors.  Moreover, Reiche's and Ford's legal counsel has confirmed that the third-party authors' production in response to Stardock's subpoenas is complete.

7. The various purported assignments produced from the noted authors were executed in March and April 2018 and well-after Stardock initiated this litigation and after Reiche and Ford filed their counterclaims in February 2018 based on copyrights allegedly covered by these assignments.

8. The following authors are also listed in the credits of the game, but no assignments from them have been produced during discovery to date: Kyle Balda for the game art, and Paula Polley, Dick Morgan, Jeff Rianda and W.D. Robinson for the manual art.

9. It is clear from all the evidence that Reiche's and Ford's claims of ownership of intellectual property rights to the Classic Star Control Games (*i.e.*, *Star Control I, Star Control II* and/or *Star Control III*) is entirely tenuous and convoluted at best, and contrary to Reiche's alleged rendition of the facts and interpretation of the contract terms at issue in his declaration.

10. On December 6, 2017, Stardock received notice from GOG Limited (hereinafter, "GOG") that a DMCA notice was submitted by Reiche requesting the removal of the Classic Star Control Games and related materials from GOG.  Upon information and belief, as a result of the DMCA notice, GOG removed Stardock's Classic Star Control Games and related materials from its platform.  On December 11, 2017, we, as counsel for Stardock, submitted a counter-notice to GOG advising that the DMCA notice was wholly inaccurate and the Classic Star Control Games and related materials should be immediately reinstated on the GOG.  At the time, Reiche did not have any copyright registrations for the Classic Star Control Games.  Additionally, upon information and belief, Reiche did not provide any evidence to GOG that he was the alleged owner of the claimed rights in the Classic Star Control Games.  Stardock also is the owner of the

- 4 -

copyright registration for *Star Control III*. Pursuant to Section 512(g)(2)(c) of the DMCA, GOG reinstated the removed materials on its platform.

11. Likewise, on December 7, 2017, Stardock received notice from Valve Corporation d/b/a Steam.com (hereinafter "Steam") that a DMCA notice was submitted by Reiche requesting the removal of the Classic Star Control Games and related materials from Steam. Upon information and belief, as a result of the DMCA notice, Valve removed Stardock's Classic Star Control Games and related materials from Steam. On December 11, 2017, we, as counsel for Stardock, submitted a counter-notice to Steam similarly advising what was advised to GOG. Pursuant to Section 512(g)(2)(c) of the DMCA, Steam reinstated the removed materials on its platform.

12. These earlier DMCA notices were submitted before Reiche's and Ford's counterclaims were filed in this litigation, which is, upon information and belief, why GOG and Steam continued to sell the games after receipt of the counter-notices in compliance with Section 512(g)(2)(c) of the DMCA.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 21st day of September 2018.

David L. May

- 5 -

DECLARATION OF DAVID L. MAY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
Case No. 17-cv-07025-SBA

4815-6517-2851.10