STEPHEN C. STEINBERG (SBN 230656)
  ssteinberg@bzbm.com
TIFFANY S. HANSEN (SBN 292850)
  thansen@bzbm.com
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile:  (415) 956-1152

MARK S. PALMER (SBN 203256)
  mark@palmerlex.com
4 Meadow Drive
Mill Valley, CA 94941
Telephone: (415) 336.7002
Facsimile:  (415) 634-1671

Attorneys for Defendants and Counter-Claimants
PAUL REICHE III and ROBERT FREDERICK FORD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| STARDOCK SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PAUL REICHE III and ROBERT FREDERICK FORD,<br><br>Defendants.<br><br>―――――――――――――――――<br><br>PAUL REICHE III and ROBERT FREDERICK FORD,<br><br>Counter-Claimants,<br><br>v.<br><br>STARDOCK SYSTEMS, INC., GOG LIMITED, GOG POLAND SP. Z.O.O., and VALVE CORPORATION,<br><br>Counter-Defendants. | Case No. 4:17-CV-07025-SBA<br><br>**DEFENDANTS AND COUNTER-CLAIMANTS PAUL REICHE III AND ROBERT FREDERICK FORD'S SECOND AMENDED COUNTERCLAIM FOR:**<br><br>**1) COPYRIGHT INFRINGEMENT – 17 U.S.C. § 5012**<br><br>**2) DECLARATORY JUDGMENT RE: OWNERSHIP OF COPYRIGHTS**<br><br>**3) UNFAIR COMPETITION – LANHAM ACT § 43(a) (15 U.S.C. § 1125(a))**<br><br>**4) COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**5) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200 *ET SEQ*.)**<br><br>**6) CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 2,046,036**<br><br>**7) CONVERSION** |

**8) DECLARATORY JUDGMENT RE: TRADEMARK RIGHTS**

**9) FRAUD**

**10) BREACH OF CONTRACT**

**11) CONTRIBUTORY COPYRIGHT INFRINGEMENT**

**12) VICARIOUS COPYRIGHT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

<u>**SECOND AMENDED COUNTERCLAIM**</u>

Defendants and Counter-Claimants Paul Reiche III ("Reiche") and Robert Frederick Ford ("Ford") (collectively, "Reiche and Ford") hereby file the following Amended Counterclaim against Plaintiff and Counter-Defendant Stardock Systems, Inc. ("Stardock") and Counter-Defendants GOG Limited, GOG Poland sp. z.o.o. (collectively, "GOG") and Valve Corporation ("Valve") (collectively, "Counter-Defendants") as follows:

**INTRODUCTION**

1.      Reiche and Ford bring this Second Amended Counterclaim to take back control over their rights to the Star Control and Star Control II computer games, including their exclusive rights to make derivative works from those games, to stop Stardock from infringing on their copyrights to the games and engaging in other forms of unfair competition, and to defeat Stardock's false claims that it owns trademark rights to all of the characters and features in the games.

2.      Reiche and Ford created and developed Star Control and Star Control II between 1988 and 1992.  The games quickly acquired a cult status among computer game enthusiasts, and ultimately grew to be regarded as some of the all-time classic and best computer games in history. Reiche initially licensed the games to be published by a company called Accolade, Inc. ("Accolade"), which later became Atari, Inc. ("Atari"), but the license agreement expired and all rights to the games reverted back to Reiche in 2001.  Reiche and Ford then released an open-

source version of Star Control II called The Ur-Quan Masters in 2002, which reinvigorated interest in the game and introduced it to a new generation of gamers.  In fact, The Ur-Quan Masters has proven to be far more popular than any prior release.  Since that time, Reiche and Ford have always planned to return to their Star Control universe and develop a sequel to The Ur-Quan Masters, once they were ready to take a step back from their positions as directors of the video game studio they founded nearly 30 years ago, Toys for Bob.

3.      In 2013, Stardock purportedly acquired from Atari trademark rights to the Star Control name and partial copyrights for an unsuccessful sequel that Accolade had published in 1996 called Star Control 3.  Stardock then requested Reiche and Ford's assistance in developing a new Star Control game, and a license to use material from Star Control and Star Control II.  Reiche and Ford repeatedly declined both requests as they had their own plans.

4.      Undeterred, and notwithstanding Stardock's repeated prior admissions that Reiche and Ford owned all rights to Star Control and Star Control II, including The Ur-Quan Masters, Stardock recently embarked on a series of unlawful actions in a transparent effort to steal these rights from Reiche and Ford.  Stardock now claims that it owns copyrights to all of the Star Control games and trademark rights to all of the characters and features in the games, and that Reiche and Ford did not create Star Control and Star Control II and falsely took credit for the games, all of which are outright lies.

5.      In or around the Fall of 2017, Stardock began selling Star Control and Star Control II on its own website and on Valve's website called Steam.  Stardock, Valve, and GOG also began selling and continue to sell a new game called Star Control: Origins, including beta versions of the game and related content packs, that is substantially similar to and/or derivative of Star Control II.

6.      Reiche and Ford tried hard to resolve this matter informally with Stardock.  Unfortunately, Stardock's decision to file suit, while at the same time expanding its infringement of Reiche and Ford's intellectual property rights and filing numerous fraudulent trademark applications on names of characters and features from the games to prevent Reiche and Ford from making their own derivative work, leaves them with no choice but to seek relief through this action.

# PARTIES

7.     Counter-Claimant Paul Reiche III is an individual who resides in Novato, California.

8.     Counter-Claimant Robert Frederick Ford is an individual who resides in Novato, California.

9.     On information and belief, Counter-Defendant Stardock Systems, Inc. is a Michigan corporation located in Plymouth, Michigan, but until recently and during most of the events set forth herein, had a location in Sunnyvale, California.

10.     On information and belief, Counter-Defendant GOG Limited is or was a company based in Nicosia, Cyprus and has merged with Counter-Defendant GOG Poland sp. z.o.o., which is a company based in Warsaw, Poland.  These two entities are collectively referred to as "GOG."

11.     On information and belief, Counter-Defendant Valve Corporation is a Washington corporation located in Bellevue, Washington.

# JURISDICTION AND VENUE

12.     This Court has related claim jurisdiction over this counterclaim under 28 U.S.C. § 1367, and also has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338.

13.     This Court has personal jurisdiction over Stardock because of its filing this action, and because on information and belief, Stardock transacts substantial business in California and in this District, and moreover:  a) it purposefully directed its activities toward California and/or availed itself of the benefits afforded by California's laws; b) the claims arise out of or relate to Stardock's forum-related activities; and c) the exercise of jurisdiction comports with fair play and substantial justice.

14.     This Court has personal jurisdiction over GOG because on information and belief, GOG transacts substantial business in California and this District, and moreover: a) it purposefully directed its activities toward California and/or availed itself of the benefits afforded by California's laws; b) the claims arise out of or relate to GOG's forum-related activities; and c) the exercise of jurisdiction comports with fair play and substantial justice.

15.     This Court has personal jurisdiction over Valve because on information and belief, Valve transacts substantial business in California and this District, and moreover: a) it purposefully directed its activities toward California and/or availed itself of the benefits afforded by California's laws; b) the claims arise out of or relate to Valve's forum-related activities; and c) the exercise of jurisdiction comports with fair play and substantial justice.

16.     Additional allegations supporting jurisdiction over the Counter-Defendants are set forth below, including that they have purposefully directed their activities toward California by intentionally and willfully infringing on Reiche and Ford's copyrights after being provided with repeated notice of the infringement.

17.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the counterclaim occurred here.

## INTRADISTRICT ASSIGNMENT

18.     Assignment to this Division is proper because this action arises in Marin County in that a substantial part of the events or omissions which give rise to the claims occurred in Marin County.

## FACTUAL BACKGROUND

### *Reiche and Ford's Creation and Development of Star Control and Star Control II*

19.     In the Summer of 1988, Reiche created the concept for Star Control and made a proposal to develop it to multiple video game publishing companies, including Accolade.

20.     Effective October 7, 1988, Accolade and Reiche entered into a License Agreement, attached hereto as **Exhibit 1** ("1988 License Agreement"), whereby Reiche (the "Developer") agreed to develop Star Control and two other computer games and to grant Accolade (the "Publisher") an exclusive license to publish such games for the Sales Term of the agreement, in exchange for Accolade paying certain royalties and advances to Reiche.  The "Sales Term" of the 1988 License Agreement would run as long as the licensed work generated royalties of at least $1,000 per year.

21.     Paragraph 7.1 of the 1988 License Agreement provided that if Accolade became bankrupt, then unless the bankruptcy was terminated within ninety (90) days, all rights to all Work

1   and Derivative Work would revert to Reiche.  Paragraph 7.2 provided that all licenses granted

2   under the agreement would automatically be deemed assigned to Reiche concurrently with the

3   termination of the agreement, but that termination of the agreement would not affect Accolade's

4   obligation to pay royalties for sale of the Work or Derivative Works.

5       22.     Paragraph 10.2 of the 1988 License Agreement provided that in the event of

6   termination of the agreement, each party would return all property including "plans, drawings,

7   specifications, papers, computer hardware or related equipment, documents, manuals, computer

8   programs, and other records, including all copies thereof, belonging to the other party … ."

9       23.     Paragraph 11.4 of the 1988 License Agreement provided that "[Reiche] shall be the

10  owner of the copyright and all other proprietary rights in the Work" – the three computer software

11  programs – "and all Derivative Works by [Reiche]," and that "[Accolade] shall be the owner of

12  the copyright and all other proprietary rights in all Derivative Works by [Accolade] … subject to

13  [Reiche]'s copyright in the Work and all Derivative Works by [Reiche] and the provisions of

14  Paragraph 7."

15      24.     Paragraphs 11.4-11.5 of the 1988 License Agreement also provided that

16  "[Accolade] shall be the owner of the title, packaging concept and packaging design for the Work

17  and Derivative Works," and that "[a]ny trademarks adopted and used by [Accolade] in the

18  marketing of the Work, Derivative Works … are the sole property of [Accolade]."

19      25.     Paragraph 12.1 of the 1988 License Agreement provided that it could not be

20  assigned by Accolade without Reiche's consent, and that it was binding on any permitted

21  successors and assigns.

22      26.     Paragraph 12.2 of the 1988 License Agreement provided that all disputes arising in

23  connection with the agreement would be resolved by arbitration by the International Chamber of

24  Commerce, and that the prevailing party in any such proceeding would be entitled to reasonable

25  attorneys' fees and costs.

26      27.     From around February 1989 through June 1990, Reiche and Ford created and

27  developed Star Control, and Accolade published the game around July 1, 1990.

28

28.     From around the Summer of 1990 through late 1992, Reiche and Ford created and developed Star Control II as the second game under the 1988 License Agreement, and Accolade published the game around November 1, 1992.

29.     Reiche and Ford were the primary authors of most of the creative materials incorporated into both games, including, without limitation, the game design, narrative fiction, art, sound effects, software code, and other materials.  Others collaborated in varying ways and degrees in the development of the games as more specifically described and credited in each game's respective game manual.  However, Stardock's new claim that in light of this collaboration, Reiche and Ford did not create Star Control and Star Control II, is like saying that George Lucas did not create Star Wars because he had help from other people in making the movies.

30.     On information and belief, as required by the 1988 License Agreement, Accolade placed on each copy of Star Control the copyright notice "© 1990 Paul Reiche III & Fred Ford" and on each copy of Star Control II the copyright notice "© 1992 Paul Reiche III & Fred Ford."

31.     Star Control and Star Control II were both successful in terms of sales, and received substantial critical acclaim around the time of their release and in subsequent years.  For example, in 1996, *Computer Gaming World* ranked Star Control II as the 29th best game of all time, and Star Control as the 127th best game of all time.  More recently, in 2005, IGN named Star Control II the 17th best game of all time.  Reviewers praised the graphics, dialogue, and quality of the gameplay, among other things.  A few years ago, Star Control II emerged as the consistent favorite in a crowd-sourced list of the best PC games of all time:

https://kotaku.com/the-game-that-won-our-classic-pc-games-list-if-it-ha-1349952997

32.     Accolade ultimately decided not to move forward with the third game proposed by Reiche and Ford to be developed under the 1988 License Agreement.

33.     Effective November 19, 1993, Accolade and Reiche entered into Addendum No. 1 to the 1988 License Agreement, a copy of which is attached as **Exhibit 2**, in which they agreed that the Product Development Term was over.  Addendum No. 1 allowed Reiche to develop and a company called Crystal Dynamics, Inc. to publish a 3DO version of Star Control II in exchange

DEFENDANTS AND COUNTER-CLAIMANTS' SECOND AMENDED COUNTERCLAIM

for the payment of an advance and royalties to Accolade.  The 3DO version of Star Control II was

released in the first half of 1994 with the copyright notice "© 1994 Fred Ford & Paul Reiche III."

### *Star Control 3 and 4 and Expiration of the 1988 License Agreement*

34.     Effective February 1, 1995, Accolade and Reiche entered into Addendum No. 2 to

the 1988 License Agreement, a copy of which is attached as **Exhibit 3**, to allow Accolade to

develop and publish "Star Control III" without Reiche but using "characters, names, likenesses,

characteristics, and other intellectual property rights pertaining to Star Control I and Star Control

II in which Reiche has an ownership interest" (hereinafter "Reiche's Preexisting Characters"), in

exchange for the payment of an advance and royalties to Reiche.  Star Control 3 was ultimately

developed by a company called Legend Entertainment, and published by Accolade on or about

August 31, 1996 with the notice "based upon characters created and used under license from Paul

Reiche III and Fred Ford."  Star Control 3 was not as well-received as Star Control and Star

Control II.

35.     Star Control, Star Control II, and Star Control 3 are hereinafter collectively referred

to as the "Classic Star Control Games."

36.     In January 1997, Accolade met with Reiche and Ford to discuss future plans for the

Star Control franchise.  Accolade offered to purchase all rights to Star Control, Star Control II, and

any other Star Control products from Reiche.  Accolade admitted then that Reiche and Ford

created and owned Star Control, including "its themes, settings, plot lines, characters, its 'essence'

as entity unique from any other science-fiction game," and that Star Control 3 was created with

Reiche and Ford's permission under agreements with Accolade.  The parties continued to

negotiate but could not come to agreement on the purchase price or other terms at that time.

37.     In November 1997, Accolade asked instead for a perpetual exclusive license to the

classic background material for Star Control and Star Control II for use in a new Star Control

game and potential future sequels.  Accolade stated that "[c]urrently, Accolade owns the rights to

the title Star Control, and [Reiche and Ford] own the rights to the classic background material

created for Star Control and Star Control 2," and that "[Accolade] would like to unify the Star

Control license … ."  Reiche and Ford rejected the offer because they believed that over the long

1   haul:  a) the Star Control universe was significantly more valuable; b) they would someday want

2   to explore those opportunities; and c) accepting Accolade's proposal would mean losing this

3   chance forever.  Accolade then asked Reiche and Ford to "identify the material that we should

4   steer clear of in our game so that we can avoid any conflict with your material."

5         38.     In December 1997, Accolade made another offer to Reiche and Ford and they were

6   ultimately able to agree on terms of a new license to Reiche and Ford's material.

7         39.     Effective April 1, 1998, Accolade and Reiche entered into Addendum No. 3 to the

8   1988 License Agreement, a copy of which is attached as **Exhibit 4**, to allow Accolade to develop

9   and publish new versions and sequels to the Classic Star Control Games using "all characters,

10   names, likenesses, characteristics, plot line, setting, source code, and any proprietary rights that

11   Reiche has in and to" the Classic Star Control Games, and any Derivative Works, in exchange for

12   the payment of an advance and royalties to Reiche.

13         40.     Paragraph 1.5 of Addendum No. 3 stated that:

14   "Reiche Intellectual Property" means the copyright and other intellectual property
     rights (excluding trademarks) owned by Reiche, as set forth in the Agreement and

15   Addenda Nos. 1 and 2 to the Agreement, in and to (a) Star Control I for PC, Amiga
     and Sega, (b) Star Control II for PC and 3DO, (c) any accompanying

16   documentation, and (d) the Star Control II cluebook.  The Reiche Intellectual
     Property shall include proprietary rights in and to any source code, names (of

17   starships and alien races), characters, plot lines, setting, terminology unique to the
     Star Control products, and music in and to (a) – (d) above.

18

19         41.     Paragraph 4.1 of Addendum No. 3 provided that the term of the agreement was

20   three years, with an option to renew for another three years only if Accolade published a new Star

21   Control game in the meantime, and that upon expiration or termination, "all rights granted and

22   obligations imposed hereunder shall terminate and rights to the Reiche Intellectual Property

23   granted hereunder shall revert to Reiche."

24         42.     Paragraph 7 of Addendum No. 3 provided that if Accolade did not publish any new

25   versions or sequels to Star Control, then it would negotiate in good faith with Reiche a license to

26   any trademarks adopted and used to market the Classic Star Control Games.

27         43.     On information and belief, on or around April 1, 1999, Accolade was acquired by

28   Infogrames.

44.    Accolade never paid Reiche any advances or royalties under Addendum No. 3 after the initial advance of $10,000 in 1998 because it never released another Star Control game.  On information and belief, Accolade also paid no royalties to Reiche and Ford for sales of the Classic Star Control Games after 2000 at the latest, indicating that it had stopped selling them.  Thus, the 1988 License Agreement and Addenda Nos. 1-3 expired and terminated no later than April 1, 2001, either by virtue of expiration of the term set forth therein and/or Accolade's failure to pay royalties.  Thus, all rights to Star Control, Star Control II, and Reiche's Preexisting Characters used in Star Control 3 reverted to Reiche on or about April 1, 2001.

***Accolade's Successors' Abandonment and Fraudulent Renewal***

***of the Registration for the Star Control Trademark***

45.    In mid-2002, Accolade and Reiche and Ford negotiated regarding transfer of the Star Control trademark rights, and Accolade indicated that it was no longer using the name and had no plans to do so in the future.  Nevertheless, the parties did not reach agreement on terms.

46.    On November 25, 2002, Accolade assigned U.S. Trademark Registration No. 2,046,036 for STAR CONTROL to Infogrames, and on March 17, 2003, Infogrames filed with the United States Patent and Trademark Office ("USPTO") a Declaration of Use and Incontestability attaching a picture of the Star Control II packaging from 1994 as the Specimen of Use.  On information and belief, this was a fraudulent statement to the USPTO because Accolade had not sold any Star Control game, including the pictured version of Star Control II, since at least 2000 and perhaps even earlier, as evidenced by the lack of royalty payments to Reiche and Ford since that time.

47.    In or around May 2003, Infogrames was renamed Atari.

48.    On September 18, 2007, Atari filed with the USPTO a Declaration of Use in Commerce and Application for Renewal of Registration for the STAR CONTROL mark.  On information and belief, this was a fraudulent statement to the USPTO because Atari was not using the STAR CONTROL mark in interstate commerce at that time, nor had it done so since at least 2000.  Indeed, as part of a valuation of its IP in late 2006, Atari reported that it made no sales of Star Control from at least 2001 through November 2006, and thus, the Star Control trademark was

1  deemed to have no value at that time.  Further, on information and belief, Atari did not use the

2  STAR CONTROL mark through at least early 2011.

3  *Reiche and Ford's Continued Development of the Star Control Universe*

4  *Through The Ur-Quan Masters and Agreement with Atari to Resume Sales*

5  *of the Classic Star Control Games*

6  49.     On August 1, 2002, having regained all rights to their games, Reiche and Ford

7  released an open source edition of Star Control II derived from the 3DO version which was free to

8  use in a non-commercial context.  As they could not reach agreement with Accolade to acquire or

9  use the Star Control trademark rights, they released the game under the name "The Ur-Quan

10 Masters," which Accolade knew and did not object to.  Reiche and Ford have used the mark THE

11 UR-QUAN MASTERS at least since then in connection with distributing the open source edition

12 of Star Control II.

13 50.     Star Control, Star Control II, including The Ur-Quan Masters, and Reiche's

14 Preexisting Characters used in Star Control 3 are hereinafter referred to as "Reiche and Ford's

15 Control Games."

16 51.     Over the years since their various releases, Reiche, Ford, and Reiche and Ford's

17 Star Control Games themselves have acquired a valuable fame, reputation and goodwill among the

18 purchasing public.

19 52.     In addition, Reiche and Ford own U.S. Copyright Registration No. PA 2-071-496

20 for the work titled "Star Control II," which covers all computer program code for that game, and

21 U.S. Copyright Registration No. PA 2-107-340 for the work titled "Star Control II," which covers

22 all of the audiovisual and written content in the game (hereinafter, "Reiche and Ford Registered

23 Copyrights").  Documentation reflecting registration of the Reiche and Ford Registered

24 Copyrights is attached hereto as **Exhibits 6 and 7**.

25 53.     In April 2006, Reiche and Ford spoke with Atari about potentially publishing Star

26 Control and Star Control II through an online video game service called Gametap, but failed to

27 agree on terms, and Reiche and Ford informed Atari that they did not wish to renew the expired

28 1988 License Agreement or go forward with any of the potential new deals discussed at that time.

54.     On or about April 1, 2011, Reiche and Ford learned that a company called Good Old Games was selling Star Control and Star Control II on its website, GOG.com (hereinafter "GOG"), without Reiche and Ford's permission and in violation of their copyrights.  On April 19, 2011, Reiche and Ford contacted GOG and informed it that GOG could not sell the games without Reiche and Ford's consent.  GOG responded that it was doing so pursuant to an agreement with Atari.  On information and belief, such agreement between GOG and Atari was called the "Digital Distribution Agreement" and was dated March 10, 2010.

55.     On April 22, 2011, Reiche and Ford notified Atari and GOG that Reiche and Ford were the authors and owners of Star Control and Star Control II and had not given permission for Atari to sell them.  Reiche and Ford reminded Atari that while Accolade once held the publishing rights, such rights had expired long ago and that any purported agreement by Atari concerning Reiche and Ford's work violated their rights.  However, Reiche and Ford invited further discussion that might enable the continued publishing of their games by GOG.

56.     On April 25, 2011, Atari responded that its counsel had checked and Reiche and Ford were correct.  Atari notified GOG to remove and take down the Star Control Games and to remit all revenues from sales of the games to Reiche and Ford.

57.     On April 29, 2011, Reiche and Ford again invited Atari to engage in further discussion about how to continue distributing the Star Control Games, perhaps by splitting the revenue and Atari's allowing the use of any Star Control trademarks.  Atari agreed to discuss it further.

58.     On May 17, 2011, GOG informed Reiche and Ford that it had reached an agreement with Atari, but were discussing whether to execute a three-party agreement or separate agreements with Reiche and Ford and with Atari.  On May 23, 2011, Atari advised Reiche and Ford that it was amending its agreement with GOG ("Atari-GOG Agreement") such that Atari would get 25% of the net revenue from sales of the Classic Star Control Games, while Reiche and Ford would get 25% of the net revenue under a separate agreement with GOG.

59.     On January 2, 2012 (with an effective date of April 1, 2011), Reiche and Ford entered into the Digital Distribution Agreement with GOG Limited ("Ford-GOG Agreement") to

provide GOG with a non-exclusive license to distribute the Classic Star Control Games in exchange for royalties of 25% of net revenue.

60.     Section 5 of the Ford-GOG Agreement noted that GOG would obtain "the rights for the Products names and related trademarks … from the respectful [*sic*] rights holder," and that it would follow any guidelines from Reiche and Ford in using their proprietary trademarks.

61.     Section 6.2 of the Ford-GOG Agreement provides that "GOG shall fully indemnify, hold harmless and defend [Reiche and Ford] … from and against any and all claims, actions, suits, legal proceedings, demands, liabilities, damages, losses … including, without limitation, attorney's fees, arising out of or in connection with any alleged or actual breach by GOG of any other representations, warranties or obligations contained in this Agreement."

62.     Section 10.2 of the Ford-GOG Agreement provides that notices to GOG are to be provided to its parent company, CD Projekt, at "u1, Jagiellonska 74, 03-301 Warsaw, Poland."

63.     Section 10.3 of the Ford-GOG Agreement provides that "[n]either party shall assign this Agreement or any obligations hereunder without the prior written consent of the other party … ."

64.     Section 10.5 of the Ford-GOG Agreement provides that the agreement is governed by California and U.S. law.

***Stardock Purportedly Buys Star Control Trademark and Star Control 3 Copyright***

65.     On information and belief, in 2013 Atari filed for bankruptcy and put its assets up for auction, including the "Star Control Franchise" consisting only of "Star Control 3."  On information and belief, Atari purportedly sold its "Star Control Assets" to Stardock under a Purchase Agreement dated July 18, 2013.  The Purchase Agreement defined the Purchased Assets as including the Intellectual Property identified on Schedule 1.01(a), the contracts listed on Schedule 2.01(b), and certain causes of action related to the Intellectual Property.  Any other assets and properties of Atari were excluded from the Purchased Assets.

66.     The Purchase Agreement filed with and approved by the bankruptcy court, a copy of which is attached hereto as **Exhibit 5**, did not include any Schedule 1.01(a) or Schedule 2.01(b), and thus did not transfer any intellectual property or contract rights to Stardock.

67.     Stardock has submitted with its First Amended Complaint purported schedules of the Intellectual Property encompassed in the Purchased Assets, which list the following intellectual property purportedly transferred from Atari to Stardock:  a) U.S. Trademark Registration No. 2,046,036 for the STAR CONTROL mark; and b) U.S. Copyright Registration No. PA 799-000 for Star Control 3.

68.     Stardock separately sent Reiche and Ford a purported schedule of the contracts encompassed in the Purchased Assets, a copy of which is attached as **Exhibit 8**, which lists:

- Atari's Digital Distribution Agreement with GOG Limited (Good Old Games), dated 3/1/2010, purportedly only for Star Control 3; and

- Accolade's License Agreement with Reiche, dated 10/7/1988, only as to Star Control 3.

69.     Even if these schedules are authentic, Atari did not purport to sell, nor did it even own or have the right to sell, any rights to Reiche and Ford's Star Control Games to Stardock, including Reiche's Preexisting Characters used in Star Control 3.  Moreover, the 1988 License Agreement and Addendum No. 2 relating to Star Control 3 had terminated and expired over a decade earlier.  Even if it could have been assigned, Reiche never consented to it as required by Paragraph 12.1 of the 1988 License Agreement.

***Reiche and Ford Repeatedly Reject Stardock's Requests to License Reiche
and Ford's Star Control Games for Use in Stardock's New Game***

70.     On July 22, 2013, Stardock's CEO, Brad Wardell, introduced himself to Reiche via email and said he had acquired Atari's rights to Star Control, and wanted to create a new Star Control game existing "within the 'universe' that [Reiche and Ford] created."  Wardell asked to use Reiche and Ford's game lore and universe in exchange for a license agreement with royalties. He also asked if Reiche and Ford would be interested and able to help with the new game.

71.     On July 23, 2013, Reiche responded that he and Ford:  a) would consider the request; b) stated that they personally own the copyrights to Reiche and Ford's Star Control Games; and c) noted their and Atari's recent agreements with GOG to distribute the games. Wardell responded "[t]hat is my reading of the agreement too."

72.     On July 24, 2013, Stardock announced its acquisition and plan to release a new game inspired by Star Control II but that it would not be a sequel to the Classic Star Control Games.  Wardell admitted that "Atari doesn't actually own the copyright on Star Control 1/2 so it's not like one could make a Star Control 2 HD or what have you without a license from Paul Reiche."

73.     On July 30, 2013, Wardell asked again for Reiche and Ford to be involved in developing his new game, and to license "the Star Control 1/2 universe (aliens, lore, etc.)" from Reiche and Ford.

74.     On August 6, 2013, Wardell asked again if Reiche and Ford could collaborate on a new Star Control, and they responded the next day that they probably could not.  Wardell then asked again "would you be interested in pursuing a licensing agreement for use of the Star Control 1/2 lore?"  He explained that "[w]e'd really like to set the new Star Control game with the aliens and lore that you previously created."

75.     On August 14, 2013, Wardell asked again "would you be interested in setting up a licensing agreement to use your existing Star Control 1/2 lore and aliens?"

76.     On September 16, 2013, Reiche and Ford responded that they would not participate in his new game because, among other things:

> Fred and I are just not comfortable handing over our world to be developed by others.  We've been discussing this for almost 20 years and we've always regarded a return to Star Control as our dream project – something we'd work on as soon as we found the opportunity.  I know this will be a disappointment for you and your team, but Fred and I still have a Star Control plan and we're not ready to give it up yet.  Thanks so much for your interest in and appreciation of our work.

77.     Later that day, Wardell acknowledged their response, and over the next six weeks, tried instead to sell Reiche and Ford "the Star Control IP" that he thought he had acquired from Atari.

78.     On October 29, 2013, Reiche and Ford responded that "we aren't interested in the Star Control assets you purchased from Atari.  Thanks for the offer though."

79.     In summation, Reiche and Ford rejected Stardock's requests to: a) collaborate on a new Star Control game; b) license Reiche and Ford's Star Control Games or any portion thereof

1  for use in such a new game; and/or c) sell them the Star Control IP purportedly purchased from

2  Atari.

3    ***Stardock Begins Making False Statements About Reiche and Ford's Involvement***

4    ***in Its New Game, and Asks Reiche and Ford Again Repeatedly to License***

5    ***Their Star Control Games, Which They Refuse***

6    80.    Notwithstanding the above, on January 3, 2014 Wardell gave an interview in which

7  he made a series of false or misleading statements about connections between Stardock and Reiche

8  and Ford.  For example, Wardell falsely stated that he had "talked to [Reiche and Ford] quite a bit"

9  and would "be talking to Paul and Fred as we go forward" about Stardock's new game, when in

10 fact they had never spoken and Reiche and Ford had wholly declined to work with Stardock on the

11 game.  Wardell misleadingly suggested that Reiche and Ford simply could not be "officially"

12 involved because of their existing jobs, when in fact they actually declined any involvement

13 because they did not want Stardock or anyone else to further develop their world, and they had

14 always planned to work on it themselves in the future.  Wardell claimed that the new Star Control

15 game would be on a new continuity and be a prequel to Star Control II to allow Reiche and Ford

16 to continue the main Star Control plot in the future.  However, he also admitted that the new game

17 would include one or more of the ships from Reiche and Ford's Star Control Games, as well as the

18 multiplayer ship-to-ship combat feature called "Super Melee" from Star Control II.  He also

19 indicated that the Classic Star Control Games would remain on sale at GOG.com.

20    81.    Later on January 3, 2014, Wardell emailed Reiche and Ford to clarify that "the new

21 Star Control will not make use of the lore/history/aliens of Star Control 1/2 without your express

22 consent."  However, he asked whether they might be willing to allow certain characters from

23 Reiche and Ford's Star Control Games to appear in the new game, and offered to pay royalties for

24 licensing their IP from the Classic Star Control Games.  Wardell sent another email later that day

25 reiterating that "the new Star Control game will not be making use of any of the Star Control 1/2

26 IP (which in this case means alien names, alien designs, lore, art, music, ship designs) without

27 your express permission … ."

28

82.     On or about March 4, 2015, Reiche and Ford briefly met Wardell and Derek Paxton from Stardock for the first and only time at the annual Game Developers Conference in San Francisco, California.  Wardell again asked Reiche and Ford to work on Stardock's new Star Control game, and they once again said no.

83.     According to Stardock and unbeknownst to Reiche and Ford, the Atari-GOG Agreement expired on March 22, 2015, and thus, Stardock contends that all subsequent sales of the Classic Star Control Games on GOG infringed on its purported trademarks and copyrights. However, according to GOG, it entered into another agreement with Stardock that covered such sales.

84.     On September 24, 2015, Wardell emailed Reiche and Ford and again reiterated that "the new Star Control won't be making use of the lore or aliens from your universe.  We've made sure to post this publicly repeatedly so that there is a written public record that Stardock has zero rights to the classic Star Control 2 lore (aliens, ships, story, etc.).  The new game will be a reboot with its own continuity."  However, he once again asked if Stardock could have certain characters from Reiche and Ford's Star Control Games appear in the new game.

85.     On October 1, 2015, Reiche and Ford responded once again that they would not participate in Stardock's new game, nor would they license the use of certain characters nor "any other classic Star Control elements," because "Fred and I want to keep our copywritten material from Star Control exclusive to our own future project."  Wardell acknowledged that this was "[t]otally understandable."

86.     On November 20, 2015, Wardell again reiterated that "[w]e have been making it very clear that you and Fred personally own the rights to the Star Control classic aliens and lore and that the new game won't be including them."

87.     On December 3, 2015, Wardell emailed Reiche and Ford and asked if they would be interested in licensing the alien races from Reiche and Ford's Star Control Games for another Stardock game called Galactic Civilizations III.  Reiche and Ford later learned that Wardell had already "borrowed" heavily from Star Control II for the Galactic Civilizations game.  Wardell previously described the back story for Galactic Civilizations as follows:

> I must admit, I borrowed some concepts from Star Control 2. The Precursors were not lifted from Babylon 5 or Stargate or whatever. They were inspired from Star Control 2. I always dreamed that there'd be a SC3 that would expand on who these Precursors and the extra-dimensional beings. I have no idea what they had in mind but I thought it was a very cool concept.

He elsewhere admitted that "using the in-game custom race creator, I have also made the Ur-Quan (from Star Control) … ."

88.     On October 12, 2016, Wardell informed Reiche and Ford that the new game would be called "Star Control: Origins" to avoid any implication that it is a reboot or replacement for the Classic Star Control Games. He again asked to work with Reiche and Ford in the future on "the Ur-Quan universe" covering Star Control and Star Control II, and asked "to release an update to Star Control 1/2 under the existing agreement (50/50) split if we can get your permission for the 25th anniversary."

89.     On July 28, 2017, Wardell asked Reiche and Ford if, in light of the upcoming 25th anniversary of Star Control II, they would do "an interview regarding your work on Star Control 1/2, the Ur-Quan Masters, past, present and future of your universe." Wardell noted that Star Control: Origins included the Super Melee feature from Star Control II, and a ship designer that would enable players to construct ships from Reiche and Ford's Star Control Games, among other things. In fact, Wardell revealed previously that a ship from Reiche and Ford's Star Control Games, the Earthling Cruiser, had already been constructed within Galactic Civilizations III. Reiche and Ford later learned that many ships and alien races from Reiche and Ford's Star Control Games appeared in Galactic Civilizations.

90.     On August 1, 2017, Reiche and Ford responded that they were saving their energy for their own anniversary plans, which they were not yet ready to talk about.

91.     On September 15, 2017, Wardell emailed Reiche and Ford again that "the Star Control alien IP and such belongs to you personally" and asking if Stardock could "license the Star Control 2 Super Melee ships for the new Super Melee in exchange for a small royalty on every copy of the new Star Control."

92.     On September 29, 2017, Wardell emailed Reiche and Ford that Stardock planned to release "the Super Melee beta" in October and asking if they objected to inclusion of the ships from Star Control 1 and 2.

93.     On October 4, 2017, Reiche and Ford responded that they planned to work on "a sequel to Star Control 2 as a passion project," and that "[w]e will be needing and using all our IP in this endeavor and do not want to confuse our product with yours by licensing bits of it out (e.g. the ships from Star Control 1 and 2)."

94.     Wardell responded later that day and claimed for the first time that Stardock already had a license to use Reiche and Ford's IP under the 1988 License Agreement, even though that agreement had terminated and expired in 2001.

95.     On October 6, 2017, Reiche and Ford reiterated their "plans to release a sequel to Star Control II - The Ur-Quan Masters," and that:

> As we've said to you several times over the past years, we do not want Stardock to use any of our IP, and that remains our position today. … Despite your suggestion below, you do not have a license to use our IP.  All rights to our work reverted to us long ago.  You (and Atari) previously acknowledged same.  Further, time and again you have asked for a new license, notwithstanding our consistent rejections. Kindly do not use our IP in your game.  If already added, please remove it before release.

96.     On October 6, 2017, Wardell responded admitting that "there is no disagreement that you own the IP," and that "[y]ou have always owned the IP and that continues to be our position."  However, he argued that Stardock had publishing rights and licenses to the IP under the 1988 License Agreement.  He also claimed that "[a]s you have previously requested, we are not using your IP in [Star Control: Origins]."

97.     Later that day, Wardell sent another email claiming that the 1988 License Agreement was still in effect because Stardock and Atari before them had been selling the products and paying royalties for many years.  In fact, as noted above, neither Accolade nor Atari had sold the games or paid any royalties from about 2001-2011, so the 1988 License Agreement expired in 2001.  The Classic Star Control Games were only sold after 2011 pursuant to new agreements between Reiche and Ford and GOG, and between Atari and GOG.  Wardell admitted

1   again that "Stardock does not contest your ownership of the underlying IP.  I have stated on

2   numerous occasions publicly that the Ur-Quan universe is owned by Paul Reiche and Fred Ford."

3        98.   On October 7, 2017, Reiche and Ford responded and pointed out that they had

4   received no royalties for many years and therefore the 1988 License Agreement had expired.

5   They also notified Wardell that his planned use of "Super Melee" from Star Control II in Star

6   Control: Origins was not authorized and asked that it not be used.

7        99.   Wardell responded later that day rejecting their requests and threatening litigation.

8        100.   On October 9, 2017, Reiche and Ford finally announced their long-awaited plans to

9   create and develop a new game that would be a sequel to The Ur-Quan Masters to be called

10   "Ghosts of the Precursors."

11   ***Stardock's, Valve's, and GOG's Copyright and Trademark Infringement and Other Unfair***

12   ***Competition***

13        101.   Seemingly in response to Reiche and Ford's announcement and refusal to license

14   their Star Control Games, in October 2017, Reiche and Ford learned that Stardock had begun

15   selling the Classic Star Control Games through its own and Valve's websites, without Reiche and

16   Ford's permission and in violation of their copyrights.

17        102.   Stardock also began improperly using Reiche and Ford's THE UR-QUAN

18   MASTERS mark and images from Reiche and Ford's Star Control Games on Stardock's and

19   Valve's websites in marketing the Classic Star Control Games.  A screenshot of Stardock's

20   website with links to buy these games through Steam, and showing an example of Stardock's use

21   of THE UR-QUAN MASTERS mark and images from Reiche and Ford's Star Control Games is

22   as follows:

DEFENDANTS AND COUNTER-CLAIMANTS' SECOND AMENDED COUNTERCLAIM



103.    Stardock and GOG also renamed "Star Control 1+2" on GOG's website to be called "Star Control: The Ur-Quan Masters."

104.    In December 2017, Reiche and Ford sent Valve a notice of infringement and request to remove the Classic Star Control Games, but Stardock sent Valve a counter-notice, and Stardock and Valve continued selling the games unabated until recently.  Stardock maintains that it may resume selling the games at any time.

105.    In light of Stardock's infringement and apparent abandonment of the revenue split that had been agreed-upon with Atari in 2011, Reiche and Ford terminated their agreement with GOG in or around November 2017 and, at GOG's request, sent it a notice of infringement and request to remove the Classic Star Control Games, which it complied with on or about December 6, 2017.  But again, Stardock sent GOG a counter-notice and, as a result, GOG resumed selling the Classic Star Control Games for months, even though Stardock alleges that such sales constituted ongoing infringement of its purported trademarks and copyrights.

106.    Stardock has also done everything possible to create connections in the minds of the public between itself and Star Control: Origins, on the one hand, and Reiche and Ford and

their Star Control Games, on the other hand.  For example, on or about October 19, 2017, Wardell

gave another interview in which he falsely stated that he had been talking with Reiche and Ford

frequently about Star Control: Origins, when in fact they had only spoken once briefly at the

Game Developers Conference as described above, and Reiche and Ford had repeatedly declined

any involvement with Star Control: Origins.  Wardell also provided the following graphic that

misleadingly suggested that Reiche and Ford and their Star Control Games and future sequel were

connected to Stardock's new game, identified here as "Scryve Universe (SCO)":



107.    That same day, Stardock began offering pre-orders of Star Control: Origins

bundled with "Star Control: The Ur-Quan Masters (Star Control & Star Control II)" as shown

here:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



DEFENDANTS AND COUNTER-CLAIMANTS' SECOND AMENDED COUNTERCLAIM

108.    Stardock also set up a website showing all the games together:



109.    In November 2017, Stardock released a beta version of Star Control: Origins, originally sub-titled "Super Melee" which was copied from Star Control II, then renamed "Fleet Battles."  Fleet Battles includes content from Reiche and Ford's Star Control Games, and is substantially similar to and/or derived from the "Super Melee" mode in Star Control II, in terms of the layout, user interface, functionality, and user experience when playing the game, among other things.  This was done without Reiche and Ford's permission and in violation of their copyrights.

110.    Moreover, Fleet Battles includes a ship-creator tool that allows players to easily recreate ships from Reiche and Ford's Star Control Games, which Stardock and Valve then offer and distribute to purchasers of the game, as Wardell and Stardock had previously done in their other game Galactic Civilizations.  On information and belief, Stardock encouraged beta testers of Star Control: Origins to recreate ships from Reiche and Ford's Star Control Games.  There are numerous examples of ships that look substantially similar to ships from Star Control I and II, and in some cases bear the exact same or a substantially similar name as well, that Stardock and Valve have offered and distributed to purchasers of Fleet Battles.

111.     In fact, Wardell has indicated that a future version of Star Control: Origins will include the ability to create stars, planets, alien races, narratives, and gameplay scenario missions, and on information and belief, this will include the ability to easily recreate all of the content from Reiche and Ford's Star Control Games, and then Stardock will distribute it to all other players as it has previously done.

112.     Wardell subsequently made clear that the forthcoming version of Star Control: Origins would infringe on Reiche and Ford's copyrights.

113.     For example, on March 21, 2018, Wardell posted online in The Ur-Quan Masters ("UQM") Forum that "[w]e had chosen not to have the Ur-Quan, Spathi, etc. [aliens from Star Control I and II] in Origins out of respect for Paul and Fred's wishes. … Now, future Star Control games will have aliens associated with Star Control."

114.     However, on April 7, 2018, he admitted again that "Stardock has no rights to the specific characters in Star Control II or the story … ."

115.     On May 11, 2018, Wardell stated on Stardock's website that contrary to many prior statements, "[f]uture Star Control games will have the classic Star Control aliens in them. … Only the most unreasonable person would argue that Star []control games can't have Star Control aliens simply because an independent contractor of Accolade's claims rights to names he may or may not of randomly generated 28 years ago."

116.     Later in May 2018, Wardell conducted an informal survey or vote among potential purchasers of Star Control: Origins of which aliens to include from Reiche and Ford's Star Control Games.  At the end of the vote, on or about May 21, 2018, he stated that several alien races from Star Control I and II would also be in Star Control: Origins, and that they would play the same or similar roles as in the original game, e.g. the Arilou would be little green men who had been watching over earth, and the Melnorme would be a trading species, just as in Star Control II.

117.     In June 2018, Wardell revealed video showing that one of the ships in Star Control: Origins had the same name – the Earthling Cruiser – and a substantially similar appearance and weapons to the ship in Star Control I and II.

118.    In July 2018, Wardell confirmed that the Arilou would appear in Origins, and revealed that Origins would include other aliens from Star Control I and II called the Chenjesu and Melnorme.

119.    Wardell also revealed that stars would be named after Reiche and Ford, among others, in a further improper attempt to associate Stardock and Star Control: Origins with Reiche and Ford and their Star Control Games.

120.    On August 13, 2018, Wardell stated that "Stardock owns the Star Control aliens. Paul and Fred *might* have copyrights to how those aliens were expressed in Star Control II but that's the extent of it. … Stardock will utilize the Star Control aliens as it sees fit."

121.    On August 14, 2018, Wardell admitted that "We expect players to assume that the Arilou species [in Star Control: Origins] is related to the Arilou species in SC2 [Star Control II."

122.    In September 2018, Wardell stated that "Star Control aliens will be in Star Control games based on the needs of the story," referring to the aliens from Star Control I and II.  He went on to say that "[t]hey also will not appear in other games without our permission," confirming that Stardock will ultimately seek to stop Reiche and Ford from using their own characters in their sequel.

123.    Stardock and Valve recently released two Star Control: Origins content packs consisting of names, images, and descriptions of characters that are substantially similar to and/or derived from characters from Reiche and Ford's Star Control Games, specifically, the Arilou and the Chenjesu alien species.

124.    As noted above, Wardell admitted that Star Control: Origins includes characters called the Arilou who are from Star Control I and II.  Besides the identical names, below is a comparison of images of the Arilou from Star Control I and II and from the Arilou content pack:

1

**Arilou in Star Control I and II**





**Arilou in Origins Content Pack**



125. Stardock's website and content pack describe the Arilou as "a race of green-skinned aliens who admit to having been watching the human race for a very long time," and as "'little green men.' Calling themselves the Arilou Lalee'lay, they have apparently been watching humanity for a long time. … they also seem to be almost purposefully mysterious." Similarly, the Arilou are described in Star Control II as "[t]he Ariloulaleelay are a mysterious race … they do make regular, secret visits to your world, and have done so for centuries." The Star Control II

manual further described the Arilou as "pale, about 1.5 meters tall, and have large, childlike heads with dark, soulful eyes. … The Arilou may have visited Earth often in the past … ."

126.    Besides the identical names, below is a comparison of images of the Chenjesu from Star Control and from the Origins content pack:

**Chenjesu in Star Control**



**Chenjesu in Origins Content Pack**



127.    Stardock's website and content pack describe the Chenjesu as "ambulatory crystals themselves, who fed on a unique mixture of solar and chemical processes.  Peaceful and very intelligent" and living on "a strange crystalline world … ."  Similarly, the Chenjesu were

described in Star Control as "[c]rystalline in substance, existing on electric energy," and later described in Star Control II as having a "silicon-based biology … superior to our old carbon models," having "fantastic intellects," and being "peaceful," and being "a photo/chemovore (it derives its nourishment from light and ambient minerals)."

128.    Stardock, Valve, and GOG recently began selling a new version of Star Control: Origins, including Fleet Battles, that is substantially similar to and/or derived from Star Control II, again without Reiche and Ford's permission and in violation of their copyrights.  Indeed, Stardock has described Star Control: Origins as a "reboot" of or "prequel" to Star Control II.

129.    For example, players of Star Control: Origins start from earth and travel to and explore new stars and planets and encounter various alien species via hyperspace travel, just like in Star Control I and II.  Hyperspace travel in Star Control: Origins looks and sounds virtually identical to how it looks and sounds in Star Control II.

130.    The main ship in Star Control: Origins is called Vindicator, just like in Star Control II.

131.    As Wardell promised, some of the alien species that players encounter in Star Control: Origins are substantially similar to and/or derived from characters in Star Control II, including the Arilou as detailed above.

132.    Star Control: Origins refers to the police force as "Star Control," which is part of the lore from Reiche and Ford's Star Control Games, and the starbase commander in Star Control: Origins is called Commander Hayes, just like in Star Control II.

133.    The backstory of Star Control: Origins refers to characters called "Precursors" as an ancient, advanced alien species that explored the universe 250,000 years ago but then vanished, which is the exact same name and backstory (even the exact same number of years in the past) of the "Precursors" characters in Star Control I and II, and an important part of the plot of the game.

134.    Another alien race referred to in Origins is the Dnyarri, who are described as having rose to power and dominated the galaxy 20,000 years ago, which again is an alien species from Star Control II with the exact same name and backstory (again even down to the number of years in the past).

135.    Many of the planet types in Star Control: Origins have identical names to planet types in Reiche and Ford's Star Control Games.

136.    Players of Star Control: Origins search for Tzo Crystals and earn or collect resource units to exchange for things, just like in Reiche and Ford's Star Control Games.

137.    In addition to infringement in the game itself, Stardock has also extensively used material from Reiche and Ford's Star Control Games on Stardock's website and in marketing both the Classic Star Control Games, Fleet Battles, and Star Control: Origins.

138.    For example, Stardock has used on its website images of aliens that are substantially similar to and/or derived from aliens from Star Control I and II, *e.g.*:

**Yehat & Spathi in Reiche and Ford's Star Control Games**      **Yehat and Spathi on Stardock's Website**




**Orz in Reiche and Ford's Star Control Games**      **Orz on Stardock's Website**




139.    The parties engaged in extensive settlement discussions from October-December 2017, but Stardock ultimately broke off negotiations and filed suit against Reiche and Ford in mid-December, claiming for the first time that it owns copyrights to all of the Classic Star Control Games, not just Star Control 3, and that Accolade and not Reiche and Ford created Star Control and Star Control II, among other things.

***Stardock's Fraudulent Claims to Trademark Rights to Prevent Reiche and Ford from Making Their Own Derivative Work***

140.    In a further effort to prevent Reiche and Ford from rightfully using their copyrighted material to make Ghosts of the Precursors, and to justify Stardock's infringement of

DEFENDANTS AND COUNTER-CLAIMANTS' SECOND AMENDED COUNTERCLAIM

the Reiche and Ford Registered Copyrights, Stardock recently filed a series of applications to register trademarks on the unique names of many of the aliens and features contained in Star Control I and II.  Stardock's strategy also appears to be to multiply the number of adversarial proceedings as much as possible in the hopes of outspending Reiche and Ford.

141.    On or about December 14, 2017, Stardock filed U.S. Trademark Application No. 87,720,654 to register the mark THE UR-QUAN MASTERS.  Stardock claims therein that it has used the mark since at least August 10, 2013, but this representation is false.  Indeed, Stardock submitted a specimen appearing to consist of: a) a screenshot from the 1992 version of Star Control II published by Accolade; b) screenshots of GOG's and Steam's websites from in or around October-November 2017; and c) screenshots of Stardock's website from June 2018.

142.    At the same time, in this litigation, Stardock claims that this mark was used as a source identifier by Accolade and then Atari, though it cannot identify any evidence of such use.  Stardock claims that it bought the trademark rights to this mark from Atari, though it cannot identify any evidence of such purchase.  Stardock claims that it has continued to use this mark via its marketing and sales of Star Control II through GOG and otherwise.  Stardock also claims that Reiche and Ford's use of THE UR-QUAN MASTERS mark constitutes infringement of Stardock's trademark rights.  These claims are false.

143.    In addition, Stardock filed the following applications:

- U.S. Trademark Application No. 87,662,697 for the mark SUPER MELEE
- U.S. Trademark Application No. 87,810,480 for the mark ORZ
- U.S. Trademark Application No. 87,810,484 for the mark UR-QUAN
- U.S. Trademark Application No. 87,810,486 for the mark SYREEN
- U.S. Trademark Application No. 87,810,492 for the mark SPATHI
- U.S. Trademark Application No. 87,810,495 for the mark ANDROSYNTH
- U.S. Trademark Application No. 87,810,499 for the mark CHENJESU
- U.S. Trademark Application No. 87,810,502 for the mark ILWRATH
- U.S. Trademark Application No. 87,810,516 for the mark PKUNK
- U.S. Trademark Application No. 87,810,518 for the mark ARILOU

- U.S. Trademark Application No. 87,810,526 for the mark VUX
- U.S. Trademark Application No. 87,810,528 for the mark MELNORME
- U.S. Trademark Application No. 87,825,741 for the mark YEHAT
- U.S. Trademark Application No. 87,877,907 for the mark TAALO
- U.S. Trademark Application No. 87,877,969 for the mark DNYARRI
- U.S. Trademark Application No. 88,016,293 for the mark CRIMSON CORPORATION
- U.S. Trademark Application No. 88,016,354 for the mark FWIFFO
- U.S. Trademark Application No. 88,033,532 for the mark CHMMR
- U.S. Trademark Application No. 88,033,544 for the mark DRUUGE

144.    Stardock claims that all of these marks were also used as source identifiers by Accolade and then Atari, though it cannot identify any evidence of such use. Stardock further claims that it bought the trademark rights to these marks from Atari, though it cannot identify any evidence of such purchase. Stardock also claims that it has continued to use these marks through its marketing and sales of Star Control II through GOG and otherwise. Stardock claims that Reiche and Ford's use of these names in Reiche and Ford's Star Control Games, Ghosts of the Precursors, or any other derivative work constitutes infringement of Stardock's trademark rights.

145.    These claims are false. To the extent that Stardock argues that the use of these names within Star Control I and II constituted use as trademarks in commerce (which is a dubious claim at best), they were abandoned by Accolade/Atari since at least 2000, and the names have been used continuously by Reiche and Ford in connection with offering THE UR-QUAN MASTERS since 2002.

146.    At the same time, before the USPTO, Stardock filed the aforementioned applications under 15 U.S. Code § 1051(b), stating that it: a) intends to use the marks in commerce (but has yet to do so despite having sold Star Control I and II); b) believes it is entitled to use the marks; and c) that no other person has the right to use the marks in commerce. Again, these statements are false and directly contradict Stardock's other statements about not using nor having

rights to use the aliens (including the names), and confirming that Reiche and Ford have such rights.

147.    Most recently, Stardock filed an opposition to Reiche and Ford's U.S. Trademark Application No. 87,633,531 for the mark GHOSTS OF THE PRECURSORS.

148.    In its Notice of Opposition, Stardock falsely claims that it acquired from Atari all "product names/titles, sub-names/titles, cover art, characters (*e.g.*, aliens), alien race names, characters names, spaceship names and spaceship designs" from Star Control I, II, and III, including the purported mark PRECURSORS.

149.    Stardock claims that the purported PRECURSORS mark has been in use in commerce through sales of the games by Accolade, Atari, and then Stardock, which is also false. Indeed, Stardock's purported example of use of the mark is a page from the user manual for Star Control 3, which as noted above, only included "characters, names, … and other intellectual property rights pertaining to Star Control I and Star Control II," including the Precursors, pursuant to a license from Reiche.  Moreover, as with the other names discussed above, to the extent that Stardock argues that the use of the name PRECURSORS within Star Control I and II constituted use as a trademark in commerce, it was abandoned by Accolade/Atari since 2000, and the name has been used continuously by Reiche and Ford in connection with offering THE UR-QUAN MASTERS since 2002.

150.    Stardock claims that Reiche and Ford's planned use of the name GHOSTS OF THE PRECURSORS would be confusingly similar to Stardock's purported mark, create a likelihood of confusion, and damage Stardock (i.e. would constitute trademark infringement), which Reiche and Ford vigorously dispute.

151.    Stardock has recently sought to expand the classes of goods and services covered by its purported STAR CONTROL trademark.  On November 27, 2017, Stardock filed U.S. Trademark Application No. 87,697,919, and on February 22, 2018, Stardock filed U.S. Trademark Application No. 87,807,839, both for the mark STAR CONTROL.  In the former application, Stardock falsely represented to the USPTO that it has used this mark in commerce since at least August 10, 2013, and its specimen of use was also fraudulent in consisting of screenshots of

1   websites that did not exist until late 2017, and Reiche and Ford assume that Stardock will claim

2   the same first date of use for the latter application.

3   ***GOG Breaches the Ford-GOG Agreement***

4   152.   According to Stardock, the Atari-GOG Agreement expired on March 22, 2015, and

5   thus, all of the subsequent sales of the Classic Star Control Games on GOG infringed on its

6   purported trademarks and copyrights.

7   153.   As part of Stardock's plan to usurp Reiche and Ford's rights to THE UR-QUAN

8   MASTERS mark, in October 2017, Stardock and GOG renamed "Star Control 1+2" on GOG's

9   website to be called "Star Control: The Ur-Quan Masters."

10   154.   On December 8, 2017, Stardock filed its lawsuit claiming that sales of the Classic

11   Star Control Games on GOG infringed on its purported trademarks and copyrights and that Reiche

12   and Ford were liable as a result.

13   155.   While Reiche and Ford dispute Stardock's aforementioned claims, on or about

14   December 11, 2017, Reiche and Ford provided notice of Stardock's claims to GOG and

15   specifically requested that they not repost the games without Reiche and Ford's consent.

16   156.   Notwithstanding this notice, in early January, GOG resumed selling the Classic

17   Star Control Games, thereby resuming the alleged infringement and exposing Reiche and Ford to

18   additional potential damages.  GOG rejected a subsequent request to remove the games in

19   February 2018, thereby exposing Reiche and Ford to more damages.

20   157.   Given Stardock's claims and the alleged continuing infringement by GOG, on or

21   about March 8, 2018, Reiche and Ford sent GOG a notice of indemnification and indemnity.

22   158.   On or about March 28, 2018, GOG refused to defend or indemnify Reiche and

23   Ford, in breach of the Ford-GOG Agreement.

24   159.   Since the filing of this lawsuit, Reiche and Ford also learned that in or around 2017,

25   GOG Limited merged with GOG Poland sp. zo o.o., which is also controlled and solely owned by

26   CD Projekt, and that GOG Limited purportedly assigned its rights under the Ford-GOG

27   Agreement to GOG Poland sp. zo o.o., without notice to or consent from Reiche and Ford and in

28   breach of the Ford-GOG Agreement.

*__Reiche and Ford's Notices & Valve's & GOG's Continued Intentional & Willful Infringement__*

160.    On August 17 and 22, 2018, Reiche and Ford again sent Valve and GOG notices of infringement by and requests to remove Fleet Battles (which was being sold by both), and the Arilou and Chenjesu Content Packs (which were only being sold by Valve).

161.    Valve and GOG initially stopped selling Fleet Battles and the Arilou and Chenjesu Content Packs, but on September 20, 2018, they began selling a new version of Star Control: Origins that separately infringes on Reiche and Ford's copyrights, and that includes the previously removed Fleet Battles beta.

162.    On information and belief, Valve and GOG intend to continue selling Star Control: Origins indefinitely, without authorization from Reiche and Ford.

## FIRST CAUSE OF ACTION

**(Copyright Infringement – 17 U.S.C. § 501 – Against All Counter-Defendants)**

163.    Reiche and Ford reallege and incorporate herein by reference their responses to paragraphs 1 through 162 above as if set forth in full.

164.    Reiche and Ford are the owners of all copyrights to Reiche and Ford's Star Control Games, except a portion of the music that was licensed, and particularly the Reiche and Ford Registered Copyrights, including but not limited to the characters, names, plot lines, and all other audiovisual materials therein.

165.    Without Reiche and Ford's permission, Counter-Defendants have reproduced, copied, distributed, sold, displayed, and/or created derivative works from the Reiche and Ford Registered Copyrights, including but not limited to selling Reiche and Ford's Star Control Games and Star Control: Origins, which given the publicly available information appears to be substantially similar to and/or based on Reiche and Ford's Star Control Games.

166.    Counter-Defendants' actions violate Reiche and Ford's exclusive rights to reproduce, distribute, display, and create derivative works from the Reiche and Ford Registered Copyrights, and constitute infringement under 17 U.S.C. § 501.

167.    Counter-Defendants' actions have caused Reiche and Ford injury, and such conduct has been willful and malicious and without excuse or justification for which Reiche and Ford are

1   entitled to recover their damages and Counter-Defendants' profits or, in the alternative, statutory

2   damages, as well as their attorneys' fees and costs, under 17 U.S.C. § 504.

3          168.    In addition, Counter-Defendants' actions described above have caused, and unless

4   enjoined will continue to cause, irreparable harm to Reiche and Ford for which they have no

5   adequate remedy at law.  Accordingly, Reiche and Ford are entitled to preliminary and permanent

6   injunctions preventing and restraining Counter-Defendants' infringing conduct as to Reiche and

7   Ford's Star Control Games, including, but not limited to, the Reiche and Ford Registered

8   Copyrights pursuant to 17 U.S.C. § 502.  Such relief includes but is not limited to enjoining

9   Counter-Defendants' from all future reproduction, copying, distribution, sales, and display of,

10  and/or creation of derivative works from, Reiche and Ford's Star Control Games, including but

11  not limited to Star Control: Origins and Fleet Battles.

12                              **SECOND CAUSE OF ACTION**

13           **(Declaratory Judgment re: Ownership of Copyrights – Against Stardock)**

14         169.    Reiche and Ford reallege and incorporate herein by reference their responses to

15  paragraphs 1 through 168 above as if set forth in full.

16         170.    As explained above, pursuant to the 1988 License Agreement and Addenda Nos.

17  1-3 with Accolade, Reiche and Ford own the copyrights to Reiche and Ford's Star Control Games.

18         171.    However, in the First Amended Complaint and elsewhere, Stardock now claims to

19  own the copyrights to the Classic Star Control Games, which include Reiche and Ford's Star

20  Control Games.

21         172.    As a result, there exists a substantial controversy of sufficient immediacy and

22  reality between Reiche and Ford and Stardock to warrant the issuance of a declaratory judgment

23  that Reiche and Ford are the rightful owners of the copyrights in question.

24                              **THIRD CAUSE OF ACTION**

25      **(Unfair Competition – Lanham Act § 43(a) (15 U.S.C. § 1125(a) – Against Stardock)**

26         173.    Reiche and Ford reallege and incorporate herein by reference their responses to

27  paragraphs 1 through 172 above as if set forth in full.

28

174.   Stardock's aforementioned acts constitute unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

175.   For example, Stardock's use of the mark THE UR-QUAN MASTERS in connection with its goods and services and false or misleading statements concerning Reiche and Ford's involvement with and connection to Stardock's goods and services, including, but not limited to, Star Control: Origins, is likely to cause confusion or mistake or deception as to the affiliation, connection, or association of Stardock with Reiche and Ford, and/or as to the origin, sponsorship, or approval of Stardock's goods, services, and/or commercial activities by Reiche and Ford.

176.   As a proximate result of Stardock's unfair competition, Reiche and Ford have suffered and will continue to suffer loss of income, profits, and goodwill, and Stardock has and will continue to unfairly acquire income, profits, and goodwill.

177.   Stardock's wrongful conduct is and has been willful and malicious and without excuse or justification.  Reiche and Ford are, therefore, entitled to recover three times their damages, Stardock's profits, as well as their attorneys' fees and costs, pursuant to 15 U.S.C. § 1117.

178.   The injury to Reiche and Ford is and continues to be ongoing and irreparable.  An award of monetary damages alone cannot fully compensate Reiche and Ford for their injuries and they lack an adequate remedy at law.  Accordingly, Reiche and Ford are entitled to preliminary and permanent injunctions preventing and restraining Stardock from further violating § 43(a) of the Lanham Act, pursuant to 15 U.S.C. § 1116.

## FOURTH CAUSE OF ACTION

**(Common Law Trademark Infringement and Unfair Competition – Against Stardock)**

179.   Reiche and Ford reallege and incorporate herein by reference their responses to paragraphs 1 through 178 above as if set forth in full.

180.   Stardock has violated Reiche and Ford's exclusive common law rights in the mark THE UR-QUAN MASTERS.

181.    Reiche and Ford have continuously used the mark THE UR-QUAN MASTERS in connection with offering their goods and services in California and elsewhere since at least 2002. As such, Reiche and Ford have garnered common law rights in the mark.

182.    Stardock's unauthorized activities described herein, particularly its use of the mark THE UR-QUAN MASTERS in connection with Stardock's goods and services, are likely to cause confusion and mistake in the minds of the public as to the connection to, association with, and/or sponsorship by Reiche and Ford's goods and services, and therefore constitute trademark infringement and unfair competition under common law.

183.    Stardock's activities described herein were and are willful and intentional acts of trademark infringement.

184.    As a direct and proximate result, Reiche and Ford have suffered injury and harm, including damages.

185.    Stardock's activities have caused, and if not enjoined will continue to cause, irreparable harm and damage to Reiche and Ford's trademark rights, and they have no adequate remedy at law.

186.    Stardock has engaged in its unlawful conduct alleged herein intentionally, maliciously, fraudulently and oppressively, entitling Reiche and Ford to punitive and exemplary damages.

### FIFTH CAUSE OF ACTION

**(Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.*) – Against Stardock)**

187.    Reiche and Ford reallege and incorporate herein by reference their responses to paragraphs 1 through 186 above as if set forth in full.

188.    Stardock's actions complained of herein are unlawful and/or fraudulent business acts or practices, constituting unfair competition in violation of California Business and Professions Code § 17200 *et seq.*

189.    As a direct, proximate, and foreseeable result of Stardock's wrongful conduct as alleged above, Reiche and Ford have suffered injury and are entitled to relief, including

1  disgorgement of all revenues, earnings, profits, compensation, and benefits obtained by Stardock

2  as a result of its unlawful and/or fraudulent business acts or practices.

3    190.   Stardock's unlawful and/or fraudulent business acts or practices described above

4  are a serious and continuing threat to Reiche and Ford, and if Stardock is allowed to continue its

5  wrongful conduct, Reiche and Ford will suffer further immediate and irreparable injury, loss, and

6  damage.  In the absence of preliminary and permanent injunctions, Stardock will continue to

7  engage in the wrongful conduct described above.

8  **SIXTH CAUSE OF ACTION**

9  **(Cancellation of U.S. Trademark Registration No. 2,046,036 – Against Stardock)**

10    191.   Reiche and Ford reallege and incorporate herein by reference their responses to

11  paragraphs 1 through 190 above as if set forth in full.

12    192.   U.S. Trademark Registration No. 2,046,036 was improperly renewed and should be

13  cancelled because it was abandoned and/or was obtained fraudulently as set forth above, pursuant

14  to 35 U.S.C. § 1119.

15  **SEVENTH CAUSE OF ACTION**

16  **(Conversion – Against Stardock)**

17    193.   Reiche and Ford reallege and incorporate herein by reference their responses to

18  paragraphs 1 through 192 above as if set forth in full.

19    194.   Reiche and Ford own and have a right to possess all "plans, drawings,

20  specifications, papers, computer hardware or related equipment, documents, manuals, computer

21  programs, and other records, including all copies thereof" that they developed for Star Control and

22  Star Control II, including, but not limited to, any such property that Atari sent to Stardock as part

23  of the aforementioned bankruptcy proceedings.

24    195.   On information and belief, Stardock has intentionally and substantially interfered

25  with Reiche and Ford's aforementioned property by taking possession of it, including, but not

26  limited to, the gold masters and source code for Reiche and Ford's Star Control Games, and

27  preventing Reiche and Ford from having access to them.

28    196.   Reiche and Ford did not consent to these actions by Stardock.

197.     Reiche and Ford have been harmed as a result of Stardock's actions, and Stardock's actions were a substantial factor in causing Reiche and Ford's harm.

## EIGHTH CAUSE OF ACTION

### (Declaratory Judgment re: Trademark Rights – Against Stardock)

198.     Reiche and Ford reallege and incorporate herein by reference their responses to paragraphs 1 through 197 above as if set forth in full.

199.     Reiche and Ford own the copyrights to all of Reiche and Ford's Star Control Games, including but not limited to the characters and names therein, as well as the common law trademark rights to THE UR-QUAN MASTERS.  However, Stardock now claims to own trademark rights to all of these names and has filed applications to register them to prevent Reiche and Ford from rightfully using their copyrighted material within Reiche and Ford's Star Control Games, Ghosts of the Precursors, or any other derivative work.  Stardock has also filed an opposition to Reiche and Ford's trademark application to register GHOSTS OF THE PRECURSORS.  Stardock claims that Reiche and Ford's use of these names constitutes infringement of Stardock's trademark rights.

200.     Regarding THE UR-QUAN MASTERS mark, Reiche and Ford were using this mark long before Stardock.  Registration of such mark would cause confusion with Reiche and Ford's goods and services and cause harm to them.  Moreover, Stardock's representation to the USPTO that Stardock has used this mark in commerce since at least August 10, 2013 was false, and its specimen of use was also fraudulent.

201.     To the extent that use of the names of aliens and features in Stardock's trademark applications within Star Control I and II constitutes use in commerce, Reiche and Ford were also using them long before Stardock.  Registration of such marks would also cause confusion with Reiche and Ford's goods and services and cause harm to them.  Moreover, Stardock's representations to the USPTO that Stardock intended to use these names as trademarks in commerce and has sole rights to them were false.

202.     Stardock's opposition to Reiche and Ford's trademark application to register GHOSTS OF THE PRECURSORS and claim that their registration and/or planned use of such

1  mark would infringe on Stardock's purported PRECURSORS mark is baseless, and rests on a

2  series of false representations to the USPTO.

3      203.    Stardock's newer applications to expand the classes of goods and services covered

4  by its purported STAR CONTROL trademark similarly appear to be based on false representations

5  to the USPTO about Stardock's purported use of the mark.

6      204.    As a result, there exists a substantial controversy of sufficient immediacy and

7  reality between Reiche and Ford and Stardock to warrant the issuance of a declaratory judgment

8  that: a) Reiche and Ford are the rightful owners of THE UR-QUAN MASTERS mark; b) Reiche

9  and Ford have rights to use the names of aliens and features from Reiche and Ford's Star Control

10  Games in such games, in Ghosts of the Precursors, and in any other derivative works they may

11  later develop; c) Stardock has no trademark rights to THE UR-QUAN MASTERS or any of the

12  other names from Reiche and Ford's Star Control Games listed above; d) Reiche and Ford are

13  entitled to registration of the GHOSTS OF THE PRECURSORS mark; e) invalidating and/or

14  directing Stardock to immediately withdraw and abandon U.S. Trademark Application Nos.

15  87,662,697, 87,697,919, 87,720,654, 87,807,839, 87,810,480, 87,810,484, 87,810,486,

16  87,810,492, 87,810,495, 87,810,499, 87,810,502, 87,810,516, 87,810.518, 87,810,526,

17  87,810,528, 87,825,741, 87,877,907, 87,877,969, 88,016,293, 88,016,354, 88,033,532, and

18  88,033,544; and f) directing Stardock to immediately withdraw and abandon its opposition to U.S.

19  Trademark Application No. 87,633,531.

20                      **NINTH CAUSE OF ACTION**

21                     **(Fraud – Against Stardock and GOG)**

22      205.    Reiche and Ford reallege and incorporate herein by reference their responses to

23  paragraphs 1 through 204 above as if set forth in full.

24      206.    Stardock made representations of material fact in emails from Wardell to Reiche

25  and Ford that are detailed above to the effect that Stardock stated that Reiche and Ford own the

26  rights to the content in Star Control I and II and that Stardock would not use any such content,

27  including aliens, lore, history, and ship designs, among other things, in Star Control: Origins.

28

207.    These representations were in fact false.  The truth was that Stardock intended to incorporate numerous elements from Reiche and Ford's Star Control Games into Star Control: Origins, including aliens, lore, history, and ship designs, among other things, and to launch a wholesale attack on Reiche and Ford's intellectual property rights in the Star Control games.

208.    When Wardell made these false representations, he and Stardock knew they were false.

209.    GOG concealed material facts that it had a duty to disclose.  Specifically, GOG concealed the alleged expiration of the Atari-GOG Agreement on March 22, 2015 that is the foundation for Stardock's claim that all subsequent sales of the Classic Star Control Games on GOG infringed on Stardock's purported trademarks and copyrights.

210.    Stardock and GOG made these false representations and concealed these facts with the intent to induce Reiche and Ford to act as described herein, for example, to allow continued sales of the Classic Star Control Games on GOG that Stardock now alleges support its claims for infringement and that it has established trademark rights, among other things, and to forestall Reiche and Ford from halting the development and release of Star Control: Origins as a derivative work from Reiche and Ford's Star Control Games.

211.    At the time Reiche and Ford acted, they were unaware that Stardock's representations were false and unaware of the concealed facts.

212.    In justifiable reliance on Stardock's and GOG's conduct, Reiche and Ford were induced to allow the continued sales of the Classic Star Control Games on GOG, among other things.

213.    As a result of Reiche and Ford's reliance on Stardock's and GOG's conduct, Reiche and Ford were damaged in that, among other things, the allegedly infringing sales of the Classic Star Control Games continued for another 3-4 years during which Reiche and Ford's liability to Stardock allegedly accrued, and Reiche and Ford were induced into a false sense of security and to sit on their laurels while Stardock's plans to steal their copyrights and trademark rights proceeded.

214.    Stardock's and GOG's aforementioned acts were undertaken with malice, oppression, and fraud; therefore, Reiche and Ford are entitled to an award of punitive damages.

## TENTH CAUSE OF ACTION

### (Breach of Contract – Against GOG)

215.    Reiche and Ford reallege and incorporate herein by reference their responses to paragraphs 1 through 214 above as if set forth in full.

216.    Reiche and Ford, on the one hand, and GOG, on the other, entered into a contract on or about January 2, 2012.

217.    Reiche and Ford did all, or substantially all, of the significant things that the contract required them to do.

218.    GOG breached the contract in one or more ways, including but not limited to: a) GOG improperly used Reiche and Ford's THE UR-QUAN MASTERS mark; b) if Stardock's allegations are true, GOG failed to obtain the rights to the product names and related trademark(s); c) GOG failed to defend and indemnify Reiche and Ford against Stardock's claims; and d) GOG failed to provide notice and obtain Reiche and Ford's consent to the alleged assignment of the Ford-GOG Agreement from GOG Limited to GOG Poland sp. z o.o.

219.    Reiche and Ford have been harmed as a result of GOG's breach, and GOG's breach was a substantial factor in causing Reiche and Ford's harm.

## ELEVENTH CAUSE OF ACTION

### (Contributory Copyright Infringement – Against Valve and GOG)

220.    Reiche and Ford reallege and incorporate herein by reference their responses to paragraphs 1 through 219 above as if set forth in full.

221.    Reiche and Ford are the owners of all copyrights to Reiche and Ford's Star Control Games, except a portion of the music that was licensed, and particularly the Reiche and Ford Registered Copyrights, including but not limited to the characters, names, plot lines, and all other audiovisual materials therein.

222.    Valve and GOG knew of Stardock's infringing activity because, among other things, Reiche and Ford notified them of such infringement.

223.     Notwithstanding that knowledge, and without Reiche and Ford's permission, Valve and GOG intentionally and materially contributed to Stardock's infringing activity including by facilitating Stardock's sales and distribution of Reiche and Ford's Star Control Games and/or Star Control: Origins, which is substantially similar to and/or derived from Reiche and Ford's Star Control Games.

224.     Valve's and GOG's actions violate Reiche and Ford's exclusive rights to reproduce, distribute, display, and create derivative works from the Reiche and Ford Registered Copyrights.

225.     Valve's and GOG's actions have caused Reiche and Ford injury, and such conduct has been willful and malicious and without excuse or justification for which Reiche and Ford are entitled to recover their damages and Valve's and GOG's profits or, in the alternative, statutory damages, as well as their attorneys' fees and costs, under 17 U.S.C. § 504.

226.     In addition, Valve's and GOG's actions described above have caused, and unless enjoined will continue to cause, irreparable harm to Reiche and Ford for which they have no adequate remedy at law.  Accordingly, Reiche and Ford are entitled to preliminary and permanent injunctions preventing and restraining Valve's and GOG's infringing conduct as to Reiche and Ford's Star Control Games, including, but not limited to, the Reiche and Ford Registered Copyrights.  Such relief includes but is not limited to enjoining Valve and GOG from all future reproduction, copying, distribution, sales, and display of, and/or creation of derivative works from, Reiche and Ford's Star Control Games, including but not limited to Star Control: Origins and Fleet Battles.

### TWELFTH CAUSE OF ACTION

### (Vicarious Copyright Infringement – Against Valve and GOG)

227.     Reiche and Ford reallege and incorporate herein by reference their responses to paragraphs 1 through 226 above as if set forth in full.

228.     Reiche and Ford are the owners of all copyrights to Reiche and Ford's Star Control Games, except a portion of the music that was licensed, and particularly the Reiche and Ford

Registered Copyrights, including but not limited to the characters, names, plot lines, and all other audiovisual materials therein.

229.    Valve and GOG knew of Stardock's infringing activity because, among other things, Reiche and Ford notified them of such infringement.

230.    Notwithstanding that knowledge, and without Reiche and Ford's permission, Valve and GOG continued selling Reiche and Ford's Star Control Games and/or Star Control: Origins, which is substantially similar to and/or derived from Reiche and Ford's Star Control Games.

231.    Valve and GOG directly benefitted financially from Stardock's infringing activity, in that they each received and kept a portion of the proceeds from all sales of Reiche and Ford's Star Control Games and Star Control: Origins.

232.    Valve and GOG had the right and ability to control the infringing activity of Stardock including but not limited to by removing the infringing content and/or refusing to sell and distribute the infringing content on their websites.

233.    Valve and GOG failed to exercise their ability to control Stardock's infringing actions.

234.    Valve's and GOG's actions violate Reiche and Ford's exclusive rights to reproduce, distribute, display, and create derivative works from the Reiche and Ford Registered Copyrights.

235.    Valve's and GOG's actions have caused Reiche and Ford injury, and such conduct has been willful and malicious and without excuse or justification for which Reiche and Ford are entitled to recover their damages and Valve's and GOG's profits or, in the alternative, statutory damages, as well as their attorneys' fees and costs, under 17 U.S.C. § 504.

236.    In addition, Valve's and GOG's actions described above have caused, and unless enjoined will continue to cause, irreparable harm to Reiche and Ford for which they have no adequate remedy at law.  Accordingly, Reiche and Ford are entitled to preliminary and permanent injunctions preventing and restraining Valve's and GOG's infringing conduct as to Reiche and Ford's Star Control Games, including, but not limited to, the Reiche and Ford Registered Copyrights.  Such relief includes but is not limited to enjoining Valve and GOG from all future

1   reproduction, copying, distribution, sales, and display of, and/or creation of derivative works from,

2   Reiche and Ford's Star Control Games, including but not limited to Star Control: Origins and

3   Fleet Battles.

4                                    **PRAYER FOR RELIEF**

5          WHEREFORE, Reiche and Ford pray for judgment against Counter-Defendants on all

6   causes of action and for the following relief:

7          a.      For preliminary and permanent injunctions enjoining Counter-Defendants from

8                  infringing on Reiche and Ford's copyrights to the Reiche and Ford Registered

9                  Copyrights and Reiche and Ford's Star Control Games, including, but not limited

10                 to, ceasing all distribution and sales of Star Control, Star Control II, Star Control 3,

11                 Star Control: Origins, and Fleet Battles;

12         b.      For a declaratory judgment that Reiche and Ford are the owners of the copyrights

13                 to Reiche and Ford's Star Control Games, namely Star Control, Star Control II,

14                 including The Ur-Quan Masters, and Reiche's Preexisting Characters used in Star

15                 Control 3;

16         c.      For preliminary and permanent injunctions enjoining Stardock from using the mark

17                 THE UR-QUAN MASTERS in connection with its goods and services, and from

18                 making any further statements implying that Reiche and Ford have or had any

19                 involvement or association or relationship with or connection to Stardock or its

20                 goods and services, and/or implying that there is any connection or relationship

21                 between Reiche and Ford's Star Control Games and Star Control: Origins;

22         d.      For an order to the USPTO to cancel U.S. Trademark Registration No. 2,046,036;

23         e.      For an injunction compelling Stardock to return the gold masters and source code

24                 to Reiche and Ford, as well as any other property that they developed for Star

25                 Control and Star Control II;

26         f.      For an order invalidating and an injunction compelling Stardock to immediately

27                 withdraw and abandon U.S. Trademark Application Nos. 87,662,697, 87,697,919,

28                 87,720,654, 87,807,839, 87,810,480, 87,810,484, 87,810,486, 87,810,492,

87,810,495, 87,810,499, 87,810,502, 87,810,516, 87,810.518, 87,810,526, 87,810,528, 87,825,741, 87,877,907, 87,877,969, 88,016,293, 88,016,354, 88,033,532, and 88,033,544, and enjoining Stardock from filing any further applications to register names of features or characters from Reiche and Ford's Star Control Games;

g.   For an injunction compelling Stardock to immediately withdraw and abandon its opposition to U.S. Trademark Application No. 87,633,531.

h.   For an accounting and award of Counter-Defendants' profits and disgorgement of Counter-Defendants' revenues, earnings, profits, compensation, and benefits obtained by its infringement and/or unlawful and/or fraudulent business acts or practices;

i.   For Reiche's and Ford's damages according to proof;

j.   For treble damages for Stardock's violations of Section 43 of the Lanham Act;

k.   In the alternative, for Stardock's copyright infringement, statutory damages;

l.   For exemplary and punitive damages;

m.   For attorneys' fees;

n.   For costs of suit herein incurred;

o.   For pre- and post-judgment interest as ordered by the Court;

p.   For any other remedies to which Reiche and Ford may be entitled under federal or state law; and

q.   For any other and further relief the court may deem proper.

### JURY DEMAND

Reiche and Ford demand a trial by jury on all issues so triable.

1

DATED:  October 15, 2018

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation

2

3

4

By:        /s/ Stephen C. Steinberg

Stephen C. Steinberg

5

Attorneys for Defendants and Counter-Claimants

6

PAUL REICHE III and ROBERT FREDERICK
FORD

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS AND COUNTER-CLAIMANTS' SECOND AMENDED COUNTERCLAIM