1  STEPHEN C. STEINBERG (SBN 230656)
     ssteinberg@bzbm.com
2  TIFFANY S. HANSEN (SBN 292850)
     thansen@bzbm.com
3  BARTKO ZANKEL BUNZEL & MILLER
   A Professional Law Corporation
4  One Embarcadero Center, Suite 800
   San Francisco, California 94111
5  Telephone: (415) 956-1900
   Facsimile:  (415) 956-1152
6
   MARK S. PALMER (SBN 203256)
7    mark@palmerlex.com
   4 Meadow Drive
8  Mill Valley, CA 94941
   Telephone: (415) 336.7002
9  Facsimile:  (415) 634-1671

10 Attorneys for Defendants and Counter-Claimants
   PAUL REICHE III and ROBERT FREDERICK FORD
11

12                       UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| 14  STARDOCK SYSTEMS, INC.,<br>15         Plaintiff,<br>16     v.<br>17  PAUL REICHE III and ROBERT FREDERICK FORD,<br>18         Defendants.<br>19<br>20  PAUL REICHE III and ROBERT FREDERICK FORD,<br>21         Counter-Claimants,<br>22     v.<br>23  STARDOCK SYSTEMS, INC.,<br>24         Counter-Defendants. | Case No. 4:17-CV-07025-SBA<br><br>**DEFENDANTS AND COUNTER-CLAIMANTS PAUL REICHE III AND ROBERT FREDERICK FORD'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS TWELVE AND THIRTEEN OF STARDOCK'S THIRD AMENDED COMPLAINT**<br><br>[FED. R. CIV. P. 12(b)(6)]<br><br>Judge: Hon. Saundra B. Armstrong<br>Date: December 12, 2018<br>Time: 1:00 p.m.<br>Ctrm: 5 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 12, 2018, at 1:00 p.m., or as soon thereafter as can be heard, in the courtroom of the Honorable Saundra B. Armstrong, Oakland Division of the United States District Court for the Northern District of California, located at Courtroom 5 (2nd Floor), 1301 Clay Street, Oakland, California 94612, Defendants and Counter-Claimants Paul Reiche III and Robert Frederick Ford (collectively, "Reiche and Ford") will and hereby do move to dismiss Counts Twelve and Thirteen of the Third Amended Complaint filed by Stardock Systems, Inc. in the above-captioned action, pursuant to Fed. R. Civ. P. 12(b)(6).

Specifically, Reiche and Ford request dismissal of Stardock's Twelfth Count for Interference with Prospective Economic Advantage and Thirteenth Count for Interference with Contractual Relations on the grounds that both claims are preempted by Stardock's claim for submission of false DMCA notices under Section 512(f) of the Copyright Act and, alternatively, because Stardock has failed to plead facts supporting those claims.

This Motion is made following the conference of counsel, pursuant to the Court's Standing Order, which took place on October 26, 2018.

This Motion is based on this notice, the attached Memorandum of Points and Authorities, the records and files herein, and on such other and oral documentary evidence as may be presented at the time of the hearing.

DATED: October 29, 2018

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation

By: /s/ Tiffany S. Hansen
Tiffany S. Hansen
Attorneys for Defendants and Counter-Claimants
PAUL REICHE III and ROBERT FREDERICK FORD

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 6 |
| II. | FACTUAL AND PROCEDURAL HISTORY | 7 |
| III. | LEGAL STANDARD GOVERNING MOTIONS TO DISMISS | 8 |
| IV. | ARGUMENT | 9 |
| | A. Stardock's Interference Claims are Preempted and Thus Fail as a Matter of Law | 9 |
| | B. Setting Aside the Allegations Subsumed by Federal Law, Stardock's TAC Fails to State Facts Sufficient to Supports its Interference Claims | 11 |
| | 1. The *Iqbal/Twombly* Standard Requires a Plausible Claim for Relief After Conclusory Statements are Ignored | 11 |
| | 2. Stardock's TAC Fails to State a Claim for Interference with Prospective Economic Advantage | 12 |
| | 3. Stardock's TAC Fails to State a Claim for Interference with Contractual Relations | 14 |
| | C. Stardock Should Not Be Granted Leave to Amend | 16 |
| V. | CONCLUSION | 16 |

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*
   No. C 10-05696 CRB, 2011 WL 2690437 (N.D. Cal. July 8, 2011) ..........................................7

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ..................................................................................................6, 9, 10

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ..................................................................................................6, 9, 10

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*
   11 Cal. 4th 376 (1995)..............................................................................................................11

*Hinds Investments, L.P. v. Angioli*
   654 F.3d 846 (9th Cir. 2011) ....................................................................................................6

*Ileto v. Glock, Inc.*
   349 F.3d 1191 (9th Cir. 2003) ..................................................................................................6

*Korea Supply Co. v. Lockheed Martin Corp.*
   29 Cal. 4th 1134 (2003)................................................................................................10, 11

*Lenz v. Universal Music Corp.*
   No. C 07-03783 JF, 2008 WL 962102 (N.D. Cal. Apr. 8, 2008)..............................................7

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*
   271 F.3d 825 (9th Cir. 2001) ..................................................................................................11

*Media.net Advertising FZ-LLC v. NetSeer, Inc.*
   156 F. Supp. 3d 1052 (N.D. Cal. 2016) ....................................................................................7

*Online Policy Group v. Diebold, Inc.*
   337 F. Supp. 2d 1195 (N.D. Cal. 2004) ................................................................................7, 8

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*
   50 Cal. 3d 1118 (1990)............................................................................................................12

*Roth v. Rhodes*
   25 Cal. App. 4th 530 (1994).....................................................................................................11

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*
   983 F. Supp. 1303 (N.D. Cal. 1997) .......................................................................................11

**Statutes**

17 United States Code
 § 512(f) ...................................................................................................................................7

**Other Authorities**

Federal Rules of Civil Procedure
 Rule 8(a)(2) ............................................................................................................................9
 Rule 12(b)(6) ..........................................................................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants and Counter-Claimants Paul Reiche III ("Reiche") and Robert Frederick Ford ("Ford") (collectively, "Reiche and Ford") hereby move this Court to dismiss Counts Twelve and Thirteen of Stardock Systems, Inc.'s ("Stardock") Third Amended Complaint, for the reasons set forth below.

### I.   INTRODUCTION

On October 15, 2018, Stardock filed its Third Amended Complaint ("TAC"), adding a new claim for the submission of false DMCA notices under Section 512(f) of the Copyright Act (the "DMCA claim"). Dkt 72. In support of its DMCA claim, Stardock alleges, among other things, that DMCA takedown notices that Reiche and Ford issued to two online game distribution sites contained false statements and misrepresentations and resulted in those sites improperly removing Stardock's content. *See, e.g.* TAC, ¶¶ 115, 119, 125. In addition to its DMCA claim, Stardock added two interference-based claims: Count Twelve for tortious interference with prospective economic advantage ("prospective economic advantage claim") and Count Thirteen for tortious interference with contractual relations ("contractual interference claim") (collectively, the "interference claims").

Stardock's state-law interference claims are premised on the very same conduct as its DMCA claim—namely, Reiche and Ford's issuance of purportedly false DMCA notices. *See, e.g.* TAC, ¶¶ 124-129; 210-212; 215-218. Stardock alleges that, as a result of the purportedly false DMCA notices sent by Reiche and Ford, and the resulting removal of Stardock's content from the two online game distribution sites, Stardock's relationships with its current and prospective business partners have been harmed. Consequently, Stardock's state-law interference claims are preempted by federal copyright law and dismissal of those claims is proper.

To the extent Stardock argues that its interference claims are not premised on the DMCA allegations and are supported by other factual allegations in the TAC—as it must, to avoid preemption and dismissal—that claim fails. First, such a claim is belied by the very allegations in the TAC, which on their face make clear that Stardock's interference claims are based on Reiche and Ford's issuance of the purportedly false DMCA notices. Second, setting aside the allegations

in the TAC which are subsumed by federal law as well as any conclusory allegations, Stardock has failed to plead facts sufficient to supports its interference claims. Specifically, Stardock has failed to plead facts sufficient to show (1) any independently wrongful conduct by Reiche and Ford separate from the alleged interference, (2) that Reiche and Ford had knowledge of Stardock's relationships with Valve and GOG; (3) that Reiche and Ford intended to disrupt Stardock's relationships with Valve and GOG; or (4) that Stardock's relationships with Valve and GOG were, in fact, disrupted. Indeed, the allegations in the TAC illustrate that Stardock's relationships with Valve and GOG were *not* disrupted.

For the reasons set forth herein, Reiche and Ford respectfully request the Court dismiss Stardock's interference claims on the grounds that they are preempted by federal law and, alternatively, because Stardock has failed to plead facts supporting those claims.

## II.   FACTUAL AND PROCEDURAL HISTORY

Reiche and Ford are game designers and developers who often work together to create computer programs and games. TAC, ¶ 59. In or around 1990-1992, Reiche and a company called Accolade, Inc. developed and published two science fiction video games called Star Control and Star Control II that focused on space combat and featured space ship characters, aliens and other graphics. TAC, ¶ 12-13. In or about 2013, Stardock began creating a new game titled Star Control: Origins ("Origins"), as a successor to the original Star Control games. TAC, ¶ 47. On or about October 9, 2017, Reiche and Ford publicly announced the expected release of their own new game titled Ghosts of the Precursors ("Ghosts"). TAC, ¶ 60. On or about October 18, 2016, Stardock publicly announced its expected release of Origins. TAC, ¶ 54. On or about November 16, 2017, Stardock released Star Control: Origins Fleet Battles ("Fleet Battles") Beta 1, a feature of Origins, on its website. TAC, ¶ 58.

Prior to its release of Origins, Stardock also published and distributed certain promotional and other material and content relating to Origins, including the Fleet Battles Beta and various content packs (collectively "Pre-Origins Game Content"), on two online game distribution sites—Valve Corporation ("Valve") and GOG sp. z o.o. ("GOG"). TAC, ¶ 113.

On August 17 and August 21, 2018, counsel for Reiche and Ford submitted Notices of Copyright Infringement under the DMCA to Valve and GOG, respectively, (collectively, "DMCA Notices") alleging that the Pre-Origins Game Content offered on their sites infringed Reiche and Ford's copyrights. TAC, ¶¶ 114, 118. Reiche and Ford requested that Valve and GOG remove the content. *Id*. Valve and GOG followed the DMCA procedures set forth in Section 512(f) of the Copyright Act and refrained from advertising and/or selling the Pre-Origins Game Content pending the disposition of this litigation. TAC, ¶ 123. As of the date of the TAC, Valve and GOG do not advertise and/or sell Pre-Origins Game Content on their sites.

Stardock alleges that, "***as a result of the DMCA Notices***, the Fleet Battles Beta was taken down prematurely" and "[t]he blocking of material or content associated with its Origins Game ***as a result of the DMCA notices*** by Reiche and Ford, has and will continue to permanently harm Stardock's relationship with its current business partners." TAC, ¶¶ 128-129 (emphasis added). Stardock further alleges that Reiche and Ford have interfered with and disrupted Stardock's relationships with Valve and GOG "***by submitting the false DMCA notices***." TAC, ¶¶ 210, 216 (emphasis added). Notably, despite this alleged interference, Stardock concedes that it was able to release its Origins game on September 20, 2018. TAC, ¶ 130.

Stardock initiated this action against Reiche and Ford by filing its original Complaint on December 8, 2017. Dkt 1. Stardock's original Complaint contained 103 paragraphs of allegations. *Id*. On March 15, 2018, Stardock filed its First Amended Complaint, adding seven additional paragraphs of allegations. Dkt 27. On July 16, 2018, Stardock filed its Second Amended Complaint, adding 45 additional paragraphs of allegations. Dkt 51. Finally, on October 15, 2018, Stardock filed its TAC, adding an additional 70 paragraphs of allegations, for a total of ***225 paragraphs of allegations*** spanning 56 pages. Dkt 72.

### III.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-2000 (9th Cir. 2003). A pleading fails to state a claim when it (1) lacks a cognizable legal theory or (2) identifies a cognizable legal theory, but fails to allege sufficient supporting facts. *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846,

850 (9th Cir. 2011). To survive a Rule 12(b)(6) motion to dismiss, the pleadings must set forth factual matter that, if accepted as true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must therefore provide more than legal conclusions and "[t]hreadbare recitals of the elements of a cause of action." *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## IV.   ARGUMENT

Stardock's interference claims are deficient and subject to dismissal under Fed. R. Civ. P. 12(b)(6). First, Stardock's interference claims fail as a matter of law because they are based entirely on issues subsumed by federal law and are therefore preempted. Second, to the extent Stardock argues its interference claims are based on allegations beyond those subsumed by federal law, such allegations are insufficient to support its interference claims.

Stardock should not be granted leave to amend. For the reasons set forth below, the defects in the TAC are incurable and any amendment would be futile. Moreover, Stardock's 225-paragraph complaint has now been amended three times—Stardock has had ample opportunity to include allegations sufficient to support its claims and should not be granted further leave to add additional allegations that should have been known to it at the time of the original Complaint.

### A.   Stardock's Interference Claims are Preempted and Thus Fail as a Matter of Law

Numerous courts in the Ninth Circuit have squarely addressed the question of whether a claim of an improper DMCA notice under Section 512(f) of the Copyright Act preempts state law interference claims and have unequivocally held that it does. *See, e.g., Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696 CRB, 2011 WL 2690437, at *3 n.2 (N.D. Cal. July 8, 2011) ("17 U.S.C. 512(f) preempts state law claims based on DMCA Takedown Notifications"); *Lenz v. Universal Music Corp.*, No. C 07-03783 JF, 2008 WL 962102, at *4 (N.D. Cal. Apr. 8, 2008) (finding the provisions of 17 U.S.C. § 512(f) constitute the sole remedy for a customer who objects to the contents and effects of Section 512 takedown notices); *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1205-06 (N.D. Cal. 2004); *Media.net*

*Advertising FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1073 (N.D. Cal. 2016).  The *Amaretto* court found that the *Diebold* and *Lenz* cases stand for the proposition that (1) a DMCA takedown notification is a creature of federal statutory regime, and (2) that regime preempts any state law claim based on an allegedly improper DMCA takedown notification.  *Amaretto Ranch*, 2011 WL 2690437, at *3.  Thus, when a complaint contains state law interference claims which are predicated on an improper DMCA takedown notification, the state law claims are preempted and subject to dismissal.  *Id*.

As the Northern District of California explained:

> Even if a copyright holder does not intend to cause anything other than the removal of allegedly infringing material, compliance with the DMCA's procedures nonetheless may result in disruption of a contractual relationship: by sending a letter, the copyright holder can effectuate the disruption of ISP service to clients.  If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law.  To the extent that Plaintiffs argue that there is no conflict because Diebold's use of the DMCA in this case was based on misrepresentation of Diebold's rights, their argument is undercut by the provisions of the statute itself.  In section 512(f), Congress provides an express remedy for misuse of the DMCA's safe harbor provisions.  It appears that Congress carefully balanced the competing interests of copyright holders, ISPs, and the public, by providing immunity subject to relief for any misuse of the statute. Accordingly, Diebold's motion [to dismiss] will be granted as to Plaintiffs' state law claim."

*Online Policy Group*, 337 F. Supp. 2d at 1205-06.

Stardock's interference claims are predicated entirely on its DMCA claim and allegation that Reiche and Ford submitted false DMCA notices: "Reiche and Ford knew or should have known of Stardock's  . . . relationships with Valve and GOG," and "have willfully committed intentional, malicious and wrongful acts to disrupt these relationships ***by submitting the false DMCA Notices*** for the improper removal of the Stardock Pre-Origins Game Content from the platforms."  *See* TAC ¶¶ 210 and 216 (emphasis added).  Stardock further alleges "Stardock is already engaged with several business partners for the advertising and promotion of Stardock's Origins Game" and "[t]he blocking of material or content associated with its Origins games ***as a result of the DMCA Notices*** or any future DMCA notices by Reiche and Ford, ***has and will continue to permanently harm Stardock's relationship with its current business partners***."

TAC, ¶ 128 (emphasis added).  Because Stardock's interference claims are based entirely on allegations related to Stardock's DMCA claim, the interference claims are preempted by the DMCA and dismissal is proper.

### B. Setting Aside the Allegations Subsumed by Federal Law, Stardock's TAC Fails to State Facts Sufficient to Supports its Interference Claims

As discussed above, to the extent Stardock draws support for its interference claims from its allegations that Reiche and Ford submitted false DMCA notices, those claims are preempted by federal copyright law.

Reiche and Ford anticipate that Stardock will attempt to support its otherwise preempted claims with factual allegations made elsewhere in the TAC, as it must do in order to avoid preemption and dismissal.  At the outset, any such argument should be disregarded as contrary to the allegations pled directly by Stardock in support of its interference claims.  *See* TAC ¶¶ 210 and 216 (Reiche and Ford "have willfully committed intentional, malicious and wrongful acts to disrupt these relationships **by submitting the false DMCA Notices**.") (emphasis added).  To the extent the Court is willing to entertain an argument that Stardock has pled other facts to support its interference claim, that argument also fails.  Setting aside the allegations that are subsumed by federal law, the remaining allegations in the TAC are insufficient to state plausible interference claims.  For these reasons, dismissal of Stardock's interference claims is proper.

#### 1. The *Iqbal/Twombly* Standard Requires a Plausible Claim for Relief After Conclusory Statements are Ignored

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is **plausible on its face**." *Twombly*, 550 U.S. at 570 (emphasis added); *see also Iqbal*, 556 U.S. at 683.  In *Iqbal*, the Supreme Court held that, when deciding a motion to dismiss a complaint, a district court need not accept as true assertions that are no more than recitals of elements of a cause of action, supported by mere conclusory statements. *Iqbal*, 556 U.S. at 680.  Thus, the *Twombly/Iqbal* standard requires a two part analysis:

- ***First***, conclusory allegations—"labels," "conclusions," "formulaic recitations of the elements of a cause of action"—are disregarded. *Twombly*, 550 U.S. at 555. Only "well-pleaded, nonconclusory factual allegation(s)" are considered. *Iqbal*, 556 U.S. at 680.
- ***Second***, after disregarding all conclusory allegations, the remaining factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570.

In other words, it is not enough to plead facts that are merely consistent with the alleged liability; such a complaint "stops short of the line between ***possibility*** and ***plausibility*** of entitlement to relief." *Iqbal*, 556 U.S. at 678 (emphasis added). Rather, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that he defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### 2. Stardock's TAC Fails to State a Claim for Interference with Prospective Economic Advantage

Setting aside the DMCA allegations (which would cause the claim to be preempted), Stardock's Twelfth Count for tortious interference with prospective economic advantage consists entirely of conclusory statements that must be disregarded under *Twombly/Iqbal*. The elements which a plaintiff must plead to state a cause of action for interference with prospective economic advantage are (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) an independently wrongful act on the part of the defendant designed to disrupt the relationship or which defendant was substantially certain would disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-55 (2003).

*First*, Stardock fails to allege any independently wrongful or actionable act on the part of Reiche and Ford.  This element requires that a plaintiff plead that the defendant engaged in an act that is wrongful apart from the interference itself.  *Id*. at 1154.  An act is not independently wrongful merely because defendant acted with an improper motive.  Rather, "the law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties."  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995).  "The tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct."  *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 832 (9th Cir. 2001).  "An act is independently wrongful if it is ***unlawful***, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Korea Supply Co.*, 29 Cal. 4th at 1158, citing *Marin Tug*, 271 F.3d at 835; *see also Della Penna*, 11 Cal. 4th at 408 (conc. opn. of Mosk, J.) ("it follows that the tort may be satisfied . . . by independently tortious means.") (emphasis added).  Stardock fails to allege any "independent wrongful conduct" by Reiche and Ford and this alone renders Stardock's prospective economic advantage claim fatally flawed.  Aside from allegations that are preempted by federal law—such as the DMCA, trademark and copyright allegations—Stardock fails to allege facts sufficient to show that Reiche and Ford have engaged in any independently tortious act which would support its prospective economic advantage claim.

*Second*, to state a claim for interference with prospective economic advantage a plaintiff must allege a specific existing economic relationship with a third party with which the defendant purportedly interfered.  *See Roth v. Rhodes*, 25 Cal. App. 4th 530, 546 (1994); *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1311-12 (N.D. Cal. 1997).  In *Silicon Knights, Inc.* the Northern District of California held that vague references to relationships with "customers and potential customers" were not sufficient to state a claim for interference with prospective economic advantage.  *Id*.  While Stardock specifically alleges relationships between itself and Valve and GOG, its vague allegation of relationships with "existing and potential customers"

simply does not pass muster. TAC, ¶ 210; *see Roth*, 25 Cal. App. 4th at 546; *Silicon Knights, Inc.*, 983 F. Supp. at 1311-12. Without additional specific facts concerning the specific third party relationships and the disruption of such relationships, among others, Stardock fails to state a valid claim for interference with prospective economic advantage as to any "existing and potential customers."

***Third***, after setting aside the bald, conclusory and formulaic recitations of the elements, as well as the allegations which are subsumed by federal law, Stardock fails to allege facts sufficient to show: (1) that Reiche and Ford had knowledge of Stardock's relationships with Valve and GOG; (2) that Reiche and Ford intended to disrupt Stardock's relationships with Valve and GOG; or (3) that Stardock's relationships with Valve and GOG were, in fact, disrupted. Indeed, there are no facts from which the court or Reiche and Ford can infer that Stardock's relationships with Valve or GOG were actually disrupted or impeded due to any action by Reiche and Ford, or that Stardock suffered any damages as a result of Reiche and Ford's alleged actions. To the contrary, Stardock's TAC alleges facts that contradict such a claim and show that Stardock's relationships with GOG and Valve were entirely intact at least until August 2018, when Stardock alleges that Reiche and Ford sent DMCA notices to both companies that resulted in the removal of Stardock's content. *See, e.g.* TAC, ¶ 129 (alleging that, ***as a result of the DMCA notices*** sent by Reiche and Ford, Stardock's content was prematurely removed from GOG and Valve's platforms). These allegations show that, prior to Reiche and Ford sending the DMCA notices, Stardock's relationships with GOG and Valve were intact and both companies were hosting Stardock's material on their websites. Even more damaging is Stardock's allegation that it actually released its Origins game in September 2018, ***after*** any alleged wrongdoing by Reiche and Ford, thereby foreclosing any argument that Stardock has been damaged. *See* TAC ¶ 130.

### 3. Stardock's TAC Fails to State a Claim for Interference with Contractual Relations

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a

breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990); *see also* CACI 2201.

*First*, a claim for interference with contractual relations requires that the plaintiff plead facts sufficient to show a valid contractual relationship with a third party. *Id*. While Stardock specifically alleges contractual relationships between itself and Valve and GOG, its vague allegation of contractual relationships with "purchasers of the Stardock Pre-Origins Game Content and/or potential purchasers of Stardock's Origins Game" is insufficient. TAC, ¶ 216. To be sure, a "potential purchaser" is by its very definition ***not*** in a contractual relationship with Stardock and cannot form the basis of an interference with contractual relations claim.

*Second*, and for the reasons described in Section IV.B.2 above, Stardock's TAC fails to state well-pled, nonconclusory allegations that (1) Reiche and Ford knew of Stardock's contracts with GOG and Valve, (2) that Reiche and Ford intended to disrupt Stardock's contracts with GOG and Valve, or (3) actual disruption of Stardock's contractual relationships with GOG or Valve. There are no facts from which the Court or Reiche and Ford can infer that Stardock's contracts with Valve or GOG were actually disrupted or impeded, or that Stardock suffered any damages as a result of Reiche and Ford's alleged actions. To the contrary, Stardock's TAC alleges facts which contradict such a claim and show that Stardock's contracts with GOG and Valve were entirely intact at least until August 2018, when Stardock alleges that Reiche and Ford sent DMCA notices to both companies that resulted in the removal of Stardock's content. *See, e.g.* TAC, ¶ 129 (alleging that, ***as a result of the DMCA notices*** sent by Reiche and Ford, Stardock's content was prematurely removed from GOG and Valve's platforms). These allegations show that prior to Reiche and Ford sending the DMCA notices, Stardock's contracts with GOG and Valve were intact and both companies were hosting Stardock's material on their websites. Even more damaging is Stardock's allegation that it actually released its Origins game in September 2018, ***after*** any alleged wrongdoing by Reiche and Ford, thereby foreclosing any argument that Stardock has been damaged. *See* TAC ¶ 130.

### C. Stardock Should Not Be Granted Leave to Amend

Reiche and Ford request that the Court grant their motion to dismiss without leave to amend. Although Fed. R. Civ. P. 15 provides that leave to amend should be given "freely . . . when justice so requires," a court can deny leave to amend for a number of reasons including undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility of the amendment. *Foman v. Davis*, 371 U.S. 178 (1962).

The defects in Stardock's TAC are incurable. It is clear from the face of the pleading that Stardock's interference claims rest entirely on its DMCA allegations, which are preempted. This defect is incurable. While Stardock may argue it has pled other facts to support its interference claims—as it must, to avoid dismissal—the Court should reject those arguments because they are contrary to the statements pled in support of the interference claims.

Moreover, allowing Stardock to further amend its complaint will needlessly delay resolution of this case and unduly prejudice Reiche and Ford. Stardock has now had three attempts to perfect its pleading, which at his point consists of ***225 paragraphs of allegations*** covering 57 pages (without exhibits). Stardock added an additional 70 paragraphs of allegations just two weeks ago. Thus, Stardock has had every opportunity to include the facts and allegations required to supports its claims and should not be given yet a fourth bite at the apple and further time to add even more allegations to its already behemoth pleading.

### V. CONCLUSION

For the foregoing reasons, Reiche and Ford respectfully request that the Court dismiss Counts Twelve and Thirteen of Stardock's TAC on the ground that they are preempted by federal law and, alternatively, because Stardock has failed to plead facts sufficient to support those claims.

DATED: October 29, 2018

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation


By: _____*/s/ Tiffany S. Hansen*_____
Tiffany S. Hansen
Attorneys for Defendants and Counter-Claimants
PAUL REICHE III and ROBERT FREDERICK FORD