Robert A. Weikert (Bar No. 121146)
rweikert@nixonpeabody.com
Dawn N. Valentine (Bar No. 206486)
dvalentine@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center
San Francisco, California 94111-3600
Tel: (415) 984-8200
Fax: (415) 984-8300

David L. May (appearance *pro hac vice*)
dmay@nixonpeabody.com
Jennette E. Wiser (appearance *pro hac vice*)
jwiser@nixonpeabody.com
NIXON PEABODY LLP
799 9th Street NW
Washington, DC 20001-4501
Tel: (202) 585-8000
Fax: (202) 585-8080

Jason T. Kunze (appearance *pro hac vice*)
jkunze@nixonpeabody.com
NIXON PEABODY LLP
70 West Madison Street, 35th Floor
Chicago, IL 60602
Tel:  (312) 977-4400
Fax: (312) 977-4405

*Attorneys for Stardock Systems, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| STARDOCK SYSTEMS, INC., | Case No.: 17-cv-07025-SBA |
| Plaintiff/Counter-Defendant, | |
| vs. | **JOINT DISCOVERY LETTER BRIEF** |
| PAUL REICHE III and ROBERT FREDERICK FORD, | |
| Defendants/Counter-Claimants. | |
| AND RELATED COUNTERCLAIM | |

1    Counsel for the parties hereby attest that they met and conferred in person on May 23,

2 2018, and have complied with Section 9 of the Northern District's Guidelines for Professional

3 Conduct regarding discovery, prior to filing the attached joint letter.

4

5 DATED:  October 30, 2018                    **NIXON PEABODY LLP**

6

7                                             By:        _/s/ Robert A. Weikert_

8                                                   Robert A. Weikert
                                                    Dawn N. Valentine
9                                                   David L. May (appearance _pro hac vice_)
                                                    Jennette E. Wiser (appearance _pro hac vice_)
10

11                                                  Attorneys for Plaintiff and Counter-Defendant
                                                    STARDOCK SYSTEMS, INC.
12

13 DATED:  October 30, 2018                    **BARTKO ZANKEL BUNZEL & MILLER**
                                               **A Professional Law Corporation**
14

15

16                                             By:        _/s/ Stephen C. Steinberg_

17                                                  Stephen C. Steinberg
                                                    Attorneys for Defendants and Counter-
18                                                  Claimants PAUL REICHE III and ROBERT
                                                    FREDERICK FORD
19

20

21

22

23

24

25

26

27

28



NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

**Robert A. Weikert**
*Partner*
T 415-984-8325
rweikert@nixonpeabody.com

One Embarcadero Center, 18th Floor
San Francisco, CA  94111-3600
415-984-8200

October 30, 2018

Magistrate Judge Kandis A. Westmore
Oakland Courthouse
1301 Clay Street
Oakland, CA 94612

> RE:    ***Stardock Systems, Inc. v. Paul Reiche III, et al, 17-cv-07025-SBA***
>         **Letter Brief Re: Discovery Disputes Re: Subpoena to Singer Associates, Inc.**

Dear Judge Westmore:

Pursuant to the Court's Order, the parties conferred regarding Defendants and Counter-Claimants Reiche and Ford ("Reiche and Ford") and third-party Singer Associates, Inc.'s ("Singer") objections that some documents responsive to Plaintiff and Cross-Defendant Stardock Systems, Inc.'s ("Stardock") subpoena to Singer (*see* Ex. A) are protected by the attorney-client privilege and as attorney work-product, and are not relevant to any claims or defenses. The remaining disputes relate to 11 of 13 Document Requests, which are listed below, and the parties' opening positions outlined below apply to all such requests. Reiche and Ford, their counsel, and Singer also identified fifty-six (56) documents withheld as privileged and/or work product. *See* Ex. B.

## Reiche, Ford, & Singer's Opening Position

Reiche, Ford, and Singer seek an order quashing Stardock's Subpoena to Singer, which seeks to invade the attorney-client privilege. This dispute concerns the IP rights to the Star Control computer games Reiche and Ford created and developed 25-30 years ago. They initially licensed Accolade, Inc. ("Accolade") to publish Star Control I and II, but the license expired by 2001, and Reiche and Ford planned to develop a sequel. In 2013, Stardock purportedly bought the "Star Control" trademark registration from Accolade's successor out of bankruptcy.  Stardock then asked Reiche and Ford to license their copyrighted material from Star Control I and II, but they declined. Undeterred, Stardock has since sought to steal Reiche and Ford's IP and prevent them from developing their planned sequel by, among other things: a) selling Star Control I and II on its website; b) copying elements of Star Control I and II in its new Star Control: Origins game; and c) applying to register trademarks on the names of the characters from Star Control I and II.

Magistrate Judge Kandis A. Westmore
October 30, 2018
Page 2

Since October 2017, Stardock has engaged in a PR war against Reiche and Ford, consisting of *hundreds of posts* on online forums and social media platforms, mostly by Stardock's owner and CEO, Brad Wardell. *See* Dkt. 40-2 - 40-11. These posts blatantly misrepresented the facts and seek to sway public opinion in favor of Stardock and its new Star Control: Origins game, while casting a shadow over Reiche and Ford and their game, thereby forcing them to settle this case and abandon their IP rights. For example, Stardock has falsely claimed that Reiche and Ford did not create Star Control I and II and have been lying about it for years. Stardock falsely claimed that it acquired from Atari an exclusive license to distribute the games and use Reiche and Ford's characters, as well as trademarks on all of the character names. And Stardock made a series of false statements about the settlement negotiations between the parties.

In response, Reiche and Ford's counsel retained Singer to provide communications and PR counseling from mid-February to mid-March 2018. Singer provided input on legal strategy, including regarding initial pleadings and communications about the case to counteract Stardock's false and negative statements. In response to the Subpoena, Singer produced responsive, non-privileged documents in its possession, including communications with reporters, the press release on the case, and related internet posts. The tweet discussed in Plaintiff's Opening Position below was not made at Reiche and Ford's direction nor with their approval and was deleted instantly.

The remaining documents in Singer's possession that are responsive to the Subpoena are private, non-public communications between and among Reiche and Ford, their counsel, and Singer, relating to legal advice sought by Reiche and Ford concerning their response to this lawsuit in light of Stardock's strategy. This is analogous to *In re Grand Jury Subpoenas*, where counsel hired a PR firm to restore balance and accuracy to press coverage in a high profile case and the court held:

> [T]he ability of lawyers to perform some of their most fundamental client functions … would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with the lawyers' public relations consultants. … lawyers may need skilled advice as to whether and how possible statements to the press … would be reported in order to advise a client as to whether the making of particular statements would be in the client's legal interest. And there simply is no practical way for such discussions to occur with the public relations consultants if the lawyers were not able to inform the consultants of … the lawyers' defense strategies and tactics, free of the fear that the consultants could be forced to disclose those discussions. In consequence, this Court holds that (1) confidential communications (2) between lawyers and public relations consultants (3) hired by the lawyers to assist them in dealing with the media in cases such as this (4) that are made for the purpose of giving or receiving advice (5) directed at handling the client's legal problems are protected by the attorney client privilege.

265 F. Supp. 2d 321, 323, 330-32 (S.D.N.Y. 2003). Similarly, the present case received press coverage as a result of Stardock's PR efforts against Reiche and Ford, and their counsel retained

Magistrate Judge Kandis A. Westmore
October 30, 2018
Page 3

Singer to help present a more balanced picture. The withheld documents are communications related to giving and receiving legal advice about the appropriate response to the lawsuit and making related public statements, and therefore are subject to the attorney-client privilege.

Some responsive documents are also subject to the work product doctrine (*see* Ex. B), which protects documents prepared by an attorney or their agents. *See U.S. v. Nobles*, 422 U.S. 225, 238-39 (1975). "[A]n attorney does not waive protection when he shares otherwise valid work product with a consultant for PR assistance, so long as the communications are intended to be confidential." *Lights Out Holdings, LLC v. Nike, Inc.*, No. 14-CV-872 JAH (NLS), 2015 WL 11254687, at *4 (S.D. Cal. May 28, 2015). The withheld documents include drafts of the counterclaim and press release regarding the case. Such materials were prepared for litigation by Reiche and Ford's counsel and consultant and intended to be confidential, and Stardock has not shown necessity, as required under FRCP 26(b)(3)(A). Some also contain "mental impressions, conclusions, opinions, or legal theories" of Reiche and Ford's counsel.

<u>Non-public</u> communications are also not relevant to any party's claims and defenses in this case. If documents sought by a subpoena are not relevant "then any burden whatsoever imposed upon [a third party] would be by definition 'undue'." *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995). The parties accuse each other of copyright and trademark infringement stemming from their sales of the classic Star Control games, Stardock's release of its new Star Control: Origins game, and Reiche and Ford's announcement of their game. *See* Dkt. 27 ¶¶ 46-60, 74, 81-83, 90, 101, 106; Dkt. 50 ¶¶ 90-92, 96-114. Singer's non-public communications regarding this case have no bearing on these claims. Stardock argues such documents are relevant because of alleged false public statements related to the case that were already produced, but Stardock has no defamation claim, and such a claim is barred by Cal. Civ. Code § 47(c-d). Stardock argues these statements relate to infringement and damages, but cannot explain how <u>private</u> communications bear on these issues.

## <u>Plaintiff's Opening Position</u>

In conjunction with the filing of their Counterclaim on February 22, 2018, Paul Reiche and Fred Ford ("Defendants") engaged a professional public relations firm, Singer & Associates ("Singer"), to orchestrate a social and other media assault on Stardock and in particular its CEO, Brad Wardell—who is <u>not</u> a party to this litigation—in an effort to influence public opinion and indeed turn it against Stardock.  The following tweet is representative of the social media postings by <u>Singer itself</u> in support of this campaign: "When @Stardock's Star Control copyright lawsuit comes to light, Brad Wardell @draginol and Stardock will be publicly humiliated for their theft of Star Control IP from @Dogar_And_Kazon and their deception and attempts at bullying them."   Despite the inflammatory nature of these postings and representations (all of which are false), Defendants and Singer rely on the attorney-client and litigation privileges to deny Stardock access to Singer's communications.  Stardock respectfully submits that neither privilege applies here, and that Stardock is entitled to the third-party discovery it seeks from Singer.

Magistrate Judge Kandis A. Westmore
October 30, 2018
Page 4

     Permissible discovery is broad and includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" FRCP 26. "Relevance for purposes of discovery is defined very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998). This discovery relates directly to Stardock's claims including without limitation communications relevant to: the extent to which Defendants have deliberately attempted to confuse the public with regard to its own game-development with the "Star Control" mark; the damages Stardock has suffered as a result of Defendants' deliberate use of the Star Control mark; an inquiry as to the strength of the Star Control mark; and Stardock's contention that Defendants are waging a media war against Stardock to fulfill their objective in filing a counterclaim.

## Document Requests: 1, 2, 11 and 12

Request Number 1: All Documents relating to Communication between [Singer] and Reiche.
Request Number 2: All Documents relating to Communication between [Singer] and Ford.
Request Number 11: All Documents relating to Communication between [Singer] and Stephen Steinberg, or anyone at the law firm of Bartko Zankel Bunzel & Miller, counsel to Ford and Reiche.
Request Number 12: All Documents relating to Communication between [Singer] and Mark Palmer, counsel to Ford and Reiche.

### *Reiche, Ford, & Singer's Position*

     These requests are not limited to documents related to this case and are therefore clearly overbroad and would impose undue burden on Singer. Singer's <u>public</u> communications with Reiche, Ford, and/or their counsel related to the case, e.g. involving reporters and/or online posts, were already produced. However, the <u>private, non-public</u> communications relate to legal advice sought by Reiche and Ford concerning their response to this lawsuit and making public statements about it, and are therefore subject to the attorney-client privilege and not discoverable, as in *In re Grand Jury Subpoenas*. Some communications also include work product, e.g. drafts of the counterclaim and press release regarding the case exchanged between Singer and Reiche and Ford's counsel.

     Stardock misstates the law as requiring that Singer was a "functional employee" of Reiche and Ford. Where disclosure to a PR firm is for an attorney to render legal advice, there is no privilege waiver, rather "[t]he critical question when considering whether a third party is an agent of the attorney—thus extending the privilege—is 'whether a communication to that party was made for a legal purpose.'" *Lights Out Holdings*, 2015 WL 11254687, at *3. Here, Singer's services were for a legal purpose related to the lawsuit and not a business purpose. Similarly, "an attorney does not waive protection when he shares otherwise valid work product with a consultant for PR assistance, so long as the communications are intended to be confidential." *Id.* at *4. The Court in *Lights Out* also rejected the defendant's broad document request for "documents and communications regarding press releases [] issued about this lawsuit," and held that the only relevant and discoverable documents were much narrower categories that are not

Magistrate Judge Kandis A. Westmore
October 30, 2018
Page 5

applicable here. *Id.* at *3 (S.D. Cal. May 28, 2015). Stardock's other cases—*Schaeffer* and *Hadjih*—actually extended the privilege to PR firms helping with potential litigation.

### *Plaintiff's Position*

Singer and Defendants object that the PR communications are subject to the attorney-client privilege.  Not so.  Magistrate Judge Westmore specifically noted in her Order Terminating 6/28/18 Joint Discovery Letter that she intended to "narrowly construe the attorney-client and work product privileges," and that "[p]rivilege will only attach in the very limited circumstance where disclosure to [Singer] was necessary for [Defendants'] attorney to render sound legal advice." *See* Dkt. 52 at 1; *citing Lights Out Holdings, LLC v. Nike, Inc.*, 2015 WL 11254687, at *4 (S.D. Cal. May 28, 2015). Furthermore, "[a] party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship *and* the privileged nature of the communication." *Schaeffer v. Gregory Vill. Partners, L.P.,* 2015 U.S. Dist. LEXIS 3966, *8-10 (N.D. Cal. Jan. 12, 2015). Defendants are unable to meet this burden.

First, Defendants make no attempt above at applying the correct test for when the privilege applies.  In the Ninth Circuit, the attorney-client privilege applies to consultants *only* when two criteria are met: (1) the communication is for the purpose of providing legal advice; and (2) the "consultant" is the functional equivalent of an employee of the party seeking to invoke the privilege.  *Schaeffer,* 2015 U.S. Dist. LEXIS 3966, *11-12.  As the court in *Schaeffer* explained, "functional employees" are agents of a client that must possess relevant information that the "attorney needs to render sound legal advice" to that client. *Id. See also Genentech, Inc. v. Trustees of the University of Pennsylvania*, 2011 U.S. Dist. LEXIS 123302, (N.D. Cal. Oct. 24, 2011) (consultant not a functional employee and no privilege protected his communications where the communications with consultant were not for the purpose of providing legal advice, but rather served a business purpose); *Lights Out Holdings, LLC v. Nike, Inc.,* 2015 U.S. Dist. LEXIS 186404, *11 (S.D. Cal. May 28, 2015)(warning that the privilege would only attach "in the very limited circumstance where disclosure to [the PR firm] was necessary for Plaintiffs' attorney to render sound legal advice.").

In *Calvin Klein Trademark Trust v. Wachner,* 198 FRD 53 (S.D.N.Y. 2000), the court considered the assertion of privilege and work product protection related to communications with a public relations firm hired by the plaintiff's counsel.  The court explained that the "possibility that communications between [the firm] and [counsel] may help the latter to formulate legal advice was not in itself sufficient to implicate the privilege…"  and no privilege attached to a party's communication with its PR firm where "few if any" of the communications were for the purpose of obtaining legal advice rather than "ordinary public relations advice." *Id.* at 54.  The "functional equivalent" test requires the party asserting the privilege to make a detailed factual showing. *Hadjih v. Evenflo Co., Inc.,* 2012 U.S. Dist. LEXIS 76100, *3 (D.Colo. 2012).  No such factual showing has been made here.  In fact, there is no evidence whatsoever that the Singer firm was "the functional employee" of either Mr. Ford or Mr. Reiche or that the Singer firm did anything other than provide run-of-the-mill public relations advice.

Magistrate Judge Kandis A. Westmore
October 30, 2018
Page 6

Defendants' reliance on the New York case of *In re Grand Jury Subpoenas Dated March 24, 2003,* 265 F. Supp. 2d 321 (S.D.N.Y. 2003) is misplaced.  There, the court did not apply the Ninth Circuit standards for the application of the privilege, and the PR firm was hired in that case for the explicit purpose of aiding the attorneys in avoiding a criminal indictment of their client. The attorneys realized that the publicity of the case might pressure the prosecutors to issue a criminal indictment and hired the PR firm to counteract the impact of the other negative publicity. *Id.* at 323-324.  The court explained that the work was not typical PR work insofar as its target audience was not the public at large, but rather the prosecutors and regulators responsible for charging decisions in investigations involving their client. *Id.*  This is entirely distinct from the instant situation which does not involve PR work as instrumental to achieving Defendants' legal goals.  In fact, close consideration of this case indicates that it supports Stardock's position since even in that case, communications that were determined by the court not to be made for the purpose of obtaining legal services were held to fall outside the attorney-client privilege.  *Id.* at 331-332.

Defendants' reliance on Civil Code section 47 is incorrect.  Although referred to as a "privilege," section 47 is not an evidentiary or discovery exemption privilege. *See Youngevity Int'l Corp. v. Smith,* 2017 U.S. Dist. LEXIS 205980 (S.D. Cal. December 13, 2017) ("Though California Civil Code section 47 refers to "privileges," its effect is to provide immunity from tort liability based on certain protected conduct or speech."); *Schneider v. Cnty of Sacramento*, 2013 U.S. Dist. LEXIS 176427, *6-7 (E.D. Cal. Dec. 16, 2013) (same).  It provides no basis for either Singer or Defendants to avoid the subpoena properly served on Singer.

Nor does the work product rule protect the PR communications from disclosure.  The work product rule "is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. United States Dist. Ct. for Dist. of Arizona*, 881 F2d 1486, 1494 (9th Cir. 1989).  "Public relations work is generally treated as business strategy, rather than a legal one, and is not protected as work product." *Lights Out Holdings,* 2015 U.S. Dist. LEXIS at *9-10 (S.D. Cal. May 28, 2015).

## Document Requests:  4, 6, 7 and 8

Request Number 4: All Documents relating to any agreement between [Singer] and Reiche and/or Ford for services to be provided by [Singer].
Request Number 6: All Documents relating to invoices for services provided by [Singer] for Reiche.
Request Number 7: All Documents relating to invoices for services provided by [Singer] for Ford.
Request Number 8: All Documents relating to payment from Reiche or Ford to [Singer] for services rendered.

### *Reiche, Ford, & Singer's Position*

Depending on how these requests are interpreted, it is unclear whether any responsive documents exist, given that Singer was retained by and provided invoices to Reiche and Ford's counsel, not Reiche and Ford. Regardless, the requests seek <u>private, non-public</u> communications

Magistrate Judge Kandis A. Westmore
October 30, 2018
Page 7

related to legal advice sought by Reiche and Ford and are therefore subject to the attorney-client privilege and not discoverable. Singer's retention agreement, invoices, and payments are also not relevant to any party's claims or defenses. (*See* Reiche, Ford, & Singer's Opening Position above.)

### *Plaintiff's Position*

These documents are relevant in that they provide Stardock with an understanding of the services being provided by Singer, and as has been discussed above, they are not privileged. Singer is not a provider of legal services, and attorney-client privilege does not extend to public relations firms. (*See* discussion above regarding Plaintiff' position in response to Requests 1, 2, 11 and 12.)

## Document Requests: 3, 5 and 9

Request Number 3: All Documents relating to Stardock.
Request Number 5: All Documents relating to the Classic Star Control Games.
Request Number 9: All internal Communications relating to Stardock or the Star Control Games.

### *Reiche, Ford, & Singer's Position*

Singer already produced all communications related to Stardock and/or the Star Control games with third parties, and any internal communications related to legal advice sought by Reiche and Ford and are therefore subject to the attorney-client privilege and not discoverable. (*See* Reiche, Ford, & Singer's Opening Position and position in response to Requests 1, 2, 11 and 12 above.)

### *Plaintiff's Position*

Plaintiff's position is outlined above and there is no change as related to these Requests. (*See* discussion above regarding Plaintiff' position in response to Requests 1, 2, 11 and 12.)

Very truly yours,                          Best Regards,

*/s/ Robert A. Weikert*                    */s/ Stephen C. Steinberg*

Robert A. Weikert                          Stephen C. Steinberg