Robert A. Weikert (Bar No. 121146)
rweikert@nixonpeabody.com
Dawn N. Valentine (Bar No. 206486)
dvalentine@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center
San Francisco, California 94111-3600
Tel: (415) 984-8200
Fax: (415) 984-8300

David L. May (appearance *pro hac vice*)
dmay@nixonpeabody.com
Jennette E. Wiser (appearance *pro hac vice*)
jwiser@nixonpeabody.com
NIXON PEABODY LLP
799 9th Street NW
Washington, DC 20001-4501
Tel: (202) 585-8000
Fax: (202) 585-8080

Jason T. Kunze (appearance *pro hac vice*)
jkunze@nixonpeabody.com
NIXON PEABODY LLP
70 West Madison Street, 35th Floor
Chicago, IL 60602
Tel: (312) 977-4400
Fax: (312) 977-4405

*Attorneys for Stardock Systems, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| STARDOCK SYSTEMS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PAUL REICHE III and ROBERT FREDERICK FORD, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM AND CROSS-COMPLAINT | Case No.: 17-cv-07025-SBA <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Hearing Date: December 12, 2018 <br> Time:        1:00 p.m. <br> Courtroom:   5 <br> Before:      Hon. Sandra B. Armstrong |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

    A.  Defendants' Initial Game Development ................................................... 2

    B.  Stardock's Development of Origins ........................................................ 2

    C.  Defendants' Interfering Acts .................................................................. 3

    D.  DMCA Takedown Notices ...................................................................... 5

    E.  Relevant Procedural History .................................................................. 5

III.  LEGAL STANDARD GOVERNING MOTIONS TO DISMISS ...................... 6

IV.  LEGAL ARGUMENT ........................................................................................ 7

    A.  Stardock's Interference Claims Are Not Preempted by Federal Law Because They Clearly Indicate that Defendants' Interfering Actions Do Not Solely Relate to the DMCA Takedown Notices. ................................................... 7

        1.  Non-DMCA Examples Were Incorporated by Reference in the Interference Claims. ...................................................................... 7

        2.  The Plain Language of Stardock's Interference Claims and Reference to Origins Demonstrate That These Claims Are Not Solely Based on the Improper DMCA Notices. .......................... 8

    B.  Stardock Should Be Granted Leave to Amend in the Alternative. ........ 10

    C.  Stardock's Claims for Interference with Prospective Economic Advantage and Interference with Contractual Relations Have Been Pleaded with Adequate Factual Support. ...................................................................... 11

        1.  Defendants Incorrectly Conflate DMCA Preemption with the Independent Act Requirement ...................................................... 11

        2.  Stardock Sufficiently Alleges Relationships with Existing Customers and Contractual Partners ........................................... 13

        3.  Defendants' Remaining Arguments Argue the Merits and Are Improper for a Motion to Dismiss ............................................. 154

V.  CONCLUSION ................................................................................................ 17

- i -

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allison v. California Adult Authority,*
    419 F.2d 822 (9th Cir. 1969)............................................................................7, 15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................................6

*Barker v. Riverside County Office of Ed.,*
    584 F.3d 821 (9th Cir. 2009).................................................................................6

*Beliveau v. Caras,*
    873 F. Supp. 1393 (C.D. Cal. 1995) ....................................................................6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 .........................................................................................................6

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009).................................................................................6

*Broam v. Brogan,*
    320 F.3d 1023 (9th Cir. 2003)...............................................................................6

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
    824 F.3d 1156 (9th Cir. 2016)...............................................................................6

*Doe v. United States,*
    419 F.3d 1058 (9th Cir. 2005)..........................................................................6, 15

*Foman v. Davis,*
    371 U.S. 178 (1962) ...........................................................................................10

*Humboldt Wholesale, Inc. v. Humboldt Nation Distribution, LLC,*
    2012 WL 2572065 (N.D. Cal. 2012)...................................................................14

*Int'l. Franchise Ass'n, Inc. v. City of Seattle,*
    803 F.3d 389 (9th Cir. 2015)...............................................................................12

*Lormand v. US Unwired, Inc.,*
    565 F.3d 228 (5th Cir. 2009).................................................................................6

*Nami v. Fauver,*
    82 F.3d 63 (3rd Cir. 1996) ...............................................................................7, 15

*O'Connor v. Uber Technologies, Inc.,*
    58 F.Supp.3d 989 (N.D. Cal. 2014) ....................................................................11

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

4840-2057-8682.3

*Oracle Am. Inc., v. CedarCrestone, Inc.*,
2013 WL 3243885 (N.D. Cal. June 26, 2013) ................................................................8, 12, 14

*Oracle Am., Inc. v. TERiX Computer Co., Inc.*,
2014 WL 31344 (N.D. Cal. Jan. 3, 2014) ........................................................................12

*PhoneDog v. Kravitz*,
2012 WL 273323 1 (N.D. Cal. 2012).................................................................................13

*SEC v. Cross Fin'l Services, Inc.*,
908 F. Supp. 718 (C.D. Cal. 1995) ...................................................................................6

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
983 F. Supp. 1303 (N.D. Cal. 1997) ................................................................................13

*Sonoma County Ass'n of Retired Employees v. Sonoma County*,
708 F.3d 1109 (9th Cir. 2013)..........................................................................................10

*Strom v. United States*,
641 F.3d 1051 (9th Cir. 2011)..........................................................................................6

*U.S. v. Webb*,
655 F.2d 977 (9th Cir. 1981)............................................................................................10

*United States v. White*,
893 F. Supp. 1423 (C.D. Cal. 1995) .................................................................................6

**California Cases**

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990) ....................................................................................................17

**Federal Statutes**

17 U.S.C. § 512 ........................................................................................................................5

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................6, 7, 12, 15

Federal Rule of Civil Procedure 15(a)(2)..........................................................................10

- iii -

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Stardock Systems, Inc. ("Stardock") hereby respectfully responds in opposition to Defendants and Counter-Claimants Paul Reiche III's and Robert Frederick Ford's (collectively "Defendants") Motion to Dismiss.  Defendants seek to dismiss Stardock's Twelfth and Thirteenth causes of action which are for tortious interference with prospective economic advantage and tortious interference with contractual relations (collectively "interference claims").  For all the reasons shown below, Defendants' motion should be denied.

## I.   <u>INTRODUCTION</u>

The Court should deny Defendants motion as Stardock's complaint is more than sufficient to meet the requisite pleading standards and provides Defendants notice of their acts to interfere with *Origins*.  Defendants' motion rests on two incorrect arguments: an incorrect characterization of Stardock's interference claims as solely based on Defendants' improper DMCA notices, and an attempt to require Stardock to prove its claims at the pleadings stage.  Neither argument has merit, as much of Defendants' position relies on selective reading of Stardock's complaint and an unsupported legal position that would completely gut interference claims and, essentially, prevent a party from ever reaching discovery on such claims.

Throughout Stardock's detailed pleadings (that Defendants selectively complain about as too long yet ignore when it hurts their argument) Stardock painstakingly identifies Defendants' pattern of bad acts and the resulting harm to Stardock and its business partners.  Defendants continue to improperly cast the interference claims as solely relating to the DMCA notices for the pre-order content, entirely ignoring the *Origins* game itself (which was never the subject of a DMCA notice, but was greatly impacted by Defendants' bad acts).  Notably, Stardock promptly clarified Defendants' incorrect interpretation of the interference claims before Defendants filed their motion, including providing citations to specific paragraphs of Stardock's well-pled complaint detailing Defendants' acts leading directly to lost sales and refund demands, along with an offer to amend the Complaint for further clarification.  But Defendants continue to ignore the operative pleadings.  Nonetheless, even if Defendants' strained reading had merit, the issue can

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
4840-2057-8682.3

be easily resolved by clarifying amendment, and that amendment has been provided to the Court in Stardock's pending motion. *See* November 7, 2018 filing – Dkt. 82.

Defendants add-on arguments are also unavailing. While attempting to argue futility of amendment, Defendants conflate the requirements for an "independent act" with their DMCA preemption argument. Then, Defendants demand that Stardock *prove* its claims at the complaint stage, confusing the present issue with summary judgment. In sum, while Defendants would prefer to avoid any consequences caused by their intentional campaign to denigrate Stardock and the *Origins* game, Stardock's claims are well supported and Defendants are on notice of their own bad acts. Thus, the Court should deny Defendants' motion to dismiss and allow discovery to proceed on Stardock's interference claims for all the reasons explained herein.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Following is a brief summary of the relevant facts at issue here, derived exclusively from Stardock's Third Amended Complaint ("TAC").

### A.   Defendants' Initial Game Development

Between 1990 and 1996, under the terms of an alleged 1988 licensing agreement between Reiche and Accolade, Inc. ("Accolade"), Accolade developed and published *Star Control*, *Star Control II: The Ur-Quan Masters*, and *Star Control III*. (TAC ¶¶ 10, 12, 13). Star Control I, Star Control II, and Star Control III are collectively hereinafter referred to as the "Classic Star Control Games." (TAC ¶¶ 14, 15). Since the original development of the Classic Star Control Games in the 1990s, Defendants have taken no action on developing any subsequent versions or sequels.

### B.   Stardock's Development of *Origins*

In or around 1999, Atari, Inc. ("Atari") acquired Accolade, thereby assuming all rights to the Accolade Star Control IP. (TAC, ¶ 28). Atari subsequently filed for bankruptcy and sold all of its intellectual property rights in the Star Control Franchise to Stardock. (TAC ¶ 29). In 2013, and in light of the rights Stardock acquired from Atari, Stardock decided to create a new game

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

4840-2057-8682.3

titled *Star Control: Origins* ("*Origins*"), as a successor to the Classic Star Control Games.  In or about July 2013, Stardock offered Defendants the right of first refusal to collaborate in the development of *Origins*.  (TAC ¶ 47).  Defendants refused Stardock's offer to collaborate in the development of its new game.  (TAC ¶ 49).  Throughout 2014 and the beginning of 2015, Stardock wrote to Defendants with updates on the development of *Origins*.  (TAC ¶ 53).  On October 18, 2016, Stardock publicly announced its expected release of *Origins* on its website.  (TAC ¶ 54; Ex. J).  Subsequently Stardock began releasing *Origins* pre-order content, starting with *Star Control: Origins Fleet Battles* ("Fleet Battles") Beta 1, released on November 16, 2018.  (TAC ¶ 58, Ex. K).

### C.   Defendants' Interfering Acts

On or about October 9, 2017, *just days before* the announcement of the Fleet Battles Beta 1, Defendants publicly announced their expected release of a new game titled *Ghosts of the Precursors* (hereinafter the "Ghosts of the Precursors Game").  (TAC ¶ 60).  Defendants used the STAR CONTROL mark and certain images of aliens and spaceships from Star Control II in the advertising and promotion of the Ghosts of the Precursors Game.  (TAC ¶¶ 61, 62; Ex. M).

Defendants' announcement of the Ghosts of the Precursors Game, which did not exist in any form at the time and had not even started to be developed, was deliberately timed to occur just prior to the announcement of *Origins* (by five (5) days), in order to preempt the benefits of Stardock's announcement.  (TAC ¶ 68).  Indeed, Defendants' announcement is contrary to their claim of wanting to announce the game on the 25th Anniversary of Star Control II (which was a month later).  (TAC, ¶¶ 65-67).  By announcing the Ghosts of the Precursors Game when they did, Defendants intended to diminish the promotion and consumer excitement for *Origins* and cause confusion among the general public as to the origin of the games, or as to whether Defendants are sponsored by, affiliated with, or otherwise connected with Stardock.  (TAC ¶ 68).

Defendants, recognizing the valuable fame, reputation and goodwill associated with the STAR CONTROL mark and the Stardock Marks, desired to associate their new Ghosts of the Precursors Game with such valuable fame, reputation and goodwill associated with such marks.

1    Since their announcement, Defendants, without the authorization of Stardock, used the STAR

2    CONTROL mark and/or the Stardock Marks to market, advertise and promote the Ghosts of the

3    Precursors Game as the "direct sequel" or "true sequel" to Star Control II, thereby using

4    Stardock's STAR CONTROL mark and the Stardock Marks in the advertising and promotion of

5    the Ghosts of the Precursors Game.  (TAC ¶ 69; Ex. N).  Furthermore, Defendants have made

6    ongoing representations that they are the "creators" of the Classic Star Control Games in

7    connection with the promotion of their new game.  Such representations are false and misleading,

8    and have been made in a willful attempt to deceive consumers into believing that Defendants'

9    game is legitimately associated with the Classic Star Control Games.  (TAC, ¶ 84).  In short,

10   Defendants have created a blatantly false narrative that they "owned" the Star Control trademarks

11   and copyright when in fact they do not, and discovery will show that they have engaged in this

12   narrative to deliberately discourage adoption of *Origins*.  (See generally TAC ¶ 69-87).

13        In furtherance of their false narrative, Defendants are now exploiting and taking advantage

14   of the Star Control fans and community to fund a deceptive campaign to cancel Stardock's

15   rightfully owned trademarks and other intellectual property rights, and to interfere with and

16   disrupt the potential success of *Origins*.  (TAC, ¶ 95).  Defendants also make misrepresentations

17   that they are the *sole* creators of Star Control II and therefore own all protectable and creative

18   rights in Star Control II, and falsely claim that Stardock is seeking to prevent Defendants from

19   developing the Ghosts of the Precursors Game.  (TAC, ¶¶ 97, 98).

20        Defendants' actions have created actual and substantial confusion, mistake and/or

21   deception among consumers in the marketplace with respect to the source or origin of the Ghosts

22   of the Precursors Game and *Origins* and have caused consumers to erroneously believe that the

23   Ghosts of the Precursors Game is associated with the Classic Star Control Games and the STAR

24   CONTROL mark and brand.  (TAC, ¶ 132).  Defendants' actions as well as their false and

25   misleading misrepresentations to consumers and the media have generated negative press and

26   negative consumer reaction that has caused, and is continuing to cause, substantial and irreparable

27   harm to Stardock, its reputation, and the financial success of its *Origins* game.  (TAC, ¶ 134).  As

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

4840-2057-8682.3

1   of the date of the TAC, Stardock was already engaged with several business partners for the

2   advertising and promotion of Stardock's *Origins* game.  The blocking or disruption of material or

3   content associated with its *Origins* game has and will continue to permanently harm Stardock's

4   relationship with its current business partners, as well as prevent Stardock from potentially

5   partnering with console publishers for the distribution of content.  (TAC ¶ 128).

6

7   **D.    DMCA Takedown Notices**

8       Nine months after the release of Fleet Battles, and only one month prior to the official

9   worldwide release of *Origins*, Defendants submitted a notice of copyright infringement under the

10  DMCA, 17 U.S.C. § 512(c), to the Steam online platform alleging that Stardock's Fleet Battles

11  game, *Star Control: Origins* – Chenjesu Content Pack, and *Star Control: Origins* – Arilou

12  Content Pack available on the Steam platform infringed Defendants' copyrights ("DMCA Notice

13  to Steam").  (TAC ¶ 114).  As a result, Steam removed the identified works from the Steam

14  platform pursuant to the DMCA procedures.  *See* 17 U.S.C. § 512(g); (TAC ¶ 116).  Four days

15  later, Defendants submitted a similar DMCA notice to the GOG online platform, claiming that the

16  same *Origins* pre-order content infringed Defendants' copyrights.  GOG removed the identified

17  works from its platform.  (TAC ¶¶ 118, 120).  Promptly after learning of these notices, Stardock

18  filed a motion for preliminary injunction to protect *Origins* from any DMCA notices, and

19  pursuant to an order from the Court the parties subsequently signed a stipulation preventing

20  further DMCA notices until the Court had the opportunity to address the merits of the injunction

21  motion.  *See* Dkt. 56 and Dkt. 59.

22  **E.    Relevant Procedural History**

23      Stardock filed its TAC on October 15, 2018.  (Dkt. 72).  On October 29, 2018 Defendant

24  moved to dismiss Counts Twelve and Thirteen of Stardock's TAC for failure to state a claim

25  upon which relief may be granted.  (Dkt. 76).  On November 11, 2018 Stardock filed a motion for

26  leave to file a fourth amended complaint ("FAC") in an effort to address some of Defendants'

27  concerns raised in their motion to dismiss.  (Dkt. 82).  The parties are presently in the midst of

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1   discovery, have exchanged interrogatory responses and documents, and have begun engaging in

2   third-party discovery.  That discovery is ongoing.  Notably, no depositions have been taken yet.

3   Weikert Declaration in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss

4   ("Weikert Decl.") ¶ 10.

### III.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

7          To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as

8   true, to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S.

9   544, 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A Rule 12(b)(6) motion tests the legal

10  sufficiency of a claim or claims stated in a complaint.  *Strom v. United States,* 641 F.3d 1051 (9th

11  Cir. 2011); *SEC v. Cross Fin'l Services, Inc.,* 908 F. Supp. 718, 726-727 (C.D. Cal. 1995);

12  *Beliveau v. Caras,* 873 F. Supp. 1393, 1395 (C.D. Cal. 1995); *United States v. White,* 893 F.

13  Supp. 1423, 1428 (C.D. Cal. 1995).  Rule 12(b)(6) motions to dismiss are often viewed with

14  disfavor.  *See Broam v. Brogan,* 320 F.3d 1023, 1028 (9th Cir. 2003) (Rule 12(b)(6) dismissal

15  with prejudice is proper only in "extraordinary" cases); *Lormand v. US Unwired, Inc.,* 565 F.3d

16  228, 232 (5th Cir. 2009).  Indeed, dismissal under Rule 12(b)(6) is proper *only* when the

17  complaint either fails to allege a "cognizable legal theory" or fails to allege sufficient facts "to

18  support a cognizable legal theory."  *Caltex Plastics, Inc. v. Lockheed Martin Corp.,* 824 F.3d

19  1156, 1159 (9th Cir. 2016).  The facts alleged in a complaint are to state a "facially plausible"

20  claim for relief.  *New Cingular Wireless Services, Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010).

21         On a motion to dismiss, the Court must "accept as true all of the factual allegations set out

22  in plaintiff's complaint, draw inferences from those allegations in the light most favorable to

23  plaintiff, and construe the complaint liberally."  *Doe v. United States,* 419 F.3d 1058, 1062 (9th

24  Cir. 2005).  This is true even if the Court does not believe the complaint's factual allegations.  *See*

25  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (Rule 12(b)(6) does not countenance

26  "dismissals based on a judge's disbelief of a complaint's factual allegations").  Accordingly, in

27  determining whether the complaint states a valid claim, all reasonable inferences from the facts

28  alleged are drawn in plaintiff's favor.  *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 595 (8th

- 6 -

1   Cir. 2009); *Barker v. Riverside County Office of Ed.,* 584 F.3d 821, 824 (9th Cir. 2009).

2          Of particular import in connection with Defendants' motion, a plaintiff's ability to prove

3   its allegations or possible difficulties in making such proof is of no concern in ruling on a Rule

4   12(b)(6) motion: "In considering a 12(b)(6) motion, we do not inquire whether the plaintiffs will

5   ultimately prevail, only whether they are entitled to offer evidence to support their claims." *Nami*

6   *v. Fauver,* 82 F.3d 63, 65 (3rd Cir. 1996).  *See also Allison v. California Adult Authority,* 419

7   F.2d 822, 823 (9th Cir. 1969) (court does not weigh potential evidence parties may present at

8   trial.)

9

10                          **IV.    LEGAL ARGUMENT**

11          **A.    Stardock's Interference Claims Are Not Preempted by Federal Law Because
                They Clearly Indicate that Defendants' Interfering Actions Do Not Solely
                Relate to the DMCA Takedown Notices.**

12

13          In support of their argument, Defendants have highlighted selective language from

14   Stardock's TAC while simultaneously ignoring non-DMCA allegations of Defendants'

15   interference with the *Origins* game (also in the TAC), in order to claim that Stardock's

16   interference claims are preempted by federal law.  This argument fails.  Stardock's TAC contains

17   numerous non-DMCA examples of Defendants' interfering actions (all of which have been

18   incorporated by reference into each of the interference claims), the plain language of the

19   interference claims themselves clearly indicate that the claims are referring to and include non-

20   DMCA examples of interference, and finally the interference claims contain direct reference to

21   Defendants' interfering with *Origins*, which was *not* a target of Defendants' DMCA takedown

22   notices.

23                  *1.    Non-DMCA Examples Were Incorporated by Reference in the
                        Interference Claims.*

24

25          Stardock's TAC includes multiple non-DMCA examples detailing Defendants'

26   interference with the *Origins* game, Stardock's customers, and Stardock's business partners.  *See*

27   *e.g.* TAC, ¶¶ 61, 68, 84, 95, 97, 98, 128, 132 and 134.  These paragraphs include direct

28

- 7 -
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1   allegations that Defendants improperly utilized Star Control IP to advertise and promote their

2   Ghosts of the Precursors Game, timed the announcement of their game to "scoop" *Origins* in

3   order to cause confusion in the market place regarding the two games, made false representations

4   claiming that their game was the "direct sequel" and "true sequel" to Star Control II, and other

5   specific examples of Defendants' improper interference.  Each of these examples have nothing to

6   do with Defendants' improper DMCA take-down notices.  Furthermore, each of the above-

7   mentioned paragraphs were explicitly incorporated by reference into both of Stardock's

8   interference claims at Paragraphs 203 and 209 of the TAC.  This clearly demonstrates that

9   Stardock's interference claims are far broader than the DMCA takedown notices.

10      In *Oracle America, Inc. v. CedarCrestone, Inc.*, the court considered this very issue.  In

11   that case, the plaintiff had alleged a claim for interference with prospective economic advantage,

12   and defendants had filed a motion to dismiss.  2013 WL 3243885 at *1 (N.D. Cal. June 26, 2013).

13   In rejecting CedarCrestone's arguments for dismissal, the court found that the copyright

14   infringement allegations that were expressly incorporated by reference in Oracle's interference

15   claim demonstrated the wrongful conduct required to support the interference claim.  *Id.* at *6.

16   This is directly on point, since here Defendants are alleging that because Stardock does not

17   expressly list all of its supporting allegations in each of its interference claims, they are somehow

18   insufficient.  However, as the court reasoned in *Oracle*, because Stardock has expressly

19   incorporated *all* supporting allegations from the complaint into its interference claims, the claims

20   are more than sufficient.

21          **2.    The Plain Language of Stardock's Interference Claims and Reference to**
22          ***Origins* Demonstrate That These Claims Are Not Solely Based on the**
               ***Improper DMCA Notices.***
23

24      The plain language of Stardock's interference claims and the fact that Stardock's

25   interference claims directly reference Defendants' attempts to interfere with the announcement

26   and release of *Origins* further demonstrates that the interference claims are not based exclusively

27   on the DMCA takedown notices.  This is shown in Stardock's claim for tortious interference with

28   prospective economic advantage, which states that Defendants' intentional, malicious and willful

- 8 -

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    actions . . . were specifically designed to injure Stardock and disrupt its relationships . . . **as well**

2    **as the release of Stardock's Origins Game**." TAC ¶ 211 (emphasis added). Additionally,

3    Stardock's claim for interference with contractual relations similarly states that Defendants'

4    intentional, malicious and willful actions . . . were specifically designed to injure Stardock and

5    disrupt its contractual relationships with Valve, GOG, and purchasers of the Stardock Pre-Origins

6    Game Content and/or **Stardock's Origins Game.** TAC ¶ 217 (emphasis added). *Origins* was

7    never the subject of a DMCA notice, and therefore the reference to *Origins* further demonstrates

8    that Stardock's interference claims are not solely predicated on the DMCA take-down notices.

9    Upon notice of Defendants' planned motion, Stardock promptly clarified all these details to

10    Defendants in writing, and by phone in a meet and confer session that same day, even offering to

11    amend the complaint with clarifications to address Defendants' concerns). *See* Weikert Decl. ¶ 2,

12    Ex. A. Nonetheless, Defendants still moved forward with filing their motion to dismiss. *See* Dkt.

13    76.

14        To summarize, instead of reading Stardock's complaint as a comprehensive whole,

15    Defendants' have adopted a strained reading of Stardock's reference to Defendants' improper

16    DMCA notices to argue the interference claims are based solely on that tactic, rather than the

17    pattern of bad acts by Defendants alleged in detail in the TAC. [1]

18        To be fair, Defendants DMCA preemption argument would have merit *if* the sole basis for

19    the interference claims was the improper DMCA notices. As explained herein, that is simply not

20    the case. Instead, the DMCA notices were intended to show but one example of a continuing

21    pattern of improper conduct by Defendants intended to disrupt Stardock's relationship with third

22    parties, and affect the reception and public perception of *Origins*. *See* TAC ¶¶ 209, 211-212, 214,

23    217-218.

---

24

25        [1] Indeed, in their motion to dismiss Defendants' have even taken the time to complain as
to the number of paragraphs and allegations in Stardock's TAC, and have labelled it a "behemoth

26    pleading." Defendants Motion to Dismiss ("MTD"), 16:13-18. Defendants cannot claim on one
hand that Stardock's TAC is inadequate, while on the other hand complaining about its size and

27    scope. Notably, Defendants' own second amended counterclaim ("SAC"), filed on October 15,
2018, contains 236 paragraphs of allegations covering 48 pages.

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

4840-2057-8682.3                                                  Case No. 17-cv-07025-SBA

1    Because the TAC sufficiently sets out the multiple bases for the interference claims, and

2    explicitly incorporates by reference the details regarding its claims, Defendants' motion should be

3    denied.

4         **B.       Stardock Should Be Granted Leave to Amend in the Alternative.**

5         While Stardock believes that the TAC is adequate as written, Stardock immediately

6    offered to amend the complaint to provide further clarification, and has in fact done so.  *See*

7    Stardock's Motion for Leave to File Fourth Amended Complaint (Dkt. 82).  Stardock provided

8    amendments that directly track the details that were already incorporated by reference in the

9    interference claims, so Defendants cannot complain that such amendment adds new material or in

10   any way prejudices them.

11        Indeed, Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely

12   give leave [to amend a complaint] when justice so requires.   Fed. R. Civ. P. 15(a)(2).

13   Furthermore, Federal policy strongly favors determination of cases on their merits.  The policy of

14   amendment is to be applied with "extreme liberality."   *Sonoma County Ass'n of Retired*

15   *Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013).  In its exercise of discretion,

16   the court applies Rule 15 to "facilitate [a] decision on the merits, rather than on the pleadings or

17   technicalities."  *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  In short, leave to amend the

18   pleadings is freely given unless the opposing party makes a showing of undue prejudice, or bad

19   faith or dilatory motive on the part of the moving party.  *Foman v. Davis*, 371 U.S. 178, 182

20   (1962); *Sonoma County*, 708 F.3d at 1117.  Defendants have not, and cannot, make such a

21   showing.

22        Allowing Stardock leave to amend its complaint will not prejudice Defendants in any

23   way.  Defendants' have already been put on notice as to the interference claims, and will not be

24   surprised by the amendment being requested.  Indeed, all of the information already exists in the

25   TAC, and the requested amendment seeks only to clarify that which was already incorporated by

26   reference.  *See* Stardock's Motion for Leave to File Fourth Amended Complaint (Dkt. 82).

27   Furthermore, Defendants' contention that allowing Stardock to amend will cause unnecessary

28

- 10 -

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    delay is clearly unfounded.  No depositions have been conducted, and the parties are still

2    exchanging documents. Weikert Decl. ¶ 10.  The pleadings in this suit are not set, and all of the

3    implicated parties have not even filed responsive pleadings at this point, as Defendants have only

4    recently filed cross-claims against Valve Corporation and GOG.  (Dkt. 71, 74).  Indeed, the

5    Parties have recently agreed that, given the inclusion of new parties to this dispute, it will likely

6    be necessary to submit a stipulation and seek an order with suggested modifications to the current

7    Scheduling Order and trial related dates.  (Dkt. 81).

8         Finally, as discussed further below, amendment of the complaint would not be futile.

9    Defendants' stated issues with Stardock's complaint are largely organizational, and can be easily

10   remedied by the clarifying amendments submitted.  Defendants' attempt to fit everything under a

11   "DMCA preemption" umbrella is wholly incorrect, as is their attempt to hold Stardock to a

12   summary judgment standard at the motion to dismiss stage.

13
14        **C.    Stardock's Claims for Interference with Prospective Economic Advantage
                  and Interference with Contractual Relations Have Been Pleaded with
15                Adequate Factual Support.**

16        Defendants correctly recite the requisite elements of the interference claims.  However,

17   Defendants then muddy the waters with incorrect legal arguments and mischaracterizations of

18   Stardock's claims.  Stardock's interference claims have more than sufficient factual support, and

19   Defendants' attempts to twist the facts and law to argue otherwise should be rejected.

20        *1.    Defendants Incorrectly Conflate DMCA Preemption with the
               Independent Act Requirement.*
21
22        Defendants claim that Stardock has failed to "allege any independently wrongful or

23   actionable act on the part of [Defendants]."    MTD 13:1-2.  This is patently false.  "An

     independently wrongful act is any 'unlawful' act 'proscribed by some constitutional, statutory,
24
     regulatory, common law, or other determinable legal standard." *O'Connor v. Uber Technologies,*
25
     *Inc.*, 58 F.Supp.3d 989, 996 (N.D. Cal. 2014), *citing Korea Supply Co.*, 29 Cal. 4th at 1153-55.  If
26
     Stardock had *only* alleged DMCA claims, then Defendants' would arguably be correct in their
27
     assertion that Stardock had failed to adequately allege an independently wrongful act.  However,
28

4840-2057-8682.3

1   Defendants go far beyond this position and incorrectly attempt to expand their DMCA

2   preemption argument to cover all copyright and trademark based claims.  (Motion at 13).

3   Defendants then use this faulty premise to argue that Stardock's pleading cannot satisfy the

4   independently wrongful act requirement.  Specifically, Defendants state that "[a]side from

5   allegations that are preempted by federal law—such as the DMCA, trademark and copyright

6   allegations—Stardock fails to allege facts sufficient to show that [Defendants'] have engaged in

7   any independently tortious act ..." MTD 13:17-19.  Tellingly, they fail to cite any case supporting

8   this vast overextension of their preemption argument.

9       Indeed, Defendants' position is flat wrong.  As to copyright, in *Oracle*, the court found

10  sufficient allegations of interference by relying on "the copyright infringement allegations …

11  alleged to be part of the unlawful and wrongful conduct that caused Oracle licensees and support

12  customers to contract for support services with CedarCrestone, instead of with Oracle." *Oracle*

13  *Am. Inc., v. CedarCrestone, Inc.*, 2013 WL 3243885, at *6 (N.D. Cal. June 26, 2013).  Nor is

14  there any basis for Defendants' claim that trademark claims cannot satisfy the independent act

15  requirement.  *See Int'l. Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 409 (9th Cir. 2015)

16  (stating that the Lanham Act does not expressly preempt state law, and does not occupy the field).

17      In *Oracle America, Inc. v. TERiX Computer Co., Inc.*, the court held that "because at least

18  some of [plaintiff's] independent causes of action have survived [d]efendants' Rule 12(b)(6)

19  motions, [plaintiff] [had] adequately pleaded a legal theory that [d]efendants engaged in wrongful

20  conduct independent of the interference itself.  2014 WL 31344, at *11 (N.D. Cal. Jan. 3, 2014).

21  The court went on to rule that "[d]ismissal of [plaintiff's] intentional interference with

22  prospective economic relations claim [was] not warranted." *Id.*  Here, in additional to claims

23  covered by federal copyright law and trademark law, Stardock has also alleged three (3) separate

24  claims under California state law, which Defendants wholly fail to address.  As a result, similar to

25  the court's reasoning in *Oracle America*, it would be entirely improper to dismiss Stardock's

26  interference claims.  In summary, Defendants have dramatically overreached in their effort to

27

28

- 12 -

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    lump Stardock's claims under the umbrella of federal preemption, based solely on their citations

2    to DMCA cases.

3
4
            **2.    *Stardock Sufficiently Alleges Relationships with Existing Customers and Contractual Partners***

5           Next, Defendants contend that Stardock has failed to state a valid claim for interference

6    with prospective economic advantage as to any "existing and potential customers."  MTD 14:3-5.

7    Once again, this is an example of Defendants seizing on convenient language while

8    simultaneously ignoring the rest of Stardock's TAC.  To prevail on a claim for interference with

9    prospective economic advantage, a plaintiff must allege the "existence of a specific economic

10   relationship between [plaintiff] and third parties that may economically benefit [plaintiff]" with

11   which the defendant purportedly interfered.  *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983

12   F. Supp. 1303, 1311 (N.D. Cal. 1997).   Here, while Defendants concede that Stardock

13   "specifically alleges relationships between itself and Valve and GOG," Defendants go on to

14   indicate that somehow, because Stardock has additionally alleged relationships with existing and

15   potential customers, the entire element has not been met.  *See* MTD 13:27-14:1. That position is

16   without merit, as stated by this Court:

17
18
19
20
            "[defendant's motion to dismiss] attacks each of these three alleged economic relationships as insufficient to sustain the intentional interference claim. But for PhoneDog to have properly alleged its second claim, only one of the above economic relationships has to meet the elements of the tort.  And the alleged relationship between PhoneDog and its current and prospective advertisers suffices."

21   *PhoneDog v. Kravitz*, 2012 WL 273323. *1 (N.D. Cal. 2012).

22          Unlike the complaint in *Silicon Knights*, Stardock has alleged, throughout its TAC, that

23   Defendants' actions have disrupted Stardock's relationships with existing customers because

24   actual customers who had outright purchased or pre-ordered the *Origins* game and related pre-

25   release content were confused as to its authenticity and requested refunds.  Weikert Decl. ¶¶ 8, 9,

26   Exs. B, C.  These disrupted relationships are not hypothetical, and were certainly developed at the

27   time of Defendants' tortious acts as these customers had already committed to purchase *Origins*

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1   prior to its release.  This is more than sufficient.  For example, the court in *Humboldt Wholesale,*

2   *Inc. v. Humboldt Nation Distribution*, LLC, 2012 WL 2572065 at *6 (N.D. Cal. 2012) explained:

3          Under Federal Rule of Civil Procedure 8, HN need only make a plausible claim for
4          relief. The allegations in the proposed amendment are sufficient to state a claim for
           relief. HN has alleged that it had existing and prospective business relationships
5          with third-party distributors and retailers, that HW knew or should have known of
           those relationships, and that HW disrupted those relationships by registering the
6          domain names and subsequently diverting Internet traffic from HN to HW through
           those names.
7

8          Similarly, in *Oracle America, Inc.*, the court held that a plaintiff can adequately plead the

9   requisite economic relationship for an interference claim when a plaintiff identifies a specific

10  group of customers with the probability of future economic benefit.  *See Oracle Am. Inc. v.*

11  *CedarCrestone, Inc.*, 2013 WL 3243885 at *4 (N.D. Cal., June 26, 2013).  In that case, the

12  plaintiff had sued for interference with prospective economic advantage when the defendant

13  misappropriated plaintiff's intellectual property by creating infringing software updates for

14  plaintiff's customers, thus interfering with Oracle's customer relationships.  *Id.* at *1.  The

15  defendant argued that because the plaintiff did not list any specific or individual customers, it had

16  not met the requirement of identifying a specific economic relationship that was affected.  *Id.* at

17  *3.  The court disagreed, and stated that the plaintiff's allegations, "construed in the light most

18  favorable to [plaintiff], adequately plead the requisite economic relationship between [plaintiff]

19  and some third party with the probability of future economic benefit, namely, the specific group

20  of [plaintiff] software licensees and support customers . . ." *Id.* at *4.

21         Similarly, in this case Stardock has identified customers who either purchased or who had

22  pre-ordered *Origins* before backing out and asking for a refund due to Defendants' actions.  This

23  identified set of customers is exactly the sort of limited group discussed by the court in *Oracle*

24  *America*.  There is nothing hypothetical about the economic relationship between these customers

25  and Stardock, and as a result Stardock has most certainly met this requirement.  Furthermore,

26  even if Stardock's reference to existing and potential customers were found by this Court to be

27

28
                                            - 14 -

1
2

insufficient, the fact that specific relationships with Valve and GOG were alleged would be enough to satisfy the element.

3
4

### 3.    Defendants' Remaining Arguments Argue the Merits and Are Improper for a Motion to Dismiss

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

Defendants remaining attacks attempt to argue the merits, suggesting that Stardock's interference pleadings should be dismissed because Stardock cannot prove its claims.   *See* MTD 14:6-8 (claiming that Stardock has failed to "allege facts sufficient to show" certain elements of its interference claims).   This is, of course, not part of the permitted analysis on a motion to dismiss.   On a motion to dismiss, the Court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally."   *Doe*, 419 F.3d at 1062.   "In considering a 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."   *Nami v. Fauver,* 82 F.3d 63, 65 (3rd Cir. 1996).   *See also Allison v. California Adult Authority,* 419 F.2d 822, 823 (9th Cir. 1969) (court does not weigh potential evidence parties may present at trial.)   Not only has Stardock pled sufficient facts to place Defendants on notice as to the interference claims, Stardock has already identified evidence supporting its claims during discovery, and would include a specific and direct example of Defendants' intent to disrupt the *Origins* launch if not for Defendants' overreaching claims of confidentiality.

20
21
22
23
24
25
26
27

Defendants claim that Stardock has failed to show "(1) that [Defendants] had knowledge of Stardock's relationships with Valve and GOG; (2) that [Defendants] intended to disrupt Stardock's relationships with Valve and GOG; or (3) that Stardock's relationships with Valve and GOG were, in fact, disrupted."   MTD 14:6-10.   Stardock has adequately pled facts sufficient to show all of the above listed elements.   Defendants are video game developers and have worked in the industry for decades, and Valve is the largest online video game distribution platform worldwide.   TAC, ¶ 127.   Furthermore, on October 22, 2017 Stardock became aware that Defendants' were marketing the Classic Star Control Games on GOG without Stardock's

28

- 15 -
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
4840-2057-8682.3

1   permission, and on November 9, 2017, Stardock requested that Defendants' cease all sales of the

2   Classic Star Control Games on GOG.  TAC, ¶¶ 89, 90.  Finally, Stardock communicated regularly

3   with Defendants as early as 2013, and gave them regular updates as to the progress of the games

4   development.  TAC, ¶¶ 51-58.  For Defendants' to claim that Stardock's TAC does not show that

5   Defendants  had  knowledge  of  Stardock's  relationship  with  Valve  and  GOG  is  absurd—

6   particularly  in  light  of  Defendants  interactions  with  both  GOG  and  Valve,  as  alleged  *by*

7   *Defendants* in their current counterclaim.

8          Also, Stardock has demonstrated that Defendants' intended to disrupt Stardock's business

9   relationships.  *See, e.g.,* TAC, ¶¶ 61, 68, 69, 84, 95, 97, 98, 128, 132, and 134.  Even if

10  Defendants  now  claim  that  they  had  no  specific  intent  to  disrupt  Stardock's  business

11  relationships, "if a defendant knows that its wrongful acts are substantially certain to injure the

12  plaintiff's business expectancy, the defendant can be held liable, regardless of the motivation

13  behind its actions."  *Korea Supply Co.*, 29 Cal. 4th at 1165.  Again, Defendants have been video

14  game developers in the industry for decades, they knew what Stardock's development and release

15  plans were, and they knew exactly what would happen when they timed the release of their game

16  and embarked in their misinformation campaign with customers in the video game market.

17  Indeed, Defendants' malicious intentions to disrupt Stardock's *Origins* launch are confirmed by

18  early discovery, in an email that Stardock would include in its complaint but for Defendants'

19  baseless insistence on an Attorneys' Eyes Only designation that will apparently require motion

20  practice to resolve.  *See* Weikert Decl. ¶¶ 3-7.

21         Defendants' final attempt to muddy the waters claims that Stardock has not been damaged

22  because Stardock still had relationships with Valve and GOG in that "both companies were

23  hosting Stardock's material on their websites," and that Stardock ended up releasing *Origins* on

24  schedule following Defendants' wrongdoing.  This simplistic view ignores the lost sales and

25  customer refunds that resulted from Defendants' bad acts.  Just because Defendants' actions were

26  not  sufficient  to  completely  block  *Origins*  launch  does  not  mean  Stardock  did  not  suffer

27  significant damage.

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

4840-2057-8682.3

Case No. 17-cv-07025-SBA

1    Indeed, Defendants contention is no more than selective evidence as opposed to the

2    comprehensive whole.  The fact is that due to Defendants' actions, Stardock's sales of *Origins*

3    were disrupted, and again Stardock has direct evidence supporting its claim (although such

4    evidence is not required at this stage). This is evidenced by the fact that multiple customers who

5    pre-ordered *Origins* requested refunds as a direct result of Defendants' actions.  In one such

6    example, a customer stated that Stardock lost his sales because he "found out that [Defendants]

7    were making the ACTUAL sequel to [Star Control], and [the customer] felt betrayed by Stardock

8    for insisting . . . that they were the only ones working on a SC game."  Weikert Decl. ¶ 8, Ex. B.

9    In another instance, a customer asked for a refund because he could not risk "even a penny of

10   [his] [being] put towards paying for a legal battle against [Defendants] trying to make a true

11   successor to the Star Control franchise."  Weikert Decl. ¶ 9, Ex. C.

12       Additionally, Defendants claim that Stardock's contracts with Valve and GOG could not

13   have been disrupted or impeded because Stardock continued to have contractual relationships

14   with Valve and GOG until at least August 2018.  MTD 15:15-20.  In what has become a theme

15   for Defendants, this is once again a convenient and simplified misstatement of the law.  In order

16   to prevail on a claim for interference with contractual relations, a plaintiff "need not allege an

17   actual or inevitable breach of contract."  *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50

18   Cal. 3d 1118, 1129 (1990).  Indeed, courts have recognized that "interference with the plaintiff's

19   performance may give rise to a claim for interference with contractual relations if plaintiff's

20   performance is made more costly or more burdensome."  *Id.*   Stardock has sufficiently

21   demonstrated that due to Defendants' actions, that was indeed the case.  Stardock has been forced

22   to contend with bad publicity, cancelled sales, lost business relationships, and general uncertainty

23   regarding the release of *Origins* as a direct result of Defendants' actions.

24

25                           **V.    <u>CONCLUSION</u>**

26       For the foregoing reasons, Stardock respectfully requests that the Court deny in its entirety

27   Defendants' motion to dismiss Counts Twelve and Thirteen of Stardock's FAC.   In the

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
4840-2057-8682.3                                                                    Case No. 17-cv-07025-SBA

1

2
alternative, Stardock respectfully requests that the Court grant it leave to amend the complaint so

that discovery may proceed on these claims.

3
                                       Respectfully submitted,

4

5
Dated: November 13, 2018        **NIXON PEABODY LLP**

6

7
By: _/s/ *Robert A. Weikert*

8
Robert A. Weikert (Bar No. 121146)
rweikert@nixonpeabody.com
Dawn N. Valentine (Bar No. 206486)

9
dvalentine@nixonpeabody.com
NIXON PEABODY LLP

10
One Embarcadero Center
San Francisco, California 94111-3600

11
Tel: (415) 984-8200
Fax: (866) 294-8300

12
David L. May (appearance *pro hac vice*)

13
dmay@nixonpeabody.com
Jennette E. Wiser (appearance *pro hac vice*)

14
jwiser@nixonpeabody.com
NIXON PEABODY LLP

15
799 9th Street NW
Washington, DC 20001-4501

16
Tel: (202) 585-8000
Fax: (202) 585-8080

17
Jason T. Kunze (appearance *pro hac vice*)

18
jkunze@nixonpeabody.com
NIXON PEABODY LLP

19
70 West Madison Street, 35th Floor
Chicago, IL 60602

20
Tel: (312) 977-4400
Fax: (312) 977-4405

21

22
*Attorneys for Stardock Systems, Inc.*

23

24

25

26

27

28

- 18 -

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Case No. 17-cv-07025-SBA

4840-2057-8682.3