United States District Court
Northern District of California

|   |   |
|---|---|
| STARDOCK SYSTEMS, INC., | Case No. 4:17-cv-07025-SBA (KAW) |
| Plaintiff, | |
| v. | **ORDER RE: JOINT DISCOVERY LETTER BRIEF** |
| PAUL REICHE III, et al., | Re: Dkt. No. 77 |
| Defendants. | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

On October 30, 2018, the parties filed a 9-page Joint Discovery Letter Brief ("JDLB") (1 cover page, 1 attestation page and a 7-page letter), attaching two exhibits totaling 12 pages and a 1-page affidavit attestation. (Dkt. No. 77.) Notably, Exhibit B is a detailed privilege log of the 61 documents withheld by Defendants Paul Reiche III and Robert Frederick Ford ("Defendants") and third-party Singer Associates ("Singer"), a public relations ("PR") firm, on the grounds of being covered by the attorney-client privilege and/or the work product doctrine. (Dkt. No. 77-2, Ex. B.) In the JDLB, Defendants and Singer "seek an order quashing Stardock's Subpoena to Singer, which seeks to invade the attorney-client privilege" and requests the Court to rule on whether they need to comply with Document Request Nos. 1, 2, 11 & 12; 4, 6, 7 & 8; and 3, 5, and 9.

As discussed below, the Court QUASHES Plaintiff's subpoena and ORDERS that Defendants and/or Singer are not required to produce documents responsive to Document Request Nos. 1, 2, 11 & 12; 4, 6, 7 & 8; and 3, 5, and 9.

**I.    BACKGROUND**

This is a trademark action where Plaintiff Stardock, maker of a recent video game called "Star Control: Origins," is suing Defendants Paul Reiche III and Robert Frederick Ford.[1]

---

[1] According to the Third Amended Complaint, Plaintiff is specifically suing Defendants for "trademark infringement, counterfeiting, unfair competition and false designation of origin, false advertising, trademark dilution and declaratory judgment regarding ownership of trademarks under the Lanham Act, 15 U.S.C. §§ 1051 et seq., copyright infringement, submission of false DMCA notices, and declaratory judgment regarding ownership of copyrights under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., and trademark infringement and unfair competition,

Defendants created the video games of "Star Control" in 1990 and "Star Control II" in 1992. According to Defendants' Opening Position, this dispute concerns the intellectual property ("IP") rights to the "Star Control" video games that Defendants created and developed 25-30 years ago. (Dkt. No. 77 at 3.) At that time, Defendants initially licensed Accolade, Inc. ("Accolade") to publish Star Control I-II, but that license expired in 2001. (*Id.*) Defendants, however, planned to develop a sequel. (*Id.*) In 2013, Plaintiff Stardock bought the "Star Control" trademark registration from Accolade's successor out of bankruptcy. (*Id.*) Plaintiff Stardock then asked Defendants to license their copyrighted material from Star Control I-II, but Defendants declined. (*Id.*) In its suit, Plaintiff Stardock alleges that Defendants are infringing the "Star Control" trademark that they own and their registered "Star Control" copyrights. *See* (Dkt. No. 72 at 38-44, 48-50, 52 (trademark-related claims); 44-47 (copyright-related claims)). In response, Defendants allege that Plaintiff is attempting to steal their IP and preventing them from developing their sequel to Star Control II by, *inter alia*, "a) selling Star Control I and II on [Plaintiff Stardock's] website; b) copying elements of Star Control I and II in its new Star Control: Origins game; and c) applying to register trademarks" on character names from Star Control I and II." (Dkt. No. 77 at 3.)

Defendants state that since October 2017 – the present suit was filed on December 8, 2017 – Plaintiff Stardock has engaged in a public relations ("PR") war against them, consisting of hundreds of posts on online forums and social media platforms, mostly by Stardock's owner and CEO, Brad Wardell. (*Id.* at 4) (citing Dkt. No. 40-2 to 40-11). According to Defendants, these "posts blatantly misrepresented the facts and seek to sway public opinion in favor of Stardock and its new Star Control: Origins game, while casting a shadow over Reiche and Ford and their game, thereby forcing them to settle this case and abandon their IP rights." (Dkt. No. 77 at 3.)

In response, after the current action was filed on December 8, 2017, Defendants' **counsel** (**but not** Defendants themselves) hired and retained third-party PR firm Singer to provide communications and PR counseling from mid-February to mid-March of 2018. According to Defendants, "Singer provided input on legal strategy, including regarding initial pleadings and

---

contributory trademark infringement and tortious interference with prospective economic advantage and contractual relations under California common law." (Dkt. No. 72 at 2.)

2

communications about the case to counteract Stardock's false and negative statements." *See* (Ex. B) (listing entries that are email communications to Singer from Defendants' attorneys involving "draft Answer and Counterclaim," "strategy for response to initial press inquiry," and "settlement negotiations.")

Plaintiff alleges that Defendants engaged Singer to "orchestrate a social and other media assault on Stardock and in particular its CEO, Brad Wardell…in an effort to influence public opinion and indeed turn it against Stardock" by engaging in "inflammatory" postings and representations that appear to be related to the current litigation.[2]

On or about April 3, 2018, Plaintiff Stardock served Singer with a Subpoena asking for, among other things, all documents relating to communications between Singer and Reiche, Ford, and their counsel. (Dkt. No. 50 at 5.) In response to this Subpoena, Singer produced "responsive, non-privileged documents in its possession, including communications with reporters, the [final] press release on the case, and related internet posts." (Dkt. No. 77 at 4.) On April 27, 2018, Defendants filed a Motion to Quash Plaintiff's Subpoena. (Dkt. No. 40.) On May 1, 2018, the Court terminated the Motion to Quash because the undersigned "does not entertain discovery motions filed by the parties, and instead requires them to file joint discovery letters to address pending discovery disputes." (Dkt. No. 43 at 1.) On June 28, 2018, the parties filed a first Joint Discovery Letter Brief. (Dkt. No. 48.) On July 19, 2018, the Court terminated that first Joint Discovery Letter Brief because it was "not in the format required by the undersigned's standing order." (Dkt. No. 52 at 1.) On October 30, 2018, the parties filed a second Joint Discovery Letter Brief, which is the JDLB being resolved by this present Order. (Dkt. No. 77.)

---

[2] Plaintiff Stardock, in its Opening Position, states that the "following tweet is representative of the social media postings <u>by Singer itself</u> in support of" Singer's publicity campaign:

> "When @Stardock's Star Control copyright lawsuit comes to light, Brad Wardell @draginol and Stardock will be publicly humiliated for their theft of Star Control IP from @Dogar_And_Kazon and their deception and attempts at bullying them."

(Dkt. No. 77 at 5.) Defendants responded by indicating that tweet was "not made at Reiche and Ford's direction nor with their approval and was deleted instantly." It appears, however, that the tweet was something that Singer prepared for the current litigation.

3

## II. RELEVANT AUTHORITY

### A. Attorney-Client Privilege

"A party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir.2010) (quotations omitted). "Because it impedes the full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (quotations omitted). The Ninth Circuit applies an eight-factor test to determine whether communications are covered by the attorney-client privilege: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived. *Id.*

The case of *In re Grand Jury Subpoenas* held that "(1) confidential communications (2) between lawyers and public relation consultants (3) hired by the lawyers to assist them in dealing with the media in cases [or litigation] (4) that are made for the purpose of giving or receiving advice (5) directed at handling the client's legal problems are protected by the attorney client privilege." 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003). The attorney client privilege, in appropriate circumstances, "extends to otherwise privileged communications that involve persons assisting the lawyer in the rendition of legal services." *Id.* at 325. "This principle has been applied universally to cover office personnel, such as secretaries and law clerks, who assist lawyers in performing their tasks" and has been more broadly applied, for example, in a Second Circuit case where it was held that a client's communications with an accountant employed by his attorney were privileged when they were made for the purpose of enabling the attorney to understand the client's situation in order to provide legal advice. *Id.* (citing *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (Judge Friendly stating that the privilege extends from a client to an accountant "where the client in the first instance consults a lawyer who retains an accountant as a listening post, or consults the lawyer with his own accountant present."))

*In re Grand Jury Subpoenas* also makes the clear distinction between the scenario where the client themselves hire a PR firm for general PR services – which is the situation that occurs in

4

the case of *Schaeffer v. Gregory Village Partners*, 78 F. Supp. 3d 1198, 1200 (N.D. Cal. 2015) (where the client hired a PR firm to perform a variety of mostly non-legal tasks for the client as a "functional employee" such as conducting community research, identifying key contacts, attending various meetings, developing fact sheets and reports) – and the scenario where the lawyers of the client actually hire the PR firm to manage publicity for the litigation or the case that the lawyers are trying because the lawyers "need[ed] outside help" as they presumably are not skilled at public relations. *See Grand Jury Subpoenas*, 265 F. Supp. 2d at 326 ("[PR] consultants engaged by lawyers to advise them on matters such as whether the state of public opinion in a community makes a change of venue desirable, whether jurors from particular backgrounds are likely to be disposed favorably to the client, how a client should behave while testifying in order to impress jurors favorably and other matters routinely the stuff of jury and personal communications [or PR] consultants come within the attorney-client privilege, as they have a close nexus to the attorney's role in advocating the client's cause before a court.")

Moreover, if a third-party consultant is "involv[ed] in the giving of legal advice" the attorney-client privilege attaches, but if the consultant is retained for nonlegal purposes, the privilege is lost. *In re CV Therapeutics, Inc. Securities Litigation*, No. C-03-3709, 2006 WL 1699536 SI(EMC), at *7 (N.D. Cal. June 16, 2006).

**B.     Work Product**

Work-product protection derives from Rule 26(b)(3). Under that rule, attorney work-product prepared in anticipation of litigation or for trial is protected from disclosure. *See* Fed. R. Civ. P. 26(b)(3)(A) ("a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent.))"*; Great Am. Assurance Co. v. Liberty Surplus Ins. Co.,* 669 F.Supp.2d 1084, 1092 (N.D. Cal. 2009). A court must also "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

In the context of Rule 26, PR firms may fall within the category of an attorney's consultant or at the very least their agent. Thus, "an attorney does not waive [work-product] protection when

he shares otherwise valid work product with a consultant for PR assistance, so long as the communications are intended to be confidential." *Light Out Holdings, LLC v. Nike, Inc.*, No. 14-cv-872 JAH (NLS), 2015 WL 11254687, at *4 (S.D. Cal. May 28, 2015). "To withhold a document or communication made for both PR advice and litigation strategy, a party must show that the document 'would not have been created in substantially similar form but for the prospect of litigation,' and that 'the litigation purpose so permeates any [PR] purpose that the two purposes cannot be discretely separated from the factual nexus as a whole." *Id.* (citing *In re Grand Jury Subpoena (Torf)*, 357 F.3d 900, 908, 910 (9th Cir. 2004)).

## III. ANALYSIS

The JDLB raises four separate issues, which will be addressed as follows:

> (A) Whether Plaintiff Stardock's Subpoena to Singer should be quashed on the grounds of invading attorney-client privilege and/or the work product doctrine, or alternatively, does the attorney-client privilege or work product doctrine extend to Singer from Defendants' counsel?
> (B) Whether Defendants and Singer should produce documents responsive to Document Request Nos. 1, 2, 11 & 12.
> (C) Whether Defendants and Singer should produce documents responsive to Document Request Nos. 4, 6, 7 & 8.
> (D) Whether Defendants and Singer should produce documents responsive to Document Request Nos. 3, 5, and 9.

### A. The Attorney-Client Privilege and Work Product Doctrine

Plaintiff argues that neither the attorney-client or work product privilege applies here, and that it is entitled to the third-party discovery that it seeks from Singer, partly because permissible discovery is broad and includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of this case." (*Id.* at 5.) (citing Fed. R. Civ. P. 26.)

#### 1. Arguments Raised by Defendants and Singer

Defendants and Singer contend that Defendants' counsel retained Singer to provide communications and PR counseling from mid-February to mid-March 2018, as well as "input on legal strategy, including" input "regarding initial pleadings and communications about the case to counteract" Plaintiff's "false and negative statements." (Dkt. No. 77 at 4.) Singer also "produced responsive, non-privileged documents in its possession, including communications with reporters, the press release on the case, and related internet posts." (*Id.*) Defendants and Singer further argue

6

that the "remaining documents in Singer's possession that are responsive to [Plaintiff's] Subpoena are <u>private, non-public</u> communications between and among [Defendants] Reiche and Ford, their counsel, and Singer, relating to legal advice sought by Reiche and Ford concerning their response to this lawsuit in light of Stardock's strategy." (*Id.*)

Defendants and Singer rely on *In re Grand Jury Subpoenas*, which states that the:

> "ability of lawyers to perform some of their most fundamental client functions…would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with [their] public relations consultants…lawyers may need skilled advice as to whether and how possible statements to the press…would be reported in order to advise a client as to whether the making of particular statements would be in the client's legal interest. And there simply is no practical way for such discussions to occur with the public relations consultants if the lawyers were not able to inform the consultants of…[their] defense strategies and tactics, free of the fear that the consultants could be forced to disclose those discussions."

265 F. Supp. 2d at 330-331. Defendants and Singer further aver that "[s]imilarly, the present case received press coverage as a result of Stardock's PR efforts against [Defendants] Reiche and Ford, and their counsel retained Singer to help present a more balanced picture" and that the "withheld documents are communications related to giving and receiving legal advice about the appropriate response to the lawsuit and making related public statements, and therefore are subject to the attorney-client privilege." (Dkt. No. 77 at 4-5.)

Defendants and Singer additionally note that some of the withheld documents are subject to the work product doctrine such as drafts of the counterclaim and press release regarding the case because such materials were prepared for litigation by Defendants' counsel and consultant and were intended to be confidential, and some of the other withheld documents also contain "mental impressions, conclusions, opinions, or legal theories" of Defendants' counsel. (*Id.* at 5.)

Finally, Defendants and Singer assert that Singer's non-public communications are not relevant to any party's claims and defenses in this case, and that Stardock cannot explain how these private withheld communications would be relevant to claims in the case such as infringement and damages and claims not in the case such as defamation, which they additionally argue that Stardock is barred from pleading under California Civil Code 47. (*Id.*)

//

### 2. Arguments Raised by Plaintiff

In response, Plaintiff asserts that the requested discovery "relates directly to Stardock's claims including without limitation communications relevant to: the extent to which Defendants have deliberately attempted to confuse the public with regard to its own game-development with the 'Star Control' mark; the damages Stardock has suffered as a result of Defendants' deliberate use of the Star Control mark; an inquiry as to the strength of the Star Control mark; and Stardock's contention that Defendants are waging a media war against Stardock to fulfill their objective in filing a counterclaim." (*Id.* at 6.)

Plaintiff further argues that Defendants are unable to meet the burden that a party asserting the attorney-client privilege has in establishing the existence of an attorney-client relationship *and* the privileged nature of the communication. (*Id.* at 7.) Plaintiff also contends that Defendants do not apply the correct test for when the attorney-client privilege applies, citing several cases from this and other Districts in the Ninth Circuit, and from the Southern District of New York. (*Id.*) Namely, Plaintiff relies on *Schaeffer* for the proposition that the attorney-client privilege applies to consultants only when two criteria are met: (1) the communication is for the purpose of providing legal advice; and (2) the "consultant" is the functional equivalent of an employee or "functional employee" of the party seeking to invoke the privilege. (*Id.*) (citing *Schaeffer,* 78 F. Supp. 3d at 1202-03).

Moreover, Plaintiff distinguishes the *In re Grand Jury Subpoenas* case cited by Defendants by stating that there, the court did not apply the Ninth Circuit standards for the application of the privilege, and the PR firm was hired in that case for the explicit purpose of aiding the attorneys in avoiding a criminal indictment of their client. (*Id.* at 8.) Specifically, Plaintiff contends that the *In re Grand Jury Subpoena* court held that the work was not typical PR work insofar as its target audience was not the public at large, but rather the prosecutors and regulators responsible for charging decisions involving their client. (*Id.*) Plaintiff argues that this is entirely distinct from the instant case, which does not involve PR work as instrumental to achieving Defendants' legal goals, and some communications made for the purpose of obtaining legal services were even determined by the court to fall outside the attorney-client privilege. (*Id.*)

1  Finally, Plaintiff argues that Defendants' reliance on California Civil Code section 47 is incorrect because section 47 is not an evidentiary or discovery exemption privilege that allows Defendants or Singer to avoid Plaintiff's Subpoena, and the work product rule – which only protects documents prepared by a party or his representative "in anticipation of litigation" – does not protect PR communications from disclosure because public relations work is generally treated as business strategy, rather than a legal one, and is not protected as work product. (*Id.*)

### 3. The Court's Ruling

Here, the Court finds that because Defendants' counsel (and not Defendants themselves) hired the PR firm of Singer to provide PR counseling specifically for the purposes of litigation strategy in the current action, just like the services the PR firm in the *In re Grand Jury Subpoenas* case rendered, the attorney-client privilege extends to the withheld communications between Singer and Defendants' counsel pertaining to "giving and receiving legal advice about the appropriate response to the lawsuit and making related public statements." (*Id.* at 5.) Examples of these communications can be seen in the 61 documents listed in the privilege log, which are primarily e-mail communications between Singer and Defendants' counsel regarding the "draft Answer and Counterclaim," as well as "potential exhibits" attached to, and the "filing" of said draft Answer and Counterclaim; "response to initial press inquiry," and the strategy related to said response; "potential reporters and publications requested by counsel"; "claims"; "draft press release"; "settlement negotiations"; "public posts"; and "services" as well as "potential future strategy." (Ex. B at 2-4.) These communications relate to Defendants' counsel's litigation strategy in dealing with the present suit, and the dispensing and exchange of legal advice in responding to the lawsuit filed by Plaintiff and launching a public or social media based campaign that will most favor Defendants in terms of their perception in the current legal action. Consequently, these communications are "(1) confidential communications" made (2) between lawyers and public relation consultants [*e.g.*, Singer] (3) hired by the lawyers to assist them in dealing with the media in cases [or litigation] (4) that are made for the purpose of giving or receiving advice (5) directed at handling the client's [or Defendants'] legal problems" that are undeniably "protected by the attorney client privilege." *Grand Jury Subpoenas*, 265 F. Supp. 2d at 331.

Plaintiff's reliance on *Schaeffer*'s "functional employee" test is misguided because in *Schaeffer*, it was the client that hired the PR firm, not the lawyers of that client. Therefore, the *Schaeffer* court found that the PR firm in that case was acting as a "functional employee" of the client in performing primarily non-legal tasks and being generally "the public face" of the client company. *See Schaeffer,* 78 F. Supp. 3d at 1204 ("Craig [the PR consultant] was a 'functional employee' of Gregory Village [the client]…[Craig] also interacted with neighbors…to gather information from them regarding their concerns about the contamination; to secure access agreements so Gregory Village could perform on-site sampling; to plan and execute sampling on site;…When attending public meetings, interacting with neighbors and…[i]n all these activities, Craig acted as the public face of the company and…acted as Gregory Village's functional employee for the purposes of the attorney-client privilege.") This case is analogous to *In re Grand Jury Subpoenas*, where a PR firm was hired by a party's lawyers for litigation strategy purposes or to provide PR, publicity and media consulting for the legal case that the attorneys were litigating. That the case in *In re Grand Jury Subpoenas* was a criminal one is of no moment because, whether a case is criminal or civil, the attorney-client privilege would extend to a consultant, or a PR firm working directly with the attorneys for the purposes of assisting them in providing the soundest legal advice to their client and employing the optimal publicity strategy to win the case. Hence, the Court QUASHES Plaintiff's subpoena insofar as it requests communications or documents protected by the attorney-client privilege that has been extended to Singer from Defendants' counsel.

The Court similarly finds that the work product doctrine extends to the communications exchanged between Singer and Defendants' counsel. As can be seen by the privilege log, documents such as a "draft Answer and Counterclaim" and a "draft press release" (Ex. B at 1-4) would contain "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Moreover, documents such as a "draft Answer and Counterclaim" and a "draft press release" are "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). Defendants' counsel also did not waive their work-product protection when they shared otherwise valid work product (e.g. draft

Answers or Counterclaims) with a PR firm for assistance because the communications were intended to be confidential. *Light Out Holdings,* 2015 WL 11254687, at *4. Singer and Defendants have sufficiently shown that they may validly withhold the communications described in the privilege log, which were made for both PR advice and litigation strategy purposes because those documents or communications "would not have been created in substantially similar form but for the prospect of litigation," and that "the litigation purpose so permeates any [PR] purpose" of these communications so "that the two purposes cannot be discretely separated from the factual nexus as a whole." *Id.; Grand Jury Subpoena (Torf)*, 357 F.3d at 908, 910. Accordingly, the Court also hereby QUASHES Plaintiff's subpoena insofar as it requests communications protected by the work product doctrine.

### B. Document Request Nos. 1, 2, 11 and 12

Document Request Nos. 1, 2, 11 and 12 request all documents relating to communications between Singer and Defendants and between Singer and Defendants' counsel. (Dkt. No. 77 at 6.) Because these requested documents are protected by the attorney-client privilege and the work-product doctrine as detailed above, the Court ORDERS that Defendants and/or Singer are not required to produce the documents requested by Document Request Nos. 1, 2, 11 and 12.

### C. Document Request Nos. 4, 6, 7, and 8

Document Request Nos. 4, 6, 7, and 8 request agreements, invoices and payment(s) made between Singer and Defendants. (*Id.* at 8.) Because such documents would describe, in detail, the activities that both Defendants' attorneys and Singer undertook in litigating this case or strategic, PR-related tasks accomplished for the purpose of best litigating this case, they should also be protected by the attorney-client privilege and the work-product doctrine. *See Travelers Prop. Cas. Co. of Am. v. Centex Homes*, No. 11-3638-SC, 2013 WL 707918, at *1 (N.D. Cal. Feb. 26, 2013) ("Under Ninth Circuit authority, 'attorney-client privilege embraces attorney time, records and statements to the extent that they reveal litigation strategy and the nature of the services provided.'") (citing *Real v. Cont'l Group, Inc.*, 116 F.R.D. 211, 213 (N.D. Cal. 1986)); *Bell v. Ken Lee*, No. 13-CV-05820-SI, 2017 WL 1956828, at *3 (N.D. Cal. May 11, 2017) (stating that invoices and agreements such as "correspondence, bills, ledgers, statements, and time records

which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the [attorney-client] privilege.") (citing *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992)). As a result, the Court ORDERS that Defendants and/or Singer are not required to produce the documents requested by Document Request Nos. 4, 6, 7 and 8.

### D. Document Request Nos. 3, 5 and 9

Document Request Nos. 3, 5 and 9 request all documents relating to Stardock, the Classic Star Control Games and all internal communications relating to Stardock or the Star Control Games. (Dkt. No. 77 at 9.) The Court finds that these document requests are overbroad. Additionally, Defendants and Singer have already produced all communications related to Stardock and/or the Star Control games with third parties, and any internal communications relating to legal advice sought by Reiche and Ford are subject to the attorney-client privilege and also work-product doctrine, as discussed above, and are therefore not discoverable. As a result, the Court ORDERS that Defendants and/or Singer are not required to produce the documents requested by Document Request Nos. 3, 5, and 9.

## IV. CONCLUSION

In sum, the Court:

QUASHES Plaintiff's subpoena on the grounds that the requested documents or communications are protected by the attorney-client privilege and/or the work product doctrine; and

ORDERS that Defendants and/or Singer are not required to produce documents responsive to Document Request Nos. 1, 2, 11 & 12; 4, 6, 7 & 8; and 3, 5, and 9.

IT IS SO ORDERED.

Dated: November 30, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge