1
2
3    UNITED STATES DISTRICT COURT
4    FOR THE NORTHERN DISTRICT OF CALIFORNIA
5    OAKLAND DIVISION
6

7
8    STARDOCK SYSTEMS, INC.,

9                Plaintiff,

10        vs.

11   PAUL REICHE III and ROBERT
     FREDERICK FORD,

12              Defendants.

13
     ─────────────────────────────────
14

     AND RELATED COUNTERCLAIM.

Case No:  C 17-07025 SBA

**ORDER GRANTING MOTION TO DISMISS COUNTS TWELVE AND THIRTEEN OF THIRD AMENDED COMPLAINT WITH LEAVE TO AMEND AND DENYING AS MOOT MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT**

Dkt. 76, 82

15        This is a copyright and trademark infringement action between Plaintiff/Counter-

16   Defendant Stardock Systems, Inc. ("Stardock" or "Plaintiff"), Defendants/Counter-

17   Claimants Paul Reiche III ("Reiche") and Robert Frederick Ford ("Ford") (collectively

18   "R/F" or "Defendants"), and Counter-Defendants GOG Limited and GOG Poland sp. z.o.o.

19   ("GOG") and Valve Corporation d/b/a Steam ("Valve"), regarding a videogame franchise

20   known as "Star Control."

21        In the 1990s, R/F created the concept for Star Control, and, in partnership with

22   Accolade, Inc. ("Accolade"), developed and published a trilogy of videogames under that

23   name (referred to herein as "Star Control I," "Star Control II," and "Star Control III," and

24   collectively as "the Classic Star Control Games").  Pursuant to a written agreement, the Star

25   Control intellectual property ("IP") was divided between R/F and Accolade.  As is pertinent

26   here, R/F purport to hold the copyrights to Star Control I and II; Accolade's successor—

27   Stardock—purports to hold, among other things, the trademarks adopted and used in

28   marketing the work, including the "Star Control" mark.

The present dispute arises out of Stardock's acquisition of Accolade's Star Control IP in 2013 and subsequent development of a new game, titled Star Control: Origins ("Origins").  R/F contend that Origins and promotional content related thereto infringes their copyrights in the Classic Star Control Games.  In 2017, while Stardock was completing development of Origins, R/F also announced their plans to develop a new game in the Star Control universe, titled Ghosts of the Precursors, which they tout as a sequel to Star Control II.  Stardock contends that, in promoting Ghosts of the Precursors, R/F have infringed its trademarks in the "Star Control" and other marks.

Counter-Defendants GOG and Valve operate digital distribution platforms where videogames are purchased and played.  At times relevant to the instant proceedings, the Classic Star Control Games, Origins, and promotional content related to Origins were distributed on the GOG/Valve platforms.

The matter is presently before the Court on R/F's Motion to Dismiss Counts Twelve and Thirteen of Stardock's Third Amended Complaint, Dkt. 76, and Stardock's Motion for Leave to File Fourth Amended Complaint, Dkt. 82.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS R/F's motion to dismiss, with leave to amend, and DENIES as moot Stardock's motion for leave to file a fourth amended complaint, for the reasons stated below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.   **BACKGROUND**[1]

### A.   **FACTUAL BACKGROUND**

In 2013, Stardock acquired all right, title, and interest in Accolade's Star Control IP.  TAC ¶¶ 28-30.  Shortly thereafter, Stardock decided to create a new game in the Star Control universe—Origins—as "a successor" to the Classic Star Control Games.  Id. ¶ 47.

---

[1] The parties are familiar with the factual and procedural background of the action, which is expansive.  Only those facts and events essential to the understanding and resolution of the instant motions are set forth herein.  For present purposes, the factual allegations are taken from the operative Third Amended Complaint ("TAC").  Dkt. 72.

According to Stardock, it offered R/F "the right of first refusal" to collaborate on the development of Origins.  Id.  R/F declined that offer, and Stardock went on to develop Origins independently.  Id. ¶¶ 48, 51-58.

On or about October 18, 2016, Stardock publicly announced the development and future release of Origins.  Id. ¶ 54.  On or about November 16, 2017, it released a beta version of one component of the game, titled Star Control: Origins Fleet Battles ("Fleet Battles").  Id. ¶ 58.  Thereafter, Stardock released additional promotional content, i.e., the Chenjesu and Arilou Content Packs (collectively with Fleet Battles, the "Promotional Content").  Id. ¶ 113.  Origins was released on September 20, 2018.  Id. ¶ 130.

Stardock alleges that, beginning in or about October 2017, R/F embarked on a course of infringing conduct designed to diminish and delegitimize Origins in the eyes of consumers and to usurp the goodwill and reputation of the "Star Control" mark and brand in promoting their own game, Ghosts of the Precursors.  TAC ¶¶ 59-140.  Over a span of twenty pages, Stardock alleges a myriad of "Infringing Actions."  Id.  Among other things, Stardock alleges that R/F:

- Deliberately timed their announcement of Ghosts of the Precursors to disrupt and interfere with the release of the Promotional Content, id. ¶¶ 60-68;

- Used the "Star Control" mark and other IP owned by Stardock to promote Ghosts of the Precursors, which they tout as a "true" and "direct" sequel to Star Control II, id. ¶¶ 60-75;

- Falsely held themselves out as the "creators" of the Classic Star Control Games when, in fact, they "are not the authors or creators of any copyrightable works" therein, id. ¶¶ 76-88;

- Offered the Classic Star Control Games for sale on GOG's platform without Stardock's authorization and in violation of its IP rights, id. ¶¶ 89-91;

- Commenced a "GoFundMe" campaign to fund their defense in this action, which Stardock characterizes as a "deceptive campaign to cancel [its]

rightfully owned trademarks and other intellectual property rights and interfere with and disrupt the potential success of [Origins]," id. ¶¶ 92-99;

- Filed fraudulent trademark applications for Star Control-related marks, including "The Ur-Quan Masters" and "Ghosts of the Precursors," despite the fact that they are not the rightful owners of the marks, id. ¶¶ 100-112; and

- Submitted false infringement notices, which sought and resulted in the removal of the Promotional Content from the GOG/Valve platforms, in bad faith and with the sole intent of disrupting the success of the Promotional Content and Origins itself, id. ¶¶ 113-131.[2]

Stardock alleges that "[R/F's] actions in these and other respects have created actual and substantial confusion, mistake and/or deception among consumers in the marketplace" with respect to the source or origin of Ghosts of the Precursors and Origins.  Id. ¶ 132.  The infringing acts allegedly caused and continue to cause "substantial and irreparable harm to Stardock, its reputation, and the financial success of [Origins]."  Id. ¶ 134.

## B.  PROCEDURAL BACKGROUND

On December 8, 2017, Stardock filed a Complaint against R/F for: (1) Trademark Infringement, in violation of the Lanham Act; (2) Counterfeiting, in violation of the Lanham Act; (3) Unfair Competition and False Designation of Origin, in violation of the Lanham Act; (4) Trademark Dilution, in violation of the Lanham Act; (5) Copyright Infringement, in violation of the Copyright Act; and (6) California Common Law Trademark Infringement and Unfair Competition.  Dkt. 1.

On February 22, 2019, R/F filed a Counterclaim against Stardock for copyright infringement and other claims.  Dkt. 17.  The parties then amended the pleadings several times.  On March 15, 2018, Stardock filed a First Amended Complaint, realleging the same

---

[2] Under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, when a copyright holder submits a notice of infringement, a service provider may limit its potential liability by removing the allegedly infringing content.  If the affected subscriber files a counter-notice, the service provider must restore the content, unless the copyright holder files an action seeking a court order to restrain the subscriber.  The DMCA creates a cause of action for knowingly making material misrepresentations in a notice or counter-notice.

six counts from the Complaint.  Dkt. 27.  On July 16, 2018, Stardock filed a Second Amended Complaint, realleging those counts and adding two new counts for: (1) False Advertising, in violation of the Lanham Act; and (2) False Advertising, in violation of California Business and Profession Code Sections 17500 et seq.  Dkt. 51.

On October 15, 2018, Stardock filed the operative Third Amended Complaint, realleging the same eight counts from the Second Amended Complaint and adding six new counts for: (1) Submission of False DMCA Notices; (2) Declaratory Judgment Regarding Ownership of Copyrights; (3) California Common Law Contributory Trademark Infringement; (4) California Common Law Tortious Interference with Prospective Economic Advantage; (5) California Common Law Tortious Interference with Contractual Relations; and (6) Declaratory Judgment Regarding Ownership of Trademarks.  Dkt. 72.

Thereafter, R/F filed the instant motion to dismiss counts twelve and thirteen—for tortious interference with economic and contractual relations—pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 76.  Stardock filed an opposition to the motion, Dkt. 83, and separately filed a motion for leave to file a Fourth Amended Complaint pursuant to Rules 15(a)(2) and 16(b), Dkt. 82.  The motions are fully briefed.

## II.   <u>LEGAL STANDARD</u>

Rule 12(b)(6) "tests the legal sufficiency of a claim."  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  <u>Somers v. Apple, Inc.</u>, 729 F.3d 953, 959 (9th Cir. 2013).  "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'"  <u>Zixiang Li v. Kerry</u>, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting in part <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 n.3 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).

In assessing the sufficiency of the complaint, the court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are "not entitled to the assumption of truth." Iqbal, 556 U.S. at 678, 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

Upon dismissal of a claim or complaint, leave to amend should be "freely given." Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (holding that, absent undue delay, bad faith, prejudice, repeated failure to cure deficiencies, or futility of amendment, leave to amend should, as Rule 15 requires, be "freely given"). "It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." Nat'l Council of La Raza v. Cegavske, 800 F.3d 1032, 1041-42 (9th Cir. 2015) (citing Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."). A district court may deny leave to amend if "it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (internal citations omitted).

## III.  DISCUSSION

### A.  MOTION TO DISMISS

The twelfth and thirteenth causes of action for tortious inference with economic and contractual relations are predicated on Defendants' submission of allegedly false DMCA

infringement notices to GOG/Valve.  It is alleged that Defendants "willfully committed intentional, malicious and wrongful acts to interfere with and disrupt" Plaintiff's business relations "by submitting the false DMCA Notices for the improper and unwarranted removal of the [Promotional] Content" from the GOG/Valve platforms.  TAC ¶¶ 210, 216.

Defendants move to dismiss Plaintiff's tortious interference claims on the ground that the claims are predicated solely on the submission of the DMCA infringement notices and are therefore preempted by federal law.  Plaintiff concedes that its interference claims are preempted insofar as they are based on the submission of the DMCA notices but contends that its claims are also based on other acts of interference alleged elsewhere in the TAC.  Defendants dispute that the interference claims are based on any other acts, but argue that, even if the Court entertains this argument, Plaintiff nonetheless fails to allege facts sufficient to state a claim.  Finally, in the event that the interference claims are dismissed as pled, the parties disagree as to whether leave to amend should be granted.

### 1. Dismissal

Courts in this district have found that the DMCA preempts state law claims arising out of the submission of infringement notices.  See Amaretto Ranch Breedables, LLC v. Ozimals, Inc., No. C. 10-05696 CRB, 2011 WL 2690437, at *3-5 (N.D. Cal. July 8, 2011) (an infringement notice is a "creature of a federal statutory regime" that preempts any state law claim based on the submission of such a notice); Lenz v. Universal Music Corp., No. C 07-03783 JF, 2008 WL 962102, at *4 (N.D. Cal. Apr. 8, 2008) (same); Online Policy Grp. v. Diebold, Inc., 337 F. Supp. 2d 1195, 1205-06 (N.D. Cal. 2004) ("If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law.").  As stated above, the DMCA provides a comprehensive notice and takedown scheme that itself regulates the submission of false infringement notices.  17 U.S.C. § 512(f) (creating liability for "knowingly materially misrepresent[ing]" infringement); see also Lenz, 2008 WL 962102, at *4 (section 512(f) provides the "sole remedy" for those who object to a notice's contents

1   and effects).  The Court therefore joins the above-cited decisions in finding that the DMCA

2   preempts state law claims predicated on the submission of false infringement notices.

3        Plaintiff concedes that its interference claims are preempted insofar as they are based

4   on the DMCA notices.  It argues, however, that "the DMCA notices were intended to show

5   but one example of a continuing pattern of improper conduct by Defendants" that interfered

6   with its business relations.  Opp'n at 9.  According to Plaintiff's, "non-DMCA examples"

7   of interference, e.g., infringement of the "Star Control" trademark, are incorporated by

8   reference in counts twelve and thirteen.  Plaintiff also contends that its allegation of

9   interference with the release of Origins further demonstrates that the "interference claims

10  are not solely predicated on the DMCA take-down notices."  Id.

11       Plaintiff's arguments are unpersuasive.  In counts twelve and thirteen—as in every

12  other count—Plaintiff "incorporates and references the allegations asserted in each of the

13  preceding paragraphs."  TAC ¶¶ 209, 214.  This, standing alone, is insufficient to put

14  Defendants on notice as to the alleged wrongful acts underlying the interference claims.

15  See Zixiang Li, 710 F.3d at 998-99 (quoting Twombly, 550 U.S. at 556 n.3) ("Rule

16  12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the

17  nature of the claim, but also grounds on which the claims rests.'").  As stated above, the

18  interference claims refer explicitly and exclusively to the submission of the DMCA notices.

19  See TAC ¶¶ 210, 216 (alleging that Defendants interfered "*by* submitting the false DMCA

20  Notices" (emphasis added)).  Submission of the DMCA notices is not offered as "but one

21  example," Opp'n at 9, but rather, the *only* example of interference.  In fact, given the

22  absence of words such as "including" or "for example," the plain language of the claims

23  does not even suggest an intent to rely on other acts of alleged interference.

24       Plaintiff's argument regarding Origins is equally uncompelling.  The interference

25  claims allege that Defendants' acts were designed to disrupt "the release of Stardock's

26  Origins Game" and its "contractual relationships with . . . purchasers of . . . Stardock's

27  Origins Game."  TAC ¶¶ 211, 217.  According to Plaintiff, these allegations demonstrate

28  that the claims "are not solely predicated on the DMCA take-down notices" because

Origins "was never the subject of a DMCA notice." Opp'n at 9. Setting aside the fact that the claims still fail to provide notice as to what *other acts* they may be predicated on, Plaintiff's own allegations belie the assertion that mere reference to Origins broadens the scope of its interreference claims. The TAC alleges that "[R/F] knowingly made false statements and misrepresentations in the DMCA Notices in bad faith and with the sole intention of disrupting the potential success of the [Promotional Content] *and* [*Origins*]." TAC ¶ 125 (emphasis added). It further alleges that removal of the Promotional Content because of the notices "has and will continue to cause severe and irreparable damage to the financial success *of* [*Origins*]." Id. ¶ 126 (emphasis added). In light of these allegations expressly tying the submission of the DMCA notices to disruption in the release of Origins, the reference to Origins does not alter the scope of the inference claims.[3]

In sum, the Court finds that Plaintiff's interference claims are predicated solely on the submission of the DMCA notices and are therefore preempted as pled. Accordingly, Defendants' motion to dismiss is GRANTED. The Court now turns to the matter of whether leave to amend should be granted to allow Plaintiff the opportunity to allege claims predicated on non-preempted acts of interference.

## 2.   Leave to Amend

Plaintiff seeks leave to amend to incorporate other acts of interference alleged elsewhere in the TAC. Defendants argue that leave to amend should be denied because the defects in these causes of action are incurable. Undisputedly, preemption is incurable. Insofar as Plaintiff seeks leave to predicate its claims on non-preempted acts of interference, however, amendment may be effective. The Court thus analyzes the elements of the interference torts in connection with the other acts identified by Plaintiff.

---

[3] Tellingly, Plaintiff added the intentional interference claims in its Third Amended Complaint, filed in October 2018. The DMCA notices were submitted only a few weeks earlier, in August 2018. If, as Stardock contends, the intentional inference claims are predicated on other acts, some of which allegedly occurred as early as October 2017, these claims could have been alleged earlier. The fact that they were not alleged sooner tends to negate Stardock's contention regarding the basis for its claims.

To prevail on a claim for interference with contractual relations or prospective economic advantage, a plaintiff must plead and prove: (1) the existence of a valid contract between the plaintiff and a third party or an economic relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the contractual or economic relationship; (3) intentional acts designed to induce a breach of the contract or disrupt the relationship; (4) actual breach or disruption of the relationship; and (5) resulting damages. Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003). Additionally, to recover for interference with prospective economic advantage, a plaintiff must plead and prove that the defendant's conduct was wrongful by some legal measure apart from the interference itself. Reeves, 33 Cal. 4th 1148 (citing Korea Supply, 29 Cal. 4th at 1153). For interference with contractual relations, "intentionally interfering with an existing contract is a 'wrong it and of itself.'" Korea Supply, 29 Cal. 4th at 1158.

### a. *Wrongful Act of Interference*

Defendants argue that the TAC does not allege any independently wrongful act to support a claim for intentional interference with prospective economic advantage. As stated above, to prevail on such a claim, "a plaintiff must plead that the defendant engaged in an act that is wrongful apart from the inference itself." Korea Supply, 29 Cal. 4th at 1154. "An act is not independently wrongful merely because [the] defendant acted with an improper motive." Id. at 1158. Rather, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Id. at 1158-59.

Plaintiff identifies several purported acts of interference, including Defendants' infringing use of the "Star Control" mark. Defendants counter that the wrongful acts alleged, i.e., "the DMCA, trademark and copyright allegations" are preempted by federal law. Mot. at 13. As correctly noted by Plaintiff, however, Defendants fail to cite any authority supporting extension of their preemption argument to alleged acts of trademark and copyright infringement. Although the Court agrees with Defendants that the

interference claims are preempted insofar as they are based on the submission of DMCA notices, see supra § III.A, Defendants have not shown, or even attempted to show, that the claims are preempted insofar as they are based on trademark and copyright infringement. Leave to amend the cause of action for intentional interference with prospective economic advantage therefore will not be denied on this basis.

### b.     Existing Contractual and/or Economic Relations

The TAC alleges business relationships with GOG/Valve, as well as with "existing and potential purchasers" of content.  TAC ¶ 210.  Defendants acknowledge that Plaintiff adequately alleges existing relationships with GOG/Valve, but argue that the "vague allegation" of relationships with customers does not pass muster.  Mot. at 13.

As a threshold matter, Plaintiff argues that this element is satisfied if *one* of the alleged business relationships is adequately pled.  According to Plaintiff, its relationships with GOG/Valve suffice, irrespective of the allegations regarding its relationship with customers.  Opp'n at 13.  Plaintiff is correct that "only one of the above economic relationships has to *meet the elements of the tort*."  PhoneDog v. Kravitz, No. C 11-03474 MEJ, 2012 WL 273323, at *1 (N.D. Cal. Jan. 30, 2012) (emphasis added).  At a minimum, however, the *elements of the tort* must be satisfied by reference to a single relationship; Plaintiff cannot meet some elements based on its relationship with the digital distributors and other elements based on its relationship with customers.  Because Plaintiff has not yet shown that it can meet the elements of the interference torts by reference to either of the alleged relationships, the Court now examines both.

As Defendants acknowledge, the TAC adequately alleges business relationships with GOG/Valve in the form of the distribution agreements.  As to Plaintiff's purported business relationships with customers, however, the allegations are inadequate as pled.  The intentional inference tort protects the expectancy that arises from an *existing* business relationship.  Roth v. Rhodes, 25 Cal. App. 4th 530, 546 (1994); Westside Ctr. Assocs. v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 527 (1996) (rejecting "interference with the market" or "lost opportunity" theories of liability).  Plaintiff's alleged relationships with

"existing and potential purchasers" is vague and speculative, and therefore fails to state a claim. See Westside Ctr. Assocs., 42 Cal. App. 4th at 527 ("Without an existing relationship with an identifiable buyer, [the] expectation of a future sale [is] 'at most a hope for an economic relationship and a desire for future benefit.'"); see e.g., Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F. Supp. 1303, 1312 (N.D. Cal. 1997) (dismissing interference claim as to the plaintiff's "customers and potential customers").

Plaintiff has shown that it may be able to cure this deficiency, however.  Plaintiff purports to have had existing contractual and economic relationships with customers who purchased the Promotional Content and/or who pre-ordered or purchased Origins. Although it does not name specific customers, Plaintiff names a "limited group of customers" whose identities can be readily ascertained through discovery.  Oracle Am., Inc. v. CedarCrestone, Inc., No. 12-CV-04626 NC, 2013 WL 3243885, at *4 (N.D. Cal. June 26, 2013).  This is sufficient to state a claim.  Id. (denying motion to dismiss interference claim as to the plaintiff's "software licensees and support customers").  Notably, Plaintiff does not clearly allege when its relationships with these customers first arose, and thus, it is uncertain which of the allegedly infringing acts, if any, may be actionable.  For example, it is not clear that Plaintiff had an existing relationship with an identifiable group of customers at the time Defendants announced Ghosts of the Precursors.  For purposes of the instant motion, however, Plaintiff's assertions warrant leave to amend.

### c.    *Knowledge, Intent, and Actual Disruption*

Finally, Defendants challenge the adequacy of the allegations regarding their knowledge of Plaintiff's business relationships, their intent to disrupt those relationships, and actual disruption of the relationships.

The TAC alleges facts sufficient to support the inference that Defendants had knowledge of Plaintiff's business relationships with GOG/Valve.  Although the interference claim may not be predicated upon Defendants' submission of the DMCA notices, the fact that they submitted DMCA notices to GOG/Valve demonstrates that they had knowledge of Plaintiff's relationships with these digital distributors.  Plaintiff does not

clearly allege when Defendants acquired this knowledge, and thus, it is uncertain which of the allegedly infringing acts, if any, were undertaken with such knowledge. For present purposes, however, Plaintiff's allegations are adequate.

The TAC also alleges facts sufficient to support the inference that Defendants acted with the intent to induce a breach of contract or otherwise disrupt Plaintiff's relationships with GOG/Valve. To establish the requisite intent, it must be shown that the defendant acted either with the desire to interfere or knowledge that his actions were substantially certain to interfere with the plaintiff's business expectancy. Korea Supply, 29 Cal. 4th at 1164-65. Among other things, the TAC alleges that Defendants deliberately timed the announcement of Ghosts of the Precursors, which they promote as the true and direct sequel to Star Control II, to precede and disrupt Plaintiff's release of the Promotional Content and Origins. It is further alleged that Defendants announced Ghosts of the Precursors without any intention of beginning development of the game, and that they have not, even as of recently, commenced development of the game. At the pleading stage, these allegations support the inference that Defendants acted with the requisite intent.

On the other hand, the TAC fails to allege facts sufficient to support the inference that Defendants' conduct actually disrupted Plaintiff's relationships with GOG/Valve. As noted by Defendants, Plaintiff's relationships with GOG/Valve remain intact and both platforms have continued to distribute Plaintiff's content. To be sure, "[Plaintiff] need not allege an actual or inevitable breach of contract" to state a claim. Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1129 (1990). It may suffice to allege that "[Plainitff's] performance [was] made more costly or more burdensome." Id. Plaintiff does not allege that its performance of the distribution agreements was so hindered by Defendants' actions, however. In its opposition, Plaintiff asserts that Defendants' bad acts resulted in "lost sales and customer refunds." Opp'n at 16. But lost sales and refunds show, *at most*, disruption to relationships with *customers*, not with *GOG/Valve*. Plaintiff must allege more than a general injury, it must allege injury to the business relationship with which Defendants allegedly interfered. See Sybersound Records, Inc. v. UAV Corp.,

517 F.3d 1137, 1151 (9th Cir. 2008) (affirming dismissal of interference claim that set forth only general allegation of harm, as opposed to a lost contract or failed negotiation).

Plaintiff has not yet shown that it can cure this deficiency.  Nevertheless, the Court finds that Plaintiff *may* be able to allege additional facts that are both sufficient to state a claim and consistent with those facts already alleged.  Furthermore, while the interference claims alleged in the TAC focus primarily on Plaintiff's relationships with GOG/Valve— and are therefore short on facts supporting a claim for inference as to Plaintiff's relationships with its customers—the Court has found that Plaintiff *may* be able to state a claim for interference as to customers who purchased or pre-ordered the Promotional Content and/or Origins.[4]  Because the Court is not yet satisfied that amendment will be futile, leave to amend is warranted.[5]

### 3.   Summary

In view of the forgoing, Defendants' Motion to Dismiss Counts Twelve and Thirteen of Stardock's Third Amended Complaint is GRANTED with leave to amend to allege claims predicated on non-preempted acts of intentional interference.

### B.   MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

Plaintiff's separate motion for leave to file an amended complaint seeks leave to amend only the twelfth and thirteenth causes of action for intentional interference.  Because

---

[4] Of course, if Plaintiff elects to file a Fourth Amended Complaint, it must have a good faith basis, both in law and fact, to amend its claims.  Fed. R. Civ. P. 11(b).

[5] Leave to amend is also opposed on the ground that further amendment "will needlessly delay resolution of this case and unduly prejudice [Defendants]."  Mot. at 16.  Defendants' claim of delay and prejudice is conclusory and unsupported, however.  See Eminence Capital, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."); DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987) ("The party opposing amendment bears the burden of showing prejudice.").  The Court notes that, although Plaintiff has amended its complaint several times, it only just added its claims for tortious inference and has not yet had the opportunity to cure the deficiencies identified in this Order.  That being said, the Court has previously admonished the parties for seeking to retroactively extend the deadline to amend the pleadings and for adding claims and parties without providing advance notice of their intent to do so.  The Court urges the parties to finalize the pleadings forthwith and provides leave to amend only those causes of action implicated in the instant motion.

leave to amend those causes of action is granted in conjunction with Defendants' motion to dismiss, and no other amendments are proposed, Plaintiffs' Motion for Leave to File Fourth Amended Complaint is DENIED as moot.

## IV.    **CONCLUSION**

In view of the foregoing, IT IS HEREBY ORDERED THAT:

1.      Defendants' Motion to Dismiss Counts Twelve and Thirteen of Stardock's Third Amended Complaint, Dkt. 76, is GRANTED with leave to amend.  Leave to amend is granted as to counts twelve and thirteen only; no other amendments shall be permitted without prior leave of Court.

2.      Plaintiff shall file a Fourth Amended Complaint within 14 days of the date this Order is filed.  Failure to timely file a Fourth Amended Complaint will result in the dismissal of counts twelve and thirteen with prejudice.

3.      Plaintiff's Motion for Leave to File Fourth Amended Complaint, Dkt. 82, is DENIED as moot.

IT IS SO ORDERED.

Dated:  May 14, 2019

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge